## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, LINDSAY
DURTSCHI, on behalf of herself and
her minor children, BENJAMIN
GLASS, on behalf of himself and his
minor child, GEORGE M.
JOHNSON, DAVID LEVITHAN,
KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN
PARKER, on behalf of himself and
his minor child, ASHLEY HOPE
PÉREZ, ERICA ROY, on behalf of
herself and her minor children,
CHRISTOPHER SCOTT
SATTERWHITE, on behalf of
himself and his minor child, and
CARIN SMITH on behalf of herself
and her minor children,

      Plaintiffs,

vs.

ESCAMBIA COUNTY SCHOOL
BOARD,

      Defendant.

_____ /

CASE NO.:  3:23-CV-10385-TKW-ZCB

## DEFENDANT'S DISPOSITIVE
## MOTION TO DISMISS AMENDED COMPLAINT

Defendant, Escambia County School Board ("Board"), hereby files its Dispositive Motion to Dismiss Plaintiffs' Amended Complaint, [D.E. 27 ("Complaint" or "Compl.")], and in support thereof states:

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs allege the Board decided "to remove and restrict books" from its libraries "based on its disagreements with the ideas expressed in those books," actions which Plaintiffs claim "have disproportionately targeted books by or about people of color and/or LGBTQ people," thus prescribing an "orthodoxy of opinion that violates the First and Fourteenth Amendments." Compl. at pp.1-2. Plaintiffs erroneously build their arguments on "a faulty foundation." *Am. Civ. Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1218 (11th Cir. 2009) ("*ACLU*"). The Board has not banned any books, rather it "removed from its own school libraries [books] that the Board had purchased for those libraries with Board funds. It [has] not prohibit[ed] anyone else from owning, possessing, or reading the book[s]." *Id.*  This violates no constitutional protection.

Such terms—or their linguistic fellows—"do[] not apply where a school district, through its authorized school board, decides not to continue possessing [a] book on its own library shelves. The School Board is the entity *that has the ultimate authority to decide what books will be purchased and kept on the shelves of the schools in the district*." *Id.* (emphasis added) (first citing § 1001.32(2), Fla. Stat.;

and then citing *id.* § 1006.28(1)(d)). To the extent Plaintiffs claim First and Fourteenth Amendment violations prior to July 1, 2023, they overlook the Board's "ultimate authority" to determine which books to make available to the students within the Escambia County School District ("District"). *Id.*

Plaintiffs consist of: (1) a nonprofit organization ("Nonprofit Plaintiff"); (2) authors who are members of the Nonprofit Plaintiff and whose books have been subject to action by the Board ("Author Plaintiffs"); (3) a book publisher ("PRH"); and (4) seven parents of ten students who attend schools within the District, who bring suit on behalf of themselves and their minor children ("Parent Plaintiffs"). Plaintiffs' claims are:

> 1. <u>Count I</u> **-** Viewpoint Discrimination under the First Amendment, brought by the Nonprofit Plaintiff, Author Plaintiffs, and PRH;
>
> 2. <u>Count II</u> **-** Right to Receive Information under the First Amendment, brought by the Parent Plaintiffs on their behalf and on behalf of their children; and
>
> 3. <u>Count III</u> **-** Equal Protection Clause of the Fourteenth Amendment, on behalf of the Nonprofit Plaintiff, Author Plaintiffs, and the Parent Plaintiffs, both on their behalf and on behalf of their children.

Plaintiffs' Complaint fails for numerous reasons: (1) it is a prohibited shotgun pleading; (2) legislative changes are fatal to the Parent Plaintiffs' claims and those of their children; (3) all Plaintiffs lack standing; (4) the actions taken by the Board qualify as government speech, precluding Plaintiffs' claims; (5) the aforementioned legislative changes preclude *Monell* liability for claims by the Parent Plaintiffs and

their children; (6) the Parent Plaintiffs and their children's claims are now partly moot and (7) partly unripe. Finally, even if Plaintiffs overcome these deficiencies, they nevertheless: (8) fail to state a claim for a purported "right" to receive information from a public school library in Count II; and (9) fail to state a claim under the Equal Protection Clause in Count III. Plaintiffs' Complaint should be dismissed and, where stated, dismissal should be with prejudice as leave to amend would be futile.

## II.    STATEMENT OF THE ALLEGED FACTS[1]

Plaintiffs' Complaint centers on actions taken by the Board under its policy—one required by Florida law—regarding objections to materials contained within its schools' libraries. Plaintiffs claim the Board is ordering books to be removed or restricted "based on ideologically-driven efforts to push certain ideas out of school." Compl. at ¶ 4. Plaintiffs allege the Board's actions, in purportedly "seek[ing] to remove or limit access to books a small minority views as too 'woke'" "run afoul of the First Amendment" and also "violate the Equal Protection Clause because the books singled out for possible removal are disproportionately books by non-white and/or LGBTQ authors, or which address topics related to race or LGBTQ identity." *Id.* at ¶¶ 6-7.

---

[1] The Board accepts, as it must, the veracity of Plaintiffs' allegations for the purposes of this Motion only.

