## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**PEN AMERICAN CENTER, INC.,**
**et al.**,

      **Plaintiffs**,

**v.**                                  **Case No. 3:23cv10385-TKW-ZCB**

**ESCAMBIA COUNTY SCHOOL**
**BOARD**,

      **Defendant**.
_____/

## <u>ORDER ON MOTION TO DISMISS</u>

This case is before the Court based on Defendant's motion to dismiss (Doc. 28). The issues raised in the motion were thoroughly briefed, *see* Docs. 31-1, 40, 42-2, 43-1, and the parties were afforded an opportunity to present extensive oral argument on the motion on January 10, 2024. The Court announced its rulings on the issues raised in the motion at the conclusion of the oral argument. This Order memorializes those rulings.

In this case, Plaintiffs challenge Defendant's decisions to remove or restrict certain books from its school libraries. The 80-page, 240-paragraph amended complaint (Doc. 27) asserts three claims on behalf of multiple plaintiffs—a viewpoint discrimination claim under the First Amendment (Count I) on behalf of

PEN[1] and its members, the Author Plaintiffs,[2] and PRH;[3] a right to receive information claim under the First Amendment (Count II) on behalf of the Parent Plaintiffs[4] and their children; and an equal protection claim under the Fourteenth Amendment (Count III) on behalf of PEN and its members, the Author Plaintiffs, and the Parent Plaintiffs and their children.

Defendant responded to the amended complaint with a motion to dismiss, arguing that the amended complaint is an impermissible shotgun pleading; none of the plaintiffs have standing; the plaintiffs' claims are unripe or moot based on §1006.28(2)(a)6., Fla. Stat.; and that the amended complaint fails to state any plausible claims for relief.  For the most part, the Court finds these arguments unpersuasive.

The amended complaint is considerably longer than it needed to be, but it is not an impermissible shotgun pleading.  The fact that each count of incorporates all of the allegations in the preceding counts (which is an indication of a shotgun pleading) is not dispositive here because, notwithstanding that deficiency, the

---

[1]  PEN American Center, Inc.

[2]  Sarah Brannen, George M. Johnson, David Levithan, Kyle Lukoff, and Ashley Hope Perez.

[3]  Penguin Random House LLC.

[4]  Lindsay Durtschi, Benjamin Glass, Ann Novakowski, Sean Parker, Erica Roy, Christopher Scott Satterwhite, and Carin Smith.

amended complaint still provides Defendant fair notice of the claims against it and the grounds upon which those claims rest—which is what a shotgun pleading does not do.  *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").  Indeed, Defendant's 36-page motion to dismiss and its thorough discussion of the merits of the claims at the oral argument show that Defendant has a clear understanding of the claims being asserted against it and the grounds upon which those claims rest.

All of the plaintiffs have adequately pled standing.  The Parent Plaintiffs have standing—at least on behalf of their minor children[5]—because the amended complaint alleges (at ¶¶25-31, 172, 173, 177, 180, 183, 186, 190, 193, 205-10) that the children intended to check out specific removed and restricted books during the upcoming (now, ongoing) school year, but they are unable to do so because of

---

[5]  The Court need not decide at this point whether the Parent Plaintiffs have standing in their own right, but if it turns out that Defendant's library policies are different from those in the *ACLU* case, *see* 557 F.3d at 1195, it is unlikely that the Parent Plaintiffs will have standing in their own right to challenge Defendant's removal/restriction decisions simply because they <u>want</u> certain books to be in school libraries for one reason or another since School Board Policy makes clear that "[n]o parent … has the right to determine the reading, viewing or listening resources for students other than their own children."  Doc. 27 at 95 (§4.06.10.A.3).

Defendant's removal/restriction decisions.[6] *See ACLU of Florida, Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1194-95 (11th Cir. 2009) (finding that student had standing to challenge the removal of a book from the school library under similar circumstances). The Author Plaintiffs and PRH have standing because the amended complaint alleges (at ¶¶13-23, 201) that removal and/or restricted access to the specific books they wrote or published deprives them of the target audience for their books and a previously available forum for the speech embodied in those books. PEN has associational standing as to the specific books its members authored because those members have standing to sue in their own right and the amended complaint alleges (at ¶¶10-12, 197-200) that the interests implicated by Defendant's actions are germane to the organizations' purpose,[7] and PEN has organizational

---

[6] The Court recognizes that Defendant's website includes an "opt in" form allowing parents to permit their children to check out restricted books, *see* Doc. 55 at 3 n.2 (taking judicial notice of the current form), but that does not necessarily undermine the children's First Amendment claims because (1) some of the books the children allege they want to check out have been removed from the school libraries and counsel for Defendant confirmed at oral argument that the opt-in form only applies to restricted books, and (2) the amended complaint also alleges (at ¶87) that the additional steps that a student with an opt-in form must take to get access to a restricted book have "a chilling effect on students seeking access to a wide range of books."

