## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, LINDSAY
DURTSCHI, on behalf of herself and
her minor children, BENJAMIN
GLASS, on behalf of himself and his
minor child, GEORGE M.
JOHNSON, DAVID LEVITHAN,
KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN
PARKER, on behalf of himself and
his minor child, ASHLEY HOPE          CASE NO.:  3:23-CV-10385-TKW-ZCB
PÉREZ, ERICA ROY, on behalf of
herself and her minor children, and
CHRISTOPHER SCOTT
SATTERWHITE, on behalf of
himself and his minor child,

     Plaintiffs,

vs.

ESCAMBIA COUNTY SCHOOL
BOARD,

     Defendant.

_____ /

## ESCAMBIA COUNTY SCHOOL BOARD'S MOTION FOR ENTRY
## OF A PROTECTIVE ORDER AS TO THE DEPOSITIONS OF THE
## ESCAMBIA COUNTY SCHOOL BOARD MEMBERS,
## SUPERINTENDENT KEITH LEONARD AND
## FORMER SUPERINTENDENT TIM SMITH
## AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendant, Escambia County School Board ("Board"), hereby files this Motion for Protective Order seeking to protect the elected Escambia County School Board members, Superintendent Keith Leonard and Former Superintendent Tim Smith[1] from being deposed in this case, *see* Notices of Taking Deposition, attached as **Composite Exhibit A**, and in support states:

## I.     INTRODUCTION AND BACKGROUND

This case arises from the Board's decisions to either remove or restrict access to certain books from the libraries in the Escambia County School District ("District"), and Plaintiffs' subsequent challenge to these actions. [D.E. 27]. Specifically, Plaintiffs allege violations of their First Amendment rights based on purported viewpoint discrimination and violation of an alleged right to receive information in public schools based on the Board's actions.[2] *Id.* at ¶¶ 215–30.

On May 31, 2024, Plaintiffs served notices of taking deposition of the Board's five elected members ("Notices") and the District's Superintendent, Keith Leonard.[3]

---

[1] Plaintiffs' counsel has requested the deposition of Former Superintendent Smith but not yet issued the notice.

[2] The Court has dismissed Plaintiffs' remaining count. [D.E. 65].

[3] Plaintiffs have also subpoenaed an Escambia County School District employee, Vicki Baggett, for deposition. The Board takes no position on Ms. Baggett's deposition as her actions as relate to this case fall outside the course and scope of her employment and therefore cannot be imputed onto the Board.

*See* Ex. A. The undersigned conferred with Plaintiffs' counsel and informed them that the Board opposed these depositions for numerous reasons:

1.    The Board members are individually protected by legislative privilege;

2.    The actions or motives of individual Board members are irrelevant and cannot be imputed onto the Board as a whole;

3.    The Board members, Superintendent Leonard and Former Superintendent Smith are protected under the apex doctrine, the Board Members especially so given the Board's deliberations concerning book removals and restrictions are in the public record pursuant to Florida's Sunshine Law; and

4.    Per the apex doctrine, prior to deposing the Board members, Superintendent Leonard and Former Superintendent Smith Plaintiffs are required to exhaust other avenues of discovery first, including but not limited to taking a deposition under Federal Rule of Civil Procedure 30(b)(6).

Plaintiffs initially declined to accept the Board's offer of a deposition under Rule 30(b)(6) prior to seeking depositions of the Board members and Superintendent Leonard.[4] On June 18, 2024, Plaintiffs served a notice of taking deposition pursuant to Rule 30(b)(6), **attached as Exhibit B**. This does not alter or render unripe the relief the Board seeks in this Motion for Protective Order, given, inter alia, the

---

[4] The parties have agreed that the dates in the Notices are simply placeholder dates, so as to allow the Court to rule on the Board's Motion for Protective Order.

Board's entitlement to legislative privilege and the protections of the apex doctrine, as explained *infra*.[5]

Accordingly, the Board now seeks an order from this Court protecting the Board members—elected officials who serve as the highest-ranking officers of the Board and District—and Superintendent Leonard and Former Superintendent Smith—the chief executive of the Board—from compelled testimony. At a minimum, the Board members are protected by the legislative privilege. However, even if this Court finds legislative privilege does not apply, it should nonetheless find the Board members—and Superintendent Leonard and Former Superintendent Smith—should not be subject to deposition, over objection, unless and until Plaintiffs have exhausted other discovery and can demonstrate that the Board members, Superintendent Leonard and Former Superintendent Smith are uniquely able to provide relevant information that cannot be obtained from other sources. Because the Board submits Plaintiffs are unable to make such a showing, the Court should prevent Plaintiffs from taking their requested depositions.

Because the Board acts as one, its individual members' motives are not only irrelevant but protected by legislative privilege. Florida law prohibits any private deliberations by the Board—and any deliberations concerning book removals and

---

[5] Plaintiffs agreed to additionally notice the deposition of the Board's 30(b)(6) witness; however, Plaintiffs have *not* agreed to accept such testimony in lieu of the apex witnesses or wait to notice the apex witnesses until after the Board's 30(b)(6) witness(es) testify.

