UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| PEN AMERICAN CENTER, INC., et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ESCAMBIA COUNTY SCHOOL BOARD,<br><br>    Defendant. | CASE NO.: 3:23-CV-10385-TKW-ZCB |

**DECLARATION OF SHALINI GOEL AGARWAL**

I, Shalini Goel Agarwal, declare as follows:

1. I am over the age of 18 and have personal knowledge of the facts in this declaration.

2. Attached hereto as Exhibit 1 is a true and correct copy of Notice of Taking Depositions as to Parent Plaintiff Ann Novakowski and her child J.N. served by Defendant on June 14, 2024.

3. Attached hereto as Exhibit 2 is a true and correct copy of an email dated May 20, 2024, from Defendant's counsel Nicole Smith to Plaintiffs' counsel Lynn Oberlander following up on a meet and confer between the parties regarding, among other things, the scope of the depositions of minors in the case.

4. Attached hereto as Exhibit 3 is a true and correct copy of an email dated May 24, 2024, from Defendant's counsel Nicole Smith to Plaintiffs' counsel Ori Lev following on the previous email and describing the parties' respective positions on why the depositions of the elementary school-aged children are needed in the case.

5.  Attached hereto as Exhibit 4 is a true and correct copy of Defendant's Supplemental Response to Plaintiff's [*sic*] First Interrogatories, served on March 22, 2024.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Leon County, Florida, this 2nd day of July 2024.

_____
Shalini Goel Agarwal

2

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, LINDSAY
DURTSCHI, on behalf of herself and
her minor children, BENJAMIN
GLASS, on behalf of himself and his
minor child, GEORGE M.
JOHNSON, DAVID LEVITHAN,
KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN
PARKER, on behalf of himself and
his minor child, ASHLEY HOPE
PÉREZ, ERICA ROY, on behalf of
herself and her minor children, and
CHRISTOPHER SCOTT
SATTERWHITE, on behalf of
himself and his minor child,

CASE NO.:  3:23-CV-10385-TKW-ZCB

     Plaintiffs,

vs.

ESCAMBIA COUNTY SCHOOL
BOARD,

     Defendant.

_____ /

## NOTICE OF TAKING REMOTE DEPOSITIONS

YOU WILL PLEASE TAKE NOTICE that the undersigned attorneys for

**Defendant, Escambia County School Board**, will take the depositions of the

following persons, at the times and places indicated below, upon oral examination

and stenographic means before **Elaine Richbourg**, or any other Notary Public

authorized by law to take depositions.

| NAME: | **J. N.** |
|---|---|
| DATE: | **Wednesday, August 7, 2024** |
| TIME: | **10:00 a.m. ET / 9:00 a.m. CT** |
| LOCATION: | **Remote connection information to be provided by court reporter** |

| NAME: | **Ann Novakowski** |
|---|---|
| DATE: | **Wednesday, August 7, 2024** |
| TIME: | **11:00 p.m. ET / 10:00 a.m. CT** |
| LOCATION: | **Remote connection information to be provided by court reporter** |

These depositions are being taken for the purpose of discovery, for use as

evidence and for such other uses and purposes as are permitted under the Federal

Rules of Civil Procedure and other applicable law.  **The oral examinations will**

**continue from day to day until completed.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by

e-mail to Shalini Goel Agarwal at shalini.agarwal@protectdemocracy.org,

scott.welder@protectdemocracy.org;    Kristy    L.    Parker    at

kristy.parker@protectdemocracy.org;    John    Thomas    Langford    at

john.langford@protectdemocracy.org;    Lynn    B.    Oberlander    at

oberlanderl@ballardspahr.com;  Paul  J.  Safier  at  safierp@ballardspahr.com,

relyear@ballardspahr.com, tranp@ballardspahr.com; Kirsten Elizabeth Fehlan at

fehlank@ballardspahr.com (Counsel for Plaintiffs); Rachel Elise Fugate at rfugate@shullmanfugate.com, aalbright@shullmanfugate.com, kbrown@shullmanfugate.com (Counsel for Defendant Calvert, et al.); Clarence William Phillips at cphillips@cov.com; Jayni Foley Hein at jhein@cov.com; Nicholas Eli Baer at nbaer@cov.com; and Robert C. Buschel at buschel@bglaw-pa.com, BG.J6R6@case.tinygnomes.com (Counsel for Defendants Florida State Conference NAACP and Equality Florida Action, Inc.); and Bridget K. O'Hickey at bridget.ohickey@myfloridalegal.com; Henry C. Whitaker at henry.whitaker@myfloridalegal.com, jenna.hodges@myfloridalegal.com; Daniel W. Bell at daniel.bell@myfloridalegal.com and David M. Costello at david.costello@myfloridalegal.com (Counsel State of Florida, amicus curiae), this 14th day of June, 2024.

> s/ Nicole Sieb Smith
> J. DAVID MARSEY
> Florida Bar No.:  0010212
> E-mail:  dmarsey@rumberger.com
> NICOLE SIEB SMITH
> Florida Bar No.:  0017056
> E-mail:  nsmith@rumberger.com
> JEFFREY J. GROSHOLZ
> Florida Bar No.:  1018568
> E-mail:  jgrosholz@rumberger.com
> RUMBERGER, KIRK & CALDWELL, P.A.
> 101 North Monroe Street, Suite 1050
> Tallahassee, Florida 32301
> Tel:  850.222.6550
> Fax:  850.222.8783
> and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Defendants

cc:   Elaine Richbourg (850) 712-0984

4

# EXHIBIT 2



Shalini Agarwal <shalini.agarwal@protectdemocracy.org>

---

## RE: PEN v. Escambia: Recap of 5/10/24 call [RKC-ACTIVE.FID3715510]

**Smith, Nicole** <nsmith@rumberger.com>                                    Mon, May 20, 2024 at 11:18 AM
To: "Oberlander, Lynn" <oberlanderl@ballardspahr.com>, "Duke, Samantha" <Sduke@rumberger.com>, "Grosholz, Jeffrey"
<jgrosholz@rumberger.com>, "Duquette, Carlie" <cduquette@rumberger.com>
Cc: "Safier, Paul J." <SafierP@ballardspahr.com>, "Fehlan, Kirsten" <FehlanK@ballardspahr.com>, "Bouzat, Facundo"
<bouzatf@ballardspahr.com>, "Fields, Goldie" <fieldsg@ballardspahr.com>, Shalini Agarwal
<shalini.agarwal@protectdemocracy.org>, "ori.lev@protectdemocracy.org" <ori.lev@protectdemocracy.org>, Ellinor Heywood
<ellinor.heywood@protectdemocracy.org>

Lynn and Team, please see my responses below in red. Thanks.

**Nicole Sieb Smith**
Attorney at Law
nsmith@rumberger.com | View my online bio

# Rumberger|Kirk

101 North Monroe Street     MAIN   850.222.6550
Suite 1050
Tallahassee, FL 32301

The information in this e-mail message is legally privileged and confidential information. If you have
received this e-mail in error, please delete from any device/media where the message is stored.

---

**From:** Oberlander, Lynn <oberlanderl@ballardspahr.com>
**Sent:** Friday, May 10, 2024 3:25 PM
**To:** Smith, Nicole <nsmith@rumberger.com>; Duke, Samantha <Sduke@rumberger.com>; Grosholz, Jeffrey
<jgrosholz@rumberger.com>; Duquette, Carlie <cduquette@rumberger.com>
**Cc:** Safier, Paul J. <SafierP@ballardspahr.com>; Fehlan, Kirsten <FehlanK@ballardspahr.com>; Bouzat, Facundo
<bouzatf@ballardspahr.com>; Fields, Goldie <fieldsg@ballardspahr.com>; Shalini Agarwal <shalini.agarwal@
protectdemocracy.org>; ori.lev@protectdemocracy.org; Ellinor Heywood <ellinor.heywood@protectdemocracy.org>
**Subject:** PEN v. Escambia: Recap of 5/10/24 call

Hi Everyone,

Just to recap from our meet and confer this morning, here's our understanding of where things stand:

Defendant's Discovery Production

As to the time frame of Defendant's production, it is currently January 1, 2022-July 2023. Plaintiffs had asked for January
1, 2020 to the present.

- You clarified that Defendant provided documents beyond its time period that relate to the removed and restricted
  books. Similarly, while Defendant generally objects to producing discovery relating to HB 1069, you have produced
  such documents where they relate to the removed and restricted books.

