# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

PEN AMERICAN CENTER, INC., SARAH BRANNEN, BENJAMIN GLASS, on behalf of himself and his minor child, GEORGE M. JOHNSON, DAVID LEVITHAN, KYLE LUKOFF, ANN NOVAKOWSKI, on behalf of herself and her minor child, PENGUIN RANDOM HOUSE LLC, SEAN PARKER, on behalf of himself and his minor child, ASHLEY HOPE PÉREZ, CHRISTOPHER SCOTT SATTERWHITE, on behalf of himself and his minor child, and CARIN SMITH on behalf of herself and her minor children,,

    Plaintiffs,

vs.

ESCAMBIA COUNTY SCHOOL BOARD,

    Defendant.

_____/

CASE NO.: 3:23-CV-10385-TKW-ZCB

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF ANN NOVAKOWSKI'S <u>MOTION FOR A PROTECTIVE ORDER AS TO DEPOSITION OF J.N.</u>

Defendant, Escambia County School Board ("Board"), hereby responds to Plaintiff Ann Novakowski's Motion for a Protective Order as to Deposition of J.N., [D.E. 88], and states:

## I. INTRODUCTION AND BACKGROUND

Plaintiffs have sued the Board alleging, as relevant to J.N., that the Board has infringed on J.N.'s purported First Amendment right to receive information. [D.E. 27 at Count II]. J.N. is a Plaintiff in her own behalf, through her mother Ann Novakowski. *Id.* at ¶ 24. Specifically, Plaintiffs allege J.N. wants to check out books from schools in the Escambia County School District that are currently unavailable. *Id.* at ¶ 27. Plaintiffs allege J.N. goes to her school library at least once a week to check out books, and that J.N. "is particularly interested in books about families and different family arrangements." *Id.* Plaintiffs seek preliminary and permanent injunctive relief against the Board in the form of this Court ordering the Board to restore books which have been removed or restricted back to the shelves of the Board's libraries. *Id.* at Prayer for Relief.

On July 2, 2024, Plaintiffs filed a motion requesting the Court enter an order preventing the Board from deposing J.N. [D.E. 88 ("Motion")]. Plaintiffs argue that testimony by J.N., a Plaintiff to this lawsuit, [D.E. 27 at ¶ 24], would be cumulative and unduly burdensome because the Board can allegedly elicit the same information from J.N.'s mother, Plaintiff Ann Novakowski ("Novakowski"). Motion at 3. Plaintiffs also argue that because the child's access to the books she allegedly seeks is "undisputed," and because the Board has allegedly not raised any material disputes on the matters on which it seeks J.N.'s testimony, her deposition would be

unnecessary. Plaintiffs also raise claims about purported harms that would befall J.N. if forced to sit for deposition. In the alternative, Plaintiffs ask the Court to limit the scope of any deposition of J.N.

Plaintiffs' Motion should be denied. As a threshold issue, the Court has already stated that the minor Plaintiffs would have to testify in this matter, a fact Plaintiffs' counsel conceded. Beyond this, Plaintiffs are incorrect that deposing J.N. would be cumulative or unduly burdensome: the disputed issue of J.N.'s standing is intertwined in the critical element upon which she bears the burden of proof, her substantial likelihood of success on the merits. Plaintiffs cannot bootstrap the standing of J.N.'s mother—itself disputed—onto J.N.; J.N.'s standing must sink or swim on its own.

Moreover, J.N. has distinct information separate and apart from her mother. Plaintiffs' submission of a self-serving affidavit does not mitigate this fact or overcome the Board's entitlement to depose a party Plaintiff. Plaintiffs have not shown specific harms will come to J.N. if she testifies, and cannot use her status as a minor as both a sword and shield in this suit.

## II. **MEMORANDUM OF LAW**

### A. **Legal standard for protective order.**[1]

---

[1] Plaintiffs' Motion omits—and in fact fails to even address—the applicable standard for seeking a protective order; thus the Board provides it here.

