## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, LINDSAY
DURTSCHI, on behalf of herself and
her minor children, BENJAMIN
GLASS, on behalf of himself and his
minor child, GEORGE M.
JOHNSON, DAVID LEVITHAN,
KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN
PARKER, on behalf of himself and
his minor child, ASHLEY HOPE
PÉREZ, ERICA ROY, on behalf of
herself and her minor children, and
CHRISTOPHER SCOTT
SATTERWHITE, on behalf of
himself and his minor child,

      Plaintiffs,

vs.

ESCAMBIA COUNTY SCHOOL
BOARD,

      Defendant.

_____ /

CASE NO.:  3:23-CV-10385-TKW-ZCB

## SCHOOL BOARD OF ESCAMBIA COUNTY'S RENEWED MOTION FOR PROTECTIVE ORDER ASSERTING LEGISLATIVE PRIVILEGE

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and this Court's

Order denying without prejudice Defendant's motion for protective order, [D.E. 98],

Defendant, School Board of Escambia County ("Board"), hereby files this Renewed Motion for Protective Order Asserting Legislative Privilege seeking to protect the elected Board members from being deposed in this case, and in support states:

## I.    <u>INTRODUCTION AND BACKGROUND</u>

This case arises from the Board's alleged decisions to either remove or restrict access to certain books from the libraries in the Escambia County School District ("District"), and Plaintiffs' subsequent challenge to these alleged actions. [D.E. 27]. Specifically, Plaintiffs allege violations of their First Amendment rights based on purported viewpoint discrimination and violation of an alleged right to receive information in public schools based on the Board's alleged actions.[1] *Id.* at ¶¶ 215–30.

On May 31, 2024, Plaintiffs served notices of taking deposition of the Board's five elected members ("Notices") and the District's current Superintendent, Keith Leonard.[2] *See* [D.E. 82-1]. The undersigned conferred with Plaintiffs' counsel and informed them that the Board opposed these depositions for numerous reasons, including on the basis of legislative privilege. Plaintiffs have not served any subpoenas for the Board members' depositions.

---

[1] The Court has dismissed Plaintiffs' remaining count. [D.E. 65].

[2] Plaintiffs also subpoenaed an Escambia County School District employee, Vicki Baggett, for deposition. The Board took no position on Ms. Baggett's deposition as her actions as relate to this case fell outside the course and scope of her employment and therefore could not be imputed onto the Board. Ms. Baggett was deposed on July 25, 2024.

On June 21, 2024, the Board filed a motion for protective order, seeking to preclude the compelled depositions of the Board members and the current and former District Superintendent.[3] [D.E. 82]. The Board's motion asserted, inter alia, that the Board members should not be compelled to testify based on legislative privilege and the apex doctrine, and that prior to deposing the Board members Plaintiffs should be required to exhaust other avenues of discovery, including by taking a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). *See generally id.* Plaintiffs responded in opposition on July 15, 2024. [D.E. 95].

On July 19, 2024, the Court entered an order denying the Board's motion, without prejudice to the Board filing a new motion reasserting legislative privilege with support for the Board asserting the privilege on behalf of its members. [D.E. 98 ("Order")]. The Court ruled that "the same path should be taken" in this case as in "[a] similar case involving the [Board] [that] is currently pending before Judge Winsor in the Tallahassee Division of this Court." *Id.* at 2, 7. That is, "[i]f the individual Board members wish to assert legislative privilege, then they must do so

---

[3] As the Board's initial motion noted, Plaintiffs initially declined to accept the Board's offer of a deposition under Rule 30(b)(6) prior to seeking depositions of the Board members and Superintendent Leonard, before then serving a notice of taking deposition pursuant to Rule 30(b)(6). [D.E. 82-2]. Plaintiffs also, after the Board filed its motion, agreed to withdraw their deposition notice as to Superintendent Leonard, without prejudice to re-noticing him following the Rule 30(b)(6) deposition of the Board. *See* [D.E. 95 at 7]. These actions do not alter or render unripe the relief the Board seeks in this Motion for Protective Order, given the Board members' entitlement to legislative privilege. Moreover, the Board informed Plaintiffs during their meet and confer discussions that the Board reserved the right to seek protection and restrictions on any deposition of Superintendent Leonard, should Plaintiffs re-notice him for deposition.

