## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, BENJAMIN
GLASS, on behalf of himself and his
minor child, GEORGE M.
JOHNSON, DAVID LEVITHAN,
KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN
PARKER, on behalf of himself and
his minor child, ASHLEY HOPE                    CASE NO.:  3:23-CV-10385-TKW-ZCB
PÉREZ, and CHRISTOPHER
SCOTT SATTERWHITE, on behalf
of himself and his minor child,

     Plaintiffs,

vs.

ESCAMBIA COUNTY SCHOOL
BOARD,

     Defendant.

_____ /

## ESCAMBIA COUNTY SCHOOL BOARD'S MOTION FOR
## ORDER PERMITTING DEFENDANT TO RETAIN AND USE
## INADVERTENTLY DISCLOSED INFORMATION

Defendant, Escambia County School Board ("Board"), hereby files this

Emergency Motion for Order Permitting Defendant to Retain and Use Inadvertently

Disclosed Information,[1] pursuant to paragraph 15.c) of the Parties' Stipulated Confidentiality Order, [D.E. 79], and states:

## I.    INTRODUCTION AND BACKGROUND

1.    This case arises from the Board's alleged decisions to either remove or restrict access to certain books from the libraries in the Escambia County School District ("District"), and Plaintiffs' subsequent challenge to these alleged actions. [D.E. 27].

2.    Relevant to this Motion, Plaintiff PEN American Center, Inc. ("PEN"), alleges violations of its First Amendment rights based on purported viewpoint discrimination based on the Board's alleged actions. *Id.* at ¶¶ 215–22.

3.    PEN claims both organizational and associational standing to sue the Board. *Id.* at ¶¶ 195–200.

4.    In order to facilitate open and complete discovery, the Parties moved for entry of a stipulated confidentiality order, which the Court granted. [D.E. 79 ("Confidentiality Order")].

5.    In the Confidentiality Order, the topic of inadvertent disclosure of material subject to a claim of attorney-client privilege, work product protection, or

---

[1] As argued below, Plaintiffs' disclosure should not be considered inadvertent. However, for purposes of this motion, the Board seeks to enforce said provision in the Parties' Stipulated Confidentiality Order. [D.E. 79 at ¶ 15.c)].

any other privilege or protection is covered, labeled "Inadvertently Disclosed Information." *Id.* at ¶ 15.

6.      Namely, it states that, in the event a party discloses Inadvertently Disclosed Information, the receiving party "may move the Court for an order permitting it to retain and use the Inadvertently Disclosed Information." *Id.* at ¶ 15.c).

7.      On August 1–2, 2024, the Board deposed PEN's corporate representative, pursuant to Federal Rule of Civil Procedure 30(b)(6).

8.      On August 1, 2024, PEN's corporate representative was asked what documents she had brought with her to the deposition. Summer Lopez Dep. Tr. 4:12–4:15, **attached as Exhibit A**.[2]

9.      PEN's corporate representative answered that, in addition to other documents, she had brought "some information about each of the books that are implicated in the case." (hereinafter referred to as the "Disputed Document"). *Id.* at 4:16–4:21.[3]

---

[2] PEN's corporate representative was Summer Lopez, PEN's Chief Program Officer, Free Expression Programs.

[3] The Board is not filing the Disputed Document as an exhibit to this Motion, given Plaintiffs' counsel's claims of privilege. The Board will submit the Disputed Document directly to the Court's chambers or via motion under seal, per the Court's preference, for the Court's *in camera* review.

10.     The Board's counsel asked Plaintiffs' counsel to "have somebody email them over to [the Board's counsel], so that [the Board's counsel could] have the opportunity to actually see them." *Id.* at 5:18–5:21. Plaintiffs' counsel replied that would be fine. *Id.* at 5:22, 5:25.

11.     In order to dispel any confusion, the Board's counsel reiterated that the Board wanted "any document that the witness is going to be using during her testimony that has not been furnished in response to [the Board's] Request for Production" to be produced and disclosed. *Id.* at 6:1–6:5. Namely, "if there are PEN documents that have not been produced to [the Board], [the Board] need[ed] those." *Id.* at 6:7–6:11.

