# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, LINDSAY
DURTSCHI, on behalf of herself and
her minor children, BENJAMIN
GLASS, on  behalf of himself and
his minor child, GEORGE M. JOHNSON,
DAVID LEVITHAN, KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN PARKER,
on behalf of himself and his
minor child, ASHLEY HOPE PÉREZ,
ERICA ROY, on behalf of herself
and her minor children, and
CHRISTOPHER SCOTT SATTERWHITE,
on behalf of himself and his
minor child,

       Plaintiff's,

-vs-                 CASE NO.:3:23-CV-10385-TKW-ZCB

ESCAMBIA COUNTY SCHOOL
BOARD,

       Defendant.
_____/

**EXCERPT OF THE 30(B)(6) TESTIMONY OF CORPORATE**
**REPRESENTATIVE DURING THE DEPOSITION OF SUMMER LOPEZ**
**ON THE EXCLUSION OF EXHIBIT 23**

    Reported by Elaine Richbourg, a Stenograph and
Shorthand Reporter and Notary Public within and for
the State of Florida, taken via Zoom
Videoconference, on Thursday, August 1st and August
2nd, 2024, commencing at approximately 9:00 A.M.
CDST.

# ELAINE RICHBOURG
**COURT REPORTER**
**Cantonment, Florida 32533**
**(850) 712-0984**
**elainerichbourg@cox.net**

1                    **APPEARANCES**

2    For the Plaintiffs:

3                         LYNN OBERLANDER, ESQUIRE
                         KIRSTEN FEHLAN, ESQUIRE
4                         Ballard Sphar LLP
                         1735 Market Street, 51st Floor
5                         Philadelphia, PA  19103-7599
                         and
6                         DIANE BRINKLEY, ESQUIRE

7                         SHALINI GOEL AGARWAL, ESQUIRE
                         ORI LEV, ESQUIRE
8                         Protect Democracy
                         2020 Pennsylvania Avenue
9                         NW Suite 163
                         Washington, DC  20006-1811

10

11   For the Defendant:

12                        NICOLE SIEB SMITH, ESQUIRE
                         JEFFREY GROSHOLZ, ESQUIRE
13                        Rumberger, Kirk & Caldwell, P.A.
                         101 North Monroe Street, Suite 1050
14                        Tallahassee, FL  32301
                         and
15                        SAMANTHA DUKE, ESQUIRE
                         Rumberger, Kirk & Caldwell, P.A.
16                        300 S. Orange Avenue, Suite 300
                         Orlando, FL  32801

17

18   Also Present:

19                        CAYLA MOSELEY
                         KATIE BLANKENSHIP

20

21   COURT REPORTER:
              ELAINE RICHBOURG
22

23

24

25

1                    <u>INDEX OF TRANSCRIPT</u>

2    WITNESS:

3        EXCERPT OF TESTIMONY

4            Excerpts................................. 04

5    Reporter's Deposition Certificate...............24

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Whereupon,

2                    **SUMMER LOPEZ**,

3    having been first duly sworn to tell the truth, the whole

4    truth and nothing but the truth, testified as follows:

5                    **DIRECT EXAMINATION**

6    BY MS. SMITH:

7            (The following is an excerpt from the

8        testimony of Summer Lopez, 30(b)(6) corporate

9        representative, taken on August 1st and 2nd,

10        2024:)

11    August 1st, 2024

12    Q    (By Ms. Smith) Okay.  And I can see, in

13    your room, that you have some binders in front of

14    you.  So, can you tell me what you have brought with

15    you today?

16    A    Sure.  So, we have a binder that has the

17    -- the Complaint, the Amended Complaint, the Notice

18    of Taking Deposition, my Declaration and our

19    responses to the Complaint.  And then we also have

20    some information about each of the books that are

21    implicated in the case, and some additional notes to

22    cover budget information, some other kind of

23    numbers, and staffing details that I want to be sure

24    I have correct.  And we also have copies of our

25    organizational charts, and a document laying out how

1    we've calculated some of the amount of time and

2    resources that have been allocated to our work

3    responding to Escambia.

