UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| PEN AMERICAN CENTER, INC., et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ESCAMBIA COUNTY SCHOOL BOARD,<br><br>    Defendant. | CASE NO.: 3:23-CV-10385-TKW-ZCB |

**PLAINTIFFS' OPPOSITION TO THE
ESCAMBIA COUNTY SCHOOL BOARD'S RENEWED MOTION FOR
PROTECTIVE ORDER ASSERTING LEGISLATIVE PRIVILEGE**

**PRELIMINARY STATEMENT**

In this case, Plaintiffs are challenging on First Amendment grounds the decisions of the Escambia County School Board (the "Board") to remove or restrict access to over 150 library books. In its ruling denying the Board's Motion to Dismiss, this Court held that, to prevail, Plaintiffs must show that the books were removed or restricted "based on ideological objections to the books' content or disagreement with their messages or themes, rather than for pedagogical reasons." Order on Motion to Dismiss ("MTD Order") at 7, ECF 65. In other words, as the Eleventh Circuit has explained, in a case challenging library-book removals or restrictions, "the Board's motive is the *ultimate fact* upon which the resolution of the

constitutional question depends." *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1204 (11th Cir. 2009) (emphasis added).

Notwithstanding the clear law providing that the Board's motives for the book removals/restrictions are the central issue in the case, the Board has now—for the second time—filed a Motion for a Protective Order (the "Motion" or "Mot."), ECF 107, in which it seeks to bar Plaintiffs from deposing the Board Members about their reasons for removing or restricting the books at issue.[1] The basis for the Motion is the claim that the "legislative privilege" protects Board Members from being required to testify about their reasons for removing or restricting the books at issue.

The Motion should be denied. The legislative privilege does not bar the Board Member depositions because (1) the actions at issue here—removing or restricting specific books based on facts particular to those books—were administrative, not legislative, in nature, and (2) even if the legislative privilege did apply, the Board waived it by producing communications that disclose individual Board Members' motivations for removing or restricting particular books. Accordingly, the Board Members should be required to sit for depositions about their book-removal and

---

[1] The Board's initial protective-order motion, which sought to bar Plaintiffs from deposing the individual Board Members on multiple grounds, was filed on June 21. *See* ECF 82. On July 19, this Court denied the motion "without prejudice" based on concerns that the Board lacked standing to assert the legislative privilege on behalf of the individual Board Members. ECF 98 at 1, 6-7. The Court rejected the Board's other arguments on the merits. *Id.* at 4-6.

2

book-restriction decisions, and the Board's months-long effort to resist this essential discovery should be put to an end.

## BACKGROUND

Plaintiffs are challenging decisions by the Board to remove 10 books from Escambia County school libraries and restrict access pending review to over 150 additional books. Amended Complaint ("Am. Compl.") ¶¶ 88, 98, 105, ECF 25-1. Plaintiffs' central allegation is that the books were removed or restricted based on hostility to the ideas they express and/or their themes, rather than for legitimate pedagogical reasons. *Id*. ¶¶ 3-7.

In its Order denying the Board's Motion to Dismiss, the Court described the applicable legal standard as follows:

> The applicable legal standard for evaluating alleged First Amendment violations in the school library context is not entirely clear but the common theme in all of the potentially relevant standards . . . is that *school officials cannot remove books solely because they disagree with the views expressed in the books, but that they can make content-based removal decisions based on legitimate pedagogical concerns* including things like pornographic or sexual content, vulgar or offensive language, gross factual inaccuracies, and educational unsuitability for certain grade levels.

MTD Order at 7 (emphasis added). Plaintiffs seek to depose the Board Members so they can meet that standard.

Early in the parties' discussions regarding discovery, the Board made clear that it intended to object to any effort to depose the individual Board Members.

3

Accordingly, the parties agreed that Plaintiffs would go ahead and notice such depositions, with placeholder dates, in order to permit the Board to file the subject Motion. Mot. at 2. On May 31, 2024, Plaintiffs served—and the Board agreed to accept—deposition notices for each of the individual Board Members.[2] *Id.* On August 2, 2024, the Board filed the subject Motion, after its initial motion seeking to bar Plaintiffs from deposing the Board Members was denied without prejudice as to the Board's right to re-raise the legislative privilege issue. Plaintiffs now file their Opposition to the Board's latest Motion.