Plaintiffs are a nonprofit organization, authors whose books have been subject to Board action, a book publisher, and parents of students attending schools in the District. *Id.* at ¶¶ 10-31. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 under the First and Fourteenth Amendment. *Id.* at ¶ 34. Plaintiffs inconsistently seek injunctive relief, *see id.* at § VI (Prayer for Relief), but limit their challenges to the "actions undertaken by the School Board prior to implementation of the [Board's] new rules/procedures," in response to changes in Florida law that became effective July 1, 2023. *Id.* at ¶ 69 n.4; *see also* Ch. 2023-105, Laws of Fla. The Complaint alleges these actions "began on or about May 23, 2022." Compl. at ¶ 42. It is incongruous to seek injunctive relief when the very process Plaintiffs seek to enjoin has been superseded by intervening legislation.

Plaintiffs focus their allegations on the efforts of one individual employed by the Board—but who is not a member of the Board, nor does she speak for, represent, or in any way bind the Board—who is active in challenging materials within the District's libraries and whose efforts have led to either the removal or restriction of various books which were found to run afoul of Board policy. *See id.* at ¶¶ 42-108. Plaintiffs claim books have been removed or restricted based on viewpoint, as purportedly apparent based on general themes Plaintiffs allege are common to these materials. *Id.* at ¶¶ 109-60. Plaintiffs also state the Board has "been focused disproportionately on minority and LGBTQ authors" as for removed or restricted

books. *Id.* at ¶¶ 161-69. Plaintiffs broadly categorize the books they seek restored to library shelves as either "Removed Books," or "Targeted Books," *id.* at ¶¶ 104-05, depending on the current level of restriction.

As a result, Plaintiffs claim the Board's actions have either denied or chilled efforts by students to read these materials. *Id.* at ¶¶ 170-94. Plaintiffs allege various injuries and bring suit under the First Amendment, claiming viewpoint discrimination and violation of the purported right to receive information, and under the Fourteenth Amendment, claiming an equal protection violation.[2] *Id.* at ¶¶ 195-210, 215-40. For relief, Plaintiffs request:

> 1. Injunctive relief requiring the Board to restore the so-called "Removed Books" to be accessible within the District's libraries;
> 2. Injunctive relief requiring the Board to restore the so-called "Targeted Books" to be accessible within the District's libraries; and
> 3. Costs and fees pursuant to 42 U.S.C. § 1988, and any other relief the Court orders.

*Id.* at § VI.A.-D. (Prayer for Relief). Plaintiffs concede that, pursuant to legislative changes effective July 1, 2023, and as now codified in Board policy, "it is not clear what materials will be challenged and removed under the revised [Board policy], or how the rule will be put into practice." *Id.* at ¶¶ 211-14. Despite these concessions,

---

[2] Because no books have been "banned," Plaintiffs' claims presuppose a constitutional right to have the challenged materials provided to them by the Board. This is not the law.

Plaintiffs still claim "their challenge to the removals and restrictions encompassed in the [Complaint] remains ripe for review." *Id.* at ¶ 214 n.11.

## III.   MEMORANDUM OF LAW

### A.   Standard of Review

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678-79. Granting a motion to dismiss is appropriate if it is clear "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A complaint's allegations are construed "as true and in the light most favorable to the plaintiff." *Lowell v. Am. Cyanamid Co.*, 177 F.3d 1228, 1229 (11th Cir. 1999). Where a plaintiff cannot state a cause of action and allowing amendment would be futile, claims may be dismissed with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

### B.   The Complaint Is an Impermissible Shotgun Pleading

The Complaint should be dismissed because it is a quintessential "shotgun pleading," in violation of Rules 8 and 10(b) of the Federal Rules of Civil Procedure.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d. 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four rough categories of shotgun pleadings: (1) a complaint containing multiple counts adopting the allegations of all preceding counts; (2) a complaint filled with conclusory, vague, and immaterial facts not connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. *Id.* at 1321-23. The Complaint runs afoul of each prohibition applicable to this single defendant case.

Count I expressly incorporates the preceding 214 paragraphs, and consists of multiple distinct claims, because the Nonprofit Plaintiff purports to bring suit on behalf of itself, and as an association on behalf of its members. Compl. at ¶ 10.[3] Count II does not expressly but implicitly incorporates the preceding 222 paragraphs

---

[3] The same is true for Count III, which the Nonprofit Plaintiff also claims to bring on behalf of itself and its members.

and consists of 17 distinct claims.[4] Count III expressly incorporates the preceding 230 paragraphs, and again consists of numerous distinct claims.

Because each of the three counts are based on a different conglomeration of Plaintiffs, many of the incorporated allegations are irrelevant and immaterial to the claim. "[I]t is exceedingly difficult, if not impossible to know which allegations pertain to that count (according to its label), to separate the wheat from the chaff." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). This is particularly prejudicial here because of the different hurdles each of the different Plaintiff classes face in establishing standing.

Finally, the Complaint does not separate out a single claim for relief, instead presenting an omnibus prayer for relief for all three claims. Compl. at § VI.