[7] An organization has "associational standing" to sue on behalf of it is members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000)).

standing because the amended complaint alleges (at ¶196) that Defendant's actions have required it to divert resources away from other projects and functions.[8]

The fact that Plaintiff's have adequately <u>pled</u> standing does not necessarily mean that they will be able to prove their standing or prevail on the merits of their claims, but Defendant's arguments about the alleged weaknesses in Plaintiffs claims does not affect their standing because the Eleventh Circuit has repeatedly cautioned against conflating the merits and standing.  *See Moody v. Holman*, 887 F.3d 1281, 1285-86 (11th Cir. 2018); *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) (quoting *City of Waukesha v. EPA,* 320 F.3d 228, 235 (D.C. Cir. 2003)).

This case is not unripe or moot based on §1006.28(2)(a)6., Fla. Stat.  The special magistrate process created by that statute is only available to parents when a local school board denies an objection to a book being "made available" in a school library; it cannot be used to challenge the board's decision granting an objection and removing a book from the library.  Moreover, contrary to the argument in the motion to dismiss, the special magistrate process does not shift the decision on whether to remove a book from the local school board to the state Commissioner of Education because the rule implementing the statute explicitly states that the "[r]elief available

---

[8]   An organization has "organizational standing" to sue on its own behalf "when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response."  *Arcia*, 772 F.3d at 1341.

to a parent under the special magistrate process does not include the removal of material or limiting student access to material." Fla. Admin. Code R. 6A-1.094126(4). Indeed, at oral argument, Defendant effectively conceded the special magistrate process created by §1006.28(2)(a)6. has no bearing on the issues framed by the motion to dismiss.

Count I and II state plausible First Amendment claims. The Court is not persuaded that decisions regarding the content of school libraries is "government speech" that is not subject to any constitutional constraints. That view only garnered 4 votes at the Supreme Court in *Pico*,[9] and as far as the Court can discern, no court since *Pico* has adopted that view. Moreover, the factors that the Eleventh Circuit has used to determine whether something is government speech—e.g., history, endorsement, control, *see McGriff v. City of Miami Beach*, 84 F.4th 1330, 1334 (11th Cir. 2023)—are fact-intensive and generally not amenable to resolution at the motion to dismiss stage. Here, based on stated purpose of Defendant's school libraries, *see* Doc. 27 at 90-91 (School Board Policy §4.06.9.A and C), and the fact that the traditional purpose of a library is to provide information on a broad range of subjects and viewpoints, the Court simply fails to see how any reasonable person would view the contents of the school library (or any library for that matter) as the government's endorsement of the views expressed in the books on the library's shelves. The

---

[9] *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982).

government speech cases cited by Defendant and the State of Florida are distinguishable because the speech embodied in a library collection is materially different from the speech embodied in government-sponsored parades, prayers, art exhibits, and monuments on public property.

The applicable legal standard for evaluating alleged First Amendment violations in the school library context is not entirely clear, but the common theme in all of the potentially relevant standards (e.g., *Pico* plurality, *Hazelwood*,[10] nonpublic forum) is that school officials cannot remove books solely because they disagree with the views expressed in the books but that they can make content-based removal decisions based on legitimate pedagogical concerns including things like pornographic or sexual content, vulgar or offensive language, gross factual inaccuracies, and educational unsuitability for certain grade levels.[11]  The amended complaint plausibly alleges that Defendant's removal/restriction decisions at issue in this case do not pass constitutional muster under that standard because the decisions were based on "ideological objections to [the books'] content or disagreement with their messages or themes, rather than for pedagogical reasons." Doc. 27 at ¶¶220, 225; *see also id.* at ¶¶75, 81, 82, 146 (alleging that the restricted

---

[10]  *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988).