4

restrictions occurred in the sunshine during a public meeting—and forcing the Board members to testify would be irrelevant, unduly burdensome, and unnecessarily cumulative. Should any impermissible discriminatory animus exist by the Board— which the Board expressly denies—Plaintiffs must find it in the Board's open and public debate, to the extent it exists. Plaintiffs are simply not permitted to impute the individual feelings of the Board's constituent members to final Board action, and the compelled examination of elected Board members on undisputed facts is inconsistent with judicial economy and would be a waste of valuable resources, especially prior to the exhaustion of other avenues of discovery first, including but not limited to a Rule 30(b)(6) deposition. Like the Board, Superintendent Leonard and Former Superintendent Smith are also protected by the apex doctrine and the same analysis applies

## II.   **MEMORANDUM OF LAW**

### A. **Legal Standard**

Rule 26(c) of the Federal Rules of Civil Procedure allows a party from whom discovery is sought to move for a protective order, which may be granted upon a showing of good cause. *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020). "Rule 26(c) gives the district court discretionary power to fashion a protective order." *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). As shown herein, good cause exists to prevent Plaintiffs from taking the depositions

of the elected Board members, Superintendent Leonard and Former Superintendent Smith.

Under the "good cause" standard, the Court must balance the competing interests of the parties, and has broad discretion in determining whether a protective order is warranted. *Odom*, 337 F.R.D. at 362. Rule 26 protects those from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Ordinarily, "[t]he burden is on the movant to show the necessity of the protective order, and the movant must meet this burden with a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).[6] However, "when it comes to a high-ranking official's deposition, the default is to disallow it." *Harvard v. Dixon*, No. 4:19-cv-212-AW-MAF, ECF No. 400, at 2 (N.D. Fla. May 26, 2022) (citing *In re United States (Kessler)*, 985 F.2d 510, 513 (11th Cir. 1993)).

This is because "courts have held that depositions of high-ranking officials are disfavored." *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21-CV-186-MW-MAF, 2021 WL 4962109, at *1 (N.D. Fla. Oct. 19, 2021) (citing *Kessler*, 985

---

[6] Decisions of the Court of Appeals for the Fifth Circuit decided prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

F.2d at 512) (explaining that "[t]he reason for requiring exigency before allowing the testimony of high officials is obvious. High ranking government officials have greater duties and time constraints than other witnesses")); *see also In re United States (Jackson)*, 624 F.3d 1368, 1372 (11th Cir. 2010) (finding courts must "review the record to determine whether it supports a finding of extraordinary circumstances or a 'special need' for compelling the appearance of a high-ranking officer in a judicial proceeding," because of the "obvious practical implications of requiring high government officials to appear in judicial proceedings").[7]

"Courts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" *Brown v. Branch Banking & Tr. Co.*, No. 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014) (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)); *see also United States v. Morgan*, 313 U.S. 409, 422 (1941); *Celorio v. Google Inc.*, No. 1:11-CV-79-SPM-GRJ, 2012 WL 12861605, at *1 (N.D. Fla. Nov. 19, 2012). "As a result, the burden is on the party seeking to depose a high-ranking official to

---

[7] As this Court has noted, the ability of high-ranking officials to "seek mandamus to challenge orders requiring their testimony" "is another indication of how disfavored the discovery is." *Harvard*, ECF No. 400, at 2 n.1.

demonstrate why a protective order should not issue." *Harvard*, ECF No. 400, at 3 (citations omitted).

Here, the Board's initial burden of demonstrating that its members, Superintendent Leonard and Former Superintendent Smith are high-ranking, *Odom*, 337 F.R.D. at 364, is easily met. Each of the Board members Plaintiffs seek to depose are constitutional officials duly elected by the citizens of Escambia County, Florida. *See* Art. IX, § 4, Fla. Const.; § 1001.361, Fla. Stat. Control of the District is vested in the Board. §§ 1001.41–.42, Fla. Stat. Superintendent Leonard and Former Superintendent Smith is or was likewise a constitutional officer and the chief executive of the Board. Art. IX, § 5, Fla. Const.; §§ 1001.33, 1001.50, Fla. Stat. Thus, "the burden [i]s on [P]laintiffs from the outset" to justify depositions of the Board members and Superintendent Leonard. *Harvard*, ECF No. 400, at 3 n.3. Plaintiffs cannot meet this burden.

## B. <u>Argument</u>

### i.   The Board members are protected by legislative privilege.

The concept of legislative privilege against testifying is well-established in federal courts. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977); *accord Tenney v. Brandhove*, 341 U.S. 367 (1951); *United States v. Nixon*, 418 U.S. 683 (1974). As the Supreme Court has recognized, "judicial inquiries" into the motivations underlying legislative decisions "represent a

substantial intrusion into the workings of other branches of government." *Arlington Heights*, 429 U.S. at 268 n.18. This privilege, although qualified, has been described as protecting officials from having "to testify in [a] civil case about the reasons for their votes." *Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012). In recognizing such a privilege for state legislators in *Florida*, this Court denied a motion to compel legislators and their staff to appear for depositions. *See id.* ("The privilege is broad enough to cover all the topics that the intervenors propose to ask [the legislators] and to cover their personal notes of the deliberative process."); *see also Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1343–44 (11th Cir. 2023) (noting legislative privilege extends to discovery requests, including requests for factual information). Nothing here compels a different result.

As this Court has explained, "legislative immunity and privilege are 'parallel concept[s],' and the privilege 'exists to safeguard' the immunity." *Florida v. Byrd*, 674 F. Supp. 3d 1097, 1103 n.2 (N.D. Fla. 2023) (alteration in original) (quoting *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180–81 (4th Cir. 2011)); *see also Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) ("While *Tenney*'s holding rested upon a finding of immunity, its logic supports extending the corollary legislative privilege from compulsory testimony to state and local officials as well."); *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) (citing *Tenney* and noting the "importan[ce]" of the legislative privilege).