6/27/24, 7:08 AM
Case 3:23-cv-10385-TKW-ZCB Document 88-1 Filed 07/02/24 Page 10 of 48
Produck Demand by Mail - DOCUMENT Educational Recap... Filed 07/02/24 - ACTIon... Page 13 of 48

- We reiterated that we are seeking additional documents before 2022 that: reflect the earlier book challenge policies and procedures, book challenges from the earlier timeframe and related documents and communications, communications with Vicki Baggett, and any communications with school board members regarding book challenges.
- **You agreed to confirm whether there were any challenges in the earlier time period, and agreed to produce earlier board policies and amendments. You refused to search emails during the earlier time period.**

Plaintiffs defined the "Relevant Time Period" for each Request as May 23, 2022 through the present unless otherwise stated in an individual Request.

For precision as to our position, please refer to our definition of "Relevant Time Period" in the Supplemental responses to Plaintiffs' First RPs:

**The "Relevant Time Period" shall be from January 1, 2022, until July 1, 2023. If the District considered the status of a Relevant Book after the Relevant Time Period, the Relevant Time Period shall be extended through present only for those discovery requests that pertain specifically to the Relevant Books. The Board otherwise objects to responding to requests that seek documents for the time period before the Relevant Time Period, as such requests are not proportional or material to the claims and defenses in the lawsuit. The amendments to the State laws at issue in this case, and which form the basis for the Board's educational policies and practices regarding library materials, took effect on July 1, 2022. Because the Relevant Time Period encompasses the period of time from January 1, 2022 through July 1, 2022, the Board is providing Plaintiffs with discovery responses pertaining to the six-months leading up to the passage of the subject legislation. The District further objects to providing discovery for the period of time after July 1, 2023, given the allegations in the Complaint, which make clear Plaintiffs are challenging actions by the Board that occurred prior to July 1, 2023, [D.E. 27 at ¶ 69 n.4].**

Plaintiffs specifically asked to confirm whether there were any challenges during the period 1/1/20-1/1/22. Plaintiffs additionally narrowed their request to challenges that went to the Board. We have confirmed there were none. Accordingly, there is no reason to conduct additional document or email searches on this issue.

The District was able to locate clean copies of School Board policy 4.06 that were in effect during this earlier time period, which is the only policy we discussed. It will be produced.

As to the communications of school board members, Plaintiffs are seeking texts, emails to and from the school board members' non-work email addresses or phones, and social media messages to the extent that they related to the issues in this case. This would include communications to constituents, the media, other school board members, school board staff, and third parties relating to book removals and restrictions generally or with respect to the particular books at issue.

- You explained that, as far as you know, the school board members use only their county email address for school board business, and that you generally do not ask school board members to search personal phones or emails. **You also said that you would confirm with them that that is the case.**
- When we noted that some school board members had communicated by text about the library books issue, **you agreed to look into this.**

As to the Defendant's discovery searches, you all have sent a spreadsheet reflecting the ESI searches you have done and the hit rates for various search terms. You are not planning to do further review of those documents because the yield of responsive documents is low. In terms of the documents Defendant has produced so far, those are based on "hard document" searches. For clarity, can you please let us know what you mean by "hard copy" and what sources/files were searched for these. We are unclear on whether these searches included the Google email and Google drive documents from media specialists at each school.

**Plaintiffs will review your spreadsheet and set up a follow-up meeting on ESI searches**.

Please let us know if you disagree with our understanding of Defendant's searches to date.

We previously asked Board Members, the Superintendent and the District Media Specialist to provide any communications regarding book challenges, removals and restrictions, including if a personal device or Board-issued cell phone was used. Despite that, they are doing another sweep. To be clear, we do not have access to former employees' personal emails and text messages. None of the Board Members (except for Mr. Adams), or the Former Superintendent or District Media Specialist are issued phones by the District. The present Superintendent has a Board-issued phone and Mr. Adams was only recently issued one. Typically, public officials cannot be made to produce their personal communications unless there are grounds to believe that they were using their personal accounts to conduct public business. Our understanding is the only Board member who is reasonably likely to communicate with constituents via text is Ms. Hightower. She has a practice of forwarding all school-district-related text messages to her District email, so they should all be produced in the email data sweep. The particular text message you provided is odd. Ms. Hightower does not locate a copy in her phone. As she noted in the message itself, she was on a cruise, and it may be that through some network error, it was lost; however (1) she is continuing to look for it (and others) and (2) we question whether it is even responsive, as whether we cut ties with the ALA has nothing to do with book challenges. So there is no misunderstanding, we do not agree to ask the thousands of rank and file employees to search their personal accounts, as their statements cannot bind the Board and such searches are not proportional to the needs of this case. We provided the District text messages Plaintiffs produced in discovery, and asked the District to again confirm whether Board Members, the Superintendent and the District Media Specialist have any communications regarding book challenges, removals and/or restrictions. Should any be located, they will be produced.

Restricted Books

Thank you for forwarding the list of 20 challenged books that have been returned to circulation pending resolution of the challenge process and for confirming that column E of the ECPS 22-23 Reconsiderations (website) spreadsheet (the "Reconsiderations spreadsheet") accurately reflects whether challenged books are currently restricted pending the challenge. You also said that the school district is working on adding a column to the spreadsheet to indicate the date of any changes to restricted status. You also indicated that the school district is still working on a process to both resolve the pending challenges and otherwise review books for under HB 1069, and were not able to provide a timeline for when that process might start or be resolved. As we discussed, we have several follow-up questions and concerns regarding the restricted books.

First, one of the books you identified as having been returned to circulation, *We Are Not Yet Equal*, is still listed as being partially restricted (opt-in for MS) during the challenge process. Can you please confirm the basis for that restriction (i.e., is it due to the challenge or was that the status of the book prior to the challenge being filed)?

Second, we believe that a total of ten books still listed as being restricted during the challenge process (including *We Are Not Yet Equal*) are clearly not subject to HB 1069, which only applies to books challenged on the basis that the book "depicts or describes" "sexual conduct" as the latter term is defined in s. 847.001(19). Based on the challenge forms for the following books, we think it is abundantly clear that the challenge does not trigger the statute. Accordingly, these books should be returned to circulation promptly. **We ask that you let us know if the school district has agreed to return these books to circulation pending the challenge process no later than Friday May 24. If the school district does not agree to do so, we may seek an injunction directing that these books be returned to circulation.** The books at issue are:

1. Ace of Spades
2. Girl Made of Stars
3. Lady Midnight
4. Lessons from a Dead Girl
5. More Happy than Not
6. Speak (note: this book's status appears to have been changed from unrestricted to restricted at some point since the lawsuit was filed)
7. The Hate U Give
8. The Music of What Happens
9. We Are Not Yet Equal (separately discussed above)
10. Where I End and You Begin

We are in the process of reviewing your request/books and will separately provide a response.

As we noted on the call, we believe that a number of other books that are currently restricted also do not trigger 1069 and we reserve our rights to challenge the continued restrictions on those and other books. We have identified the above books as those most clearly not meeting the statute's trigger.

Third, you were unwilling to provide information as to whether the books listed on the spreadsheet on the school district's website titled "Website Destiny HB 1069 Storage Further Review" (the "1069 spreadsheet") were currently removed from circulation pending the district's review of those books for sexual conduct. You stated that because the amended complaint does not challenge HB 1069, the status of the books listed on the 1069 spreadsheet is irrelevant to the lawsuit unless there is a potential conflict between the status of a book listed on the Reconsiderations spreadsheet and the 1069 spreadsheet. We have identified four books listed as unrestricted on the Reconsiderations spreadsheet that are also identified on the 1069 spreadsheet:

1. Allegedly (March 8 tab of 1069 spreadsheet),
2. The Absolutely True Diary of a Part-Time Indian (listed as available in HS and restricted to MS opt-in on Resolved Challenges tab of Reconsiderations spreadsheet; April 12 and Mar 8 tabs of 1069 spreadsheet)
3. This One Summer (Mar 8 tab of 1069 spreadsheet)
4. Two Boys Kissing (Mar 8 tab of 1069 spreadsheet)

We ask that for each of the above books, you explain the current status of the book, and what impact, if any, its inclusion on the 1069 spreadsheet has on its availability in school libraries. We also note that many other books at issue in this lawsuit currently appear on the 1069 spreadsheet. Accordingly, we believe we are entitled to understand what it means to be included on that spreadsheet (irrespective of whether a book is otherwise listed as restricted pending the challenge process on the Reconsiderations spreadsheet).  Such factual information is directly relevant to arguments that the school board may make regarding the propriety of judicial relief directing that currently restricted books be returned to circulation. If the district intends to argue that books listed on the 1069 spreadsheet would be withheld from circulation regardless of the challenge process due to the district's ongoing 1069 review, that is directly relevant to plaintiffs' claims in the case.