Rule 26(c) of the Federal Rules of Civil Procedure allows a court to issue an order to protect a party or person from undue burden. *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020). "A party seeking a protective order bears the burden of demonstrating the existence of good cause for such an order." *Id.* "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Id.* (citations omitted). "Under the 'good cause' standard, the court must balance the competing interests of the parties. Trial courts have broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Id.* (cleaned up).

Plaintiffs have not demonstrated good cause exists to preclude J.N.'s testimony, and this Court should thus deny the Motion. Excusing J.N. from testifying under oath about her unique knowledge critical to the issue of threshold standing would fundamentally prejudice the Board and would deprive the Court of critical disputed facts necessary for the Board to defend against Plaintiffs' claims. It is axiomatic the Board—and this Court—should be fully informed on critical disputed facts that go the heart of J.N.'s ability to even state a claim or demonstrate standing.

### B. The Court has already determined that J.N. will have to testify.

The Court can swiftly resolve Plaintiffs' Motion—by denying it—as the Court has already made itself "very clear" that "these children [Plaintiffs] are going to be forced to testify, under oath, that they, in fact, want to check out these books." [D.E.

66 at 24:20–24:23]. In so doing, the Court specifically expressed skepticism about J.N.'s allegation that she is "particularly interested in books about families and different family arrangements." *Compare* [D.E. 27 at ¶ 179], *with* [D.E. 66 at 24:23–25:10 ("And y'all's seven-year-olds may be different than my seven-year-olds were, but I've got an allegation that a first-grader -- so maybe a six-year-old -- is particularly interested in books about families and different family arrangements. When my kids were seven years old, they were interested in -- not that. *And it seems hard to believe that that's the case*, but I have to accept that as true. . . . [B]ut I think it's very important for [the parent Plaintiffs] to understand that *they're putting their children on that witness stand, under oath, to testify to things that I can't imagine a first-grader can testify to*." (emphases added)]. Importantly, Plaintiffs' counsel conceded that the minor Plaintiffs would be forced to testify in this matter. [D.E. 66 at 75:25–76:02 ("Your Honor was mentioning that . . . the students whose parents are plaintiffs will at some point have to take the witness stand. *We recognize that and acknowledge that*." (emphasis added))].

As the Court noted, while it could not "imagine a seven-year-old saying, I want to read a book about different family arrangements," it was nonetheless forced to accept this allegation as true for purposes of the Board's motion to dismiss; critically though, whether or not this is true for the purposes of Plaintiffs proving their case "*will come out in the examination*." *Id.* at 25:05, 27:07–27:08, 27:13–14

5

(emphasis added). The Court reiterated that by proceeding with this lawsuit, "we would have [students] *from elementary school* up to high-schoolers *being subjected to the deposition*, being placed under oath, testifying in federal courtrooms to prove the allegations that are made in this that they want Book A or Book B." *Id.* at 134:03–134:07 (emphases added).

The Court's cautions to Plaintiffs could not have been clearer: continuing this lawsuit meant the student Plaintiffs—including those in elementary school such as J.N.—would be required to sit for deposition. Given this, it is clear Plaintiffs' Motion fails. The Board has consistently maintained Plaintiffs, including J.N., lack standing. *See, e.g.*, [D.E. 28 (Motion to Dismiss challenging all Plaintiffs' standing); D.E. 68 (Answer and Affirmative Defenses raising Plaintiffs' lack of standing as a defense)]. In light of the Board's continued maintenance of these defenses, it can come as no surprise to Plaintiffs that the Board would want to test the veracity of J.N.'s allegations concerning, inter alia, her standing. The Board is entitled—as this Court has recognized—to test the veracity of these allegations.