personally." *Id.* at 7. The Board now files its renewed motion, in line with this Court's instructions, *see id.*, and asks the Court to find the Board members are protected by the legislative privilege and should not be forcibly compelled to sit for deposition in this case.[4]

## II.    **MEMORANDUM OF LAW**

### A. Legal standard.

Rule 26(c) of the Federal Rules of Civil Procedure allows a party from whom discovery is sought to move for a protective order, which may be granted upon a showing of good cause. *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020). "Rule 26(c) gives the district court discretionary power to fashion a protective order." *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). Under the "good cause" standard, the Court must balance the competing interests of the parties, and has broad discretion in determining whether a protective order is warranted. *Odom*, 337 F.R.D. at 362. Rule 26 protects those from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). As shown herein, good cause exists to prevent

---

[4] The Board is—contemporaneous to this motion—filing a Motion for Restrictions as to any depositions of the Board members, in the event the Court denies the Board's renewed motion for protective order and orders depositions of the Board members to proceed, per the Court's guidance in its order denying the Board's motion for leave to file reply in support of its initial motion for protective order. [D.E. 99 at 2 n.1 (stating the Board "may file a motion seeking such restrictions" as to the depositions of the Board members, as this issue was not resolved by the Court's prior Order)].

Plaintiffs from taking the depositions of the elected Board members pursuant to the legislative privilege.

**B. This Court should find the legislative privilege protects the Board members from being deposed.**

**i.    The Board members are protected by legislative privilege.**

The concept of legislative privilege against testifying is well-established in federal courts. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977); *accord Tenney v. Brandhove*, 341 U.S. 367 (1951); *United States v. Nixon*, 418 U.S. 683 (1974). As the Supreme Court has recognized, "judicial inquiries" into the motivations underlying legislative decisions "represent a substantial intrusion into the workings of other branches of government." *Arlington Heights*, 429 U.S. at 268 n.18. This privilege, although qualified, has been described as protecting officials from having "to testify in [a] civil case about the reasons for their votes." *Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012).

In recognizing such a privilege for state legislators in *Florida*, this Court denied a motion to compel legislators and their staff to appear for depositions. *See id.* ("The privilege is broad enough to cover all the topics that the intervenors propose to ask [the legislators] and to cover their personal notes of the deliberative process."); *see also Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1343–44 (11th Cir. 2023) (noting legislative privilege extends to discovery requests, including requests for factual information). Nothing here compels a different result.

As this Court has explained, "legislative immunity and privilege are 'parallel concept[s],' and the privilege 'exists to safeguard' the immunity." *Florida v. Byrd*, 674 F. Supp. 3d 1097, 1103 n.2 (N.D. Fla. 2023) (alteration in original) (quoting *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180–81 (4th Cir. 2011)); *see also Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) ("While *Tenney*'s holding rested upon a finding of immunity, its logic supports extending the corollary legislative privilege from compulsory testimony to state and local officials as well."); *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) (citing *Tenney* and noting the "importan[ce]" of the legislative privilege). "And it does not matter to the existence of the legislative privilege that the [Board members] [a]re not parties to [this] lawsuit. The privilege 'applies whether or not the [Board members] themselves have been sued.'" *In re Hubbard*, 803 F.3d at 1308 (quoting *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181); *see also MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988).

Given the parallel nature of these concepts, it only follows that just as legislative immunity attaches to local officials, *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), so too does legislative privilege. *See Byrd*, 647 F. Supp. 3d at 1103 n.2; *see also Lee*, 908 F.3d at 1187 (holding local official "may invoke legislative privilege"); *Benisek v. Lamone*, 241 F. Supp. 3d 566, 573 (D. Md. 2017) ("[T]he Supreme Court has developed a [common law] doctrine of immunity that shields

6

state, regional, and local officials from civil liability based on their actions taken 'in the sphere of legitimate legislative activity.' . . . Because legislative immunity and legislative privilege are motivated by the same policy of comity, courts apply them in a parallel manner." (quoting *Tenney*, 341 U.S. at 376)); *Doe v. Nebraska*, 788 F. Supp. 2d 975, 984 (D. Neb. 2011) ("[L]ocal officials may be protected from testifying[.]"); *cf. Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (assuming *arguendo* that local councilmembers' reasons for passing resolutions were "privileged in the sense that they cannot be directly compelled to disclose them").