12.     Plaintiffs' counsel again agreed, stating "[Plaintiffs] created a spreadsheet to summarize all the information for each of the books and *[Plaintiffs are] happy to produce that*," and then confirmed that "this particular document [i.e., the Disputed Document,] was *created for the purpose of this 30(b)(6) deposition.*" *Id.* at 6:12–6:19 (emphases added).

13.     Within minutes, Plaintiffs' counsel emailed a copy of the Disputed Document to the Board's counsel, along with another document that the witness brought to the deposition, neither of which had been previously produced.

14.     At no point during the deposition on August 1 did Plaintiffs' counsel claim the Disputed Document was subject to any claim of privilege or protection. At

no point prior to providing the Board's counsel with the Disputed Document did Plaintiffs' counsel resist disclosure, claim they would not provide the Disputed Document, or argue it was being withheld under a claim of privilege or protection.

15.    Indeed, the email Plaintiffs' counsel sent to the Board's counsel was titled "Documents for PEN 30(b)6 Deposition." *See* Aug. 1, 2024 email from Lynn Oberlander, **attached as Exhibit B** (without attachments).

16.    The Disputed Document contained nothing in the title stating it was privileged or confidential; rather it was merely titled "Book pages for Summer deposition." Although the Disputed Document's header stated "PRIVILEGED AND CONFIDENTIAL," the Board's counsel understood Plaintiffs' counsel had waived any such privilege because: (1) the document was brought by the witness to the deposition; (2) her attorney provided it to the Board's counsel at the beginning of the deposition; and (3) the other document Plaintiffs' counsel simultaneously had provided to the Board's counsel was a spreadsheet titled, "Copy of Escambia calculations-PRIVILEGED AND CONFIDENTIAL-PREPARED FOR 30(b)(6) Deposition," which spreadsheet the Board's counsel marked as an exhibit without objection and referred to throughout the deposition in connection with PEN's diversion of resources allegations in support of its organizational standing.

17.    The Disputed Document was not otherwise referenced on August 1. At no time during August 1 did Plaintiffs' counsel inform the Board's counsel that the

Disputed Document was privileged or protected, or otherwise indicate it was inadvertently disclosed.

18.    During the first day of the deposition, one of the Board's lawyers studied the Disputed Document and prepared notes based upon it. The Disputed Document sets forth various categories of information regarding the 164 library books at issue in the lawsuit, which were going to be discussed during the second day of the deposition. During the evening after the first day of the deposition, undersigned counsel reviewed the Disputed Document along with her colleague's notes on the document in preparation for questioning PEN's corporate representative regarding the books.

19.    On August 2, 2024, the second day of PEN's corporate representative's deposition, the Board's counsel sought to mark the Disputed Document as Exhibit 23. *See id.* at 7:9–7:10. It was only at this point that Plaintiffs' counsel objected to use of the Disputed Document for the first time.

20.    First, Plaintiffs' counsel stated she "sent [the Disputed Document] to [the Board's counsel] because [Plaintiffs] anticipated that [the Parties] would be going through [the Disputed Document] [on August 1]," but that Plaintiffs had apparently "recognized that there [we]re some errors in [the Disputed Document], so [Plaintiffs] would like to withdraw that." *Id.* at 7:17–21. Plaintiffs' counsel

6

continued that "[i]t was provided" because "we were planning on relying upon [it] and that's as of yesterday, that was it." *Id.* at 8:5–8:8.

21.    The Board's counsel responded that because PEN's corporate representative had brought the Disputed Document with her to a deposition, the Board was "permitted to see what [the witness] ha[s] in front of them." *Id.* at 8:13–8:17. Plaintiffs' counsel agreed. *Id.* at 8:18.

22.    The Board's counsel also stated that she would be willing to allow Plaintiffs to provide a corrected version of the Disputed Document to correct the alleged errors, but that the Board felt "entitled . . . to ask questions about this document that PEN's 30(b)(6) witness brought with her, for purposes of her deposition testimony." *Id.* at 8:19–9:3. Again, Plaintiffs' counsel noted her agreement with the Board's counsel's position. *Id.* at 9:4–9:5.