4          Q    Okay.  And as to that last category, the

5    documents regarding laying out time and resources

6    that PEN has devoted to towards Escambia County,

7    were those documents produced to Defendant, to your

8    knowledge?

9                MS. OBERLANDER:  They have not been

10               produced, but we will produce them.  They were

11               created for this, so that we had -- so we could

12               speak knowledgably and we will produce them to

13               you.

14               MS. SMITH:  Okay.

15               MS. OBERLANDER:  Or we can -- can you hear

16               me?  Or we can show them on the screen, as

17               Summer goes through them.

18               MS. SMITH:  Yes.  I would like you, if you

19               could, Lynn, to have somebody email them over

20               to us, so that we have the opportunity to

21               actually see them if she's --

22               MS. OBERLANDER:  That's fine.

23               MS. SMITH:  -- going to be testifying

24               about them today.

25               MS. OBERLANDER:  That's fine.

1          MS. SMITH:  And that would be the same for

2     any document that the witness is going to be

3     using during her testimony that has not been

4     furnished in response to our Request for

5     Production.  Is that agreeable, Lynn?

6          MS. OBERLANDER:  Uh --

7          MS. SMITH:  Meaning, I don't need the

8     Complaint; I don't need -- I don't need the

9     filings in the lawsuit, but if there are PEN

10     documents that have not been produced to us, we

11     need those.

12          MS. OBERLANDER:  Yes.  Yes.  Well, these,

13     I mean, these are -- that's fine.  I mean, this

14     is -- we created a spread -- as you'll see, we

15     created a spreadsheet to summarize all the

16     information for each of the books and we're

17     happy to produce that, but to be clear, it

18     was -- this particular document was created for

19     the purpose of this 30(b)(6) deposition.

20          MS. SMITH:  Understood.  Okay.  So, it's

21     going to be the spreadsheet and then the

22     documents laying out the time and resources

23     devoted to Escambia that haven't been

24     previously produced; that's what you're going

25     to be sending to us?

1          MS. OBERLANDER:  Yes.

2          MS. SMITH:  Okay.  Thank you.

3          (The deposition continued and the

4      following excerpt was taken on August 2nd,

5      2024:)

6      Q    (By Ms. Smith) In this lawsuit PEN is not

7  directly challenging House Bill 1069; correct?

8      A    Correct.

9      Q    So, I want to show you what your lawyers

10  sent --

11          MS. OBERLANDER:  Um --

12          MS. SMITH:  Sorry?

13          MS. OBERLANDER:  Nicole, I would actually,

14      before you begin on this, we are -- I'm

15      actually trying to -- we have some mistakes in

16      that, and I would -- and we had to go through

17      it yesterday, of course.  I sent it to you

18      because we anticipated that we would be going

19      through it yesterday, but we have substantially

20      -- we've recognized that there are some errors

21      in there, so I would like to withdraw that.  We

22      do not have it open here, and it has not been

23      part of anything that we have discussed today.

24      So, I frankly, would like you to put it in the

25      garbage, because I think it will be too

1    confusing when we go through this -- this

2    information.

3         MS. SMITH:  Well, that is confusing.  I'm

4    not going to throw it away.

5         MS. OBERLANDER:  It was provided to you

6    because you asked what you had in your room,

7    and that we were planning on relying upon and

8    that's as of yesterday, that was it.  We did he

9    discover some errors, and we haven't relied on

10   it, and so that is -- it wasn't produced

11   formally, so that's -- that's -- that is my

12   request.

13        MS. SMITH:  Well, Lynn, my position, and

14   I'm sure you know this, is that if a deponent

15   has a document with them for a deposition, and

16   we are permitted to see what they have in front

17   of them, and in fact, Plaintiff's --

18        MS. OBERLANDER:  I agree --

19        MS. SMITH:  -- provided it to us, I don't

20   think once the proverbial cat is out of the

21   bag, you can put it back in, just because there

22   are errors.  I would be open to having a

23   conversation if there are -- is going to be a

24   corrected one provided, or something like that,

25   but I certainly am entitled, Lynn, to ask

1      questions about this document that PEN's

2      30(b)(6) witness brought with her, for purposes

3      of her deposition testimony.