## ARGUMENT

**I.  LEGISLATIVE PRIVILEGE DOES NOT APPLY BECAUSE THE BOARD MEMBERS' BOOK-REMOVAL AND BOOK-RESTRICTION DECISIONS ARE NOT LEGISLATIVE IN NATURE.**

In its Motion, the Board devotes an inordinate number of pages (and case citations) to arguing that (1) votes by a school board could, in theory, be subject to the legislative privilege, and (2) if the legislative privilege applied here, it would shield Board Members from being required to testify about why they removed or

---

[2] In its Motion, the Board notes that Plaintiffs did not serve subpoenas on the individual Board Members. Mot. at 2. That is because counsel for the Board agreed that that formality was unnecessary and simply serving notices would suffice. After the Board filed the Motion, Plaintiffs served subpoenas on counsel for the Board, which had previously agreed to accept service on behalf of the individual Board Members. Although the Board has indicated it will now move to quash the subpoenas, Plaintiffs do not believe further motions practice is needed for the Court to reach the merits of whether or not the Board Members may be deposed by Plaintiffs.

restricted particular books. *See* Mot. at 5-12. Plaintiffs concede all that. None of that matters, however, because the decisions at issue were administrative, not legislative, in nature.

As the Board correctly notes, "legislative immunity and privilege are 'parallel concept[s],' and the privilege 'exists to safeguard' the immunity." *Id.* at 6 (quoting *Common Cause Fla. v. Byrd*, 674 F. Supp. 3d 1097, 1003 n.2 (N.D. Fla. 2023)). Thus, a legislator is permitted to claim the privilege with respect to a particular decision only insofar as he or she would also be able to claim legislative immunity with respect to that decision. In this case, legislative immunity would not extend to the Board Members' individual book-removal or book-restriction decisions.

Under well-established law, the mere fact that a party or witness may be part of a legislative body does not mean that legislative immunity attaches. Instead, "legislative immunity 'extends *only* to actions taken within the sphere of legitimate legislative activity.'" *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992) (emphasis added) (quoting *Finch v. City of Vernon*, 877 F. 2d 1497, 1505 (11th Cir. 1989)); *see also Israel v. DeSantis*, 2020 WL 2129450, at *7 (N.D. Fla. May 5, 2020) ("An act is not . . . considered a legislative act for immunity purposes merely because the actor is a legislator or legislature."). In addition, the Eleventh Circuit has "expressly rejected the argument that the act of voting, in itself, constitutes legislative action giving rise to immunity." *Smith v. Lomax*, 45 F.3d 402,

406 (11th Cir. 1995). Thus, the mere fact that "a local legislator may [have] vote[d] on an issue . . . does not necessarily determine that he or she was acting in a legislative capacity." *Crymes v. DeKalb Cnty.*, 923 F.2d 1482, 1485 (11th Cir. 1991).

In *Crymes*, the Eleventh Circuit set forth criteria for distinguishing between administrative and legislative acts, which make clear that the decisions at issue here were administrative in nature.³ There, the Court explained that, whereas "[a] legislative act involves policy-making," an administrative act involves the "mere administrative application of existing policies." *Id.* at 1485. Thus, a decision by a government body is likely to be "administrative" where (1) "the facts utilized in making the decision are specific, rather than general, in nature," or (2) "the decision impacts specific individuals, rather than the general population." *Id.* As the Eleventh Circuit subsequently clarified: "a legislative act is characterized by having a policymaking function and general application." *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir, 1992); *see also Bryant v. Jones*, 575 F.3d 1281, 1306-07

---

³ Tellingly, the Board's motion papers do not address, *or even acknowledge the existence of*, *Crymes*, which is not only the leading Eleventh Circuit case on distinguishing between legislative and administrative acts in this context, but was the centerpiece of Plaintiffs' opposition to the Board's legislative privilege argument when the parties briefed this issue the first time around. *See* ECF 95 at 9-13 (relying on *Crymes* and its framework to oppose the legislative-privilege piece of the Board's initial protective-order motion). The Board's failure to address *Crymes*—a decision of which it is obviously aware—is essentially a tacit admission that its position is unsustainable under *Crymes*.