### C.   Section 1006.28, Florida Statutes, Is Fatal to the Parent Plaintiffs' Claims

Succinctly stated, the recently enacted section 1006.28, Florida Statutes, dooms the Parent Plaintiffs' claims.  As the Complaint acknowledges, House Bill 1069 (2023) ("HB 1069"), as codified in Chapter 2023-105, Laws of Florida, amended section 1006.28, effective July 1, 2023.[5] Compl. at ¶ 211. These changes

---

[4] Which includes claims brought by the Parent Plaintiffs on behalf of their ten *unidentified* minor Plaintiffs.  Compl. at ¶¶ 24-31.

[5] Unless otherwise noted, all references to section 1006.28 are to the version effective July 1, 2023.

reshape any analysis of challenges to library materials and conclusively thwart the Parent Plaintiffs' efforts to obtain injunctive relief to enjoin a process *that no longer exists*.

First, the statutory provision indisputably applies to the types of books that are the subject of this lawsuit.  Section 1006.28(2)(a)1. states, "[e]ach district school board is responsible for the content of all instructional materials *and any other materials* used in a classroom, made available in a *school* or classroom *library*, or included on a reading list . . . ." (emphases added). The distinction between instructional materials and "any other materials" is key, as the statute confines its definition of "instructional materials" to this term's definition in section 1006.29, Florida Statutes, *see* § 1006.28(1)(a)2., Fla. Stat., which does not generally include library materials. *See id.* § 1006.29(2). But school boards, as a "specific dut[y] and responsibilit[y]," are responsible for both instructional materials and "any other materials . . . made available in a school . . . library." *Id.* § 1006.28(2)(a)1.[6] The inclusion of "any other materials" cannot be overlooked as courts "must not read any provision, or even any word, of a statute so as to make it superfluous, and must instead give effect to every clause and word of a statute, avoiding any construction which implies that the legislature was ignorant of the meaning of the language it

_____

[6] This duty also existed in the 2022 version of the statute.

employed." *United States v. Focia*, 869 F.3d 1269, 1283 (11th Cir. 2017) (cleaned up). To the extent the Florida Legislature differentiated between instructional materials and any other materials made available in school libraries, the plain language of section 1006.28 unmistakably extends to any materials within a school library.

The statute further provides that each school board "must adopt a policy regarding an objection . . . to the use of a specific material, which clearly describes a process to handle all objections and provides for resolution." § 1006.28(2)(a)2., Fla. Stat. "The process must provide [the objector] the opportunity to proffer evidence to the district school board that . . . [a]ny material . . . made available in a school . . . library . . . contains content which [falls within enumerated categories of prohibited material]." *Id.* § 1006.28(2)(a)2.b.[7] Again, the Legislature's choice of language shows a school board's objection process must contemplate challenges to instructional materials *but also school library materials as well*.

The most relevant change to section 1006.28 is the creation of subsection (2)(a)6. This provision provides:

---

[7] Although the 2023 version of the statute created enumerated categories of prohibited material, the only material difference between it and the 2022 version of the statute is the inclusion of subsection b.(II), which added "[d]epict[ions] or descri[ptions] [of] sexual conduct as defined" by Florida law to the preexisting prohibited topics.

11

> If a parent disagrees with the determination made by the district school board on the objection to the use of a specific material, a parent may request the Commissioner of Education to appoint a special magistrate . . . [who] shall determine facts relating to the school district's determination, consider information provided by the parent and the school district, and render a recommended decision for resolution to the State Board of Education within 30 days after receipt of the request by the parent. The State Board of Education must approve or reject the recommended decision at its next regularly scheduled meeting that is more than 7 calendar days and no more than 30 days after the date the recommended decision is transmitted. . . . The State Board of Education shall adopt rules, including forms, necessary to implement this subparagraph.

*Id.* § 1006.28(2)(a)6. Notably, this provision is not limited to "instructional" material.

As required by statute, the Florida Department of Education has released the proposed text for an administrative rule implementing section 1006.28 that explicitly states the "Types of Materials Potentially Subject to the Special Magistrate Process" will, save for certain objections to instructional materials, include "parental objections to any type of material made available to a student *in a school library*, included on a school, grade, or classroom reading list, or used in a classroom."[8] Fla.

---

[8] This rule will be titled "Special Magistrate for Materials Used in Classroom or School Libraries." *Notice of Development of Rulemaking, Notice: 27165546*, Fla. Admin. Code & Fla. Admin. Reg., https://www.flrules.org/gateway/View_Notice.asp?id=27165546 (last visited Aug. 18, 2023). The Rule's stated purpose is "[t]o establish a process for parents to request the appointment of a special magistrate if they disagree with the local decision about an objection to materials used in school or classroom libraries." *Id.*

Admin. Code R. 6A-1.094126(3)(a) (emphasis added) (text of proposed rule to be considered for approval by Florida's State Board of Education on August 23, 2023). Thus, the statute and implementing regulation remove final decision-making authority for challenges to library materials from the Board, and place it in the hands of a special magistrate to make recommendations to the State Board of Education, *the current final decision-maker on book restriction/removal issues. Id.* This forecloses Plaintiffs' *Monell* claims and it renders the Parent Plaintiffs' claims both moot—as for the Removed Books—and unripe—as for the Targeted Books, and therefore, the Complaint should be dismissed with prejudice.