[11]  The parties generally agreed at oral argument that this is the standard against which Defendant's removal/restriction decisions should be evaluated—assuming that those decisions were not immune from First Amendment review as "government speech."

or removed books do not include any statutorily prohibited sexual content). It remains to be seen whether Plaintiffs will be able to prove those allegations with respect to all (or any) of the challenged books, but at this point, they have alleged enough to withstand Defendant's motion to dismiss so their First Amendment claims can move forward.[12]

Count III does not state a plausible equal protection claim. Plaintiffs have not alleged that the policies pursuant to which Defendant is making its removal and restriction decisions are discriminatory, nor could they do so because those policies are facially neutral and based on legitimate pedagogical concerns—e.g., ensuring that students do not have access to books containing pornography, that are harmful to minors, that contain sexual conduct that has no literary value, and/or that are not grade-level appropriate. *See* §1006.28(2)(a)2.b., Fla. Stat.; Doc. 27 at 94 (School Board Policy §4.06.10.9.D.4, 8.).

---

[12] The Court remains skeptical about the relief that can be granted with respect to the restricted books that were objected to under §1006.28(2)(a)2.b.(I) or (II) because the legislative mandate that such books "remain unavailable … until the objection is resolved" appears to be a legitimate pedagogical reason for the School Board to restrict access to the book pending review of the objection—even though the objection is merely an <u>allegation</u> that the book contains statutorily prohibited content. That said, if the review process has not been completed in a reasonable period of time and the book has effectively been placed in an indefinite "restriction purgatory" (as the amended complaint alleges), it would seem that the restriction could be considered a *de facto* removal and it would be ripe for the Court to determine whether that action violates the First Amendment or is justified by actual <u>evidence</u> of a legitimate pedagogical reason under §1006.28(2)(a)2.b.

Plaintiffs' equal protection claim appears to be one of disparate impact—i.e., that the book removal/restriction decisions have had a greater impact on non-white and/or LGBTQ authors and non-white and/or LGBTQ students. Putting aside the issue of whether the amended complaint adequately alleges purposeful animus-based discrimination against a protected class,[13] the Court finds that the amended complaint fails to state a plausible disparate impact claim because, among other things, it amalgamates non-whites and LGBTQ individuals even though they are discrete protected classes; it attributes the alleged animus of the individual objecting to the books to Defendant; and it requires far too many inferences to conclude that the removal or restriction of a book about a particular subject constitutes intentional discrimination against an individual in a particular protected class. Indeed, the allegations in the amended complaint that white Parent Plaintiffs want their children to read books about minority issues and alternative lifestyles (e.g., ¶¶25-27) and that white and presumably straight Author Plaintiffs wrote some of the books discussing minority and LGBTQ issues (e.g., ¶14, 19, 22) refutes the premise that the subject-matter of a book is a reliable  proxy for its authors or readers such that targeting books addressing minority or LGBTQ issues is the same as targeting minority or

---

[13] *See generally Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 264-65 (1977) ("[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. …. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

LGBTQ persons.  Moreover, to the extent the equal protection claim is based on disparate impact of the Board's policies on LGBTQ students, the amended complaint does not allege whether any of the Parent Plaintiffs' children are within that protected class nor did Plaintiffs explain how they could prove those claims without "outing" the children—which Plaintiffs say they do not plan to do.

\*   \*   \*

In sum, for the reasons stated on the record at the conclusion of the oral argument and summarized above, it is **ORDERED** that:

1.     Defendant's motion to dismiss is **GRANTED in part**, and Count III of the amended complaint is **DISMISSED**.  The motion is otherwise **DENIED**.

2.     Defendant shall have until February 7, 2024 (28 days from the date of the oral argument) to answer the amended complaint.

3.     The parties are encouraged to discuss potential ways to resolve or narrow this case to avoid the time, expense, and uncertainty involved in the litigation process.[14]

---

[14]  Some things the parties might want to consider are whether all of the books that were restricted for reasons other than objections under §1006.28(2)(a)2.b.(I) and (II) should be immediately put back into circulation pending completion of the review process in light of the current version of School Board Policy §4.09.10.A.4.b.; whether there should be definite timeframe for completing review of restricted books; whether there should be an initial screening of the objection before it is referred to the review committee and the School Board for consideration so books that have to be restricted by statute could be quickly returned to circulation if the objection is patently frivolous (as would be the case if, for example, someone objected to the dictionary or *Goodnight Moon*); and whether the review process could provide an administrative remedy (perhaps, a DOAH hearing) for students or others potentially aggrieved by removal or

**DONE and ORDERED** this 12th day of January, 2024.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

---

restriction decisions that allegedly did not comport with the standards in state law so as not to burden the courts with these claims.