Given the parallel nature of these concepts, it only follows that just as legislative immunity attaches to local officials, *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), so too does legislative privilege. *See Byrd*, 647 F. Supp. 3d at 1103 n.2; *see also Lee*, 908 F.3d at 1187 (holding local official "may invoke legislative privilege"); *Benisek v. Lamone*, 241 F. Supp. 3d 566, 573 (D. Md. 2017) ("[T]he Supreme Court has developed a [common law] doctrine of immunity that shields state, regional, and local officials from civil liability based on their actions taken 'in the sphere of legitimate legislative activity.' . . . Because legislative immunity and legislative privilege are motivated by the same policy of comity, courts apply them in a parallel manner." (quoting *Tenney*, 341 U.S. at 376)); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 984 (D. Neb. 2011) ("[L]ocal officials may be protected from testifying[.]"); *cf. Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (assuming *arguendo* that local councilmembers' reasons for passing resolutions were "privileged in the sense that they cannot be directly compelled to disclose them").

Further, there is no reason to not consider the Board members—duly elected constitutional officers, each representing a local geographic area within the District—as falling outside the universe of local officials protected by the legislative privilege; they should therefore be protected from compelled depositions in this matter. *See, e.g.*, *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, Nos. 3:20-cv-

10

01023, 3:21-cv-00038, 3:21-cv-00122, 2021 WL 5882653, at \*4 (M.D. Tenn. Dec. 13, 2021) ("[T]he Court finds that the legislative privilege precludes the noticed depositions of the school board members . . . ."); *Cunningham v. Chapel Hill ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006) (protecting school board member from being deposed as to legislative act, finding "that the rationales for applying the testimonial privilege to federal, state, and regional legislators apply with equal force to local legislators," and such officials "are protected by the testimonial privilege from having to testify about actions taken in the sphere of legitimate legislative activity"); *see also Smith v. Jefferson Cnty. Bd. of Sch Comm'rs*, 641 F.3d 197, 218 (6th Cir. 2011) (extending legislative immunity to school board members); *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 135 (5th Cir. 1986) (commenting that school board members could raise legislative immunity argument on remand); *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 401 (E.D.N.Y. 2018) (determining superintendent and school board members were "entitled to absolute legislative immunity"); *Callaway v. Hafeman*, 628 F. Supp. 1478, 1486 (W.D. Wis. 1986) (finding it "inescapable" to deny legislative immunity to school board members); *accord Wilson v. Marshall Indep. Sch. Dist.*, No. 2:09-CV-273-DF-CE, 2011 WL 1431410, at \*5 (E.D. Tex. Feb. 1, 2011) (same); *Stepian v. Schaubert*, No. 08CV487A, 2010 WL 1875763, at \*8 (W.D.N.Y. Feb. 23, 2010) (same); *cf. Cooper v. Aaron*, 358 U.S. 1, 16 (1958) (describing "members of the

11

School Board and the Superintendent of Schools" as "local officials"); *Bd. of Pub. Instruction of Duval Cnty. v. Braxton*, 402 F.2d 900, 908 (5th Cir. 1968) (Coleman, J., specially concurring) (referring to "local school boards" as "duly chosen local officials").

Any question as to the privilege's application is dispelled given the Board members are each duly elected officials. *Cf. Spallone v. United States*, 493 U.S. 265, 279 (1990) (noting legislative privilege is "derive[d]" "from the will of the people" (quoting *Coffin v. Coffin*, 4 Mass. 1, 27 (1808))). And despite not being named as individual parties to the suit, the privilege applies to the Board members regardless. *See In re Hubbard*, 803 F.3d at 1308.

"The legislative privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts.*'" *Id.* at 1310 (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)). Here, the Court should find that "the factual heart" of Plaintiffs' claims "and the scope of the legislative privilege [a]re one and the same." *Id.* at 1311. That is, "[a]ny material, documents, or information [including testimony] that d[o] not go to legislative motion [are] irrelevant," and "any that d[o] go to legislative motive [are] covered by the legislative privilege." *Id.* Such was the Eleventh Circuit's decision in *In re Hubbard*, which concerned a First Amendment retaliation claim, and the Court should find likewise here given this is also a First Amendment matter. *See id.* at

12

1311–12 ( "[T]he Supreme Court has explained that, for purposes of the legislative privilege, there is a fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government." (citing *United States v. Gillock*, 445 U.S. 360, 373 (1980))); *see also Pernell*, 84 F.4th at 1344 ("The Supreme Court has *never* expanded the *Gillock* exception beyond criminal cases. For purposes of the legislative privilege, there is a fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government. Although the legislative privilege does not presumptively apply in the latter kind of case, the presumption otherwise holds firm. *And it is insurmountable in private civil actions under section 1983*." (cleaned up) (emphases added)).

Like *In re Hubbard*, "[t]his is not a federal criminal investigation or prosecution." 803 F.3d at 1312. This is a civil matter under 42 U.S.C. § 1983, and thus "the presumption [of applying the privilege] holds firm." *Pernell*, 84 F.4th at 1344; *e.g.*, *Byrd*, 374 F. Supp. 3d at 1104 (applying legislative privilege while "acknowledge[ing] that allegations of racial gerrymandering are serious matters"); *Florida*, 886 F. Supp. 2d at 1303–04 (reasoning similarly in Voting Rights Act case); *see also League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 456 (N.D. Fla. 2021) ("[M]erely asserting a constitutional claim is not enough to overcome the privilege.").