As we have explained on numerous meet and confers, Defendants' position is 1069 is not relevant, unless it relates to one of the books at issue in this case. We are reviewing the question of the four above books and will separately respond.

Depositions

You would like to calendar depositions of each of the Plaintiffs, as well as each of the students. **Plaintiffs agreed to reach out to the clients and get back to you with dates when they are available for deposition. Plaintiffs are open to depositions of the middle and high school students but will oppose the depositions of the students in elementary school**, as we think it pretty clear that you can get the information you need from depositions of their parents who are the named Plaintiffs in the case on behalf of their kids, or else from declarations by the children. Defendant will insist on deposing all of the children but is open to reasonable restrictions in writing. Plaintiffs propose the following restrictions: that the students have a parent present at the deposition, that the deposition be no more than 1-2 hours in length, that they be limited in scope to the factual issues in the complaint, and that they be done either in zoom or in person based on the preference of the particular student. Plaintiffs will likely seek a protective order as to the elementary students and hope we can come to a resolution on restrictions for the older students.

Likewise, Plaintiffs would like to depose each of the school board members, the decision-makers on the book challenges. **Defendant will oppose these depositions and plans to file motions for a protective order** based on legislative immunity arguments like those it made in *Parnell.* Plaintiffs do not agree that legislative immunity applies, especially where the legal question is about viewpoint discrimination.

**To tee up the protective order arguments, the parties both plan to issue deposition notices.**

Yes, we generally agree with Plaintiffs' description of the parties' positions on depositions. We are agreeable to the terms for the middle and high school students' depositions, as long as Plaintiffs agree that the limitation in scope to "the factual issues in the complaint," will include reasonably related topics and follow-up questions. Please provide us proposed dates this week. Thanks.

Thank you for the call this morning, and we hope that the weather turns better in Florida and that everyone gets their power back.  We look forward to hearing from you.

**Lynn B. Oberlander**
2024 Pro Bono Honor Roll – Gold

## Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820

646.346.8011 DIRECT
212.223.1942 FAX

347.572.4300 MOBILE | oberlanderl@ballardspahr.com
VCARD

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

www.ballardspahr.com

# EXHIBIT 3



Shalini Agarwal <shalini.agarwal@protectdemocracy.org>

---

## RE: PEN v. Escambia: Recap of 5/10/24 call [RKC-ACTIVE.FID3715510]

**Smith, Nicole** <nsmith@rumberger.com>                                                    Fri, May 24, 2024 at 2:01 PM
To: "ori.lev@protectdemocracy.org" <ori.lev@protectdemocracy.org>, "Oberlander, Lynn" <oberlanderl@ballardspahr.com>,
"Duke, Samantha" <Sduke@rumberger.com>, "Grosholz, Jeffrey" <jgrosholz@rumberger.com>, "Duquette, Carlie"
<cduquette@rumberger.com>
Cc: "Safier, Paul J." <SafierP@ballardspahr.com>, "Fehlan, Kirsten" <FehlanK@ballardspahr.com>, "Bouzat, Facundo"
<bouzatf@ballardspahr.com>, "Fields, Goldie" <fieldsg@ballardspahr.com>, Shalini Agarwal
<shalini.agarwal@protectdemocracy.org>, Ellinor Heywood <ellinor.heywood@protectdemocracy.org>

All – we have not had an opportunity to review each of the books you reference in your email of yesterday.
We are not available for a call today as members of our team are out of the office for the holiday weekend.
Please provide us with a few days/times your team is available next week. In the meantime, below are our
responses in blue to the other issues we've been discussing. Thanks.

**Nicole Sieb Smith**
Attorney at Law
nsmith@rumberger.com | View my online bio

## Rumberger|Kirk

101 North Monroe Street    MAIN   850.222.6550
Suite 1050
Tallahassee, FL 32301

The information in this e-mail message is legally privileged and confidential information. If you have
received this e-mail in error, please delete from any device/media where the message is stored.

---

**From:** ori.lev@protectdemocracy.org <ori.lev@protectdemocracy.org>
**Sent:** Thursday, May 23, 2024 10:22 AM
**To:** Smith, Nicole <nsmith@rumberger.com>; Oberlander, Lynn <oberlanderl@ballardspahr.com>; Duke,
Samantha <Sduke@rumberger.com>; Grosholz, Jeffrey <jgrosholz@rumberger.com>; Duquette, Carlie
<cduquette@rumberger.com>
**Cc:** Safier, Paul J. <SafierP@ballardspahr.com>; Fehlan, Kirsten <FehlanK@ballardspahr.com>; Bouzat,
Facundo <bouzatf@ballardspahr.com>; Fields, Goldie <fieldsg@ballardspahr.com>; Shalini Agarwal
<shalini.agarwal@protectdemocracy.org>; Ellinor Heywood <ellinor.heywood@protectdemocracy.org>;
ori.lev@protectdemocracy.org
**Subject:** Re: PEN v. Escambia: Recap of 5/10/24 call [RKC-ACTIVE.FID3715510]

Nicole,

We are following up on your email below, as well as the (1) list of books that you provided on May
10 that have allegedly been returned to circulation pending resolution of the challenge process and
(2) the hit report on ESI searches that you shared.

1. With respect to the books that you indicated were returned to circulation, we note that many of
those books are still listed as either restricted or simply not showing up in Destiny. We did not look
up every book in every school library, so the list below is necessarily incomplete, but our research
identified the following books being listed in Destiny as Restricted at the following schools:

- GLBTQ (Restricted at Booker T Washington HS);
- Calvin (Restricted at Kingsfield ES)
- Hurricane Child (Restricted at West Pensacola ES and Bellview MS)
- Julian at the Wedding (Restricted at OJ Semmes ES)
- Maiden and Princess (Restricted at OJ Semmes ES)
- Milo Imagines the World (Restricted at OJ Semmes ES and Lincoln Park ES)
- This Would Make a Good Story Someday (Restricted at Lincoln Park ES and West Pensacola ES)
- Too Bright to See (Restricted at Ensley ES)
- Uncle Bobby's Wedding (Restricted at OJ Semmes HS)

In addition, the following books were not appearing in Destiny although we believe they should be on the shelves:

- Better Nate than Ever (No results found in any MS)
- Born Ready: the Story of a Boy Named Penelope (No results found in multiple ES)
- The Mighty Heart of Sunny St James (No results found in multiple ES)
- The Whispers (No results found in multiple ES)

Can you please (a) confirm to us in writing that these books have in fact been returned to circulation without restriction in all the school libraries in which they had been present prior to the challenge, and (b) ensure that Destiny is updated to accurately reflect the status of these books and let us know when that has been completed?

2. We'd also like to set up a time to talk about the hit report. Are you available today or tomorrow?

3. Our responses and follow-up questions to your email below are interlined in green text below each response below.

Best,

Ori


Ori Lev (he/him)

Special Counsel, Protect Democracy

(771) 201-0889 | protectdemocracy.org


*Sign up for our weekly email briefing: ifyoucankeep.it*

---

**From:** Smith, Nicole <nsmith@rumberger.com>
**Date:** Monday, May 20, 2024 at 11:18 AM
**To:** Oberlander, Lynn <oberlanderl@ballardspahr.com>, Duke, Samantha <Sduke@rumberger.com>, Grosholz, Jeffrey <jgrosholz@rumberger.com>, Duquette, Carlie <cduquette@rumberger.com>
**Cc:** Safier, Paul J. <SafierP@ballardspahr.com>, Fehlan, Kirsten <FehlanK@ballardspahr.com>, Bouzat, Facundo <bouzatf@ballardspahr.com>, Fields, Goldie <fieldsg@ballardspahr.com>, Shalini Agarwal <shalini.agarwal@protectdemocracy.org>, ori.lev@protectdemocracy.org <ori.lev@protectdemocracy.org>, Ellinor Heywood <ellinor.heywood@protectdemocracy.org>
**Subject:** RE: PEN v. Escambia: Recap of 5/10/24 call [RKC-ACTIVE.FID3715510]

6/27/24, 7:09 AM
Protect Democracy Mail - DOCUMENT Recap of 5/10/24 call
Case 3:23-cv-10385-TKW-ZCB Document 88-1 Filed 07/02/24 Page 17 of 48

Lynn and Team, please see my responses below in red. Thanks.