      **C.    J.N.'s standing is individualized to her.**

As the Supreme Court has emphasized, standing "is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Rather, J.N. must "demonstrate standing for each claim that [she is] press[ing] and for each form of relief that [she] seek[s]." *Id.* This includes "injunctive relief," *id.*, which is what J.N.

seeks in this case. *See* [D.E. 27 at Prayer for Relief]. Standing requires a plaintiff to "allege *and prove* that [her] personal injury" is fairly traceable to the defendant's allegedly unlawful conduct. *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999) (emphasis added) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). As the Court has previously noted, allegations are one thing—that is, even with the Court's own skepticism, it was forced to accept them as true for purposes of a motion to dismiss, [D.E. 66 at 25:05]—but proving those allegations is another. *Id.* at 27:05–27:08, 27:10–27:11, 27:13–14.

Plaintiffs' Motion argues that J.N.'s inability to access the books she purportedly seeks is undisputed. Motion at 4–6. But this is not the appropriate lens through which J.N.'s standing is examined. The Board does not dispute that the books J.N. purportedly seeks to access are currently unavailable,[2] rather, the Board disputes Plaintiffs' bare allegations concerning J.N.'s *efforts* to access the book, and that as such she fails the threshold standing requirement. *See* [D.E. 66 at 117:13–117:20 (finding parent Plaintiffs had standing on behalf of their children because of allegations stating "the children intended to check out specific books that either were removed or restricted")]. As the Court recognized, in the context of standing as concerns alleged book removals in a school library, "there has to be some

---

[2] Although as Plaintiffs concede, the Board has lifted its restriction on *Uncle Bobby's Wedding*. Motion at 4 n.1.

7

immediacy, that the child wanted to read this book this semester." *Id.* at 23:18–23:19 (citing *Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177 (11th Cir. 2009) ("*ACLU*")).

At a minimum, the open question of whether J.N. has standing, as well as the credibility of her allegations concerning her efforts to purportedly access certain books, do not support a finding of good cause and militate in favor of requiring J.N. to testify to defend her claims. Essentially, J.N. seeks to insulate herself from examination on the very issues that establish her standing, *vel non*, to bring a claim, and indeed to prevail in her ultimate request for injunctive relief. The material prejudice to the Board by disallowing such an examination is clear and self-evident.

Plaintiffs primarily rest J.N.'s standing entirely on her mother's declaration; but this self-serving declaration does not state J.N. has attempted to check out any of the books currently unavailable. Rather, it states that J.N. "likes" these books, and "wants" the books to be in her library. [D.E. 88-2 at ¶¶ 3–6]. Liking and desiring of a subject matter does not create standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562–63 (1992). It requires "that the party seeking review be [her]self among the injured." *Id.*

Setting aside that this declaration relies on statements J.N. purportedly told her mother—which, absent deposition, the Board has no way of testing—it logically follows that J.N.'s mother's knowledge is not co-extensive with J.N. The child has

8

unique knowledge about her likes and desires and, more importantly, her efforts to obtain these books from her school library. The Board should not be required to, and indeed this Court should not, rely exclusively on J.N.'s mother's alleged recitation of what J.N. communicated to her, particularly when there are no indications that J.N. herself is incompetent to testify.

In *ACLU*, for example, the father of the minor plaintiff seeking to prevent the book at issue's removal swore that he had seen the book as "part of the library collection" at his son's school and that he "had seen it with [his] son and [they] had planned to check it out and read it together in the future." 557 F.3d at 1194. These definite, concrete averments were sufficient to create standing. By comparison, J.N. does not allege any such concrete allegations—i.e., there are no allegations or statements that J.N. specifically saw these books at her school library or definitively planned to check these books out prior to their restriction—and her mother's declaration is equally lacking in these concrete details.