Further, there is no reason to consider the Board members—duly elected constitutional officers, each representing a local geographic area within the District—as falling outside the universe of local officials protected by the legislative privilege; they should therefore be protected from compelled depositions in this matter. *See, e.g.*, *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, Nos. 3:20-cv-01023, 3:21-cv-00038, 3:21-cv-00122, 2021 WL 5882653, at *4 (M.D. Tenn. Dec. 13, 2021) ("[T]he Court finds that the legislative privilege precludes the noticed depositions of the school board members . . . ."); *Cunningham v. Chapel Hill ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006) (protecting school board member from being deposed as to legislative act, finding "that the rationales for applying the testimonial privilege to federal, state, and regional legislators apply with equal force

to local legislators," and such officials "are protected by the testimonial privilege from having to testify about actions taken in the sphere of legitimate legislative activity"); *see also Smith v. Jefferson Cnty. Bd. of Sch Comm'rs*, 641 F.3d 197, 218 (6th Cir. 2011) (extending legislative immunity to school board members); *Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 135 (5th Cir. 1986) (commenting that school board members could raise legislative immunity argument on remand); *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 401 (E.D.N.Y. 2018) (determining superintendent and school board members were "entitled to absolute legislative immunity"); *Callaway v. Hafeman*, 628 F. Supp. 1478, 1486 (W.D. Wis. 1986) (finding it "inescapable" to deny legislative immunity to school board members); *accord Wilson v. Marshall Indep. Sch. Dist.*, No. 2:09-CV-273-DF-CE, 2011 WL 1431410, at *5 (E.D. Tex. Feb. 1, 2011) (same); *Stepian v. Schaubert*, No. 08CV487A, 2010 WL 1875763, at *8 (W.D.N.Y. Feb. 23, 2010) (same); *cf. Cooper v. Aaron*, 358 U.S. 1, 16 (1958) (describing "members of the School Board and the Superintendent of Schools" as "local officials"); *Bd. of Pub. Instruction of Duval Cnty. v. Braxton*, 402 F.2d 900, 908 (5th Cir. 1968) (Coleman, J., specially concurring) (referring to "local school boards" as "duly chosen local officials").

Any question as to whether the privilege can extend to the Board members is dispelled given the Board members are each duly elected officials, who act in

legislative capacities in service of their duties to the District. *Cf. Spallone v. United States*, 493 U.S. 265, 279 (1990) (noting legislative privilege is "derive[d]" "from the will of the people" (quoting *Coffin v. Coffin*, 4 Mass. 1, 27 (1808))). And as noted, despite not being named as individual parties to the suit, the privilege applies to the Board members regardless. *See In re Hubbard*, 803 F.3d at 1308. Tellingly, Plaintiffs—in their response in opposition to the Board's initial motion for protective order—did not dispute that the Board members fall within the universe of officials protected by the legislative privilege, instead only arguing that the Board's alleged actions were not legislative in nature. *See* [D.E. 95 at 8–13]. The Court should therefore find it is undisputed that the Board members fall within the umbrella of officials afforded protection by legislative privilege.

### ii.    The act of voting to remove or restrict books is legislative in nature.

"The legislative privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and *into the motivation for those acts.*'" *In re Hubbard*, 803 F.3d at 1310 (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)). Here, the Court should find that "the factual heart" of Plaintiffs' claims "and the scope of the legislative privilege [a]re one and the same." *Id.* at 1311.[5] That is, "[a]ny material, documents, or information [including testimony] that d[o] not go to

---

[5] The Court has already implicitly recognized as much, given its acknowledgment that the Board members' individual motives are relevant. Order at 4.

legislative motive [are] irrelevant," and "any that d[o] go to legislative motive [are] covered by the legislative privilege." *Id.* Such was the Eleventh Circuit's decision in *In re Hubbard*, which concerned a First Amendment retaliation claim, and the Court should find likewise here given this is also a First Amendment matter. *See id.* at 1311–12 ( "[T]he Supreme Court has explained that, for purposes of the legislative privilege, there is a fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government." (citing *United States v. Gillock*, 445 U.S. 360, 373 (1980))).