23.    After some additional discussion, the Board's counsel marked the Disputed Document as Exhibit 23 to the deposition. *Id.* at 10:6–10:12.

24.    It was only at this point that Plaintiffs' counsel raised the notion that the Disputed Document contained some information purported to fall under the "attorney/client work product privilege," and that "is what [Plaintiffs' counsel] will advise [PEN's corporate representative] to say about that particular information." *Id.* at 10:15–10:21. Plaintiffs' counsel stated not all information in the Disputed Document was privileged. *Id.* at 10:21–10:23.

25.    After a recess, Plaintiffs' counsel reiterated that the Disputed Document allegedly "was provided to [the Board] in error," and "contain[ed] attorney/client work product information, and [Plaintiffs' counsel] [was] asking to [claw] it back." *Id.* at 11:12–11:17.

26.    The Board's counsel took the position that any privilege had been waived, and that the Board's counsel had already reviewed the Disputed Document and prepared for the deposition based on this review of the Disputed Document. *Id.* at 12:2–12:10. The Board's counsel also indicated she had prepared her deposition based on the premise of using the Disputed Document, given its disclosure. *Id.* at 13:2–13:6.

27.    After additional discussion, the Board's counsel then questioned PEN's corporate representative about the Disputed Document; namely, she was asked whether she reviewed it. *Id.* at 22:21–22:25. PEN's corporate representative confirmed she had reviewed it "in a general sense." *Id.* at 23:1.

28.    When asked when she reviewed it, *id.* at 23:3, PEN's corporate representative stated she reviewed it "sort of the day before the deposition." *Id.* at 23:4.

29.    When asked whether she reviewed the Disputed Document "in preparation for your deposition," *id.* at 23:5–23:6, PEN's corporate representative stated "I looked generally through it," in order to "make sure I was familiar with the

format and generally what information was in [the Disputed Document], *and then I intended to make use of it during the deposition*." *Id.* at 23:7–23:12 (emphasis added).

30.    The Board's counsel then asked PEN's corporate representative to clarify her statement from the first day regarding the documents she had in front of her and her comment that one of the things she "had in front of [her] was notes on the books," *id.* at 23:13–23:17; PEN's corporate representative confirmed [t]hat was reference to [the Disputed Document]." *Id.* at 23:18.

31.    Ultimately, the Parties were unable to reach a resolution on the matter; however, the Board informed Plaintiffs on August 2, 2024, that the Board intended to seek an order from the Court, pursuant to the Confidentiality Order, permitting it to retain and use the Disputed Document. Plaintiffs opposed such a request.

32.    On August 6, 2024, Plaintiffs sent correspondence to the Board, purporting to explain why the Disputed Document was inadvertently disclosed ("Letter"). *See* Aug. 6, 2024 letter from Lynn Oberlander, **attached as Exhibit C**. Plaintiffs' Letter contains multiple material inaccuracies.

33.    Specifically, it states the Disputed Document "was not looked at or reviewed by the deponent prior to [Plaintiffs] sending it to [the Board]." *Id.* This was directly contradicted by PEN's corporate representative, who conceded she reviewed the document, "the day before the deposition," in order to make sure she "was

familiar with the format and generally what information was in there," and that she "intended to make use of it during the deposition." Ex. A at 22:21–23:12.

34.    Plaintiffs' Letter also claims that "[u]pon discovery of" the fact the Disputed Document "contain[ed] material protected by the attorney work-product privilege and should not have been provided to [the Board]," Plaintiffs "immediately asked for its return or destruction." Ex. C. That is also inaccurate.

35.    In reality, Plaintiffs' counsel said nothing about any privilege or protection concerning the Disputed Document on August 1; only on August 2 did Plaintiffs' counsel raise the issue and only *after* the Board's counsel sought to mark it as an exhibit. Ex. A at 7:3–8:2. And although Plaintiffs' counsel conceded they had "recognized that there are some errors," *id.* at 7:20, they waited until the Board's counsel brought the Disputed Document up to attempt to claw it back. Thus, Plaintiffs' Letter's claim that Plaintiffs "immediately" asked that the Disputed Document be returned once they discovered the Disputed Document was privileged/protected is belied by Plaintiffs' counsel's own statements.