4           MS. OBERLANDER:  I don't disagree with

5      you, Nicole, you are, but as I said, we

6      didn't -- as you said, material that she has in

7      front of her.  She doesn't have it in front of

8      her.  We haven't discussed it in this hearing.

9      She hasn't looked at it during the deposition,

10     and we have discovered errors.  So, I am happy

11     to discuss sending you a corrected version of

12     it, but I can't -- but -- but it turns out that

13     there are some material in there that is both

14     incorrect, and that, frankly, should not have

15     been included in the list at all, because it's

16     -- it's -- yeah, it's just there.  And so given

17     that we have not looked at it, and relied on

18     it, because I do agree you, that you are

19     entitled to see what the deponent is relying

20     upon.  I would ask that we, you know, put it in

21     the trash, and we will go from her memory

22     today.

23          MS. SMITH:  I can't say, Lynn, that I'm

24     going to throw it in the trash.  I'm going to

25     use it as my guide when I'm questioning her,

1    and she is welcome to, on the record, testify

2    about PEN's positions as to, you know, the

3    various questions that I'm going to be asking

4    her on each of the books.

5          MS. OBERLANDER:  Okay.

6          MS. SMITH:  So, I'm not sure if we're

7    saying different or the same things, but I am

8    entitled to mark this as an exhibit, and I'm

9    going to do so, Exhibit 23, and then we can

10    talk about, as we go through her testimony, you

11    know, places where there are errors or, you

12    know, PEN's corrected --

13          MS. OBERLANDER:  We believe -- just,

14    that -- that's okay.  We will go through it,

15    but I will tell you that we also believe that

16    certain information in here is attorney/client

17    work product privilege, that shouldn't have

18    been included, and is not final.  And so that

19    is what I mean -- that is what I will advise my

20    client to say about that particular

21    information.  Not all of the information, by

22    any means, but there is -- there is some

23    information.  So, we will, if you want to go

24    through that way, we can do that.

25          MS. SMITH:  Okay.  Let's take a 10 minute

1    break and let me consider this, and how I'm

2    going to be asking my questions, and then we

3    will reconvene.

4         MS. OBERLANDER:  Okay.  Thank you.

5                   (WHEREUPON, a brief recess was

6                   taken, after which the

7                   deposition continued.)

8         MS. OBERLANDER:  All right.  So, we are

9    back on the record?

10        COURT REPORTER:  We can be.  Are you

11   ready?

12        MS. OBERLANDER:  Yes.  So, we are -- we

13   are, this was produced, or provided to -- it

14   wasn't actually produced.  It was provided to

15   you in error.  This document contains

16   attorney/client work product information, and

17   we are asking to call it back.  We believe that

18   that is your responsibility, to provide it back

19   to us.  We are not relying on it, and we are --

20   we believe it's privileged.  So, we are calling

21   on --

22        MS. BRINKLEY:  -- the document, it does --

23        MS. OBERLANDER:  -- it does say privileged

24   on it.  We -- it was -- it was provided to you

25   in error.  It's attorney/client work product,

1      and we are calling it back.

2          MS. SMITH:  So, our position is any

3      attorney/client privilege has been waived.  Any

4      and all documents that were provided to us

5      yesterday, including the spreadsheets for the

6      Escambia calculations, the titles of those

7      documents also said privileged.  So, we have

8      already reviewed this document and prepared for

9      today's deposition based upon our review of

10     this document.  So, it goes back to my original

11     statement of, you know, "cat out of the bag".

12     I think this is a little different than an

13     inadvertent production, when it's in, you know,

14     thousands of documents, and then you say

15     whoopsie, you know, please give me that page

16     back.  Any time, in my experience, Lynn, that a

17     witness has brought a document to a deposition,

18     I have always requested, and even gone to court

19     to fight over the fact that I'm entitled to see

20     any documents that the witness brings with them

21     to the deposition.  I would think that would be

22     particularly true with a 30(b)(6) witness, who

23     frankly, we expected her, you know, to be

24     prepared to talk about 164 books, and we're not

25     at all surprised that she had a chart that

    1       assisted her with that.