6

(11th Cir. 2009) (explaining that legislative "immunity applies to prospective, legislative-type rules that have general application," whereas administrative action is primarily backward-looking and focused on the facts of a particular case (internal marks omitted)).

Applying that framework, courts consistently hold that where, as here, a lawsuit challenges government decisions about a specific person or entity based on facts particular to that person or entity, the decision is administrative in nature. For example, in *Oakes Farms Food & Distribution Services v. School District of Lee County*, 541 F. Supp. 3d 1334, 1338 (M.D. Fla. 2021), which likewise involved decisions by a Florida school board, a food distributor brought suit under the First Amendment after its contract was terminated based on the owner's politically controversial social media posts. The court rejected the school board members' contention that legislative immunity protected them from the suit, holding that the termination decision did not qualify as legislative because the decision was directed specifically at the contractor. *Id.* at 1348-49. As the Court explained: "[T]he termination decision at the center of this case—whether it required a public vote by the School Board or not—does not involve the kind of 'prospective legislative-type rules' that are protected by absolute legislative immunity.'" *Id.* at 1349 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 45 (1998)); *see also Israel*, 2020 WL 2129450,

7

at *9 (legislative immunity did not apply to decision by legislature to remove sheriff from office).

The same logic applies here. Each of the Board's individual book removal or restriction decisions turned on the specific nature of the book at issue, related to and affected only that specific book, and did not create any forward-looking, generally applicable policies. That makes those decisions administrative in nature, which, in turn, means that the legislative privilege does not apply.

This conclusion is reinforced by the cases on which the Board relies for the proposition that legislative immunity/privilege can apply to school board decisions. For instance, in *Doe v. Metro Government of Nashville & Davidson County*, 2021 WL 5882653, at *4 (M.D. Tenn. Dec. 13, 2021), which the Board cites as an example where "the legislative privilege preclude[d] the noticed depositions of the school board members," Mot. at 7, the court held that the reason the legislative privilege applied was that, based on the existing record, it appeared that the employment decisions complained of were made as part of the school's forward-looking budgetary process, not based on backward-looking facts particular to the employees at issue. *Doe*, 2021 WL 5882653, at *3. The court explained its ruling as follows:

> It is not clear from the record what role the school board plays in specific personnel decisions, including termination or demotion of school directors. If the school board is called upon to consider or approve such decisions, those would arguably be administrative in nature. But that does not change the legislative character of the subject vote on the school budget. If, however, after further discovery,

8

> Plaintiffs uncover facts that tend to support their theory that the elimination of positions was not part of the budget process or that ***specific individuals were targeted for adverse employment actions, they may request permission to take the depositions of the school board members***.

*Id.* (emphasis added). The other school-board-legislative privilege/immunity cases on which the Board relies are in the same vein, and further reinforce that a decision by a school board to remove or restrict access to an individual book on grounds specific to that book, with no consequences for any other book, is not legislative in nature.[4]

---

[4] *See Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 723 (E.D. Tex. 2006) (cited in Mot. at 7) (legislative privilege applied to school trustee members where employment-termination complained of was part of the budgetary process and involved plaintiff's entire department); *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 402-03 (E.D.N.Y. 2018) (cited in Mot. at 7-8) (noting that "terminations of positions and votes based on budgetary constraints are legislative in nature," while "[p]ersonnel decisions are administrative . . . if they are directed at a particular employee," and holding that the school board decisions at issue were subject to legislative immunity because they fell into former category); *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 217-19 (6th Cir. 2011) (cited in Mot. at 8) (school board members were entitled to legislative immunity where they eliminated entire school as part of budgetary process); *Callaway v. Hafeman*, 628 F. Supp. 1478, 1487 (W.D. Wisc. 1986) (cited in Mot. at 8) (legislative immunity applied to school board's decision to eliminate plaintiff's position and reassign her as part of budgetary process). The only school board cases the Board cites that do not fall into this pattern involved a special exception that applies only in cases in which a government body acts to expel one of its own. *See Stepien v. Schaubert*, 2010 WL 1875763, at *8 (W.D.N.Y. Feb. 23, 2010) (cited in Mot. at 8); *Wilson v. Marshall Indep. Sch. Dist.*, 2011 WL 1431410, at *4-5 (E.D. Tex. Feb. 1, 2011) (cited in Mot. at 8). That exception has no bearing here.