### D.   Plaintiffs Lack Standing

It is axiomatic that all Plaintiffs face insurmountable traceability and redressability hurdles where they only seek to enjoin a Board policy that no longer exists. For this reason alone, none of the Plaintiffs have standing. "[I]t goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold [sic] requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To establish a case or controversy under Article III and satisfy the threshold standing requirement, "the plaintiff must have a personal stake in the case." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (cleaned up). "To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the

question: "'What's it to you?'" *Id.* (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)). "If 'the plaintiff does not claim to have suffered an injury *that the defendant caused and the court can remedy*, there is no case or controversy for the federal court to resolve.'" *Id.* (emphasis added) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions. As Madison explained in Philadelphia, federal courts instead decide only matters 'of a Judiciary Nature.'" *Id.* (quoting 2 Records of the Federal Convention of 1787, p.430 (M. Farrand ed. 1966)). Moreover, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 2208.

### i.      The Nonprofit Plaintiff

The Nonprofit Plaintiff alleges it has standing based on organizational injury and based on associational standing. Compl. at ¶¶ 195, 197. Neither of these pass scrutiny.

### a.   Organizational Standing

As for organizational standing, the Nonprofit Plaintiff claims "[a]s a consequence of efforts in Escambia County *and elsewhere* to remove books from public school libraries," it "has had to reallocate significant financial resources and time to addressing this issue and away from *other priorities*." *Id.* at ¶ 196 (emphases added). The Nonprofit Plaintiff does not identify where "elsewhere" is nor does it state what these "other priorities" are that were adversely impacted by the actions of the Board. Instead, it broadly alleges actions it has been forced to take, but never explicitly states these actions were taken *because of the Board*.[9] *Id.*

Although not expressly articulated, it is clear the Nonprofit Plaintiff's organizational standing presumes a diversion of resources theory. *See id.* "To establish standing under a diversion of resources theory, an organizational plaintiff must explain where it would have to 'divert resources away *from* in order to spend additional resources on combating' the effects of the defendant's alleged conduct." *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration &*

---

[9] For example, the Nonprofit Plaintiff claims it has had to hire full-time staff to track and report book removals, support its members' concerns, and respond to inquiries from individuals "regarding book removals." Compl. at ¶ 196. But the Nonprofit Plaintiff claims to operate "in the United States and around the world" and have members in every state. *Id.* at ¶¶ 10-11. Accordingly, its diversion of resources to these locations—the proverbial "elsewhere"—to combat issues antithetical to its goals cannot be traced back to the actions of the Board.

*Elections*, 36 F.4th 1100, 1114 (11th Cir. 2022) (quoting *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1249-50 (11th Cir. 2020)). Here, the Nonprofit Plaintiff fails to even attempt to satisfy its pleading obligations in this regard, and this failure sinks its standing. *See Jacobson*, 974 F.3d at 1250 (finding organizational plaintiffs' testimony did not "explain[] what activities [they] would divert resources away *from* in order to spend additional resources on combatting [the challenged conduct]").

The Nonprofit Plaintiff's broad allegations also fail because it admits this diversion is based on actions both within Escambia County and "elsewhere." Indeed, the Complaint speaks of the alleged "national campaign to remove books" in which the Board is purportedly complicit, but clearly not responsible for. *See* Compl. at ¶¶ 43-44, § III.C. The Complaint also decries actions taken by organizations not affiliated with the Board, *e.g.*, Moms for Liberty. *Id.* at ¶¶ 44-45. This does not satisfy the traceability and redressability prongs of the standing analysis. As the Supreme Court has held, an "injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Ga. Ass'n*, 36 F.4th at 1115 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations adopted)).

The Board cannot be liable for any alleged constitutional injury caused "elsewhere"; nor can the Board be liable for actions by an independent, third-party group that does not act as an agent of or arm of the Board. By collapsing its resource

diversion efforts into these broad claims, the Nonprofit Plaintiff has failed to show its alleged injury is fairly traceable to the Board. Nor has it shown its injuries will be redressed by a favorable decision enjoining the Board's obsolete policy. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. The Nonprofit Plaintiff lacks standing in its own right, and therefore, its claims should be dismissed with prejudice.

### b.    Associational Standing

The Nonprofit Plaintiff also claims associational standing "on behalf of its members." Compl. at ¶ 197. Specifically, it claims its "affected author-members" "whose books have been removed from [the Board's] libraries . . . and/or subjected to restricted access within [the Board's] libraries" "would have standing to sue based on [the Board's] alleged violations of their rights under the First and Fourteenth Amendments." *Id.* at ¶¶ 197-98. Plaintiffs are mistaken. An organization can establish associational standing to enforce the rights of their members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1316 (11th Cir. 2021). As shown *infra*, its members lack standing in

their own right, precluding the Nonprofit Plaintiff's organizational standing, and therefore, its claims should be dismissed with prejudice.

### ii.     The Author Plaintiffs Lack Standing

The Author Plaintiffs claim to have standing because their books have either been removed from or subjected to restricted access in the Board's libraries. Compl. at ¶ 201. This cannot satisfy Article III requirements.

The doctrine of standing requires "that a case embody a genuine, live dispute between adverse parties" by insisting that a litigant "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)); *see also Lujan*, 504 U.S. at 560-61. A constitutional injury must not only be concrete and particularized, but it must also be "actual or imminent." *Lujan*, 504 U.S. at 560. It cannot be "conjectural or hypothetical." *Id.* A plaintiff must show more than "an abstract and generalized harm" to his interest in the proper application of the law, or it does not count as an injury in fact, and fails to establish standing. *Carney*, 141 S. Ct. at 498.