Given the Eleventh Circuit's description of the privilege as "unqualified" in civil matters, *Pernell*, 84 F.4th at 1341, it indisputably applies here. Although unspecified in the Notices, given the allegations in the operative pleading and Plaintiffs' arguments thus far, the Board presumes Plaintiffs intend to depose the Board members about their "subjective states-of-mind," *Byrd*, 374 F. Supp. 3d at 1104, and the circumstances and motivations surrounding the individual Board members' decisions to vote in favor, *vel non*, of removing or restricting certain books. *See, e.g.*, [D.E. 27 at ¶¶ 4–5 (Plaintiffs' Amended Complaint, claiming the Board is ordering books to be removed from libraries based on ideological reasons and engaging in viewpoint discrimination); D.E. 40 at 5–9 (Plaintiffs' Response in Opposition to the Board's Motion to Dismiss, recounting allegations of purported viewpoint discrimination with respect to Board's actions towards removed and restricted books)]; *see also* Ex. B. These "topics strike at the heart of legislative privilege." *See Byrd*, 674 F. Supp. 3d at 1104. "The testimony Plaintiffs seek all relates to . . . thought processes, and decision making processes in voting [whether or not to remove or restrict access to the books at issue]." *Id.* (citation omitted). "The privilege thus 'applies with full force'" to Plaintiffs' Notices. *Id.* (quoting *In re Hubbard*, 803 F.3d at 1310).

Despite the unqualified and unequivocal nature in which the legislative privilege applies to the Board members in this matter, the Board anticipates Plaintiffs

will argue the acts in question—voting to remove or restrict the books at issue—were not legislative in nature. Not so. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. For example, certain discretionary personnel decisions are not considered legislative. *Forrester v. White*, 484 U.S. 219, 229–30 (1988). On the other hand, employment decisions "accomplished through traditional legislative functions such as policymaking and budgetary restructuring" are considered legislative. *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (quoting *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000)). An analysis of the Board's actions reveals their legislative nature.

Under Florida law, the Board "has the specific duty and responsibility [to be] responsible for the content of any materials made available in a school library." § 1006.28(2)(a)1., Fla. Stat. (2022) (cleaned up). The Board was thus required to "adopt a policy regarding an objection by a parent or a resident of the county to the use of a specific material, which clearly describes a process to handle all objections and provides for resolution." § 1006.28(2)(a)2., Fla. Stat. (2022).[8] Pursuant to that

---

[8] Section 1006.28(2)(a)2.b. specifically references "material[s] . . . made available in a school library." The statute further requires any material which a school board finds "contains prohibited content under [section 1006.28(2)(a)2.b.] shall [be] discontinue[d] [from] use . . . for any grade level or age group for which such use is inappropriate or unsuitable." *Id.* To 'discontinue' therefore means the book can no longer be offered or provided, that is, it must be removed and its access cut off. *See, e.g.*, *Discontinue*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/discontinue ("to stop doing *or providing something*" (emphasis added)); *Discontinue*, Britannica Dictionary,

duty, the Board was therefore required to offer a "resolution" when the books at issue were challenged. *Id.*

Given the statutory mandate, this cannot be considered an administrative act: the Board "in the furtherance of [its] dut[y]," *see also Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. May 1981), pursuant to an established process, followed the law of the State of Florida, and provided the statutorily required resolution. *See Schlegel v. Koteski*, 307 F. App'x 657, 660 (3d Cir. 2009). And the votes to remove or restrict certain books were prospective and "had a substantial nexus to the legislative process." *Bryant*, 575 F.3d at 1306. Just as the decision to eliminate a public employment position "may have prospective implications that reach well beyond the particular occupant of the office," *Bogan*, 523 U.S. at 56, so too is the decision to vote to remove or restrict a book legislative in that it has prospective implications that reaches the entirety of the District's libraries; that is, the vote "embod[ied] a policy decision with prospective implication." *Bryant*, 575 F.3d at 1306; *see also Smith*, 641 F.3d at 217 (finding school board engaged in legislative activity when it made decision to eliminate alternative school as a result of weighing budgetary priorities).

Similarly, just as a county's imposition of a building moratorium on property pursuant to a county code provision was deemed legislative in nature, *75 Acres, LLC*

---

https://www.britannica.com/dictionary/discontinue ("to stop making or offering").

*v. Miami-Dade Cnty.*, 338 F.3d 1288, 1296 (11th Cir. 2003), so too is the decision to remove or restrict a book pursuant to the Board's policy. *See also Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1190 (11th Cir. 1993) (finding county commissioners "clearly were performing their legislative function" when they investigated the voting eligibility of individuals and ultimately participated in the removal of their names from voting lists); *see also Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992) ("[A] legislative act is characterized by having a policymaking function and general application.").

This is because "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989). The Eleventh Circuit has "has concluded that 'the vote of a city councilman constitutes an exercise of legislative decision-making,' which entitles such city council member to absolute immunity since voting is a legislative function." *Hudgins v. City of Ashburn*, 890 F.2d 396, 406 n.20 (11th Cir. 1989) (quoting *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982)); *accord Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir. 1987). A vote by a school board member yields the same conclusion: it is "conduct in the furtherance of their duties," *Hernandez*, 643 F.2d at 1193, and therefore it serves as a legislative function. *Hudgins*, 890 F.2d at 406 n.20; *see also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) ("Acts such as voting . . .

17

are generally deemed legislative and, therefore, protected by the doctrine of legislative immunity." (collecting cases)).