**Nicole Sieb Smith**

Attorney at Law

nsmith@rumberger.com | View my online bio

# Rumberger|Kirk

101 North Monroe Street        MAIN   850.222.6550
Suite 1050
Tallahassee, FL 32301

The information in this e-mail message is legally privileged and confidential information. If you have received this e-mail in error, please delete from any device/media where the message is stored.

**From:** Oberlander, Lynn <oberlanderl@ballardspahr.com>
**Sent:** Friday, May 10, 2024 3:25 PM
**To:** Smith, Nicole <nsmith@rumberger.com>; Duke, Samantha <Sduke@rumberger.com>; Grosholz, Jeffrey <jgrosholz@rumberger.com>; Duquette, Carlie <cduquette@rumberger.com>
**Cc:** Safier, Paul J. <SafierP@ballardspahr.com>; Fehlan, Kirsten <FehlanK@ballardspahr.com>; Bouzat, Facundo <bouzatf@ballardspahr.com>; Fields, Goldie <fieldsg@ballardspahr.com>; Shalini Agarwal <shalini.agarwal@protectdemocracy.org>; ori.lev@protectdemocracy.org; Ellinor Heywood <ellinor.heywood@protectdemocracy.org>
**Subject:** PEN v. Escambia: Recap of 5/10/24 call

Hi Everyone,

Just to recap from our meet and confer this morning, here's our understanding of where things stand:

Defendant's Discovery Production

As to the time frame of Defendant's production, it is currently January 1, 2022-July 2023. Plaintiffs had asked for January 1, 2020 to the present.

1. You clarified that Defendant provided documents beyond its time period that relate to the removed and restricted books. Similarly, while Defendant generally objects to producing discovery relating to HB 1069, you have produced such documents where they relate to the removed and restricted books.

Case 3:23-cv-10385-TKW-ZCB   Document 88-1   Filed 07/02/24   Page 18 of 48

2. We reiterated that we are seeking additional documents before 2022 that: reflect the earlier book challenge policies and procedures, book challenges from the earlier timeframe and related documents and communications, communications with Vicki Baggett, and any communications with school board members regarding book challenges.
3. **You agreed to confirm whether there were any challenges in the earlier time period, and agreed to produce earlier board policies and amendments. You refused to search emails during the earlier time period.**

Plaintiffs defined the "Relevant Time Period" for each Request as May 23, 2022 through the present unless otherwise stated in an individual Request.

For precision as to our position, please refer to our definition of "Relevant Time Period" in the Supplemental responses to Plaintiffs' First RPs:

**The "Relevant Time Period" shall be from January 1, 2022, until July 1, 2023. If the District considered the status of a Relevant Book after the Relevant Time Period, the Relevant Time Period shall be extended through present only for those discovery requests that pertain specifically to the Relevant Books. The Board otherwise objects to responding to requests that seek documents for the time period before the Relevant Time Period, as such requests are not proportional or material to the claims and defenses in the lawsuit. The amendments to the State laws at issue in this case, and which form the basis for the Board's relevant policies and practices regarding library materials, took effect on July 1, 2022. Because the Relevant Time Period encompasses the period of time from January 1, 2022 through July 1, 2022, the Board is providing Plaintiffs with discovery responses pertaining to the six-months leading up to the passage of the subject legislation. The District further objects to providing discovery for the period of time after July 1, 2023, given the allegations in the Complaint, which make clear Plaintiffs are challenging actions by the Board that occurred prior to July 1, 2023, [D.E. 27 at ¶ 69 n.4].**

Plaintiffs specifically asked to confirm whether there were any challenges during the period 1/1/20-1/1/22. Plaintiffs additionally narrowed their request to challenges that went to the Board. We have confirmed there were none. Accordingly, there is no reason to conduct additional document or email searches on this issue.

The District was able to locate clean copies of School Board policy 4.06 that were in effect during this earlier time period, which is the only policy we discussed. It will be produced.

Thank you for confirming that there were no book challenges that went to the Board from 1/1/20 through 1/1/22. Can you please identify the law that you reference in your definition of the Relevant Time Period that went into effect on July 1, 2022, which formed the basis for the Board's policies and practices? The amendments to section 1006.28, Florida Statutes, which took effect July 1, 2022. Also, with respect to the clean copies of School Board policy 4.06 that you reference in your response, can you please let us know when that version of the policy was in effect and when we can expect its production? I believe the effective dates of the version of the policy that the parties needed a clean copy of is 12/16/14-6/19/23. If it has not been produced already, we will get it to you in next week's production. Please let me know if there are other versions that I've missed that you don't have a clean copy of.

As to the communications of school board members, Plaintiffs are seeking texts, emails to and from the school board members' non-work email addresses or phones, and social media messages to the extent that they related to the issues in this case. This would include communications to constituents, the media, other school board members, school board staff, and third parties relating to book removals and restrictions generally or with respect to the particular books at issue.

1. You explained that, as far as you know, the school board members use only their county email address for school board business, and that you generally do not ask school board members to search personal phones or emails. **You also said that you would confirm with them that that is the case.**
2. When we noted that some school board members had communicated by text about the library books issue, **you agreed to look into this.**

As to the Defendant's discovery searches, you all have sent a spreadsheet reflecting the ESI searches you have done and the hit rates for various search terms. You are not planning to do further review of those documents because the yield of responsive documents is low. In terms of the documents Defendant has produced so far, those are based on "hard document" searches. For clarity, can you please let us know what you mean by "hard copy" and what sources/files were searched for these. We are unclear on whether these searches included the Google email and Google drive documents from media specialists at each school.

     **Plaintiffs will review your spreadsheet and set up a follow-up meeting on ESI searches**.

Please let us know if you disagree with our understanding of Defendant's searches to date.

We previously asked Board Members, the Superintendent and the District Media Specialist to provide any communications regarding book challenges, removals and restrictions, including if a personal device or Board-issued cell phone was used. Despite that, they are doing another sweep. To be clear, we do not have access to former employees' personal emails and text messages. None of the Board Members (except for Mr. Adams), or the Former Superintendent or District Media Specialist are issued phones by the District. The present Superintendent has a Board-issued phone and Mr. Adams was only recently issued one. Typically, public officials cannot be made to produce their personal communications unless there are grounds to believe that they were using their personal accounts to conduct public business. Our understanding is the only Board member who is reasonably likely to communicate with constituents via text is Ms. Hightower. She has a practice of forwarding all school-district-related text messages to her District email, so they should all be produced in the email data sweep. The particular text message you provided is odd. Ms. Hightower does not locate a copy in her phone. As she noted in the message itself, she was on a cruise, and it may be that through some network error, it was lost; however (1) she is continuing to look for it (and others) and (2) we question whether it is even responsive, as whether we cut ties with the ALA has nothing to do with book challenges. So there is no misunderstanding, we do not agree to ask the thousands of rank and file employees to search their personal accounts, as their statements cannot bind the Board and such searches are not proportional to the needs of this case. We provided the District the text messages Plaintiffs produced in discovery, and asked the District to again confirm whether Board Members, the Superintendent and the District Media Specialist have any communications regarding book challenges, removals and/or restrictions. Should any be located, they will be produced.

To be clear, we are not asking that the Board ask "thousands of rank and file employees to search their personal accounts" for responsive emails and text messages. But we do believe that any responsive communications to, from or copying any member of the School Board, the Superintendent, and the Coordinator of Media Services (which we assume is who you refer to when you say the District Media Specialist) should be produced, whether sent from those individuals' official or personal accounts. We also note that our Requests are not limited to "communications regarding book challenges, removals and restrictions," which you reference in your response above. Rather, our Requests also seek communications regarding a variety of topics, including but not limited to training programs for School District library personnel involved in the selection of reading materials; communications to, from, including, or concerning Vicki Baggett, Moms for Liberty, or any member or agent of Moms for Liberty; communications concerning any Plaintiff, and communications to, from, including or concerning Tim Smith, among other topics. Accordingly, we ask that you confirm with the School Board Members, the Superintendent, and the Coordinator of Media Service/District Media Specialist that they never used their personal accounts to communicate about *any* of the topics set forth in the RFPs seeking communications and either confirm to us that is in fact the case or produce responsive communications.