Instead, Plaintiffs rely on J.N.'s "some day" intentions that the Supreme Court has found "do not support a finding of the 'actual or imminent' injury that [is required]." *Lujan*, 504 U.S. at 564. The Board should be allowed to explore the critical threshold issue of J.N.'s standing. At a minimum, these disputed issues concerning J.N.'s efforts at accessing these books bring into question her credibility,

and she cannot now avoid participation in critical portions of the litigation simply because of her age.[3]

### D. J.N. has distinct information and testimony from her mother.

Plaintiffs' Motion incorrectly states the Board has "not articulated a meaningful distinction between the legal and factual issues they seek to establish through the testimony of J.N. and Plaintiff Novakowski." Motion at 3. This is incorrect: the Board has declined to articulate the entirety of their litigation strategy to Plaintiffs nor are they required to before being able to examine a party Plaintiff. Requiring the Board divulge such information would force it to disclose privileged information. *See Factory Direct Tires, Inc. v. Cooper Tire & Rubber Co.*, No. 3:11cv255/RV/EMT, 2012 WL 12871827, at *3 n.6 (N.D. Fla. June 19, 2012) (declining "Defendant's invitation to require Plaintiff to produce unredacted billing records, in light of Plaintiff's well-founded assertion that such records would reveal Plaintiff's litigation strategy"); *see also United States v. Big Apple Consulting USA, Inc.*, No. 6:09–cv–1963–Orl–28GJK, 2010 WL 11475254, at *4 (M.D. Fla. Nov. 2, 2010) (noting that requests subject to work product protection "focused on an attorney's 'thought process concerning witness preparation and strategy'" (quoting *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409–10 (S.D.N.Y. 2009))).

---

[3] This is particularly true in light of the undersigned lawyers' extensive experience litigating cases involving children, including the examination of children at deposition and trial. Indeed, the depositions of the middle and high school students have begun and no controversies have arisen.

Suffice to say, the Board's representation that it intends to depose J.N. concerning her claims and how those relate to the Board's defenses, including, but not limited to, what books J.N. actually wants to read and is interested in, are sufficient to warrant a deposition of a party to this suit. It cannot be disputed J.N. has unique and distinct testimony and information as compared to her mother: J.N. is a Plaintiff to this case separate and apart from her mother, who is a Plaintiff in her own right. [D.E. 27 at ¶ 24]. Given J.N.'s efforts at accessing these books are being scrutinized, clearly her testimony will differ from that of her mother's in this regard. Further, Novakowski's declaration demonstrates the need to examine J.N., as it contains information not contained within Plaintiffs' pleading and is, in fact, different from Plaintiffs' allegations. *Compare* [D.E. 88-2 at ¶¶ 3–5 (Novakowski's declaration stating the reasons J.N. is allegedly interested in the books at issue, including that she likes penguins (for *And Tango Makes Three*), that she loves weddings (for *Uncle Bobby's Wedding*), and that she likes the book because it is about a boy his parents think is a girl (for *When Aidan Became a Brother*)], *with* [D.E. 27 at ¶ 179 (stating J.N. is "particularly interested in books about families and different family arrangements")]. This discrepancy in factual issues and allegations warrants J.N. testifying.

Only J.N. possesses the critical information related to her standing and only she can speak to her efforts at accessing these books, thus rendering her testimony

probative and necessary, if not critical to the adjudication of the issues before the Court. *Cf. Carastro v. Gainer*, 434 F. Supp. 296, 300 (S.D. Fla. 1977) (finding that plaintiff was not denied due process after minor female referred to in charges did not testify because other witnesses who were present at the time the incidents occurred testified). The Board is not attempting to elicit the same information from J.N.'s mother as it is from J.N., because their standing rests of different claims. *Compare* [D.E. 66 at 117:13–117:20 (finding parent Plaintiffs had standing on behalf of their children based on allegations "that the children intended to check out specific books that either were removed or restricted")], *with id.* at 117:21–118:01 (finding Court would not reach question of parents' standing in their own right but that "whether [the parent Plaintiffs] have standing on their own behalf will probably turn on the question of whether they are patrons of the library as well"). If nothing else, this distinction between information possessed by J.N. versus her mother demonstrates that Plaintiffs have not met the good cause burden for a protective order.