> And as the Eleventh Circuit recently clarified in *Pernell*:

> The Supreme Court has *never* expanded the *Gillock* exception beyond criminal cases. For purposes of the legislative privilege, there is a fundamental difference between civil actions by private plaintiffs and criminal prosecutions by the federal government. Although the legislative privilege does not presumptively apply in the latter kind of case, the presumption otherwise holds firm. *And it is insurmountable in private civil actions under section 1983.*

84 F.4th at 1344 (cleaned up) (emphases added).

Like *In re Hubbard*, "[t]his is not a federal criminal investigation or prosecution." 803 F.3d at 1312. This is a civil matter under 42 U.S.C. § 1983, and thus "the presumption [of applying the privilege] holds firm." *Pernell*, 84 F.4th at 1344; *e.g.*, *Byrd*, 374 F. Supp. 3d at 1104 (applying legislative privilege while "acknowledge[ing] that allegations of racial gerrymandering are serious matters"); *Florida*, 886 F. Supp. 2d at 1303–04 (reasoning similarly in Voting Rights Act case);

10

*see also League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 456 (N.D. Fla. 2021) ("[M]erely asserting a constitutional claim is not enough to overcome the privilege.").

Given the Eleventh Circuit's description of the privilege as "unqualified" in civil matters, *Pernell*, 84 F.4th at 1341, it indisputably applies here. Although unspecified in the Notices served by Plaintiffs, Plaintiffs have made clear they intend to depose the Board members as to, inter alia, their "subjective states-of-mind," *Byrd*, 374 F. Supp. 3d at 1104, and the circumstances and motivations surrounding the individual Board members' decisions to vote in favor, *vel non*, of removing or restricting certain books. *See, e.g.*, [D.E. 27 at ¶¶ 4–5 (Plaintiffs' Amended Complaint, claiming the Board is ordering books to be removed from libraries based on ideological reasons and engaging in viewpoint discrimination); D.E. 40 at 5–9 (Plaintiffs' Response in Opposition to the Board's Motion to Dismiss, recounting allegations of purported viewpoint discrimination with respect to Board's actions towards removed and restricted books); D.E. 95 at 15–16 (Plaintiffs' response in opposition to the Board's initial motion for protective order, arguing the motivations of individual Board members are relevant and discoverable)]; *cf.* [D.E. 82-2].

These "topics strike at the heart of legislative privilege." *See Byrd*, 674 F. Supp. 3d at 1104. "The testimony Plaintiffs seek all relates to . . . thought processes, and decision making processes in voting [whether or not to remove or restrict access

to the books at issue]." *Id.* (citation omitted). "The privilege thus 'applies with full force'" to Plaintiffs' Notices. *Id.* (quoting *In re Hubbard*, 803 F.3d at 1310).

Despite the unqualified and unequivocal manner in which the legislative privilege applies to the Board members in this matter, Plaintiffs have argued the acts in question—voting to remove or restrict the books at issue—was not legislative in nature. *See* [D.E. 95 at 8–13]. Not so.

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. For example, certain discretionary personnel decisions are not considered legislative. *Forrester v. White*, 484 U.S. 219, 229–30 (1988). On the other hand, employment decisions "accomplished through traditional legislative functions such as policymaking and budgetary restructuring" are considered legislative. *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (quoting *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000)). An analysis of the Board's actions reveal their legislative nature.

Under Florida law, the Board "has the specific duty and responsibility [to be] responsible for the content of any materials made available in a school library." § 1006.28(2)(a)1., Fla. Stat. (2022) (cleaned up). The Board was thus required to "adopt a policy regarding an objection by a parent or a resident of the county to the use of a specific material, which clearly describes a process to handle all objections

and provides for resolution." § 1006.28(2)(a)2., Fla. Stat. (2022).[6] Pursuant to that duty, the Board was therefore required to offer a "resolution" when the books at issue were challenged. *Id.* Its actions were not discretionary, and the Board did not sua sponte determine that it needed to examine whether these books should be removed from or restricted in District libraries.