36.    Plaintiffs' Letter is revealing in one sense: it admits the Disputed Document was "prepared with the intent of using it" during PEN's corporate representative's deposition. Ex. C. As argued herein, such admission—as well as Plaintiffs' other actions—make the Disputed Document subject to disclosure.

37.    The Board therefore seeks an order from the Court, pursuant to paragraph 15.c) of the Confidentiality Order, that the Board be permitted to retain and use the Disputed Document. Among other issues, the Disputed Document is highly relevant to the issues of PEN's standing and whether the books at issue contain sexual conduct, as defined by Florida law. The relevance of the Disputed Document to this lawsuit—both in terms of PEN's claims and the Board's defenses—is therefore clear, and the Board should be permitted to retain and use the Disputed Document given Plaintiffs' waiver of any sort of privilege or protection.

## II.    <u>ARGUMENT</u>

The Court should find Plaintiffs have waived any privilege or protection of the Disputed Document because: (1) PEN's Corporate Representative relied on the Disputed Document in preparing for her deposition and brought it to her deposition as an aid; and (2) Plaintiffs voluntarily disclosed the Disputed Document to the Board, thereby waiving any alleged privilege concerning the Document.

### A. PEN's Corporate Representative Reviewed and Relied On the Disputed Document, Making It Subject to Disclosure

As a threshold matter, "[t]he party resisting discovery bears the burden of demonstrating the applicability of the work product doctrine." *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990). The same holds true for any claim of attorney-client privilege. *Brown v. Finlay Enters., Inc.*, No. 3:06cv414/RV/EMT, 2008 WL 11458569, at *3 (N.D. Fla. Jan. 4, 2008). Plaintiffs'

counsel has yet to explain how the Disputed Document contains attorney-client privilege information. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (characterizing privilege as covering confidential communications between client and counsel).

Regardless, as the party resisting disclosure of the Disputed Document, any basis of privilege or protection is Plaintiffs' burden to carry; they have yet to meet this burden. The Board submits Plaintiffs cannot satisfy this burden and, even if they can, any such protections are waived because PEN's corporate representative reviewed and relied upon the Disputed Document for her deposition and Plaintiffs willingly provided the Disputed Document to the Board, making it subject to disclosure.

Federal Rule of Evidence 612 states that when a witness uses a writing to refresh their memory during testimony an adverse party is entitled to its disclosure; similarly, for documents reviewed prior to testifying, the court may require disclosure if justice so requires. Fed. R. Evid. 612(a)–(b); *see also United States v. Williams*, 875 F.2d 846, 854 (11th Cir. 1989) ("Rule 612's language grants a trial court discretion in ordering the production of documents.").

"Courts have routinely applied this rule to documents reviewed by a witness in preparation for a deposition." *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, No. 304CV400J32MCR, 2006 WL 786425, at *4 (M.D. Fla. Mar. 27, 2006). And in

applying this Rule to deposition testimony, it is found to overcome claims of privilege or protection. *Antero Resources Corp. v. Tejas Tubular Prods., Inc.*, 516 F. Supp. 3d 752, 754 (S.D. Ohio 2021) ("[I]f a witness uses documents for a testimonial purpose . . . any claim of work product protection over those documents is waived."); *Heron Interact, Inc. v. Guidelines, Inc.*, 244 F.R.D. 75, 78 (D. Mass. 2007) ("[T]he [attorney-client] privilege may be pierced by operation of Rule 612."); *see also Nutramax Lab'ys, Inc. v. Twin Lab'ys Inc.*, 183 F.R.D. 458, 461 (D. Md. 1998) ("[A] deposing attorney may contend that if the witness used the documents to prepare for the deposition, then work product immunity has been waived, and Fed. R. Evid. 612 requires the production of the documents."); Fed. R. Evid. 30(c)(1) ("The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615."). "An adverse party is entitled to have the writing produced, and to introduce in evidence any portion that relates to the witness's testimony." *Harvey v. Walmart, Inc.*, No. 23-11213, 2024 WL 1460314, at *1 (11th Cir. Apr. 4, 2024).