    2           So, I'm also concerned, because my

    3       deposition, between yesterday and today, was

    4       premised on the fact that I would be using this

    5       spreadsheet or chart, you know, that was

    6       provided yesterday, early in the day, and that

    7       I could, therefore, run through my book related

    8       questions faster than originally anticipated.

    9       So, the timing of my deposition, you know, and

   10       the questions that I've asked thus far, over

   11       yesterday and today, were premised on the fact

   12       that the witness was prepared to answer

   13       questions based upon the package that was

   14       provided to us.  So, I think we have --

   15           MS. OBERLANDER:  I mean, we can go to the

   16       court on it.  I will say that it was -- it's

   17       work product, parts of it are work product, and

   18       we are -- we will not be responding to those

   19       parts using that.  And we will provide you,

   20       although not immediately, with a redacted

   21       version of this, that we're removing the work

   22       product, but we believe that it was privileged

   23       information, and, and, and -- and that's it.

   24       So, it is a -- we -- we can tell you which

   25       columns we think are work product, if that --

1          MS. SMITH:  I was --

2          MS. OBERLANDER:  -- would help you?

3          MS. SMITH:  -- I was going to say, yeah,

4     tell me which columns you believe are work

5     product.

6          MS. OBERLANDER:  Let me get a copy of the

7     whole spreadsheet.  So, in the material that's

8     provided, the removed date -- for example, I'm

9     looking at first one, which is *10 Things I Can*

10    *See From Here* form.

11         MS. SMITH:  Yes.

12         MS. OBERLANDER:  But this goes throughout

13    all of them.  What is not attorney/client

14    privileged material, work product, is removed

15    or restricted, PEN standing, whether it's on

16    Book Looks, yeah.  Actually, so removed or

17    restricted, PEN standing, on Book Looks, and

18    everything else is attorney/client work

19    product.

20         MS. SMITH:  Let me ask a question, is the

21    witness prepared to answer questions today on

22    each of these books pursuant to our 30(b)(6)

23    Notice, without referring to this document?

24         MS. OBERLANDER:  I'm going to ask the

25    witness that.  Hold on, and I'm going to go

1      off the --

2                      (WHEREUPON, an off-the-record

3                      discussion was held, after which

4                      the deposition continued.)

5          MS. OBERLANDER:  Oh, well, thank you.

6      Sorry.  The witness can testify to not all of

7      it, but is prepared to testify to quite a bit

8      of it, on the Notice of Deposition, yes.

9          MS. SMITH:  I'm not sure what that means.

10     What do you mean, not all of it?  What --

11         MS. OBERLANDER:  What it means is that --

12         MS. SMITH:  -- topics is she not prepared

13     to testify today, so I can make the

14     determination how to proceed?

15         MS. OBERLANDER:  So, on the topics -- she

16     is prepared to talk about, I'm just, sorry, I'm

17     going through the notice now of the deposition.

18     She is prepared to discuss Topic Number 4,

19     which is, books for which PEN claims to have

20     standing.  Topic Number 5 --

21         MS. SMITH:  Is she able to testify to that

22     topic without referring to this document?

23         MS. OBERLANDER:  Yes.

24         MS. SMITH:  Okay.

25         MS. OBERLANDER:  She is -- yeah, that was

1    4, 5, whether the basis for standing is

2    organizational or associational.

3        MS. SMITH:  Is she able to testify to

4    Topic 6 without looking at this document?

5        MS. OBERLANDER:  All communications with

6    the author of that book regarding book removals

7    or restrictions in Escambia County and/or this

8    lawsuit.  That's not on this document at all,

9    so, yes.

10        MS. SMITH:  Okay.

11        MS. OBERLANDER:  To the degree she can

12    tell you about it.

13        MS. SMITH:  I'm sorry, Lynn, I meant

14    number 5, not 6.

15        MS. OBERLANDER:  Oh, okay.  Yes, she -- we

16    have, frankly, I think she's testified about

17    that already.  So, I think that's -- we're

18    covered on that.