In response to this clear law laying out the distinction between legislative and administrative acts, the Board appears to offer three arguments. None has merit.

First, the Board asserts that its book-removal and book-restriction decisions were legislative because they were "mandatory, rather than discretionary," since Florida law required the Board to have policies for resolving parental book challenges. Mot. at 13. That is a non-sequitur. As set forth above, the Eleventh Circuit test for determining whether a decision is legislative or administrative turns on whether the act involves general rule-or-policy making, not on whether it was mandatory or discretionary. *See supra* at 6-7 (describing that case law).[5] Indeed, that the specific book-removal and book-restriction decisions at issue were made pursuant to Florida law mandating that school boards have policies for resolving parental objections is part of what makes those decisions administrative, as decisions that involve the application of a policy to specific cases are administrative in nature. *See Crymes*, 923 F.2d at 1485 (contrasting the "administrative application of existing

---

[5] The Board appears to have gotten this notion that whether a decision is legislative or administrative in nature pivots on whether it is mandatory or discretionary from stray language in *Lexjac, LLC v. Beckerman*, 2008 WL 11313761 (E.D.N.Y. Sept. 30, 2008). *See* Mot. 13-14 (citing to *Lexjac* for that proposition). However, not only was *Lexjac* decided under the law of a different circuit, but its holding did not actually turn on the distinction the Board highlights. The *Lexjac* court held that the decision at issue was legislative in nature because it rescinded a prior zoning resolution—which is a quintessential forward-looking act of policy-making—not because the decision was carried out pursuant to the zoning board's duties. 2008 WL 11313761, at *10. Thus, even if *Lexjac* reflected the law of the Eleventh Circuit, it would be of no help to the Board here.

policies," which is not legislative in nature, with "policy-making," which is legislative).

Second, the Board asserts that the book-removal and book-restriction decisions at issue were legislative because they had "prospective implications that reach the entirety of the District's libraries." Mot. at 14. That is a misapplication of the law. Any decision involving a particular person or entity, such as decision to fire an employee or cancel a contract, will necessarily have *some* prospective implications (*e.g.*, that the terminated employee will no longer be employed throughout the district). That does not make the decision legislative in nature.

This is made clear by *Bryant*, which is the case the Board invokes in support of its argument. In *Bryant*, the Court held that the specific decision at issue—"develop[ing] and draft[ing] the 2004 [county] budget, which eliminated [plaintiff's] position"—was legislative because "[u]nlike the termination of an individual employee, the elimination of a public employment position may have prospective implications that reach well beyond the particular occupant in office." 575 F.3d at 1305-96. In other words, what made the decision in *Bryant* sufficiently prospective to be legislative was that it eliminated a public employment position in a wholesale manner, not simply a specific public employee, who could then be replaced by someone else. The equivalent in the library-book context would be a decision that, as part of the budgetary process, eliminated a particular library, or provided that

11

libraries would no longer be offered for certain grade levels. *Cf. Smith*, 641 F.3d at 217-19 (school board members were entitled to legislative immunity in wrongful termination suit where board members eliminated entire school as part of budgetary process). Nothing like that occurred here.

<u>Third</u>, the Board asserts that the decisions at issue were legislative in nature because they involved "voting." Mot. at 16-17. That assertion is directly at odds with Eleventh Circuit law, which makes clear that voting alone does not make an act legislative. *See supra* at 5-6. In fact, just two pages earlier in its Motion, the Board acknowledges exactly that, writing: "While the Eleventh Circuit has stated that the act of voting alone is not wholly dispositive as to whether an act is legislative, voting can nonetheless constitute legislative decisionmaking." Mot. at 14-15. In other words, making a decision via voting is legislative only if the decision being made is itself legislative in nature—*i.e.*, a general, prospective, decision involving the creation of rules or policy. That was not the case here.