Here, the removal of books from shelves (or the mere restriction of access) does not create a constitutional injury. Standing requires "that a party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v.*

*Morton*, 405 U.S. 727, 740 (1972). Books, like trees, do not have standing. *See id.* at 741 (Douglas, J., dissenting). And Plaintiffs have not identified, nor have the undersigned found, any constitutional right to have one's book on the shelves of a public school library, regardless of the "wants" of the author or the accolades said book has received. To be clear, "remov[ing] from its own school libraries a book that the Board had purchased for those libraries with Board funds" does "not prohibit anyone else from owning, possessing, or reading the book." *ACLU*, 557 F.3d at 1218. To that end, the Author Plaintiffs have no constitutional injury in the removal or restriction of their books.

At bottom, the Author Plaintiffs cannot elevate what appear to be, at best, tort claims into constitutional injuries.[10] *See Cypress Ins. Co. v. Clark*, 144 F.3d 1435, 1438 (11th Cir. 1998) ("The Supreme Court's message . . . is clear and unmistakable: Section 1983 did not make every tort committed by a state official a violation of constitutional rights."); *see also Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1331 (11th Cir. 1982) (Hoffman, J., concurring specially) ("While some conduct may clearly be violative of tort law, it may not be a constitutional injury, and the proper remedy is not a section 1983 claim . . . ."). The Board "could have decided not to purchase and shelve [the Author Plaintiffs' books] in the first place,"

---

[10] The Board concedes no error or liability under any theory, but the Author Plaintiffs' attempt to make a federal case out of these allegations misses the mark.

and "removing a book from one's own shelves is not book banning either." *ACLU*, 557 F.3d at 1218; *see also Bd. of Educ. v. Pico*, 457 U.S. 853, 921 (1982) (plurality opinion) (O'Connor, J., dissenting) ("If the school board can set the curriculum, select teachers, and determine initially what books to purchase for the school library, it surely can decide which books to discontinue or remove from the school library so long as it does not also interfere with the right of students to read the material and to discuss it."). The Board has not inhibited or prohibited the Author Plaintiffs' ability to write, market, and sell their books, *even to the Board's students*. *See ACLU*, 557 F.3d at 1219 ("[The Board] did not forbid or prohibit anyone from publishing, selling, distributing, or possessing the book."). The mere fact that their books have been removed or restricted from the Board's shelves does not give the Author Plaintiffs standing to challenge the Board's decisions and their claims should be dismissed with prejudice.

### iii.   PRH Lacks Standing

PRH's standing is even more tenuous. It claims standing to sue "because certain of the books it publishes" have been removed or restricted, and "[a] publisher's ability to publish and sell books freely is affected when state or local officials restrict circulation or remove the publisher's books." Compl. at ¶ 202. This is refuted by the factual allegations because the Board has not affected PRH's ability to publish or sell its books, nor has it prohibited others from reading, purchasing, or

even bringing PRH-published book to school. To the contrary, the allegations conclusively establish the Board *has already purchased the publisher's books*. PRH's argument, stretched to the breaking point, would create standing if the Board elected not to purchase its authors' books at all and would effectively require the Board to purchase its books under threat of constitutional liability. This strains credulity.

PRH, like the Nonprofit Plaintiff, cannot raise its "mere 'interest in a[n] [alleged] problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the [alleged] problem" into an injury sufficient to establish Article III standing. *Sierra Club*, 405 U.S. at 739. "[I]f a 'special interest' in this subject were enough to entitle [the Nonprofit Plaintiff and PRH] to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization however small or short-lived." *Id.* "And if any group with a bona fide 'special interest' could initiate such litigation, it is difficult to perceive why any individual citizen [like the Author Plaintiffs] with the same bona fide special interest would not also be entitled to do so." *Id.* The Constitution requires more. Because there are no set of facts sufficient to establish its standing, PRH's claims should also be dismissed with prejudice.

### iv. The Parent Plaintiffs Lack Standing for Themselves and Their Minor Children

The Parent Plaintiffs claim standing for themselves and their children because "both they and their children have been harmed by the book removals and restrictions." Compl. at ¶ 203. Closer inspection of the allegations reveal the infirmities in this claim. The Parent Plaintiffs do not allege any actual harm or injury due to the Board's actions. Rather, they merely claim they "would like" or "want" to access and check out books that have either been removed or restricted. *See id.* at ¶¶ 24-31, 171-94, 204-10. Not a single Parent Plaintiff, either in their own capacity or on behalf of their minor children, claims to have unsuccessfully tried to access any of the removed or restricted books. Instead, their children "would like" and "want" to check out books no long available and the Parent Plaintiffs "would like" and "want" their children to have this opportunity. *Id.*

While desire is a cognizable interest for purpose of standing, "the 'injury in fact' test requires more. It requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 562-63 (quoting *Sierra Club*, 405 U.S. at 734-35). *Lujan* is instructive here: in finding the plaintiffs' statements "plainly contain[ed] no facts" regarding how they would suffer "imminent injury," the Court noted:

> [T]he affiants' profession of an "inten[t]" to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough. Such "some day" intentions—without any description of concrete plans, or indeed even any specification

> of *when* the some day will be—do not support a finding of the "actual
> or imminent" injury that our cases require.