That Plaintiffs may argue the Board members' votes to remove or restrict the books at issue were motivated by an improper purpose does not change this analysis, as "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377; *see also Pernell*, 84 F.4th at 1345 ("Even if the privilege could be overcome by especially compelling civil-rights claims, we reject the plaintiffs' argument that the privilege must give way when the claim depends on proof of legislative intent. The Supreme Court has described legislative immunity as 'indispensably necessary' as it '*support[s] the rights of the people, by enabling their representatives to execute the functions of their office.*'" (alteration in original) (emphasis added) (quoting *Tenney*, 341 U.S. at 373–74)). "A court proceeding that probes legislators' subjective intent in the legislative process is a deterrent to the uninhibited discharge of their legislative duty," and courts "cannot create an exception whenever a constitutional claim directly implicates the government's intent" because "that exception would render the privilege of little value." *Pernell*, 84 F.4th at 1345 (cleaned up); *see also Tenney*, 341 U.S. at 377.

Thus, it cannot be disputed that the Board's actions in deciding to remove or restrict certain books were legislative in nature. They involved a vote, after hearing public opinion on the books and subsequent debate by the Board, as required by law.

*DeSisto Coll., Inc.*, 888 F.2d at 765; *accord Woods v. Gamel*, 132 F. 3d 1417, 1420 (11th Cir. 1998) (finding county commissioners' deliberations and vote on budget, as required under state law, was legislative in nature). In deciding to remove or restrict these books, the Board was exercising its authority under Florida law, and "[i]n casting their votes," the Board members were performing their duties "under state law and exercising a quintessentially legislative function." *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 1342 (M.D. Ala. 2001). Requiring the Board members to testify as to their motives and underlying thoughts concerning their decision to remove or restrict the books at issue would eviscerate the privilege's purpose, which is to protect the "legislative process itself." *In re Hubbard*, 803 F.3d at 1307–08. Moreover, it would cut against the privilege's "additional purpose of shielding officials from the costs and distraction of discovery," designed to "enabl[e] them to focus on their duties." *Byrd*, 674 F. Supp. 3d at 1103.

The Board thus respectfully submits this Court should follow the "long-recognized legislative privilege" which counsels that "courts ought not compel unwilling [officials] to testify about the reasons for specific . . . votes," *Florida*, 886 F. Supp. 2d at 1303, find the Board members entitled to legislative privilege, and shield them from involuntary examinations in this matter.

ii.   **A Board member's individual opinions are not imputed onto the Board and are not considered final Board action.**

Another reason to prohibit the Board members from being deposed is that comments by individual board members are not imputed to the body of which they are a member. *See Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) ("The plaintiffs may not prevail on the basis of the actions or words of a single councilmember . . . ."). Rather, the Board acts "as a board" in exercising its powers and duties under Florida law. § 1001.42, Fla. Stat.; *see K.M. v. Sch. Bd. of Lee Cnty.*, 150 F. App'x 953, 957 (11th Cir. 2005) (noting Florida law vests "final policymaking authority for the school district" "in the School Board," and not any individual); *Fla. Fam. Ass'n Inc. v. Sch. Bd. of Hillsborough Cnty.*, 494 F. Supp. 2d 1311, 1323 (M.D. Fla. 2007). Errant comments by individual Board members do not equate to formal Board action.

Allowing Plaintiffs to depose the individual Board members would cut against this legal principle as it would permit Plaintiffs to attempt to apply the purported opinions *of individual Board members'* as a gloss to the final decision *of the Board*. This is not the law, as the alleged "unconstitutional motive on the part of one member of a . . . majority is insufficient to impute an unconstitutional motive to the [Board] as a whole." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002); *see also id.* ("Because policymaking authority rests with the Commission as an entity, the County can be subject to liability only if the Commission itself acted with an

unconstitutional motive."); *Campbell v. Rainbow City*, 434 F.3d 1306, 1313 (11th Cir. 2006) ("An improper motive of one of the members of a nine-member Planning Commission is not imputed to the rest of the Commission."); *Mason v. Vill. of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001) (finding alleged discriminatory motive "of only one member of a three-member majority of a five-member council" could not give rise to the municipality's liability); *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1276 (11th Cir. 2002) (finding no liability because "no municipal liability can attach for one tainted vote out of twelve cast"); *Rolle v. Worth Cnty. Sch. Dist.*, 128 F. App'x 731, 733 (11th Cir. 2005) ("[A]n improper motive of one member does not impart discrimination on the entire Board."); *Church*, 30 F.3d at 1343 ("The plaintiffs concede that, under Alabama law, final policymaking authority rests with the entire five-member City Council and the Mayor . . . ."); *accord City of Hallandale Beach v. Rosemond*, 48 Fla. L. Weekly D1199, 2024 WL 2836937, at *7 (Fla. 4th DCA June 5, 2024) ("The city can be subject to whistleblower retaliation liability only if the employee had presented competent substantial evidence at trial that Commissioners Lazarow and Lima-Taub, like Vice Mayor London, may have acted with retaliatory motives in voting to suspend and terminate the employee."); *cf. Common Cause Fla. v. Byrd*, No. 4:22-cv-109-AW-MAF, 2024 WL 1308119, at *28 (N.D. Fla. Mar. 27, 204) ("It is not enough for the plaintiffs to show that the Governor was motivated in part by racial animus, which we will assume without

deciding for purposes of our decision. Rather, they also must prove that the Florida Legislature itself acted with some discriminatory purpose when adopting and passing the Enacted Map.").