I think we're on the same page here, but with the caveat that the parties had lengthy meet and confers where we went through each of the RPs (Ori, I don't believe you were a part of these meetings). For example, Defendant did not agree to search for "any member or agent of Moms for Liberty," as we explained to Plaintiffs that the District does not know who these individuals are. We also limited those topics which broadly asked Defendant to search for communications "concerning Tim Smith" or "concerning Vicky Baggett," as they would unreasonably sweep in all aspects of their employment with the District. That is why I used the short-hand "regarding book challenges, removals and/or restrictions." But, yes, to the extent we agreed to produce communications regarding other topics, they will be produced, even if any member of the School Board, the Superintendent, and the Coordinator of Media Services used a personal device/account.

Restricted Books

Thank you for forwarding the list of 20 challenged books that have been returned to circulation pending resolution of the challenge process and for confirming that column E of the ECPS 22-23 Reconsiderations (website) spreadsheet (the "Reconsiderations spreadsheet") accurately reflects whether challenged books are currently restricted pending the challenge. You also said that the school district is working on adding a column to the spreadsheet to indicate the date of any changes to restricted status. You also indicated that the school district is still working on a process to both resolve the pending challenges and otherwise review books for under HB 1069, and were not able to provide a timeline for when that process might start or be resolved. As we discussed, we have several follow-up questions and concerns regarding the restricted books.

First, one of the books you identified as having been returned to circulation, *We Are Not Yet Equal*, is still listed as being partially restricted (opt-in for MS) during the challenge process. Can you please confirm the basis for that restriction (i.e., is it due to the challenge or was that the status of the book prior to the challenge being filed)?

Just flagging that the question above is separate from the question below about the ten books that we ask be returned to the shelves immediately, and is still awaiting a response.

*We Are Not Yet Equal* is a Young Adult (YA) book, which means it is targeted for the reading age 12-18 years old. The District's practice is to require parents of middle-school students to submit an opt-in form if they want their students to read YA books.

Second, we believe that a total of ten books still listed as being restricted during the challenge process (including *We Are Not Yet Equal*) are clearly not subject to HB 1069, which only applies to books challenged on the basis that the book "depicts or describes" "sexual conduct" as the latter term is defined in s. 847.001(19). Based on the challenge forms for the following books, we think it is abundantly clear that the challenge does not trigger the statute. Accordingly, these books should be returned to circulation promptly. **We ask that you let us know if the school district has agreed to return these books to circulation pending the challenge process no later than Friday May 24. If the school district does not agree to do so, we may seek an injunction directing that these books be returned to circulation.** The books at issue are:

1. Ace of Spades
2. Girl Made of Stars
3. Lady Midnight
4. Lessons from a Dead Girl
5. More Happy than Not
6. Speak (note: this book's status appears to have been changed from unrestricted to restricted at some point since the lawsuit was filed)
7. The Hate U Give
8. The Music of What Happens
9. We Are Not Yet Equal (separately discussed above)
10. Where I End and You Begin

<span style="color:red">We are in the process of reviewing your request/books and will separately provide a response.</span>

<span style="color:green">Please provide a response by this Friday, May 25.</span>

As we noted on the call, we believe that a number of other books that are currently restricted also do not trigger 1069 and we reserve our rights to challenge the continued restrictions on those and other books. We have identified the above books as those most clearly not meeting the statute's trigger.

Third, you were unwilling to provide information as to whether the books listed on the spreadsheet on the school district's website titled "Website Destiny HB 1069 Storage Further Review" (the "1069 spreadsheet") were currently removed from circulation pending the district's review of those books for sexual conduct. You stated that because the amended complaint does not challenge HB 1069, the status of the books listed on the 1069 spreadsheet is irrelevant to the lawsuit unless there is a potential conflict between the status of a book listed on the Reconsiderations spreadsheet and the 1069 spreadsheet. We have identified four books listed as unrestricted on the Reconsiderations spreadsheet that are also identified on the 1069 spreadsheet:

1. Allegedly (March 8 tab of 1069 spreadsheet),
2. The Absolutely True Diary of a Part-Time Indian (listed as available in HS and restricted to MS opt-in on Resolved Challenges tab of Reconsiderations spreadsheet; April 12 and Mar 8 tabs of 1069 spreadsheet)
3. This One Summer (Mar 8 tab of 1069 spreadsheet)
4. Two Boys Kissing (Mar 8 tab of 1069 spreadsheet)

We ask that for each of the above books, you explain the current status of the book, and what impact, if any, its inclusion on the 1069 spreadsheet has on its availability in school libraries. We also note that many other books at issue in this lawsuit currently appear on the 1069 spreadsheet. Accordingly, we believe we are entitled to understand what it means to be included on that spreadsheet (irrespective of whether a book is otherwise listed as restricted pending the challenge process on the Reconsiderations spreadsheet). Such factual information is directly relevant to arguments that the school board may make regarding the propriety of judicial relief directing that currently restricted books be returned to circulation. If the district intends to argue that books listed

on the 1069 spreadsheet would be withheld from circulation regardless of the challenge process due to the district's ongoing 1069 review, that is directly relevant to plaintiffs' claims in the case.

As we have explained on numerous meet and confers, Defendants' position is 1069 is not relevant, unless it relates to one of the books at issue in this case. We are reviewing the question of the four above books and will separately respond.

You state that "1069 is not relevant, unless it relates to one of the books at issue in this case." We note that well over 100 of the books at issue in this case appear on the 1069 spreadsheet. In addition to explaining whether the four books above are or are not currently restricted, please also explain what it means for the books at issue in this case to be on the 1069 spreadsheet (which your own response concedes is relevant to the case.)

During our next meet and confer, we will explain to Plaintiffs what we have learned about the books that are on both the Reconsideration Spreadsheet and the 1069 spreadsheet.

Depositions

You would like to calendar depositions of each of the Plaintiffs, as well as each of the students. **Plaintiffs agreed to reach out to the clients and get back to you with dates when they are available for deposition. Plaintiffs are open to depositions of the middle and high school students but will oppose the depositions of the students in elementary school**, as we think it pretty clear that you can get the information you need from depositions of their parents who are the named Plaintiffs in the case on behalf of their kids, or else from declarations by the children. Defendant will insist on deposing all of the children but is open to reasonable restrictions in writing. Plaintiffs propose the following restrictions: that the students have a parent present at the deposition, that the deposition be no more than 1-2 hours in length, that they be limited in scope to the factual issues in the complaint, and that they be done either in zoom or in person based on the preference of the particular student. Plaintiffs will likely seek a protective order as to the elementary students and hope we can come to a resolution on restrictions for the older students.

Likewise, Plaintiffs would like to depose each of the school board members, the decision-makers on the book challenges. **Defendant will oppose these depositions and plans to file motions for a protective order** based on legislative immunity arguments like those it made in *Parnell*. Plaintiffs do not agree that legislative immunity applies, especially where the legal question is about viewpoint discrimination.

**To tee up the protective order arguments, the parties both plan to issue deposition notices.**

Yes, we generally agree with Plaintiffs' description of the parties' positions on depositions. We are agreeable to the terms for the middle and high school students' depositions, as long as Plaintiffs agree that the limitation in scope to "the factual issues in the complaint," will include reasonably related topics and follow-up questions. Please provide us proposed dates this week. Thanks.

We have one further question on the depositions of the elementary school-age children. You said at the meet and confer that you want to depose the children about whether they seek to check out the books listed in the complaint and whether their reading interests as described in the complaint are accurate. We believe these can be addressed through the testimony of the Parent Plaintiffs. So that we have clarity, please describe the nature of the testimony you seek from the children and from the parents, and how the two are distinct.

Defendant at this stage in the proceedings are not required to set forth specific lines of questioning; but, generally, to respond to your question - what a parent thinks their child wants to read and is interested in and what the child actually wants to read and is interested in may be different. Defendant has the right to explore the claims and defenses in the case directly with the students. We refer Plaintiffs to the Judge's comments during the motion to dismiss hearing regarding why he agrees the students' testimony is germane.