### E. Plaintiffs have not shown specific prejudice or harm will result if J.N. testifies.

Plaintiffs' proffered justification for why deposing J.N. would be an undue burden is it would require time away from family and friends to prepare and to face questions by the Board's counsel. This does not satisfy Plaintiffs' burden of establishing good cause under Rule 26(c), which is to "make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory

12

statements' supporting the need for a protective order." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) (quoting *United States v. Garrett*, 571 1323, 1326 n.3 (5th Cir. 1978)).[4] Plaintiffs have not satisfied this burden with respect to J.N., and their attempts to shield her from participation in the litigation she initiated are unpersuasive.

"Rule 26 permits broad discovery of any non-privileged matter that is relevant to a party's claim *or defense*." *Ramirez v. Gee*, No. 8:10-cv-1819-T-TBM, 2013 WL 12366623, at *1 (M.D. Fla. Apr. 3, 2013) (emphasis added). The Board has asserted, as an affirmative defense, J.N.'s lack of standing. [D.E. 68 at 43]. The Board challenges J.N.'s standing and the alleged constitutional deprivation J.N. claims to have suffered. *Id.* at 46. Plaintiffs claim, on the other hand, that because the Board has failed to articulate narrower bases for calling J.N. to testify beyond her claims and allegations made in the Amended Complaint, her testimony should be precluded.

This fails to establish good cause because it attempts to impermissibly shift Plaintiffs' burden to establish good cause onto the Board. The Board is entitled to defend itself against Plaintiffs' claims; doing so requires probing the veracity of the standing and credibility of the Plaintiffs, which includes J.N. Preventing the Board's examination of J.N. would materially prejudice its defense.

---

[4] Decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Plaintiffs have, conversely, identified no specific prejudice or harm that will befall J.N. if she must testify. Plaintiffs' nebulous concerns that J.N. must spend time away from family or friends to prepare for her deposition overlooks the fact that J.N., through her mother, chose to be a Plaintiff to this suit. *See* [D.E. 66 at 25:06–25:09 ("Obviously [the parent Plaintiffs] got involved in this lawsuit because they believe in the cause, but I think it's very important for them to understand that they're putting their children on that witness stand, under oath, to testify to things that I can't imagine a first-grader can testify to.")].

To the extent Plaintiffs are concerned about the examination J.N. will face, the undersigned have experience in these matters and are not ignorant of the unique sensitivities required in questioning a minor child. Plaintiffs' claim that because the Board will be able to examine Novakowski and that she will be able to provide "fulsome" testimony, this somehow obviates the need to depose J.N. is unreasonable. Motion at 8. So too is it unreasonable for Plaintiffs to argue that the Board should be required to seek leave after deposing Novakowski if it is dissatisfied with her answers. *Id.* And it, again, improperly shifts the burden to establish good cause for a protective order onto the Board. Nor would it be an efficient use of the parties' or this Court's limited resources to require additional motion practice when the Court has already made clear to Plaintiffs these depositions would be occurring more than six months ago. *See* [D.E. 66 at 134:03–134:07].

Reading Plaintiffs' Motion in the most generous light reflects a general discomfort Plaintiffs believe J.N. will experience by testifying. This does not satisfy the requirement to show "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements," *Auto-Owners*, 231 F.R.D. at 429–30, and certainly does not defeat the Board's right to defend itself against Plaintiffs' claims. It is axiomatic that a party Plaintiff cannot assert substantive claims, and then decline to participate simply because it might cause discomfort.