Rather, pursuant to its statutorily-mandated policy, the Board was obligated to act upon the challenges to these books and provide for a "resolution." *Id.* The mandatory, rather than discretionary, nature of these acts—ones that under Florida law only the Board could make[7]—make them legislative. *See Lexjac, LLC v. Beckerman*, No. 07-CV-4614 (JS)(ARL), 2008 WL 11313761, at *9–10 (E.D.N.Y. Sept. 30, 2008) (finding town board members entitled to legislative immunity because decision to adopt resolution rescinding prior resolutions was not

---

[6] Section 1006.28(2)(a)2.b. specifically references "material[s] . . . made available in a school library." The statute further requires any material which a school board finds "contains prohibited content under [section 1006.28(2)(a)2.b.] shall [be] discontinue[d] [from] use . . . for any grade level or age group for which such use is inappropriate or unsuitable." *Id.* To 'discontinue' therefore means the book can no longer be offered or provided, that is, it must be removed and its access cut off. *See, e.g.*, *Discontinue*, <u>Cambridge Dictionary</u>,
https://dictionary.cambridge.org/us/dictionary/english/discontinue ("to stop doing *or providing something*" (emphasis added)); *Discontinue*, <u>Britannica Dictionary</u>,
https://www.britannica.com/dictionary/discontinue ("to stop making or offering").

[7] To be clear, this refers to official actions by the Board only. As the Board argued in its response in opposition to Plaintiffs' motion for preliminary injunction, [D.E. 105], the acts of subordinate officials to restrict certain books cannot be imputed onto the Board for liability purposes under *Monell*.

discretionary decision, and was "not the type of decision made by other actors," but was "purely within the province of the local board members").

Given the statutory mandate, this cannot be considered an administrative act: the Board "in the furtherance of [its] dut[y]," *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. May 1981),[8] pursuant to an established process, followed the law of the State of Florida, and provided the statutorily required resolutions. *See Schlegel v. Koteski*, 307 F. App'x 657, 660 (3d Cir. 2009). These votes to remove or restrict certain books were prospective and "had a substantial nexus to the legislative process." *Bryant*, 575 F.3d at 1306. Just as the decision to eliminate a public employment position "may have prospective implications that reach well beyond the particular occupant of the office," *Bogan*, 523 U.S. at 56, so too is the decision to vote to remove or restrict a book legislative in that it has prospective implications that reach the entirety of the District's libraries; that is, the vote "embod[ied] a policy decision with prospective implication." *Bryant*, 575 F.3d at 1306; *see also Smith*, 641 F.3d at 217 (finding school board engaged in legislative activity when it made decision to eliminate alternative school as a result of weighing budgetary priorities).

While the Eleventh Circuit has stated that the act of voting alone is not wholly dispositive as to whether an act is legislative, voting can nonetheless constitute

---

[8] Decisions of the Court of Appeals for the Fifth Circuit decided prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

legislative decisionmaking. *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir. 1982) (citing *Hernandez*, 643 F.2d at 1188). That a vote only concerns a single individual or object does not change this if it nonetheless has broad application. *See Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir. 1989) (affirming district court's grant of legislative immunity to individual defendants who denied plaintiff's application to rezone its property given such actions are legislative in nature); *Smith v. Lomax*, 45 F.3d 402, 406 n.10 (11th Cir. 1995) (noting the court had, in prior case, suggested that the "vote to remove a particular road from the list of available truck routes . . . affected the general population, [and] was therefore 'legislative in nature,' and would have been protected by legislative immunity had it been challenged by a party affected by the change in available routes"); *cf. Ogontz Fire Co. v. Cheltenham Twp.*, No. 23-569, 2024 WL 1120105, at *25 (E.D. Pa. Mar. 14, 2024) (noting legislative actions can involve "line-drawing decisions").