Plaintiffs' Letter's concession that the Disputed Document was prepared "with the intent of using it," Ex. C, at the deposition also shows why it is subject to disclosure. *See United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 25 (N.D. Cal. 1985) ("Rule 612 applies to written materials reviewed prior to a deposition. Rule 612(2) in particular has been interpreted to permit discovery of writings (or portions

thereof) that a witness reviewed *before* a deposition for the purpose of refreshing his or her recollection; any privilege or work product protection against disclosure is deemed waived as to those portions so reviewed." (citations omitted)); *cf. In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988) (upholding district court order requiring parties to reveal documents selected prior to the deposition for use in deposition because counsel intended to use the allegedly protected materials during the deposition).

Rule 612 does not operate differently simply because the witness being deposed is a corporate representative pursuant to Rule 30(b)(6). *Melaih v. MSC Cruises, S.A.*, Nn. 20-CV-61341-SMITH/VALLE, 2021 WL 6757166, at *3 (S.D. Fla. May 19, 2021) (rejecting argument that Rule 30(b)(6) witness is different from and therefore immune to Rule 612 and collecting cases); *see also Seven Sea Cruises S. DE R.L. v. V. Ships Leisure Sam*, No. 09–23411–CIV , 2010 WL 5187680, at *4 (S.D. Fla. Dec. 10, 2010) ("[A]ny documents that were used by the corporate representative to refresh his/her recollection regarding specific areas of inquiry at the deposition also had to be produced at the deposition.").

Put simply, because PEN's corporate representative reviewed and used the Disputed Document to refresh her recollection prior to her deposition—and intended to make use of it during her deposition—it is subject to disclosure, regardless of any claims of privilege or protections by Plaintiffs. *Audiotext Comm'ns Network, Inc. v.*

14

*US Telecom, Inc.*, 164 F.R.D. 250, 253 (D. Kan. 1996) ("As a general rule, when a document is used to refresh one's recollection, any privilege protecting that document must give way." (citation omitted)); *Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 122 (S.D.N.Y. 2010) ("[P]laintiff waived that privilege when she relied on the notes in connection with her deposition testimony.").

Here, PEN's corporate representative admitted upon questioning that she reviewed the Disputed Document in preparation for her deposition and she intended to make use of it during the deposition. Ex. A at 22:21–23:12; *see also* Ex. C (Disputed Document prepared "with the intent of using it"). This alone makes it subject to disclosure. *Thomas*, 264 F.R.D. at 122. And it is not as if the Disputed Document contains information immaterial to PEN's corporate representative's deposition; rather—and without disclosing allegedly privileged/protected details— the Disputed Document contains information clearly germane to PEN's standing (disputed by the Board) as well as information related to Plaintiffs' position on the viewpoint that is purportedly being discriminated against, and whether there is the description or depiction, *vel non*, of sexual conduct, as defined by Florida law, in the books which Plaintiffs contend were impermissibly removed or restricted based on viewpoint animus.

The description or depiction of sexual conduct, as defined by Florida law, is, as the Board noted in its Response in Opposition to Plaintiffs' Motion for

15

Preliminary Injunction, a legitimate pedagogical purpose by which these books may be restricted. [D.E. 105 at 20–25]. Thus, this evidence within the Disputed Document is "likely to play a substantial role in [Plaintiffs'] case," concerning both PEN's standing and Plaintiffs' broader claims of viewpoint discrimination, and therefore "it is in the interests of justice for [the Board] to be able to adequately cross-examine [PEN]" by being able to use the Disputed Document during its deposition and introduce it as evidence. *Thomas*, 264 F.R.D. at 122.