19        MS. SMITH:  So, as for each book, she can

20    tell me whether PEN is claiming organizational

21    and/or associational standing without looking

22    at this document?

23        MS. OBERLANDER:  Without looking at this

24    document, she can tell you that she is going to

25    look, just to be clear, at the Interrogatory

1    responses that we have previously filed to

2    respond to that, which we have association.

3        MS. SMITH:  Okay.

4        MS. OBERLANDER:  She is prepared to talk

5    about -- sorry, I'm just moving down the list

6    here -- she is going -- she can talk about the

7    basis for the -- number 10, the basis for the

8    allegation this book was removed or restricted

9    under, viewpoint discrimination, including the

10   viewpoint that was purportedly discriminated

11   against.  She can talk about number 11, the

12   basis for the allegation that the book removed

13   or restricted based on politically or

14   ideological disagreement.  And she can testify

15   about number 12, the basis for the allegation

16   that "none of the books at issue" qualify as

17   harmful material under section 847.012, Florida

18   Statutes.  She can testify to number 13, the

19   basis for the allegation that Defendant has

20   been using 847.012 "as a pretext to restrict

21   access to books that address other topics it

22   finds objectionable", including the topics PEN

23   contends the Defendant finds objectionable,

24   which is the true basis for the removal or

25   restriction of the books.  And I think that's

1       it, in terms of -- I think those are the ones

2       that we're referring to Topic Number 4, which

3       are for the books at issue.

4           MS. SMITH:  Okay.  And I can ask the

5       witness, once we get going again, what she has

6       in front of her, just so we can get on the

7       record that she does not have this document,

8       that is clearly in dispute.  I'm glad to begin

9       answering questions, and if the witness is not

10      able to answer all of the questions for each

11      book, then we are likely going to have to

12      either file a motion to compel or seek an

13      agreement where we have additional time with a

14      representative of PEN who can answer these

15      questions, and you know, be properly prepared

16      to do so.  So, let's take a five minute break,

17      if we could, and then we will see if the

18      witness can answer our questions.

19          MS. OBERLANDER:  That's fine, Nicole.

20      One, just in terms of during the break, the

21      witness is going to ask you to show her the

22      challenge forms for each of the books.  So,

23      if -- I assume you have them available, but I'm

24      just -- if you need to get them available, that

25      would be -- that would be a good moment.  And

1    there is another document that was produced

2    that I will also ask you to -- to have

3    available, although I do not know what the

4    Bates number is on it.  I can find out, but it

5    is a -- you may know offhand, you may have in

6    front of you anyway.  It is a spreadsheet that

7    lists all of the books and was color coded.

8    Does that ring a bell for you?  It's color

9    coded.  I'll get -- I can get you the Bates

10   number for it, but it is a spreadsheet which

11   lists all the books and is a -- it is a chart

12   prepared by PEN by Leila Markosian, which went

13   through the challenge forms and indicated the

14   basis for the challenge.

15       MS. SMITH:  I would appreciate the Bates

16   to make sure I know which document you're

17   referring to.

18       MS. OBERLANDER:  Sure.  That's fine.  So,

19   I'll pull the Bates you while we're breaking,

20   the Bates number, and then you have copy of it

21   such that I, or do you want me to send it to

22   you?

23       MS. SMITH:  Before we go on the break can

24   you give me the Bates, so I can research it?

25       MS. OBERLANDER:  Sure.  Let me look it up

1    right now.

2        MS. SMITH:  Please.

3        MS. OBERLANDER:  We don't actually have it

4    in here, so -- just so you know, it's not here,

5    but it has been produced, and I know exists.

6        MS. SMITH:  I have a lot of different

7    spreadsheets that were produced, so I just

8    don't know which one you're referring to.

9        MS. OBERLANDER:  I am completely not

10   doubting you, I'm just telling you that it's

11   not actually here, so -- all right,

12   Plaintiff's, sorry, Plaintiff's 5672.

13       MS. SMITH:  Okay.  Let's break until

14   11:50.  We'll reconvene then.

15       MS. OBERLANDER:  Okay.  Thank you.

16                 (WHEREUPON, a brief recess was

17                 taken, after which the

18                 deposition continued.)