Because the Board's decisions removing or restricting specific books were not legislative in nature, the legislative privilege does not shield the Board Members from being required to testify about those decisions.

## II. THE BOARD HAS WAIVED ANY LEGISLATIVE PRIVILEGE THAT MIGHT APPLY.

The Board's invocation of legislative privilege should be rejected for the additional reason that, even if the privilege did apply to the circumstances of this

12

case, that privilege has been waived. Document discovery is still ongoing. But, thus far, the Board has produced thousands of documents, many of which relate directly to the Board's decisions with respect to the at-issue books. Throughout the document-discovery process, the Board has not once asserted legislative privilege with respect to any of Plaintiffs' document requests. Nor has the Board produced a privilege log of any kind. The Board has, however, produced a number of documents in which Board Members discuss their specific motivations for voting to remove or not remove specific books. *See, e.g.*, Ex. 1 (collection of email exchanges in which Board Members disclose their reasons voting for or against removing certain books).

Accordingly, any privilege that might have conceivably shielded the Board Members from being required to testify regarding their reasons for removing specific books has been waived. *See SE Prop. Holdings, LLC v. Gulfsouth Private Bank*, 2015 WL 12868077, at *3 (S.D. Fla. Feb. 27, 2015) (production of emails addressing purportedly privileged topic waived any associated privilege);[6] *see also League of Women Voters of Fla. v. Lee*, 2022 WL 610400, at *7(N.D. Fla. Jan. 4, 2022) (noting that the legislative privilege cannot be used as both a sword and a shield).

---

[6] The Board disputes the applicability of *Gulfsouth* on the ground that it involved the attorney-client privilege, whereas the legislative privilege is "unqualified." Mot. at 23. While it is not entirely clear what the Board means by that, to the extent it is suggesting that the legislative privilege is somehow unwaivable, that is not the case, as its own citations make clear. *See id.* at 22 (citing *Byrd* to argue that the circumstances under which the privilege can be waived are not met here).

13

Nor can the Board avoid this conclusion by asserting that the documents were produced by the Board, not the individual Board Members. *See* Mot. at 23 (making this argument). The whole premise of the Board's Motion is that it "may assert the legislative privilege on behalf of its members." *Id.* at 20. The Board cannot contend both that it has the right to assert the privilege on behalf of the individual Board Members and that none of its actions could possibly have any waiver implications with respect to that privilege.

Finally, the Board's contention that "none of Plaintiffs' discovery to date has implicated the specific reasons or motivations for the Board members' votes," *id.* at 23, is simply incorrect. Plaintiffs' discovery requests—which the Board attached as Exhibit A to its Motion—plainly encompass documents relating to the motivations or reasons for removing or restricting the at-issue books. *See id.* Ex. A at Request Nos. 1-3, 8 (requests seeking, *inter alia*, communications relating to any challenged book, restricted book, or removed book). And, as noted above, the Board has, in fact, produced communications in which individual Board Members disclose their reasons for voting to remove, or not remove, certain books. *See* Ex. 1.

The Board's assertion of legislative privilege should be rejected on the additional ground that any legislative privilege that might apply has been waived.

14

## CONCLUSION

For the reasons set forth above, the Court should deny the Board's Motion for a Protective Order and permit Plaintiffs to go forward with the depositions of the Board Members.

## RULE 7.1(F) CERTIFICATION

Plaintiffs hereby certify that this opposition contains 3,636 words.

Date: August 16, 2024

/s/ *Paul J. Safier*
Paul J. Safier (*pro hac vice*)
Facundo Bouzat*
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8500
Facsimile: 214.864.8999

Lynn B. Oberlander (*pro hac vice*)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 213.223.1942


Kirsten Fehlan (*pro hac vice*)
**BALLARD SPAHR LLP**
999 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone: 678.420.3000
Facsimile: 678.420.9401

Goldie Fields (*pro hac vice)*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067

Telephone: 424.204.4338
Facsimile: 424.204.4350

Shalini Goel Agarwal (FBN 90843)
Ori Lev (*pro hac vice*)
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Telephone: 202.579.4582
Facsimile: 939.777.8428

\**Pro hac vice* forthcoming

*Attorneys for Plaintiffs*

16