504 U.S. at 564 (second alteration in original). The Parent Plaintiffs' "some day"

intentions, either on their own behalf or on behalf of their children, to purportedly

seek access to the removed or restricted books does not support any finding of actual

or imminent injury required to demonstrate standing. *Id.* Without more, they fail this

threshold inquiry and their claims should be dismissed.[11] Because of the intervening

law and Board policy change, leave to amend for the Parent Plaintiffs to provide

more specific intent on when they intend to pursue the challenged materials from a

Board library would be futile, and therefore, dismissal with prejudice is appropriate.

### E.   The Board's Policy and Actions Regarding Challenged Library Materials Constitutes Government Speech

Even if Plaintiffs had standing and their Complaint were otherwise

procedurally sound, the Complaint should still be dismissed with prejudice  because

the Board's alleged actions constitute government speech, for which Plaintiffs enjoy

no First Amendment or Equal Protection Clause protection.

The Nonprofit Plaintiff, Author Plaintiffs, and PRH contend the Board

violated their First Amendment rights because "[t]he libraries within the School

---

[11]The Plaintiff Parents' insistence that they and their children be allowed to access
these books in the Board's libraries does not create a constitutional injury. Their
presupposition that the Board is constitutionally obligated to provide what books
they "want" fails scrutiny.

District constitute, at a minimum, non-public forums" and because the Board removed or restricted access to their books for "disagreement with their messages or themes." Compl. at ¶¶ 218-19. The Parent Plaintiffs contend the same actions violated the rights of their children "to receive information and ideas" because, they allege, the Board acted "'in a narrowly partisan or political manner.'" *Id.* at ¶ 225.

Those claims fail as a matter of law because, in public schools, "expression delivered directly through the government or indirectly through private intermediaries" is government speech. *Bannon v. Sch. Dist. of Palm Beach Cnty.*, 387 F.3d 1208, 1213 (11th Cir. 2004). Likewise, "in the case of a public library . . . there is still government speech . . . . [T]he government speaks through its selection of which books to put on the shelves and which books to exclude." *ACLU*, 557 F.3d at 1202 (11th Cir. 2009) (alteration in original) (quoting *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005)). The selection of materials in a public-school library therefore adheres to the First Amendment, as the Free Speech Clause "does not regulate government speech." *Mech v. Sch. Bd. of Palm Beach Cnty.*, 806 F.3d 1070, 1074 (11th Cir. 2015) (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009)); *see also Gittens*, 414 F.3d at 28. Accordingly, Counts I and II, premised on purported protections Plaintiffs believe they have under the First Amendment, necessarily fail because the Free Speech Clause has no applicability to government speech.

Count III, Plaintiffs' equal-protection claim, fails for much the same reason. "When the government exercises 'the right to "speak for itself,"'" it can freely 'select the views that it wants to express.'" *Mech*, 806 F.3d at 1074 (quoting *Summum*, 555 U.S. at 467-68). Thus, as recognized by the Third, Fourth, Fifth, Sixth, and Ninth Circuits, "the Equal Protection Clause does not apply to government speech." *Fields v. Speaker of Penn. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (collecting cases).

Plaintiffs have not, in any event, adequately "plead[ed] animus," *i.e.*, they "must raise a plausible inference that an 'invidious discriminatory purpose was a motivating factor' in the relevant decision." *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1915 (2020) (plurality opinion) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). Plaintiffs allege that "[m]any of these books have been targeted simply because they address themes relating to race, sexuality, or gender identity" and, from that, Plaintiffs claim, "[t]he clear intent is to exclude speech by authors based on their race, sexuality, or gender identity." Compl. at ¶ 236. In other words, Plaintiffs allege that the proof of "intent . . . to exclude speech by authors" of protected classes lies in the Board's alleged admission that it "targeted [books] because they address themes relating to race, sexuality or gender identity." *Id.* But a content-based regulation is not an author-based regulation. And the allegation that the one follows from the other is the kind of

25

conclusory assertion that the Court need not accept as true and cannot state a claim upon which relief may be granted. As such, Count III also fails on these grounds.

**F.    The Parent Plaintiffs and the Nonprofit Plaintiff in Its Associational Capacity Can No Longer Show the Board Is a Final Decision-Maker for *Monell* Liability Purposes**

As a condition of agency liability, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny require the actions of a final decision-maker, or an agency custom, policy, or practice be the driving force behind the constitutional harm. An entity like the Board can only be held liable under 42 U.S.C. § 1983 if it has final decision-making authority over the challenged action. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). This is true even if the subordinate entity has discretion to exercise policymaking decisions, but is still subject to review by a final decision-maker. *See Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989). Section 1006.28(2)(a)6. has removed the Board's final decision-making authority regarding parent challenges to library materials and legislatively reassigned that authority to the Florida Department of Education, after consideration of the special magistrate's recommendation. §1006.28(2)(a)6., Fla. Stat. After July 1, 2023, the Board is no longer the final arbiter of which materials will be restricted or removed from its libraries. Therefore, Plaintiffs' efforts to enjoin prospective conduct of the non-final decision-maker Board fails to state a claim for which relief may be granted under any constitutional theory.