Because the Board members are high-ranking officials, Plaintiffs' burden is to demonstrate "extraordinary circumstances" prior to any deposition. Plaintiffs have not met this burden. And given the Board is required by law to deliberate publicly, Plaintiffs will never be able to show that the majority which voted to remove or restrict the books at issue acted with an impermissible motive—nor have Plaintiffs provided any evidence of such an impermissible motive or private deliberations. *Cf. Ga. Ass'n of Educators v. Gwinnett Cnty. Sch. Dist.*, 856 F.2d 142, 144 (11th Cir. 1988) (noting affidavits which stated school board members' publicly stated reason for terminating a program differed from "the real reason" for terminating the program). Accordingly, any attempts to bootstrap post hoc impermissible motives to the Board members via compelled deposition testimony should not be allowed.

### iii.   Plaintiffs cannot overcome the apex doctrine or, at the very least, must exhaust other avenues of discovery first.

"The rationale [behind prohibiting apex depositions] is that 'high-ranking' officials could be burdened unduly if they were required to submit to a deposition in

the multitude of civil actions that some government agencies and businesses face."[9] *Odom*, 337 F.R.D. at 363. "For high-ranking government officials, the time consumed by depositions necessarily cannot be devoted to important governmental responsibilities." *Id.*

Each of the elected Board members are constitutional officials, vested with control of the District. *See* Art. IX, § 4, Fla. Const.; §§ 1001.361, 1001.41–.42, Fla. Stat. As such, they are protected from being called to provide testimony in all but the most unique circumstances. Board members, like agency or corporate heads, are the highest-ranking officials in the Board and are vested with constitutional and statutory authority over the District. *See, e.g.*, *N.R. ex rel. Ragan v. Sch. Bd. of Okaloosa Cnty.*, 608 F. Supp. 3d 1159, 1162 n.1 (N.D. Fla. 2022) ("[T]he Okaloosa County School Board . . . operates, controls, and supervises all schools within the School District, including appointing, suspending, and terminating employees."); *Leigh v. Avossa*, No. 16-81612-CIV-Marra/Matthewman, 2017 WL 2800121, at *2 (S.D. Fla. June 14, 2017) (acknowledging would-be deponent "is a current member of the Palm Beach County School Board" in determining plaintiff had not satisfied apex deposition burden); *Santiago v. Jamison*, No. 2:13-cv-781-FtM-29CM, 2014 WL 4373269, at *2 (M.D. Fla. Sept. 3, 2014) ("[T]he School Board of Lee County

---

[9] The apex doctrine is also codified in Florida civil procedure, *see* Fla. R. Civ. P. 1.280(h), and like its federal counterpart has been found to protect both current and former high-ranking officials. *See Horne v. Sch. Bd. of Miami-Dade Cnty.*, 901 So. 2d 238, 241 (Fla. 1st DCA 2005).

. . . is an elected body with control over public education within the county, and a Sponsor statutorily charged with the promulgation, monitoring, and adopting of disciplinary policies within the school district."); *see also Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1230 (11th Cir. 2022) (noting "the district is 'under the direction and control' of the school board"); *cf. Florida v. United States*, 625 F. Supp. 3d 1242, 1248 (N.D. Fla. 2022) ("The apex doctrine has regularly been applied to government officials who sit atop an agency's organizational chart.").

The same is true for Superintendent Leonard and Former Superintendent Smith, who is or was a constitutional official and chief officer of the Board. Art. IX, § 5, Fla. Const.; § 1001.33, 1001.50, Fla. Stat.; *see, e.g.*, *N.R. ex rel. Ragan v. Sch. Bd. of Okaloosa Cnty.*, 418 F. Supp. 3d 957, 972 n.4 (N.D. Fla. 2019) ("As Superintendent, Jackson was the executive officer of the School Board, tasked with implementing and enforcing School District policies set out by the School Board, as well as supervising and disciplining employees."). And as this Court has recognized, the apex doctrine extends to former high-ranking officials as well. *See Harvard*, ECF No. 400 at 3 n.2; *see also Palmisano v. Paragon 28, Inc.*, No. 21-60447-CIV-DIMITROULEAS/SNOW, 2021 WL 1686948, at *3 (S.D. Fla. Apr. 7, 2021) (finding former CEO's "deposition . . . is subject to the apex doctrine"); *Plaintiff 1 v. Washington Cnty. Sch. Bd.*, No. 5:07-CV-194-RS-EMT, 2008 WL 11462924, at

*3 (N.D. Fla. Feb. 15, 2008) (applying apex doctrine to DJJ Secretary/former FDC Secretary); *Cruz v. Green*, No. 18-60995-CIV, 2019 WL 5208913, at *3 (S.D. Fla. Feb. 7, 2019) (applying apex doctrine to former sheriff). Plaintiffs seek to depose the Board's former superintendent, Tim Smith; therefore, the same arguments for precluding Superintendent Leonard's deposition would therefore equally apply to Smith.[10]

Although there is no exact standard for determining whether an official is high-ranking and the decision is "made on a case-by-case basis," *Florida*, 625 F. Supp. 3d at 1246, the Board easily satisfies its burden here for its members and Superintendent Leonard. As this Court has noted, the doctrine encompasses more than just "'cabinet-level' officials," extending to the "heads of government agencies." *Id.* (first quoting *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 320 (D.N.J. 2009), and then quoting *Kyle Eng'g Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979)). Accordingly, because the Board members constitute the policymaking body for the District and Superintendent Leonard serves as the executive officer for implementing those policies, there can be no reasonable dispute as to their respective statuses atop the District's organizational chart. *Id.* The burden therefore shifts to Plaintiffs to justify these depositions.

---

[10] Although Plaintiffs have not yet served a notice of taking deposition as to former Superintendent Smith, Plaintiffs have indicated they intend to subpoena him for deposition, and the parties have agreed to engage in motion practice as to his deposition as well.