Thank you for agreeing to reasonable limitations on the deposition of the older students. We are fine with including "reasonably related follow-up questions" within the permissible scope of questioning, recognizing that it is challenging to identify such follow-up questions in advance. However, if you want to also include "reasonably related topics" beyond the factual allegations of the complaint, please identify the proposed topics so that we can determine whether or not we agree. Doing so will help to minimize disagreements at the deposition.

We will endeavor to provide you with proposed deposition dates for the students this week. Please provide.

We also intend to notice depositions of the School Board Members and the Superintendent for the soonest practicable dates, on the understanding that you will be seeking to quash these depositions so we do not need to confer on dates; please let us know if that is not the case and we can coordinate.

Thank you for the call this morning, and we hope that the weather turns better in Florida and that everyone gets their power back. We look forward to hearing from you.


**Lynn B. Oberlander**
2024 Pro Bono Honor Roll – Gold

**Ballard Spahr** LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820

646.346.8011 DIRECT
212.223.1942 FAX

347.572.4300 MOBILE | oberlanderl@ballardspahr.com
VCARD

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

www.ballardspahr.com

# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, LINDSAY
DURTSCHI, on behalf of herself and
her minor children, BENJAMIN
GLASS, on behalf of himself and his
minor child, GEORGE M.
JOHNSON, DAVID LEVITHAN,
KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN
PARKER, on behalf of himself and
his minor child, ASHLEY HOPE
PÉREZ, ERICA ROY, on behalf of          CASE NO.:  3:23-CV-10385-TKW-ZCB
herself and her minor children,
CHRISTOPHER SCOTT
SATTERWHITE, on behalf of
himself and his minor child, and
CARIN SMITH on behalf of herself
and her minor children,

        Plaintiffs,

vs.

 ESCAMBIA COUNTY SCHOOL
 BOARD,

        Defendant.

_____ /

## <u>DEFENDANT'S SUPPLEMENTAL RESPONSE</u><br><u>TO PLAINTIFF'S FIRST INTERROGATORIES</u>

The Escambia County School Board ("Board") hereby responds to Plaintiffs' First Set of Interrogatories, served on October 16, 2023, as follows:

## <u>OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS</u>

The Board incorporates these objections to Plaintiffs' "Instructions" and "Definitions" into each specific response to Plaintiffs' Interrogatories listed below:

1.      The Board objects to the "Instructions" to the extent they purport to modify or alter the Board's obligations to respond as more fully set forth by the Federal Rules of Civil Procedure and/or are more burdensome than the requirements of the Federal Rules of Civil Procedure.

2.      The Board objects to the definitions of "Communicate" and "Communication" as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case and/or this stage of the proceedings given they purport to extend to any communications between "Persons"—itself an overly broad, vague, and ambiguous definition given it encompasses every employee of the Board as well as "any other entity"—and "agencies," itself an undefined term that is similarly vague and ambiguous. The Board also objects to the definition of "Communicate" and "Communication" because they purport to include oral communications regardless of whether such oral communications are documented

2

or otherwise recorded in some manner. Rule 34 authorizes discovery of documents and things, and there is no requirement to produce oral communications as broadly defined by Plaintiffs.

3.    The Board objects to the definition of "Document" as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case and/or this stage of the proceedings. Additionally, the Board objects to the inclusion of e-mails in the definition of "Document," and state that non-objectionable e-mails will be produced in response to those requests that seek "Communication[s]."

4.    The Board objects to Plaintiffs' definition of "[a]nd" and "or" to "include each other whenever possible to expand, not restrict, the scope of the Interrogatory," as this is vague, ambiguous, and confusing depending on the particular context of the request.

5.    The Board objects to the definition of the term "Reading Material" as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case and/or this stage of the proceedings. Specifically, this term purports to include any form of "text-based or image-based content," including books in both physical and digital format. This lawsuit concerns decisions made concerning books contained in the Board's school libraries and media centers. It does not extend to decisions concerning curriculum, textbooks, third-party vendors the Board contracts with, or classroom libraries. Yet, Plaintiffs' definition of "Reading Material" would

3

sweep in every book in every school within the Escambia County School District—including textbooks, books in classroom libraries, books students bring in from home, etc.—and more. Such a definition goes far beyond the parameters of this case. The Board will therefore provide Responses concerning the "Relevant Books." For the purposes of the Board's Responses, "Relevant Books" shall, per the allegations of the Amended Complaint, [D.E. 27], be defined as: (1) books published by the Publisher Plaintiff; (2) books authored by one of the Author Plaintiffs; (3) books the Parent Plaintiffs allege their children wanted to read; (4) books written by authors who are members of Plaintiff PEN American Center, Inc.; and (5) *The Perks of Being a Wallflower*, *Lucky*, and *The Nowhere Girls*.

6.     The Board objects to the definition of the terms "Book Challenge," "Book Restriction," and "Book Removal" as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case and/or this stage of the proceedings. Specifically, these terms purport to include any challenges to any Reading Material which, as defined, includes textbooks, curriculum items, classroom libraries, etc. Challenges, restrictions, or removals by the Board of particular Reading Material that are not related to the allegations in the Amended Complaint, i.e., not purportedly motivated by the ideological grounds as identified in the Amended Complaint, are not proportional to the needs of this case. Reading Material may be challenged, restricted, or removed for a variety of reasons, *e.g.*, §

1006.28(2)(a)2.b.(I)–(II), Fla. Stat., many of which are not proportional to the needs of this case. The Board will therefore provide Responses concerning challenges, restrictions, and removals of the "Relevant Books."

7.      The Board objects to the definition of the terms "Policy or Practice" as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case and/or this stage of the proceedings. As defined, these terms refer to any actions taken—whether official or unofficial, approved or unapproved, mandatory or discretionary—by any individual within the Escambia County School District. The Board formally promulgates policies in accordance with Florida law, and generally delegates authority to the Superintendent or his/her designee for the creation of procedures. Plaintiffs' definition ignores the statutory framework within which the Board operates, is vague and ambiguous, and purports to sweep in activity that cannot be considered Board action or reasonably traced back to the Board nor can it be considered proportional to the needs of this case given the breadth and size of the Escambia County School District ("District").

**<u>SUPPLEMENTAL OBJECTIONS TO DEFINITIONS:</u>**

Pursuant to the Parties' agreement, "Reading Material" is defined to only mean those materials contained within the District's school libraries.

5

"Relevant Books" shall mean the list of books provided by Plaintiffs on February 16, 2024 which are removed, remain under restricted access, or are otherwise unavailable to students as of the date of the Board's response.

If a particular Relevant Book returns to circulation, the Board shall cease producing material relating to it.

The "Relevant Time Period" shall be from January 1, 2022, until July 1, 2023. If the District considered the status of a Relevant Book after the Relevant Time Period, the Relevant Time Period shall be extended through present only for those discovery requests that pertain specifically to the Relevant Books. The Board otherwise objects to responding to interrogatories that seek documents for the time period before the Relevant Time Period, as such requests are not proportional or material to the claims and defenses in the lawsuit. The amendments to the State laws at issue in this case, and which form the basis for the Board's relevant policies and practices regarding library materials, took effect on July 1, 2022. Because the Relevant Time Period encompasses the period of time from January 1, 2022 through July 1, 2022, the Board is providing Plaintiffs with discovery responses pertaining to the six-months leading up to the passage of the subject legislation. The Board further objects to providing discovery for the period of time after July 1, 2023, given the allegations in the Complaint, which make clear Plaintiffs are challenging actions by the Board that occurred prior to July 1, 2023, [D.E. 27 at ¶ 69 n.4].

Pursuant to the Parties' conferral, "Policy" shall be construed to mean formal policy as approved and promulgated by the Board. "Practice" shall mean actions taken by leadership of the District, including the Superintendent or his or her designee, pursuant to the direction of the Board for the purpose of implementing the Board's Policies.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each member of the School Board.

**RESPONSE:**

Kevin Adams, Paul H. Fetsko, David Williams, Patty Hightower, Bill Slayton.

**INTERROGATORY NO. 2:**

For each member of the School Board, describe their training and experience to evaluate the appropriateness of Reading Materials in School District libraries, as well as the number (and grade-year, if applicable) of their children who attended or currently attend school in the School District.