### F. Plaintiffs cannot use J.N.'s minority status as both a sword and shield.

Plaintiffs make much of the fact that J.N. is a minor, *see* Motion at 1, 2, 3, 7, 8, 9 (noting J.N. is seven years old), and the purported harms and burdens that will befall her if required to testify, including that it would apparently require time away from family and friends and would be stressful. *Id.* at 8. The Board is not unmoved to the realities that involve examining a minor, and that there may be some discomfort associated with this. However, J.N. is a named party to this suit. She, through her mother, chose to sue the Board. Plaintiffs cannot use J.N.'s status as a minor and student within the Escambia County School District as a sword by which to challenge the actions of the Board, only to then use her minority status as a shield to prevent either her participation in the suit she brought or the Board from defending itself from Plaintiffs' claims. [D.E. 66 at 24:20–67:10]; *cf. Arango v. U.S. Dep't of*

15

*Treasury*, 115 F.3d 922, 926 (11th Cir. 1997) (commenting that a party who asserts her Fifth Amendment right against self-incrimination may not convert it "from the shield against compulsory self-incrimination . . . into a sword whereby [she] would be freed from adducing proof in support of a burden which would otherwise have been [hers]" (quoting *United States v. Rylander*, 460 U.S. 752, 758–59 (1983))); *Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d 1253, 1257 (M.D. Fla. 2014) ("It is well-established that under the sword and shield doctrine, a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged." (cleaned up)).

That J.N.'s mother brought this suit on her daughter's behalf does not shield her daughter from participation in the matter either. "Florida law, which applies to capacity determinations in this case, requires that a child sue by [her] next friend because the child does not have capacity to sue on [her] own. The only way for [J.N.] to seek redress for [her] injuries is for [her] [mother] to sue on [her] behalf, which is what [her] [mother] did." *ACLU*, 557 F.3d at 1195 (cleaned up). It is Plaintiffs who bear the burden in proving their case, including clearly establishing they are entitled to injunctive relief. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). It is antithetical to due process and fundamental fairness to use J.N.'s claims in seeking this "extraordinary and drastic remedy," *id.*, against the Board, only to then attempt to preclude the Board from marshaling its defenses to defeat these claims. The Court

should find J.N. has not demonstrated good cause sufficient for entry of a protective order, deny the Motion, and allow the Board to depose her.

**WHEREFORE**, Defendant, Escambia County School Board, request the Court deny Plaintiff Ann Novakowski's Motion for a Protective Order as to Deposition of J.N., and for any such other relief that this Court deems just and proper.

## CERTIFICATE OF WORD COUNT

The undersigned certify that this Response complies with the word count limitation set forth in Local Rule 7.1(F) because it contains 3,962 words, excluding the parts exempted by said Local Rule.

Respectfully submitted,

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.: 0017056
E-mail: nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.: 1018568
E-mail: jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783

SAMANTHA DUKE
Florida Bar No. 0091403
Email: sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Kristy L. Parker at kristy.parker@protectdemocracy.org; John Thomas Langford at

john.langford@protectdemocracy.org; Shalini Goel Agarwal at shalini.agarwal@protectdemocracy.org; Shawn F. Summers at summerss@ballardspahr.com; Kirsten Elizabeth Fehlan at fehlank@ballardspahr.com; Lynn Beth Oberlander at oberlanderl@ballardspahr.com; Paul Joseph Safier at safierp@ballardspahr.com (Counsel for Plaintiffs); Rachel Elise Fugate at rfugate@shullmanfugate.com (Counsel for Clay Calvert, et al.); Clarence William Phillips at cphillips@cov.com; Jayne Foley Hein at jhein@cov.com; Nicholas Eli Baer at nbaer@cov.com; Robert C. Buschel at buschel@bglaw-pa.com (Counsel for Florida State Conference NAACP, et al.); Bridget K. O'Hickey at bridget.ohickey@myfloridalegal.com; Daniel William Bell at daniel.bell@myfloridalegal.com; David Matthew Costello at david.costello@myfloridalegal.com; and Henry Charles Whitaker henry.whitaker@myfloridalegal.com (Counsel for State of Florida).

.

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.: 0017056
E-mail: nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.: 1018568
E-mail: jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783

SAMANTHA DUKE
Florida Bar No. 0091403
Email: sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133

Attorneys for Defendant