Just as a county's imposition of a building moratorium on property pursuant to an existing county code provision was deemed legislative in nature, *75 Acres, LLC v. Miami-Dade Cnty.*, 338 F.3d 1288, 1296 (11th Cir. 2003), so too is the decision to remove or restrict a book pursuant to the Board's policy. *See also Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1190 (11th Cir. 1993) (finding county commissioners "clearly were performing their legislative function" when they

investigated the voting eligibility of individuals and ultimately participated in the removal of their names from voting lists); *see also Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992) ("[A] legislative act is characterized by having a policymaking function and general application.").

Plaintiffs may argue none of the Board's cited school board legislative privilege/immunity cases specifically address school book removals. *See* [D.E. 95 at 11–12 & n.3]. But as this Court has recognized, "[t]he applicable standard for evaluating alleged First Amendment violations in the school library context is not entirely clear." [D.E. 65 at 7]. It logically follows that an unsettled area of law would have a dearth of caselaw concerning the Board's argument as to legislative privilege in this context. The decision by a different district court to find Florida school board members not entitled to legislative immunity concerning an employment decision is unenlightening given such actions have generally been found to not be legislative. [D.E. 95 at 10 (citing *Oakes Farms Food & Distrib. Servs., LLC v. Sch. Dist. of Lee Cnty.*, 541 F. Supp. 3d 1334, 1348–49 (M.D. Fla. 2021))]. The important feature of *Oakes* is that the court recognized legislative immunity *could* apply to the school board members under certain circumstances. 541 F. Supp. 3d at 1348–49.

This is just such a circumstance where application is appropriate. This is because "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989).

"[T]he Eleventh Circuit has concluded that 'the vote of a city councilman constitutes an exercise of legislative decision-making,' which entitles such city council member to absolute immunity since voting is a legislative function." *Hudgins v. City of Ashburn*, 890 F.2d 396, 406 n.20 (11th Cir. 1989)[9] (quoting *Espanola*, 690 F.2d at 829); *accord Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir. 1987). A vote by a school board member as to whether to remove or restrict a book yields the same conclusion: it is "conduct in the furtherance of their duties," *Hernandez*, 643 F.2d at 1193, and therefore it serves as a legislative function. *Hudgins*, 890 F.2d at 406 n.20; *see also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) ("Acts such as voting . . . are generally deemed legislative and, therefore, protected by the doctrine of legislative immunity." (collecting cases)).

That Plaintiffs may argue the Board members' votes were motivated by an improper purpose, *e.g.*, [D.E. 95 at 16], does not change this analysis, as "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377; *see also Pernell*, 84 F.4th at 1345 ("Even if the privilege could be overcome by especially compelling civil-rights claims, we reject the plaintiffs' argument that the privilege must give way when the claim depends on proof of legislative intent. The Supreme Court has described legislative immunity as 'indispensably necessary' as

---

[9] While the defendants in *Hudgins* asserted qualified immunity, the Eleventh Circuit noted they "should have asserted the defense of absolute or legislative immunity." 890 F.2d at 406 n.20.

it '*support[s] the rights of the people, by enabling their representatives to execute the functions of their office.*'" (alteration in original) (emphasis added) (quoting *Tenney*, 341 U.S. at 373–74)). "A court proceeding that probes legislators' subjective intent in the legislative process is a deterrent to the uninhibited discharge of their legislative duty," and courts "cannot create an exception whenever a constitutional claim directly implicates the government's intent" because "that exception would render the privilege of little value." *Pernell*, 84 F.4th at 1345 (cleaned up); *see also Tenney*, 341 U.S. at 377.

Thus, it cannot be disputed that the Board's actions in deciding to remove or restrict certain books were legislative in nature. They involved mandatory actions by the Board, accomplished via Board votes taken after hearing public opinion on the books at issue and subsequent debate by the Board, as required by law. *DeSisto Coll., Inc.*, 888 F.2d at 765; *accord Woods v. Gamel*, 132 F. 3d 1417, 1420 (11th Cir. 1998) (finding county commissioners' deliberations and vote on budget, as required under state law, was legislative in nature). In deciding to remove or restrict these books, the Board was exercising its authority under Florida law, and "[i]n casting their votes," the Board members were performing their duties "under state law and exercising a quintessentially legislative function." *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 1342 (M.D. Ala. 2001). Requiring the Board members to testify as to their motives and underlying thoughts concerning their

decisions to remove or restrict the books at issue would eviscerate the privilege's purpose, which is to protect the "legislative process itself." *In re Hubbard*, 803 F.3d at 1307–08. Moreover, it would cut against the privilege's "additional purpose of shielding officials from the costs and distraction of discovery," designed to "enabl[e] them to focus on their duties." *Byrd*, 674 F. Supp. 3d at 1103.