That Plaintiffs may argue PEN's corporate representative merely relied on the document before her deposition and not during does not preclude disclosure. *Auto Owners*, 135 F.R.D. at 202 (noting cases which have expanded application of Rule 612 to depositions and "gives the court discretion to allow an adverse party to inspect a writing used by a witness to refresh his memory *before* or while testifying (emphasis added)); *see also Wheeling-Pittsburgh Steel Corp. v. Underwriters Lab'ys, Inc.*, 81 F.R.D. 8, 9 (N.D. Ill. 1978) (assuming documents were protected from disclosure by attorney-client privilege but still finding witness' "use of said documents to refresh his recollection immediately prior to his deposition hearing, served as an effective waiver of any such privilege," and that the documents were therefore discoverable); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 242 (D. Md. 2010).

And that Plaintiffs may argue PEN's corporate representative did not use the Disputed Document to "refresh" her recollection, rather she merely used it in preparing for her deposition, is also belied by her statements and the fact she brought the Disputed Document to her deposition. *E.g.*, *Heron Interact, Inc.*, 244 F.R.D. at 77 (granting motion to compel production of documents as corporate representative admitted "he gathered, created and utilized the information to refresh his understanding of the events *and to prepare his testimony*. And, in accord with those efforts, [the witness] *brought the [disputed] documents with him to the deposition*. Thus, the documents easily fall within the purview of Rule 612" (emphases added)); *see also id.* ("Plaintiff argues somewhat more specifically that [its witness] did not have to refer to these documents *in order to refresh his memory* during the course of the deposition. Yet, . . . it is clear that the preparation which [the witness] undertook *prior* to the deposition—including creating and reviewing the documents—was for that very purpose. That, of course, is all that is needed to fall within the purview of Rule 612.").

PEN's corporate representative clearly relied on the Disputed Document to aid in preparing her testimony concerning what she (correctly) anticipated would be key inquiries into PEN's standing and claims of viewpoint discrimination, and thus clearly brought the Disputed Document with her to her deposition for the purposes of aiding her testimony and refreshing her recollection as need be. It is therefore

apparent her reliance on the Disputed Document affected her testimony. The Board is accordingly entitled to its disclosure "so as to have a complete record of its examination as well as to test [PEN's corporate representative's] credibility." *Id.*; *see also In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 215707, at *3 (M.D. Fla. Jan. 24, 2008) ("[T]the 'interests of justice' standard of Rule 612 incorporates as part of the balancing analysis the protection afforded by the work-product doctrine, while the 'substantial need' requirement of Rule 26 can take into account the need for disclosure under Rule 612." (citing *In re Comair Disaster Litig.*, 100 F.R.D. 350, 353 (E.D. Ky. 1983))); *In re Comair*, 100 F.R.D. at 353 (finding that when "a witness has used such materials to refresh his recollection prior to testifying, [Rule 612] weights the balance in favor of finding that [a] 'substantial need] exists [pursuant to Federal Rule of Civil Procedure 26(b)(3)], because of the policy in favor of effective cross-examination").

At bottom, Plaintiffs cannot escape the fact that the Disputed Document was used by PEN's corporate representative to: (1) refresh her recollection prior to testifying; (2) it was used for the purpose of testifying at her deposition, a fact PEN's corporate representative conceded; and (3) disclosure is thus necessary in the interests of justice. *Johnson v. Del Monte Fresh Produce Co.*, No. 09–22425–CIV, 2010 WL 3717337, at *4 (S.D. Fla. Sept. 17, 2010) (elaborating factors). That this may have been done in preparation is no matter. *Edwards v. Speedway, LLC*, No.

18-23091-Civ-SCOLA/TORRES, 2019 WL 13066871, at *1 (S.D. Fla. May 15, 2019). Accordingly, the Court should order Plaintiffs to disclose the Disputed Document so that the Board may be permitted to use and retain it.

## B. Plaintiffs Voluntarily Disclosed the Disputed Document, Waiving Any Protection

As an additional reason for why the Disputed Document should be ordered disclosed, any claims of protection or privilege Plaintiffs may have had to it were waived when Plaintiffs' counsel voluntarily disclosed the Disputed Document. *See Chick-Fil-A v. ExxonMobil Corp.*, No. 08-61422-CIV, 2009 WL 3763032, at *3 (S.D. Fla. Nov. 10, 2009) (finding disclosing party's "intentional, voluntary disclosure" to receiving party of a memorandum meant disclosing party had waived any work product protections, and collecting cases).