19       MS. SMITH:  And this is more for the

20   attorneys than for you, Ms. Lopez, but just, I

21   wanted to pose my objection on the record.  I

22   had planned out my deposition based on that

23   document that was provided by counsel early in

24   the day yesterday.  I did not anticipate having

25   to pull out challenge forms for each of the

1    books.  Frankly, I don't have time to do so, so

2    I am not going to be doing that with this

3    witness.  I'm going to ask her questions and

4    see what she knows, and if she has documents in

5    front of her, of course, she can refer to them,

6    but I do not plan to pull out documents,

7    challenge by challenge, for each of the books.

8    I have pulled up this spreadsheet, and I will

9    ask some questions about it, but my same -- I

10   take the same position, that I see that there

11   appears to be embedded links in Plaintiff's

12   Bates stamp 5672.  I do not have time, based on

13   what has occurred here with this deposition, to

14   clink on each link and show the witness

15   document after document.  So, this might be a

16   discussion for after the deposition.  Let's see

17   how it goes.  We might be asking for additional

18   time, if things go how I think they might go,

19   which is I'm not going to have time to finish

20   now.

21        Okay.  So, Lynn, any response to that?

22   That was my statement.

23        MS. OBERLANDER:  So, as I think we

24   already, on record, that the material contained

25   attorney/client work product.  We believe it's

```
1        privileged.  We are calling it back.  We are
2        not relying on it.  We're not looking at it.
3        The Deponent is going -- is capable of
4        testifying on all those topics, as I asked,
5        with the challenge forms which, I mean, you
6        did, obviously, the different depositions, but
7        you did produce them, or pull them up, and make
8        them part of this case in the Penguin Random
9        House deposition.  I do think it is overly
10       burdensome to expect any representative,
11       including a Corporate Representative to have,
12       by memory, information, detailed information
13       around 165 books.  So, I -- so that's -- that's
14       my response, but we do appreciate that this is
15       -- that we should not have produced that
16       document.  That we're asking to call it back,
17       and that you may have to leave the deposition
18       open after today to come back to some of the
19       information.
20            MS. SMITH:  Okay.  Thank you.
21       Q    (By Ms. Smith) Ms. Lopez, I am going to
22  ask you a few questions about the document, not
23  substantively but the document that is -- your
24  lawyers are claiming is attorney/client and work
25  product privilege; did you review it?
```

1      A      Yes, in a general sense.  I did not look

2   at every single page.

3      Q      When did you review it?

4      A      In sort of the day before the deposition.

5      Q      So, you reviewed that document in

6   preparation for your deposition; correct?

7      A      I looked generally through it, but I did

8   not spend significant amount of time on each page.

9   It was more to make sure I was familiar with the

10  format and generally what information was in there,

11  and then I intended to make use of it during the

12  deposition.

13     Q      Okay.  At the beginning of the deposition,

14  which was a long time ago, I asked you what you had

15  in front of you, and I think one of the things that

16  you stated you had in front of you was notes on the

17  books.  What did you mean by that?

18     A      That was reference to that document, and I

19  believe this -- there are some -- the publicly

20  available book resumes, also, included in this

21  binder.  I haven't looked at those at all.

22            (WHEREUPON:  The deposition was continued

23            but was not transcribed at this time.).

24

25

1

2                    <u>REPORTER'S CERTIFICATE</u>

3

4    I, ELAINE RICHBOURG, Court Reporter, certify that I
           was authorized to and did stenographically
5          report the foregoing deposition; and that a
           review of the transcript was not requested; and
6          that the transcript is a true and complete
           record of my stenographic notes.

7
     I further certify that I am not a relative,
8          employee, attorney, or counsel of any of the
           parties, attorney or counsel connected with the
9          action, nor am I financially interested in the
           action.

10

11         Dated this 5th day of August, 2024.

12

13                      */s/Elaine Richbourg*

14         _____

15                 ELAINE RICHBOURG
                   Court Reporter
16                 Notary Public, State of Florida
                   Commission No. HH461492
17                 Commission Expires: 3/6/2028

18

19

20

21

22

23

24

25