26

## G.    Plaintiffs' Claims Related to the Removed Books Are Moot

Plaintiffs, first request for relief is that the Court order the Board "restore to the libraries within the [District] the Removed Books." Compl. at § VI.A. This request is moot, given the changes to section 1006.28. That is, because section 1006.28 now takes final decision-making authority out of the Board's hands, there is no possibility of the alleged violations recurring; and, because the law now allows the Parent Plaintiffs and their associational representatives to seek review by a special magistrate, the effects of the violation have been eradicated because no final decision as to the Removed Books currently exists, thus removing any finality regarding the status of the Removed Books.

 "A case can become moot either due to a change in factual circumstances or due to a change in the law." *BankWest, Inc. v. Baker*, 446 F.3d 1358, 1364 (11th Cir. 2006) (cleaned up). "If a lawsuit is mooted by subsequent developments, any decision a federal court might render on the merits of [the] case would constitute an [impermissible] advisory opinion." *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005). "Dismissal of a moot case is required because mootness is jurisdictional." *Sierra Club v. U.S. Env't Prot. Ag.*, 315 F.3d 1295, 1299 (11th Cir. 2002).

 "A claim for injunctive relief may become moot if: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur

and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Reich v. Occupational Safety & Health Rev. Comm'n*, 102 F.3d 1200, 1202 (11th Cir. 1997). The changes to section 1006.28 undoubtedly moot Plaintiffs' claims for the Removed Books. *See id.*; *cf. Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1239 (11th Cir. 2011) ("When a party challenges an ordinance and seeks injunctive relief, a superseding ordinance moots the claim for injunctive relief.").

This also falls outside the capable of repetition, yet evading review exception to mootness because given these legislative changes, there can be no reasonable expectation that these parties "will be subject to the same action again." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *see also Lyons*, 461 U.S. at 109; *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cnty.*, 842 F.3d 1324, 1330 (11th Cir. 2016) (finding student's claim for injunctive relief moot because, in graduating high school and exiting the district, "the issue, 'while capable of repetition, certainly will not recur as to'" that student (quoting *Sapp v. Renfroe*, 511 F.2d 172, 176 (5th Cir. 1975))).

Moreover, while "a defendant's voluntary cessation of allegedly harmful activity is [generally] not enough to render a claim moot," "government entities [like the Board] have 'considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.'" *Littlejohn v. Sch. Bd. of Leon*

28

*Cnty.*, --- F. Supp. 3d ----, 2022 WL 18670372, at *3 (N.D. Fla. Dec. 22, 2022) (quoting *Keohane v. Fla. Dep't of Corr., Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020)). And while Plaintiffs can rebut this by showing a "substantial likelihood" that the Board would "reenact a repealed or amended policy," *id.*, they cannot do so given the changes to section 1006.28, and the Board's obligation to follow them. Indeed, the Complaint admits as much, noting the Board has already amended the policy Plaintiffs allege violates the Constitution. Compl. at § IV.K. As the Eleventh Circuit has noted, a "similar pronouncement" akin to statutory amendment "is ordinarily one of those events that makes it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Keohane*, 952 F.3d at 1268 (cleaned up). The Board's amended policy—and the creation of the special magistrate process—means the allegedly wrongful behavior cannot reasonably be expected to recur, thus mooting Plaintiffs' claims for the Removed Books.

## H.   Plaintiffs' Claims Related to the Targeted Books Are Not Ripe

Plaintiffs' second request for relief is that the Court order the Board "restore the Targeted Books currently subject to restricted access to their previous status." Compl. at § VI.B. This demand is not ripe for adjudication.  Given the changes to section 1006.28, the Parent Plaintiffs and their associational representatives have another avenue of redress—the special magistrate procedure—that they have not yet

utilized. As such, any claims about books whose access has been restricted are not final or concrete enough for this Court to pass judgment upon.

The inquiry of ripeness "focuses on whether [a] claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decision-making by the court." *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1212 (11th Cir. 1995). "The purpose of the ripeness doctrine is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Id.* (quoting *Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 149 (1967)). "[R]ipeness is a constitutional, jurisdictional prerequisite" to injunctive relief. *Int'l Tape Mfrs. Ass'n v. Gerstein*, 494 F.2d 14, 27 (5th Cir. 1974).[12]

Any claim for injunctive relief regarding books that have not cycled through the full statutory process in place for challenged materials is premature, and this Court's involvement would amount to unnecessary judicial entanglement. Here, there can be no question as to the ripeness problem because "it would strain credulity to say that there is a credible threat that Plaintiffs' First [or Fourteenth] Amendment rights will be violated" as regards the Targeted Books. *Elend v. Basham*, 471 F.3d 1199, 1211 (11th Cir. 2006). As the Complaint concedes, the Board has made no