"When a party, as here, seeks to take the deposition of an official at the highest level of a [government entity] a stricter standard applies to the party seeking discovery and the court may exercise its authority under the federal rules to limit discovery." *Celorio*, 2012 WL 12861605, at *1. "The rationale is that high level executives and government officials need some measure of protection from the courts because they are 'vulnerable to numerous, repetitive, harassing, and abusive depositions.'" *Asberry v. Sch. Bd. of Pasco Cnty.*, No. 8:18-cv-02222-T-35SPF, 2019 WL 12383128, at *1 (M.D. Fla. Aug. 20, 2019) (quoting *Sher v. Raytheon Co.*, No. 8:08-CV-889-T-33AEP, 2010 WL 11507786, at *1 (M.D. Fla. Mar. 10, 2010)).

"In determining whether to allow an apex deposition[,] courts consider: (1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods, such as interrogatories and depositions of lower level employees." *Celorio*, 2012 WL 12861605, at *1; *Apple Inc. v. Corellium, LLC*, No. 19-81160-CV, 2020 WL 1849404, at *3 (S.D. Fla. Apr. 13, 2020); *see also Asberry*, 2019 WL 12383128, at *1 ("[P]arties seeking apex depositions must show that the apex deponent has 'unique knowledge of the issues in the case or the information sought has been pursued unsatisfactorily through less intrusive means.'").

The apex doctrine extends beyond depositions and equally applies to testimonial evidence. *Kessler*, 985 F.2d at 512 ("In order to protect officials from constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony"; for this reason high ranking government officials "should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions"); *see also Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) ("[T]op executives should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action."); *City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2012 WL 760743, at *2 (S.D. Fla. Mar. 7, 2012) ("[C]ourts have recognized that [high-ranking government officials] should not be called to testify or be deposed about their reasons for taking official action, absent extraordinary circumstances.").

Here, Plaintiff seeks to take the apex depositions of the Board members, Superintendent Leonard and Former Superintendent Smith about their motives, procedures, and deliberations regarding the removal or restriction of books from the District's public school libraries. These are the types of inquiries the apex doctrine precludes. *See Morgan*, 313 U.S. at 422 (finding Secretary of Labor "should not, absent extraordinary circumstances, [have] be[en] called to testify regarding their reasons for taking official actions"); *see also Kessler*, 985 F.2d at 512; *accord Simplex Time Recorder v. Secy. of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *cf. In*

*re Office of Inspector Gen.*, 933 F.2d 276, 278 (5th Cir. 1991) (agreeing with the holding in *Simplex* and cautioning the district court to "remain mindful of the fact that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted").

Once an official shows he or she is "high-ranking," the party seeking the apex testimony must show that: "(1) deposing the official is necessary to obtain relevant, 'first-hand' information; (2) the information possessed by the official is important to the case; (3) the [testimony] would not significantly interfere with the ability of the official to perform his government duties or reasonable accommodations could ameliorate such interference; and (4) the evidence sought is not reasonably available through less-burdensome means or alternative sources." *Odom*, 337 F.R.D. at 365. Plaintiffs must make "a showing beyond mere relevance" before they can take these depositions. *See League of Women Voters*, 2021 WL 4962109, at *1. If mere relevance were the standard, agency heads would be subject to deposition anytime a lawsuit is filed regarding an agency's policy or practice. *See Morgan*, 313 U.S. at 422.

Even assuming the Board members, Superintendent Leonard and Former Superintendent Smith possess relevant information that is not already in the public record, Plaintiffs have not explained how any unique personal knowledge of the Board members, Superintendent Leonard and Former Superintendent Smith is

*essential* to their claims. *Harvard*, ECF No. 400 at 5. That is because "[f]inal decision makers will always have some unique knowledge about their decision-making processes and the underlying information that informed them, *but this is not enough*." *Id.* (emphasis added). Moreover, and as explained below, Plaintiffs have not yet shown—let alone exhausted—they "could not obtain the information using other discovery tools." *Id.* This includes their decision to notice a Rule 30(b)(6) deposition only *after* noticing the Board members and Superintendent Leonard, and only then because the Board suggested it; but to simultaneously persist in their efforts to depose the apex witnesses.

Here, Defendant understands that Plaintiffs seek to compel the Board members, Superintendent Leonard and Former Superintendent Smith to provide testimony about their (1) motives—which is improper for reasons more fully set forth herein—(2) procedures—which can be obtained from the Rule 30(b)(6) witness the Board offered to put forth—and (3) their deliberations—which are clearly documented in the public record. Plaintiffs have offered no "unique knowledge" that these prospective witnesses possess, nor have they taken action to obtain this testimony from less intrusive means.

### iv.    Any deliberations by the Board members' occurred in the sunshine.

Plaintiffs seek to examine the Board members on their deliberations regarding the removal or restriction of books from District libraries. This testimony would be

irrelevant, unduly burdensome, and improper, as covered *supra*. Additionally Florida law prohibits private discussions and deliberations amongst school board officials, and Plaintiffs have provided no evidence demonstrating this was not the case with respect to the Board's decisions concerning the books at issue. To that end, because the Board members' deliberations—to the extent they exist—occurred in the sunshine, forcing the Board members to sit for compelled depositions would be a waste of resources and cumulatively burdensome.

It is well-settled that an entity such as the Board is subject to Florida's 'Sunshine Law.' § 286.011, Fla. Stat; *see, e.g.*, *Fla. Citizens All., Inc. v. Sch. Bd. of Collier County*, 328 So. 3d 22, 27 (Fla. 2d DCA 2021).  The Sunshine Law provides:

> All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, including meetings with or attended by any person elected to such board or commission, but who has not yet taken office, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting. The board or commission must provide reasonable notice of all such meetings.