**RESPONSE:**

As elected constitutional officers, Board members receive four hours of ethics training annually which addresses, at a minimum, section 8, Article II of the Florida Constitution, the Code of Ethics for Public Officers and Employees, and the public records and public meetings laws of Florida. Beyond this, the Board objects to this

Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case. Specifically, Plaintiffs' overly broad definition of "Reading Materials" would sweep in any training the Board members receive concerning curriculum and classroom materials. As would the extension of this Interrogatory to "School District libraries"—which, among other things, would include classroom libraries not subject to the allegations in this case—goes beyond the parameters of this lawsuit.

As for the subpart of this Interrogatory, the Board objects to the extent it blurs the line between the Board members' role as constitutional officers and in their individual capacities as parents. The Board members are not sued or named in their individual capacity, and even if they were they would be entitled to qualified immunity from suit as well as legislative immunity and privilege relating to any discovery concerning claims against them in their individual capacity for legislative actions, such as those being challenged in this suit. As such, any discovery aimed at the Board members' familial relations is overly broad and not proportional to the needs of this case. Moreover, discovery aimed at which of the Board members' children "attended" school within the District is overly broad and ambiguous to the extent it sweeps in children who may have attended school within the District prior to the implementation of the statutes and policies at issue in this suit. Accordingly, any information regarding Board members' children who "attended" school prior to

the implementation of the laws and policies being challenged are not proportional to the needs of this case.

Beyond this, see below:

Kevin Adams: three children.

Paul H. Fetsko: three children.

David Williams: two children.

Patty Hightower: two children.

Bill Slayton: two children.

## INTERROGATORY NO. 3:

Identify the last known address, phone number, email address, and any other contact information for former School District Superintendent Tim Smith and former School District Coordinator of Library Media Services Michelle White.

## RESPONSE:

All correspondence for Tim Smith and Michelle White may be directed to the undersigned counsel.

## INTERROGATORY NO. 4:

Please state whether the information provided on the spreadsheet identified in Paragraph 66 of the Amended Complaint is accurate, and, if not, indicate the inaccurate information on the spreadsheet and provide the changes needed to make it accurate.

**RESPONSE:**

The Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case. Specifically, the spreadsheet referred to in Paragraph 66 of the Amended Complaint lists over 200 books, many of which are not relevant or subject to the allegations in this lawsuit. The Board is producing documents concerning the "Relevant Books," i.e., those with connections to the allegations in the Amended Complaint. To that end, the spreadsheet is accurate concerning the Relevant Books.

**SUPPLEMENTAL RESPONSE:**

The Board maintains its objections. Beyond this, for the redefined Relevant Books for the redefined Relevant Time Period, the spreadsheet is accurate as of this time

**INTERROGATORY NO. 5:**

Describe the School District's Reading Material acquisition Policy or Practice for School District libraries, including the Person(s) who determines (a) which Reading Materials the School District will purchase, (b) the factors considered in choosing which Reading Materials to purchase, (c) the records kept about Reading Material acquisitions, and (d) how requests to purchase Reading Materials are handled.

**RESPONSE:**

The Board has the duty to provide, inter alia, a program of school library media services for all public schools in the district, including school library media centers, or school library media centers open to the public, and, in addition such traveling or circulating libraries as may be needed for the proper operation of the district school system. § 1006.28(2)(d), Fla. Stat. To that end, the Board's Policies are publicly available at:

https://go.boarddocs.com/fl/escambia/Board.nsf/goto?open&id=C7KP3X5EC33A# and hereby incorporated by reference into this Response. Specifically, Policies 4.06, 5.02, and 5.07 concern Educational Media Materials, Purchasing and Inventories, and Property Records, respectively. Beyond this, the Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of the case. Reading Material, as defined, concerns textbooks, workbooks, curriculum items, etc. These are not proportional to the needs of this case as Plaintiffs' allegations concern actions undertaken regarding the Board's school libraries and media centers. Policies relating to, for example, curriculum materials are beyond the parameters of Plaintiffs' allegations.

**INTERROGATORY NO. 6:**

For each of the Reading Materials subject to a Book Challenge, Book Removal, or Book Restriction, Identify (a) the date the School District first acquired

11

the Reading Material, (b) the date the Reading Material was first available in School District libraries, (c) the Person(s) who decided to purchase the Reading Material, and (d) the reasons for acquiring the Reading Material. This interrogatory extends beyond the Relevant Time Period, to the extent that the Reading Materials at issue were acquired before May 23, 2022.

**RESPONSE:**

The Board incorporates its objections to the terms "Reading Materials," and "Book Challenge, Book Removal, or Book Restriction" herein as if fully set forth. Beyond this, the Board objects given the lack of temporal scope of this Interrogatory. Taken to its extreme, this request extends to the beginning of time. The Board's Response thus only extends to the Relevant Time Period and only extends to the Relevant Books. To that end, the Board incorporates by reference the records being contemporaneously produced regarding the Relevant Books.

**SUPPLEMENTAL RESPONSE:**

The majority of the redefined Relevant Books were obtained before the redefined Relevant Time Period. The specific reason for requesting purchase of a particular book was not captured on the purchasing form the District has utilized. Per the parties' conferrals, such purchase records are beyond the District's retention period and they are not searchable electronically. Thus, there is no way of identifying on a book by book level why each individual book was acquired or who decided to

12

request a book's purchase. Also, if a book was donated, no purchase record exists. Similarly, the date a particular book first became available in the Board's libraries is also not captured in the District's forms; the closest approximate date will be the date it was acquired by a particular site. Beyond this, the Board will be producing a log run through the Destiny cataloguing software that reflects: (1) the date a book was acquired by a particular site, (2) the book's bar code and call number, (3) the category of challenge to the book, (4) author and ISBN number, and (5) the book's genre/sublocation. That log is incorporated by reference herein. The log produced as part of the Board's Supplemental Response is limited to the redefined Relevant Books for the redefined Relevant Time Period. Discovery is ongoing and should documents be located regarding the redefined Relevant Books that are responsive to this interrogatory, they shall be produced. *See* Defendant's Supplemental Response to Plaintiff's Request for Production, No. 24.

## INTERROGATORY NO. 7:

List all Reading Materials in each School District library, from January 1, 2022 to the present.

## RESPONSE:

The Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of this case. As phrased and as defined per Plaintiffs' Definitions, this would include virtually all materials in the

13

District's school libraries, media centers, and classroom libraries, as well as all material available through its electronic catalogues, partnerships with third-party vendors that allow District students to access their reading catalogues, etc. All told, this would incorporate more than 440,000 unique titles, the vast majority of which have no relation or connection to the issues material to this lawsuit. The Board incorporates by reference the list of Relevant Books, records for which are being produced contemporaneously.

**SUPPLEMENTAL RESPONSE:**

The Board maintains its objections. Beyond this, the Board has attempted to run a District-wide search of all books within its libraries to produce a full list of titles but has not yet been able to successfully do so. Plaintiffs can access the publicly available catalogue at https://destiny.escambia.k12.fl.us/ and access the titles that are being reviewed for conformance with "HB 1069" at https://docs.google.com/spreadsheets/d/1dwSpSRyR1ejSLC5OBj3qzO8xQRgydT cImmbjNZysEuM/edit#gid=1274626908.

**INTERROGATORY NO. 8:**

For each Reading Material subject to a Book Restriction in the School District, Identify and Describe (a) the Person(s) who submitted a Book Challenge, (b) the Person(s) who made the decision to subject that Reading Material to Restricted Access, (c) the reasons for subjecting that Reading Material to Restricted

14

Access, (d) each School District library where access to the Reading Material is restricted or has been previously restricted, (e) how the Reading Material is maintained in each School District library where access to the Reading Material is or was restricted, and (f) the actions students must take to access the restricted Reading Material.

**RESPONSE:**

The Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of this case, and reiterates its previous objections to the term "Reading Material" and "Book Restriction." To that end, the Board incorporates by reference the records being contemporaneously produced regarding the Relevant Books.

**SUPPLEMENTAL RESPONSE:**

The Board will be producing a prepared chart for the redefined Relevant Books for the redefined Relevant Time Period that is responsive to this Interrogatory. It is incorporated by reference herein. Discovery responsive to this Interrogatory is ongoing, as the Board continues to move forward with the book review process. The Board will therefore produce updated versions of this chart quarterly.