The Board thus respectfully submits this Court should follow the "long-recognized legislative privilege" which counsels that "courts ought not compel unwilling [officials] to testify about the reasons for specific . . . votes," *Florida*, 886 F. Supp. 2d at 1303, find the Board members entitled to legislative privilege, and shield them from involuntary examinations in this matter.

### iii.   This Court should find the Board can assert legislative privilege on behalf of its members as grounds for a protective order.

The Court, in its Order, agreed with Judge Winsor's analysis that it was not clear whether the Board can assert the legislative privilege on behalf of its nonparty members. Order at 7. However, caselaw supports the notion that the Board can assert the legislative privilege on behalf of its members.

First, no subpoenas have been served in this case and therefore the Board members cannot seek to individually quash the nonexistent subpoenas. *Cf. Parnell v. Sch. Bd. of Lake Cnty., et al.*, No. 4:23cv414-AW-MAF, ECF No. 163 at 3 (N.D. Fla. July 10, 2024) (Judge Winsor's order denying the Board's initial motion for

protective order without prejudice, noting the Board members could seek to quash the subpoenas based on legislative privilege).

Second, multiple courts—including this Court—have permitted the legislative body seeking to invoke legislative privilege to invoke it on behalf of its members or others entitled to the privilege. *See, e.g.*, *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of HRS*, 164 F.R.D. 257, 259 (N.D. Fla. 1995) (Florida Legislature moved for protective order regarding depositions of legislative staff); *Doe*, 2021 WL 5882653, at *1 ("[T]he Court elects to follow those courts that permitted the legislative body to assert the [legislative] privilege [on behalf of its members]. That approach makes sense because it is the work of the legislative body that gives rise to the privilege in the first place. This inextricable link between the legislative body and the legislative privilege also confer standing on [the legislative body] to quash the subpoena based on legislative privilege."); *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1068–69 (D. Ariz. 2014) (permitting redistricting commission to move for protective order on basis of legislative privilege); *Cunningham*, 438 F. Supp. 2d at 719 (school district moved for protective order and to quash deposition notice on behalf of school board members).

That the Board may assert the legislative privilege on behalf of its members accords with the principle that the "[l]egislative privilege . . . 'may be asserted or waived [as the bearer] so chooses.'" *Byrd*, 674 F. Supp. 3d at 1107 (alteration in

original) (quoting *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 299 (D. Md. 1992)); *accord Puente Ariz. v. Arpaio*, 314 F.R.D. 664, 671 (D. Ariz. 2016) (same). And as the Fifth Circuit recently concluded, given the scope of the privilege, it is not just the legislators themselves who can invoke the legislative privilege, regardless of the fact the privilege is personal to each individual legislator. *See La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 321–22 (5th Cir. 2024) (permitting third party brought into legislative process to invoke legislative privilege concerning privileged communications with legislators and/or their staff).

As such, and in line with *Doe* and the other decisions cited herein, the Court should find the Board may assert the legislative privilege on behalf of its members. Pursuant to the Court's instructions, Order at 7, the Board is filing with this motion declarations from each individual Board member stating they understand the Board wishes to assert the legislative privilege on their behalf, affirming their intent to assert the legislative privilege here, and confirming that they are relying on counsel for the Board for doing so. *See* Board Member Declarations, **attached as Exhibits A–E**.[10] Given the clear and unequivocal indication by each Board member that: (1) they wish to assert the legislative privilege; and (2) they consent and rely on the

---

[10] The Board filed a similar renewed motion for protective order in the *Parnell* matter, pursuant to Judge Winsor's instructions there.

Board to do so, the Court should find the Board can assert the legislative privilege on behalf of its members.