Federal Rule of Evidence 502(b) provides that a disclosure does not operate as a waiver if (1) "the disclosure is inadvertent," (2) "the holder of the privilege or protection took reasonable steps to prevent disclosure," and (3) "the holder promptly took reasonable steps to rectify the error." "All three elements must be met [by the disclosing party] and the disclosing party bears the burden of proving that these elements have been met." *Muy v. Int'l Bus. Machines Corp.*, No. 4:19cv14-MW/MAF, 2020 WL 13470562, at *3 (N.D. Fla. Nov. 13, 2020) (cleaned up)

(quoting *Walker v. GEICO Indem. Co.*, No. 615CV1002ORL41KRS, 2016 WL 11578803, at *6 (M.D. Fla. July 11, 2016)).[4]

Under these circumstances—that is, Plaintiffs' counsel voluntarily emailed the Board's counsel the Disputed Document in an email clearly indicating it was documents to be used during the Rule 30(b)(6) deposition, made no claims of privilege or protection at that time and indeed waited for a full day to assert such claims, and only then asserted claims of privilege and protection after first claiming the Disputed Document merely contained errors—Plaintiffs' actions cannot be considered inadvertent. By their own actions, Plaintiffs have waived any protections to the Disputed Document, and the Board should be permitted to retain and use it. *In re: Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholder Derivative Litig.*, 270 F. Supp. 3d 1332, 1338 (S.D. Fla. 2017) ("Generally, work-product protection is waived when protected materials are voluntarily disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or which

---

[4] Although the Confidentiality Order contains a clawback provision, there is nothing in it indicating that it supplants Rule 502(b)'s waiver standard, and thus that is the standard through which Plaintiffs' counsel's actions should be viewed. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1323 (M.D. Fla. 2017); *cf. Muy*, 2020 WL 13470562, at *4 (noting clawback provision "could supplant Rule 502(b)'s waiver standard"). Indeed, the existence of subparagraph 15.c) and its provision allowing a party to seek an order from the Court permitting it to retain and use inadvertently disclosed material explicitly show that, depending on the circumstances, some disclosed material will not be permitted to be clawed back.

'substantially increases the opportunity for potential adversaries to obtain the information.'" (quoting *In re Grand Jury Subpoenas*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982))).

This was not, for example, a scenario in which a handful of documents slipped through during production of countless other documents, *e.g.*, *In re: Testosterone Replacement Therapy Prods. Liab. Litig.*, 301 F. Supp. 3d 917, 920 (N.D. Ill. 2018) (denying effort to prohibit party to claw back six documents produced among approximately 180,000 documents); nor was it the case where, among a massive tranche of documents, a small percentage were inadvertently disclosed. *E.g.*, *Northrop Grumman Sys. Corp. v. United States*, 120 Fed. Cl. 436, 438 (Fed. Cl. 2015) (finding release of approximately 1500 documents among more than three million which were produced was inadvertent). It was similarly not a case where properly produced documents contained notations or other notes which were meant to be redacted. *See, e.g.*, *Hancock Bank v. Toole*, No. 5:13–cv–44–RS–GRJ, 2013 WL 12106939, at *2 (N.D. Fla. Dec. 3, 2013) (finding hand-written notes disclosed as part of more than 2600 pages of documents were intended to be redacted). And it was not a case where the Board somehow coerced Plaintiffs into disclosing the Disputed Document. *See In re: Chiquita Brands*, 270 F. Supp. 3d at 1339 (rejecting party's 'coerced' production theory).