---

[12] Decisions of the Fifth Circuit Court of Appeals decided prior to September 30, 1981, are binding precedent within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

final judgment on these books. *See* Compl. at ¶ 104 (noting Targeted Books "are currently under review"). And even if the Board *were* to order these books removed, Plaintiffs can seek review by a special magistrate, for ultimate adjudication by the State Board of Education, not the Board, as prescribed in section 1006.28. "Currently, there is no binding and conclusive administrative decision to be reviewed," making it "necessary to permit the administrative review process to fully run its course and to defer any litigation until more concrete actions have been taken by the [Board and other final decision-makers]." *Moore v. Navy Pub. Works Ctr.*, 139 F. Supp. 2d 1349, 1355 (N.D. Fla. 2001). "When a case involving prospective relief provides a court with no factual assurance that future injury is likely and no clues about its contours should such an injury arise, [the court] [is] left with only the faintest picture of a possible constitutional transgression occurring someday, somewhere in this country. Such a claim is not fit for adjudication by this Court." *Elend*, 471 F.3d at 1211-12. Plaintiffs' claims for the Targeted Books are not ripe, and should be dismissed.

## I.   Count II – Plaintiffs Erroneously Allege a "Right to Receive" that Is Not Recognized in This Circuit

Plaintiffs' second count claims their purported right to receive information has been violated. Plaintiffs' problem is that the case they rely on, *Pico*, "is of no precedential value as to the application of the First Amendment to these issues." *ACLU*, 557 F.3d at 1200 (quoting *Muir v. Ala. Educ. Tele. Comm'n*, 688 F.2d 1033,

1045 n.30 (5th Cir. 1982)). That is, "*Pico* is a non-decision so far as precedent is concerned. It establishes no standard." *Id.* Count II rests on "a badly fractured decision" that "failed to attract a majority," and in fact included "four dissenters, who were of the opinion that the First Amendment placed no limits on a school board's power to remove books from school libraries." *Id.* at 1199, 1200, 1202.

To the extent Plaintiffs urge this Court to adopt *Pico*'s standard, prudential reasons counsel against it: "[w]ith five different opinions and no part of any of them gathering five votes from among the nine justices," *id.* at 1200, judicial restraint should be exercised. *See Digit. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) ("Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint." (citation omitted)). Here, given the "potential or abstract" nature of the purported right to receive information, any decision this Court could render would be an "impermissible advisory opinion[]." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1379-80 (11th Cir. 2019) (quoting *Nat'l Adver. Co.*, 402 F.3d at 1339). Therefore, this Court should reject Plaintiffs' efforts to base a First Amendment claim on a right not recognized by either the Supreme Court or Eleventh Circuit, and dismiss.[13]

---

[13] And to the extent the Court may recognize such a right, nothing the Board is alleged to have done can reasonably be said to have impeded this right. Parents and

### J.   Count III – Plaintiffs Have Failed to State a Claim under the Fourteenth Amendment's Equal Protection Clause

Finally, Count III fails to state a claim under the Fourteenth Amendment's Equal Protection Clause. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike, and simply keeps governmental decision-makers from treating differently persons who are in all relevant respects alike." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 801 (11th Cir. 2022) (en banc) (cleaned up). Plaintiffs do not identify with particularity the class of individuals the Board purportedly discriminated against, instead alleging in conclusory fashion the Board has violated this Clause based on actions against "non-white *and/or* LGBTQ authors, *and/or* books that explore themes relating to race, gender, or sexual orientation." Compl. at ¶ 234 (emphases added). This amalgamation of classes apparently includes scrutiny based on race, sex, gender, or sexual orientation, and thus captures every human being alive, which is no class at all. Moreover, Plaintiffs' attempt to equate the *content of books* to the class status of its authors is unavailing.[14]   Beyond this, Plaintiffs' efforts to establish class-based

---

their children are free to read, access, purchase, and bring to school the challenged books, they just cannot obtain them from the Board's libraries (or do so without restriction as the case may be).

[14] Plaintiffs identify some, but not all, races within the named Plaintiffs, some, but not all, sexual orientations within the named Plaintiffs, and some, but not all, genders within the named Plaintiffs. Compl. at ¶¶ 14-19, 25-31. The Board is severely prejudiced in responding to Plaintiffs' allegations given these pleading failures.

animus based on the regulated content of the books, is unpersuasive and unsupportable. *See* Section III.E., *supra*.

**WHEREFORE**, Defendant, Escambia County School Board, requests an order dismissing Plaintiffs' Amended Complaint, with prejudice, and for any such other relief that this Court deems just and proper.

## CERTIFICATE IN ACCORDANCE WITH LOCAL RULE 7.1(B)

Undersigned counsel certifies that they have conferred with counsel for Plaintiffs and said counsel object to the relief requested herein.

## CERTIFICATE OF WORD COUNT

The undersigned certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 7,990 words, excluding the parts exempted by said Local Rule.

Respectfully submitted,

/s J. David Marsey
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  **Shalini Goel Agarwal at shalini.agarwal@protectdemocracy.org,** **Lynn B. Oberlander at oberlanderl@ballardspahr.com,** **Kamera E. Boyd at boydk@ballardspahr.com, Paul J. Safier at safierp@ballardspahr.com, Shawn F. Summers at summeerss@ballardspahr.com, Kristy Parker at kristy.parker@protectdemocracy.org,** and **John Langford at john.langford@protectdemocracy.org (Counsel for Plaintiffs)**.

/s J. David Marsey
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
Attorneys for Defendants

18249769.v1