§ 286.011(1), Fla. Stat. "The purpose of the Sunshine Law is to protect the public from closed door politics; therefore, the law must be broadly construed to effect its remedial and protective purpose." *Fla. Citizens All., Inc.*, 328 So. 3d at 26 (internal quotations omitted). More specifically, the Sunshine Law exists "to prevent at non-public meetings the crystallization of secret decisions to a point just short of

30

ceremonial acceptance." *Zorc v. City of Vero Beach*, 722 So. 2d 891, 896 (Fla. 4th DCA 1998). Private discussions between school board members not held in open public meetings violates the Sunshine Law. *See Tolar v. Sch. Bd. of Liberty Cnty.*, 398 So. 2d 427, 427 (Fla. 1981). Any discussions of substantive issues before the Board may not be lawfully discussed amongst Board members outside of a public hearing. Here, that issue is moot because no such discussions occurred: any discussions and deliberations amongst Board members were required by law to occur on the record in a public meeting. *Cf. Byrd*, 674 F. Supp. 3d at 1105 ("Plaintiffs have [therefore] not identified any specific nonprivileged topics of inquiry for the [Board members'] [examinations]."); *see also id.* at 1106 (noting that a memo plaintiffs sought to inquire about was "already in the public record," and "testimony about what motivated its drafting" was privileged).

While true that the Sunshine Law does not provide an immunity from providing examination testimony—although it does not circumvent the Board members' legislative privilege as discussed above—it nonetheless does not provide a basis to require the Board members to present themselves so that Plaintiffs can fish for prohibited "secret meetings" or deliberations which do not exist. To the extent Plaintiffs seek to enter evidence concerning the Board's deliberations, such information is already in the public record and Plaintiffs must find it there. Any

compelled testimony about the Board's deliberations would be unnecessarily duplicative, cumulative, and irrelevant.

**v.    At a minimum, a Rule 30(b)(6) deposition is required prior to depositions of the Board members, Superintendent Leonard and Former Superintendent Smith.**

Finally, even if the Court is disinclined to find the Board members protected by legislative privilege, it should nonetheless not permit the Board members (or Superintendent Leonard and Former Superintendent Smith) to be deposed unless and until a Rule 30(b)(6) deposition is conducted and Plaintiffs are able to articulate additional information that can only be obtained through compelled testimony of the Board members, Superintendent Leonard and Former Superintendent Smith. Plaintiffs have not taken any depositions in this case. They also have not exhausted written discovery as they have not propounded any interrogatories directed at the Board members' (or Superintendent Leonard's or and Former Superintendent Smith's) deliberations concerning the decisions at issue to remove or restrict certain books, or served requests for admissions.

As this Court has recognized, an apex deposition is generally not permitted unless all other avenues of discovery are exhausted. *Harvard*, ECF No. 400 at 5 (noting plaintiffs "did not show they could not obtain the information using other discovery tools. They did not show, for example, that interrogatories or depositions by written question could not suffice"). Plaintiffs have not shown "that they

specifically sought information" about the Board members' and Superintendent Leonard's "personal and unique information regarding the crucial issues" of this case. *Id.* "*Kessler* and *Jackson* teach that if the information is available through other means, there are not extraordinary circumstances to justify a high-ranking official's deposition." *Id.* at 6 (first citing *Kessler*, 985 F.2d at 512, and then citing *Jackson*, 624 F.3d at 1373). And even if the Board's designated Rule 30(b)(6) witness did not provide sufficient answers, this on its own would not automatically justify apex depositions of the Board members, Superintendent Leonard and Former Superintendent Smith. Rather, the proper remedy would be a Rule 37(a) motion to compel. *See id.* (citation omitted).

**WHEREFORE**, Defendant, Escambia County School Board, respectfully requests that this Court enter an order under Federal Rule of Civil Procedure 26(c) preventing Plaintiffs from compelling the depositions of the Escambia County School Board members, Superintendent Keith Leonard and Former Superintendent Smith, and to award any such other relief as this Court deems appropriate.

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned certifies that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 7,834 words, excluding the parts exempted by said Local Rule.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)</u>

The undersigned certifies that they have conferred with opposing counsel regarding this issue. Opposing counsel opposes the relief requested herein.

Respectfully submitted,

/s Nicole Sieb Smith

J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 21, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Kristy L. Parker at kristy.parker@protectdemocracy.org; John Thomas Langford at john.langford@protectdemocracy.org; Shalini Goel Agarwal at shalini.agarwal@protectdemocracy.org; Kirsten Elizabeth Fehlan at fehlank@ballardspahr.com; Lynn Beth Oberlander at oberlanderl@ballardspahr.com; Paul Joseph Safier at safierp@ballardspahr.com (Counsel for Plaintiffs); Rachel Elise Fugate at rfugate@shullmanfugate.com (Counsel for Clay Calvert, et al.); Clarence William Phillips at cphillips@cov.com; Jayne Foley Hein at jhein@cov.com; Nicholas Eli Baer at nbaer@cov.com; Robert C. Buschel at buschel@bglaw-pa.com (Counsel for Florida State Conference NAACP, et al.); Bridget K. O'Hickey at bridget.ohickey@myfloridalegal.com; Daniel William Bell at daniel.bell@myfloridalegal.com; David Matthew Costello at david.costello@myfloridalegal.com; and Henry Charles Whitaker henry.whitaker@myfloridalegal.com (Counsel for State of Florida).

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.: 0017056

E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Defendants