In response to subpart (e) of this Interrogatory, physical copies of books which were challenged and placed on Restricted Access were placed in a space within the

library which was designated by the Media Specialist for these titles and which was inaccessible to students. E-book copies on the Destiny system were placed to "hidden" status and the circulation type was changed to "Restricted Title." Media Specialists were instructed to make efforts to have checked out copies of the books returned.

In response to subpart (f) of this Interrogatory, students were able to access these books provided: (1) their library had a physical copy of the book or the book was available through their Destiny system; (2) their parent or guardian had completed a Parent Permission to Check Out Restricted Title form for that specific title; and (3) it was determined by the Media Specialist that the title did not otherwise violate section 1006.28(2)(d), Florida Statutes.

Beyond this, the Board incorporates its Supplemental Response to Interrogatory No. 11 regarding the Board's Practice for maintaining titles which were challenged and placed on Restricted Access.

## INTERROGATORY NO. 9:

For each Reading Material subject to a Book Removal, Identify (a) each School District library that has removed the Reading Material, (b) the date such removal took place, (c) each member of the School Board who read the Reading Material in its entirety prior to the Book Removal, and (d) each member of the School Board who read the complete board appeal packet for that Reading Material,

including reports of the school and district review committees prior to the Book Removal.

**RESPONSE:**

The Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of this case, and reiterates its previous objections to the term "Reading Material" and "Book Removal." To that end, the Board incorporates by reference the records being contemporaneously produced regarding the Relevant Books.

**SUPPLEMENTAL RESPONSE:**

The Board will be producing a prepared chart for the redefined Relevant Books for the redefined Relevant Time Period that is responsive to this Interrogatory. It is incorporated by reference herein.

Beyond this, every member of the Board read each book which was removed in its entirety prior to its removal, with the exception of Board member Williams as relates to *The Perks of Being a Wallflower*, as this decision predated his time as a Board member. Board members Adams, Hightower, Slayton, and Williams read the entire appeal packet prior to the Board's decision to remove the books, with the exception of Board member Williams as relates to *The Perks of Being a Wallflower*, as this decision predated his time as a Board member. Board member Fetsko read

each packet in its entirety except for *When Aidan Became a Brother* and *New Kid*, for which he read excerpts.

## INTERROGATORY NO. 10:

For *The Bluest Eye* by Toni Morrison and *The Nowhere Girls* by Amy Reed, Describe how student access to those particular Reading Materials is and has been managed within School District libraries.

## RESPONSE:

These books are currently available as a self-selected library material for 11th and 12th grade students. Beyond this, the Board incorporates by reference the records being contemporaneously produced for these books.

## SUPPLEMENTAL RESPONSE:

High schools which have these books as part of their library collection are able to make these books available to only 11th and 12th grade students.

## INTERROGATORY NO. 11:

Identify and Describe any and all Policies or Practices—written or unwritten—that have been in place to govern which Reading Materials subject to a Book Challenge are subjected to Restricted Access during the pendency of the Book Challenge review.

**RESPONSE:**

The Board objects to this Interrogatory to the extent it conflates the materials which are subject to a challenge with materials whose access have been restricted, whether they be the subject of a proper challenge or not. The Board considers all challenges to library materials in accordance with Florida law, *e.g.*, § 1006.28, Fla. Stat., and Board Policy 4.06, which are incorporated herein by reference. The Board further objects to the extent this Interrogatory calls for identification and description of purported "unwritten" policies. The Board formally promulgates policies in accordance with Florida law, which are publicly available at:

https://go.boarddocs.com/fl/escambia/Board.nsf/goto?open&id=C7KP3X5EC33A# and hereby incorporated by reference into this Response.

**SUPPLEMENTAL RESPONSE:**

Section 1006.28, Florida Statutes, requires the Board to, inter alia, adopt a policy regarding an objection by a parent or a resident of the county to the use of a specific material, which clearly describes a process to handle all objections and provides for resolution. The Board's Policy on this matter was and is Policy 4.06.

There were two versions of the Board's Policy 4.06 in existence prior to July 1, 2023, for the redefined Relevant Books for the redefined Relevant Time Period. This Policy was amended first on December 19, 2022, and then again on June 20, 2023. This Policy governed the Board's official position in place regarding which

books subject to a challenge were subjected to restricted access during the pendency of the challenge process. That Policy is being produced and is incorporated herein.

The Board's Practice during this time entailed the District's Coordinator of Media Services sending out an email to the District's Media Specialists informing them that the District had received challenges to certain library titles, informing them of the challenged books titles, and providing them with instructions. Media Specialists were instructed to:

- Create a physical space in the library for copies of books that were to be placed on Restricted Access. This area was not to be accessible by students.
- Place physical copies of the titles in the Restricted Access space.
- Make efforts to have copies of the book which were currently checked out be returned. Media Specialists were to contact parents for assistance with returning the book.
- Search the Destiny system for titles that had fallen under review and change the circulation type of the titles under review to "Restricted Title."
- Change e-book copies of the book in Destiny to "hidden" status.
- Change the title's sublocation to Restricted.
- Complete the List of Restricted Titles Completion Form by a set date.
- Place a link for Parent Permission to Check Out Restricted Title on the school's library webpage.
  - Media Specialists were also given instructions on how to handle parental permission forms which were submitted; these included creating a "Note" in the student's Destiny record documenting the permission form upon receipt and maintaining a file of permission forms for seven (7) years. Media Specialists were reminded parents could give permission for all items or just for specific titles.
- Remember that titles currently being reviewed were not be added to collections or recommended for student reading until a decision had been reached on the continued status of the title.
- Update the status and physical location of the titles as reconsideration decisions were communicated to school principals and Media Specialists.

20

- Media specialists were also reminded that teachers were to place copies of the titles that were in classroom libraries in the Restricted Access area of the library. Media Specialists were told to document copies received from teachers so they could be returned as decisions were made on the title's status.

To the extent this Interrogatory requests discovery regarding the Board's decisionmaking process post-July 1, 2023, such is not proportional to this matter and the Board objects. Plaintiffs' allegations are limited to actions by the Board taken prior to July 1, 2023. [D.E. 27 at ¶ 69 n.4]. Discovery should therefore be within the purview of the allegations of the Amended Complaint.

## INTERROGATORY NO. 12:

Describe all steps the School Board has thus far taken to implement HB 1069 with respect to Reading Materials in School District libraries.

## RESPONSE:

The Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of this case. As defined, Reading Materials extends to all textbooks, curriculum items, classroom libraries, etc. This case concerns the District's school libraries and media centers. Beyond changes made that do not relate to the issues relevant to this lawsuit and are beyond the scope of the Amended Complaint, the Board has modified its written policies to reflect changes within the law.

## SUPPLEMENTAL RESPONSE:

21

The Board maintains its objections. Beyond this, the Board amended its Policy 4.06 on an emergency basis on June 20, 2023, and then formally codified this policy change on September 19, 2023, in order to comply with HB 1069's changes to the law as concerns library materials.

**INTERROGATORY NO. 13:**

Describe all steps the School Board has thus far taken to implement HB 1557 with respect to Reading Materials in School District libraries, including whether the School Board has adopted a position as to whether HB 1557 applies to Reading Materials in School District libraries, and, if so, what that position is.

**RESPONSE:**

The Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of this case. As defined, Reading Materials extends to all textbooks, curriculum items, classroom libraries, etc. This case concerns the District's school libraries and media centers. Because HB 1557 only concerns classroom instruction, none.

As to the subpart of this Interrogatory, the Board has not adopted an official position on HB 1557.

**INTERROGATORY NO. 14:**

Describe all steps the School Board has thus far taken to implement HB 7 with respect to Reading Materials in School District libraries, including whether the

School Board has adopted a position as to whether HB 7 applies to Reading Materials in School District libraries, and, if so, what that position is.

**RESPONSE:**

The Board objects to this Interrogatory as being overly broad in scope, unduly burdensome, and not proportional to the needs of this case. As defined, Reading Materials extends to all textbooks, curriculum items, classroom libraries, etc. This case concerns the District's school libraries and media centers. As relates the District's school libraries and media centers, none.

As to the subpart of this Interrogatory, the Board has not adopted an official position on HB 7.

## VERIFICATION OF INTERROGATORY ANSWERS

I, _Shenna Payne_, verify under penalty of perjury that the foregoing responses to interrogatories are true and correct based on reasonable inquiry and the best of my knowledge, information and belief.


ESCAMBIA COUNTY SCHOOL BOARD

By: _____

Authorized Agent


24