### iv.    The Board has not waived any assertion to legislative privilege.

Finally, any argument that the Board has waived any assertion to legislative privilege, [D.E. 95 at 14], should be disregarded. Plaintiffs cannot use the fact that the Board has participated in discovery in this matter as a means of establishing waiver by the Board members of their entitlement to legislative privilege. As this Court has noted, the privilege may be asserted or waived as the bearer chooses. *Byrd*, 674 F. Supp. 3d at 1107. This Court acknowledged in January 2024 that the Board would be seeking a protective order based on legislative privilege, [D.E. 66 at 134:14–17], and the Board's actions thus far have not deviated from this position.

That the Board has not heretofore asserted legislative privilege in response to Plaintiffs' discovery requests does not mean it is foreclosed from ever asserting it again in this matter. *See Byrd*, 674 F. Supp. 3d at 1107 (noting defendant was waiving the privilege "insofar as it would entitle him not to appear for a deposition at all," but that "[h]e simply [wa]s not waiving more—and specifically not waiving the privilege as to his thoughts or impressions"). As in *Byrd*, so too here has the Board not waived its ability to assert legislative privilege to preclude the Board members from being forced to give testimony, under oath, as to the "thoughts or

impressions" concerning each members' vote regarding the book removals and restrictions at issue. *Id.*

Plaintiffs' cited case is inapposite, as the privilege in question there was the attorney-client privilege. [D.E. 95 at 14 (citing *SE Prop. Holdings, LLC v. GulfSouth Private Bank*, No. 3:13cv6/MCR/CJK, 2015 WL 12868077, at *3 (N.D. Fla. Feb. 27, 2015))]. In comparison to these privileges, the Eleventh Circuit has referred to the legislative privilege as "unqualified," *Pernell*, 84 F.4th at 1341, and Plaintiffs have identified no authority stating a legislator who is not a party to the case can be found to have waived the privilege based on the actions of his or her legislative body.

This is compounded by the fact that none of Plaintiffs' discovery to date has implicated the specific reasons or motivations for the Board members' votes, therefore not implicating the legislative privilege. Further, the Board's response to Plaintiffs' discovery was on behalf of the Board itself and not its individual members. Therefore, there can be no argument that legislative privilege has been waived by the individual Board members given Plaintiffs' Notices were the first discovery request which implicated their entitlement to legislative privilege. Plaintiffs cannot use the Board's participation in this lawsuit as a sword by which to compel the Board members give involuntary depositions in this matter.

**WHEREFORE**, Defendant, School Board of Escambia County, respectfully requests that this Court enter an order under Federal Rule of Civil Procedure 26(c)

preventing Plaintiffs from compelling the depositions of the members of the School Board of Escambia County, and to award any such other relief as this Court deems appropriate.

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 5,764 words, excluding the parts exempted by said Local Rule.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

The undersigned certifies that they have conferred with opposing counsel regarding this issue by email on July 23, 2024, and again telephonically and by email on July 26, 2024. Opposing counsel opposes the relief requested herein.

Respectfully submitted,

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050

Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:    Kristy L. Parker at kristy.parker@protectdemocracy.org;    John    Thomas    Langford    at john.langford@protectdemocracy.org;    Shalini    Goel    Agarwal    at shalini.agarwal@protectdemocracy.org;    Kirsten    Elizabeth    Fehlan    at fehlank@ballardspahr.com;    Lynn    Beth    Oberlander    at oberlanderl@ballardspahr.com;  Paul  Joseph  Safier  at  safierp@ballardspahr.com (Counsel  for  Plaintiffs);  Rachel  Elise  Fugate  at  rfugate@shullmanfugate.com (Counsel for Clay Calvert, et al.); Clarence William Phillips at cphillips@cov.com; Jayne Foley Hein at jhein@cov.com; Nicholas Eli Baer at nbaer@cov.com; Robert

C. Buschel at buschel@bglaw-pa.com (Counsel for Florida State Conference NAACP, et al.); Bridget K. O'Hickey at bridget.ohickey@myfloridalegal.com; Daniel William Bell at daniel.bell@myfloridalegal.com; David Matthew Costello at david.costello@myfloridalegal.com; and Henry Charles Whitaker henry.whitaker@myfloridalegal.com (Counsel for State of Florida).

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Defendant

26