Rather, this concerns a single document. A single document that Plaintiffs' counsel willingly, voluntarily, and with no objection or claim of privilege or protection, sent to the Board upon request. At no point during the first day of PEN's corporate representative's deposition did Plaintiffs try to claim the Disputed Document should be considered privileged or protected. At no time did they seek to claw it back. Instead, it was only on the second day, and only after the Board's counsel sought to introduce it as an exhibit, that Plaintiffs belatedly tried to claw it back. That Plaintiffs first claimed it was due to errors before then changing tack to later claim it was privileged and protected cannot be overlooked. This shifting of arguments shows that the disclosure could not have been inadvertent. That is, Plaintiffs' own internal lack of understanding as to why the Disputed Document should allegedly not have been disclosed in the first place defeats any claim they may have that the Disputed Document was never intended to be disclosed.

Moreover, Plaintiffs cannot show that they took reasonable steps to prevent disclosure; indeed, Plaintiffs' counsel voluntarily sent the Disputed Document to the Board's counsel, upon request, and made no effort to claim privilege or protection until 24 hours after the fact. This belies any argument by Plaintiffs they tried to claw it back "immediately"; as this Court has noted, "[t]here can be no reasonable efforts, unless there are efforts in the first place." *Muy*, 2020 WL 13470562, at *4 (quoting *Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 55 (D.D.D. 2009)); *see also id.* ("While

Rule 502(b) gives this Court the power 'to round up the animals and put them back in the barn,' Plaintiff must first show that she 'took reasonable efforts to keep the barn door closed.'" (quoting *Amobi*, 262 F.R.D. at 55)). Indeed, the Disputed Document contains the words "PRIVILEGED AND CONFIDENTIAL" at the top of each page; that Plaintiffs did not heed their own apparent warnings cannot be seen as taking reasonable efforts to prevent disclosure. *Cf. Absolute Activist Value Master Fund Ltd. v. Devine*, 262 F. Supp. 3d 1312, 1325 (M.D. Fla. 2017) (noting none of the documents stated the words "privileged," "private," or "confidential," and thus it was "not readily apparent from the fact of the documents that they [we]re privileged or confidential").

Plaintiffs voluntarily disclosed the Disputed Document. Their efforts to prevent disclosure were not reasonable. Under these circumstances, its disclosure should not be considered inadvertent and, pursuant to subparagraph 15.c) of the Confidentiality Order, the Board should be permitted to retain and use it.

**WHEREFORE**, Defendant, Escambia County School Board, respectfully requests an order from this Court permitting the Board to retain and use the inadvertently disclosed information, as described herein.

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 4,949 words, excluding the parts exempted by said Local Rule.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

The undersigned certifies that they have conferred with opposing counsel regarding this issue orally during the Rule 30(b)(6) deposition on August 2, 2024, at which time the undersigned informed opposing counsel they intended to file this motion. Opposing counsel sent the above-described correspondence on August 6, 2024, and the parties conferred telephonically again on August 7, 2024. Opposing counsel opposes the relief requested herein, as stated above.

Respectfully submitted,

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050

Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on DATE, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Kristy L. Parker at kristy.parker@protectdemocracy.org; John Thomas Langford at john.langford@protectdemocracy.org; Shalini Goel Agarwal at shalini.agarwal@protectdemocracy.org; Kirsten Elizabeth Fehlan at fehlank@ballardspahr.com; Lynn Beth Oberlander at oberlanderl@ballardspahr.com; Paul Joseph Safier at safierp@ballardspahr.com and Goldie Fields at fieldsg@ballardspahr.com (Counsel for Plaintiffs); Rachel Elise Fugate at rfugate@shullmanfugate.com (Counsel for Clay Calvert, et al.); Clarence William Phillips at cphillips@cov.com; Jayne Foley Hein at jhein@cov.com;

Nicholas Eli Baer at nbaer@cov.com; Robert C. Buschel at buschel@bglaw-pa.com (Counsel for Florida State Conference NAACP, et al.); Bridget K. O'Hickey at bridget.ohickey@myfloridalegal.com; Daniel William Bell at daniel.bell@myfloridalegal.com; David Matthew Costello at david.costello@myfloridalegal.com; and Henry Charles Whitaker henry.whitaker@myfloridalegal.com (Counsel for State of Florida).

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Defendants

26