# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

| | |
|---|---|
| PEN AMERICAN CENTER, INC., et al., | |
|       Plaintiffs, | |
| vs. | CASE NO.: 3:23-CV-10385-TKW-ZCB |
| ESCAMBIA COUNTY SCHOOL BOARD, | |
|       Defendant. | |

# PLAINTIFFS' OPPOSITION TO MOTION FOR ORDER PERMITTING DEFENDANT TO RETAIN AND USE <u>INADVERTENTLY DISCLOSED INFORMATION</u>

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION AND BACKGROUND ........................................... 1

A.    The Stipulated Confidentiality Order .................................... 1

B.    The Inadvertently Disclosed Document ................................. 2

ARGUMENT ..................................................................................... 13

I.    THE DOCUMENT AT ISSUE CONTAINS ATTORNEY WORK
      PRODUCT PRIVILEGED INFORMATION ............................... 13

      A.    The Parties' Agreed Confidentiality Order and the Federal
            Rules Require the Immediate Return of the Document ...... 14

      B.    Defendant Has Not Shown Substantial Need or Undue
            Hardship ........................................................................ 16

II.   THE SCHOOL BOARD IS NOT ENTITLED TO PLAINTIFF'S
      WORK PRODUCT UNDER FEDERAL RULE OF EVIDENCE 612 ... 18

      A.    The Document Was Not Used to Refresh Ms. Lopez's
            Recollection ................................................................... 19

      B.    The Document Was Not Used in the Deposition at All ...... 20

      C.    The Interests of Justice Favor the Return of the Document ... 21

      D.    Plaintiffs Did Not Waive the Privilege ........................... 25

CONCLUSION ................................................................................. 32

RULE 7.1(F) CERTIFICATION ......................................................... 32

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Product Liability Litigation*,
  2020 WL 1321522 (N.D. Fla. Mar. 20, 2020)...................................................14

*Audiotext Communications Network, Inc. v. US Telecom, Inc.*,
  164 F.R.D. 250 (D. Kan. 1996) ..........................................................................22

*Auto Owners Insurance Co. v. Totaltape, Inc.*,
  135 F.R.D. 199 (M.D. Fla. 1990) .......................................................................23

*Castle v. Sangamo Weston, Inc.*,
  744 F.2d 1464 (11th Cir. 1984) ............................................................16, 17, 24

*Chick-Fil-A v. Exxon-Mobil*,
  2009 WL 3763032 (S.D. Fla. Nov. 10, 2009) ....................................................31

*In re Chiquita Brands International, Inc. Alien Tort Statute &*
  *Shareholder Derivative Litigation*,
  270 F. Supp. 3d 1332 (S.D. Fla. 2017)...............................................................31

*In re Comair Air Disaster Litigation*,
  100 F.R.D. 350 (E.D. Ky. 1983).........................................................................23

*Coryn Group II, LLC v. O.C. Seacrets, Inc.*,
  265 F.R.D. 235 (D. Md. 2010) ...........................................................................23

*Covey v. Colonial Pipeline Co.*,
  336 F.R.D. 514 (N.D. Ala. 2020) .................................................................16, 25

*Cox v. Administrator U.S. Steel & Carnegie*,
  17 F.3d 1386 (11th Cir. 1994) ............................................................................15

*Diamond Car Care, LLC v. Scottsdale Insurance Co.*,
  2017 WL 1293249 (S.D. Fla. Jan. 10, 2017).....................................................29

*Doe v. Lynn University, Inc.*,
  2017 WL 275448 (S.D. Fla. Jan. 19, 2017)........................................................14

*Heron Interact, Inc. v. Guidelines, Inc.*,
  244 F.R.D. 75 (D. Mass. 2007)...........................................................................23

*Hiskett v. Wal-Mart Stores, Inc.*,
  180 F.R.D. 403 (D. Kan. 1998) ............................................................................22

*Hydraflow, Inc. v. Enidine Inc.*,
  145 F.R.D. 626 (W.D.N.Y. 1993) ...................................................................26, 30

*In re Managed Care Litigation*,
  415 F. Supp. 2d 1378 (S.D. Fla. 2006) ...............................................................22

*McMahon v. E. S.S. Lines, Inc.*,
  129 F.R.D. 197 (S.D.Fla. 1989) ....................................................................17, 25

*Medtronic Xomed, Inc. v. Gyrus ENT LLC*,
  2006 WL 786425 (M.D. Fla. Mar. 27, 2006) .............................................*passim*

*Melaih v. MSC Cruises*,
  2021 WL 6757166 (S.D. Fla. May 19, 2021) .......................................................22

*Muy v. International Business Machines Corp.*,
  2020 WL 13470562 (N.D. Fla. Nov. 13, 2020) .....................................................26

*In re San Juan Dupont Plaza Hotel Fire Litigation*,
  859 F.2d 1007 (1st Cir. 1988) ..............................................................................22

*Scanlon v. Bricklayers & Allied Craftworkers, Loc. No. 3*,
  242 F.R.D. 238 (W.D.N.Y. 2007) ........................................................................30

*In re Seroquel Products Liability Litigation*,
  2008 WL 215707 (M.D. Fla. Jan. 24, 2008) .......................................................23

*Seven Seas Cruises S. DE R.L. v. V Ships Leisure SAM*,
  2010 WL 5139073 (S.D. Fla. Dec. 2, 2010) ........................................................22

*Starway v. Independent School District No. 625*,
  187 F.R.D. 595 (D. Minn. 1999) ...................................................................29, 30

*Suss v. MSX International Engineering Services, Inc.*,
  212 F.R.D. 159 (S.D.N.Y.2002) .............................................................20, 21, 22

*Thermoset Corp. v. Building Materials Corp. of America*,
  2015 WL 1565310 (S.D. Fla. Apr. 8, 2015) .................................................28, 29

*Thomas v. Euro RSCG Life*,
    264 F.R.D. 120 (S.D.N.Y. 2010) ...........................................................................23

*Timm v. Mead Corp.*,
    1992 WL 32280 (N.D. Ill. Feb. 7, 1992) .............................................................21

*United States v. Mesadieu*,
    166 F. Supp. 3d 1275 (M.D. Fla. 2015).........................................................15, 18

*Walker v. GEICO Indemnity Co.*,
    2016 WL 11578803 (M.D. Fla. July 11, 2016) .....................................24, 27, 28

*Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.*,
    81 F.R.D. 8 (N.D. Ill. 1978)................................................................................23

**Statutes**

F.S. 847.001 ................................................................................................................5

**Other Authorities**

23A Fed. Prac. & Proc. Evid. EVID R 502 (1st ed.) ..............................................27

Fed. R. Evid. 502 ......................................................................................................26

Fed. R. Evid. 612 ......................................................................................................18

Fed. R. Civ. P. 26 ..........................................................................................15, 27, 32

Plaintiffs hereby file their Opposition to Defendant's Motion for Order Permitting Defendant to Retain and Use Inadvertently Disclosed Information (the "Motion" or "Mot."), ECF 110. Because Defendant Escambia County School Board ("School Board") cannot satisfy any of the elements necessary to require production of a document under the Confidentiality Order or the Federal Rules, its Motion should be denied.

## INTRODUCTION AND BACKGROUND

Plaintiffs are challenging decisions by the School Board to remove 10 books from Escambia County school libraries and restrict access pending review to over 150 additional books. Amended Complaint ("Am. Compl.") ¶¶ 88, 98, 105, ECF 25-1. Plaintiffs' central allegation is that the books were removed or restricted based on hostility to the ideas they express and/or their themes, rather than for legitimate pedagogical reasons. *Id*. ¶¶ 3-7.

### A.    The Stipulated Confidentiality Order

On May 1, 2024, this Court entered a Stipulated Confidentiality Agreement (the "Confidentiality Order," ECF 79), which governs discovery in this action. The Order specifically addressed "the handling of documents, deposition testimony, deposition exhibits . . . and any other information or material produced, given, or exchanged . . .  by or among any Party or non-Party providing Discovery Material". Confidentiality Order ¶ 2.

1

The Confidentiality Order anticipated that certain privileged materials might be inadvertently disclosed, and provided that such disclosure "shall not constitute or be deemed a waiver . . . of any claim of attorney-client privilege, work product protection, or any other privilege." *Id.* ¶ 15(a).  The Confidentiality Order provides that such documents should be returned and/or destroyed within five days upon the notification of the inadvertent disclosure:

> If a Disclosing Party notifies the Receiving Party of Inadvertently Disclosed Information, the Receiving Party shall:
>
> i.    immediately cease using, copying, or distributing the Inadvertently Disclosed Information; and
>
> ii.    within five (5) days (subject to the business day requirement as discussed above), return or certify the destruction of all copies of the Inadvertently Disclosed Information, *including any documents created  by the Receiving Party based upon the Inadvertently Disclosed Information*.

*Id.* ¶ 15(b) (emphasis added). Thus, the Confidentiality Order anticipates notification might come *after* the Inadvertently Disclosed Information has already been reviewed and even used by the Receiving Party.

## B.    The Inadvertently Disclosed Document

Defendant noticed the deposition of a corporate representative for Plaintiff PEN American Center, Inc. ("PEN America") pursuant to Federal Rule of Civil Procedure 30(b)(6). The deposition notice set forth 19 separate topics, including nine topics seeking specific information "[f]or each book" for which PEN America

claims to have standing – approximately 164 books. *See* Decl. of Lynn B. Oberlander ("Oberlander Decl.") Ex. 1. Those topics included, *inter alia:* "the basis for the allegation that each book was removed and/or restricted based on viewpoint discrimination, including the viewpoint that was purportedly discriminated against" (Topic 10); "the basis for the allegation that each book was removed and/or restricted based on political or ideological disagreement with the ideas expressed in the book" (Topic 11); and "the bases for the allegation that "[n]one of the books at issue" qualify as harmful material under section 847.012, Florida Statutes" (Topic 12). *Id.*

PEN America put forth Summer Lopez as its corporate deponent. Ms. Lopez is the Chief Program Officer, Freedom of Expression. In this capacity, she oversees all of PEN's freedom of expression work that serves to defend writers and journalists in the United States and around the world.  See Decl. of Summer Lopez ("Lopez Decl.") ¶ 5. She supervises approximately 30 full-time staff and a number of contractors. This includes the U.S. Free Expression team, and within it, the Freedom to Read team, which is the team primarily involved in PEN America's work responding to book banning, including advocacy, information gathering, and publishing the semi-annual reports on book banning in the United States. *Id*. ¶ 6. While Ms. Lopez was generally aware of the actions taken by the School Board to

remove and restrict books, and of this case, she was not intimately aware of the details of many of the books at issue. *Id.* ¶ 7.

Ms. Lopez had to collect vast amounts of information to provide testimony responsive to Defendant's extraordinarily broad deposition topics. She was aided by PEN America's in-house legal team, including Katie Blankenship, Senior Director for the PEN America Florida office and licensed Florida attorney, and Legal Fellow Diane Elizabeth Brinkley. Ms. Brinkley interviewed PEN's employees, compiled data and information regarding the challenges and the subsequent removal and/or restriction of the books at issue in this case, along with PEN America's internal documents regarding its diversion of resources, and then reviewed, synthesized and summarized these documents and data points. Decl. of Diane Elizabeth Brinkley ("Brinkley Decl.") ¶ 6. In the week leading up to the deposition, Ms. Brinkley also created a summary document containing information about each of the over 160 books (the "Book Pages" document or the "Inadvertently Disclosed Document") that was intended to be used by Ms. Lopez if necessary at the deposition. *Id.* ¶¶ 9-10.

The Book Pages document is a 169-paged PDF document that compiles various categories of information about the books, along with Ms. Brinkley's legal analysis and opinions. There are one to two pages dedicated to each of the books at issue in the case, and for each book, there are between 8 and 11 distinct

topics: Removed or Restricted; PEN Standing (Organizational and/or Associational); Challenge Form information; Summary; Content; Accolades; Author Identity; Audience; Sexual Conduct under 847.001(19); Viewpoint Discrimination; On Book Looks. Each topic also contains space for a narrative or a check box, depending on the topic. *Id.* ¶ 14 & Ex. A (sample page without any content).

Plaintiffs' counsel Lynn Oberlander believed the Book Pages document solely contained factual information that was either publicly available or previously produced in this action, as that was what had been discussed with Ms. Brinkley. *See* Oberlander Decl. ¶ 7. However, unbeknownst to Plaintiffs' counsel, Ms. Brinkley also included PEN America's in-house legal analysis for some of these categories, including analysis as to whether it could be plausibly argued or alleged by a challenger that the books at issue contain a description of sexual content or conduct that could be possibly considered a violation of F.S. 847.001(19). Brinkley Decl. ¶ 15. The Book Pages also included the legal team's analysis of the viewpoint that was being discriminated against by the School Board's actions. *Id.* ¶ 16. Ms. Brinkley did not understand that her work product should not appear in a document to be used by a deponent. *Id.* ¶ 12.

Ms. Brinkley did not complete the document until the night before the deposition, sending it to Plaintiffs' counsel at 10:20 p.m. on July 31, 2024. *Id.* ¶

19. Due to the late completion of the Book Pages document, the sheer number of books involved, the myriad deposition topics at issue, the amount of preparation required for Ms. Lopez, and the difficulty in assembling all of this information in time for the deposition, this analysis was not reviewed or discussed in depth by or with legal counsel or the deponent prior to the corporate deposition. Oberlander Decl. ¶ 12; Brinkley Decl. ¶ 21.

On the morning of the deposition, August 1, 2024, Plaintiffs' counsel printed out the Book Pages document and put in a binder so that it was available for reference by Ms. Lopez, if necessary. Oberlander Decl. ¶ 12.

At the deposition's outset, Defendant's counsel Nicole Smith asked the deponent what materials she had before her, and Ms. Lopez described the various files.  Ms. Smith then requested that those materials be provided to her, and Plaintiffs' counsel agreed, in an effort to help the deposition run smoothly. *Id.* ¶ 13. As most of the materials were the already-filed court papers or other publicly available materials, Plaintiffs' counsel emailed Ms. Smith two summary files: a spreadsheet of the amount of time and money that had been diverted to researching and responding to the School Board's book removals and restrictions (in response to Deposition Topics 15 -17); and the Book Pages document titled "Book pages for Summer deposition.pdf."   Plaintiffs' counsel made clear that these were materials that had not been previously produced as

they had been created in preparation for the deposition, and they both were marked "Privileged and Confidential." *Id*.

The questioning on the first day of the deposition concerned PEN's structure, employees, and programs, and the resources which PEN America had diverted to analyze and respond to the actions of the School Board. The individual books at issue were not discussed or raised on the first day, and Ms. Lopez had no opportunity to review the Inadvertently Disclosed Document. Lopez Decl. ¶ 18; Oberlander Decl. ¶ 15.

At the time the document was inadvertently disclosed, that is, on the morning of the first day of the deposition, Plaintiffs' counsel was unaware Ms. Brinkley's work product appeared in the document. Oberlander Decl. ¶ 11. As Defendant has confirmed, the document was not utilized, referred to, or used to refresh the deponent's recollection on the entire first day of the deposition. Mot. ¶ 17; Oberlander Decl. ¶ 15; Lopez Decl. ¶ 16.

It was only on the morning of the second day, August 2, when Defendant's counsel sought to introduce the document that Plaintiffs' counsel realized the document contained protected work product. Ms. Oberlander first saw what she took to be an error in the information for one of the books and asked Ms. Brinkley about it. Ms. Oberlander then immediately informed Defendant's counsel that the document contained errors, objected to the

document's use in the deposition, and asked for it to be returned or destroyed.

Oberlander Decl. ¶ 16.

> MS. OBERLANDER: Nicole, I would actually, before you begin on this, we are -- I'm actually trying to -- we have some mistakes in that, . . . I sent it to you because we anticipated that we would be going through it yesterday, but we have substantially -- we've recognized that there are some errors in there, so I would like to withdraw that. We do not have it open here, and it has not been part of anything that we have discussed today. So, I frankly, would like you to put it in the garbage, because I think it will be too confusing when we go through this – this information.
>
> MS. SMITH: Well, that is confusing. I'm not going to throw it away.
>
> MS. OBERLANDER: It was provided to you because you asked what you had in your room, and that we were planning on relying upon and that's as of yesterday, that was it. We did [ ] discover some errors, and we haven't relied on it, and so that is -- it wasn't produced formally, so that's -- that's -- that is my request.

Oberlander Decl. Ex. 2 (the "Tr.") at 7:13 – 8:12. Plaintiffs' counsel noted

repeatedly that the deponent had not used the material or even looked at it during

the deposition the day before:

> MS. OBERLANDER: [A]s you said, material that she has in front of her. She doesn't have it in front of her. We haven't discussed it in this hearing. She hasn't looked at it during the deposition, and we have discovered errors. So, I am happy to discuss sending you a corrected version of it, but I can't -- but -- but it turns out that there are some material in there that is both incorrect, and that, frankly, should not have been included in the list at all. . . .

> And so given that we have not looked at it, and relied on it, because I do agree you, that you are entitled to see what the deponent is relying upon. I would ask that we, you know, put it in the trash, and we will go from her memory today.

Tr. at 9:06 – 9:22. The parties took a short break, during which time Ms. Oberlander spoke with Ms. Brinkley and Ms. Blankenship, and determined that the document contained privileged work product information.  Oberlander Decl. ¶ 16. As that point, Ms. Oberlander immediately sought to claw it back:

> MS. OBERLANDER: Yes. So, we are – we are, this was produced, or provided to – it wasn't actually produced. It was provided to you in error. This document contains attorney/client work product information, and we are asking to [claw] it back. We believe that that is your responsibility, to provide it back to us. We are not relying on it, and we are -- we believe it's privileged. So, we are [clawing it] --
>
> MS. BRINKLEY: -- the document, it does –
>
> MS. OBERLANDER: -- it does say privileged on it. We -- it was -- it was provided to you in error. It's attorney/client work product, and we are [clawing] it back.

Tr. at 11:12 – 12:1. And,

> Ms. OBERLANDER: So, as I think we already, on record, that the material contained attorney/client work product. We believe it's privileged. We are [clawing] it back. We are not relying on it. We're not looking at it.

Tr. at 21:23 – 22:2.

The deponent herself also testified that she had not used or reviewed the document during the deposition, and that she had only reviewed it "in a general sense" the day prior to the deposition:

> Q      (By Ms. Smith) Ms. Lopez, I am going to ask you a few questions about the document, . . . did you review it?
>
> A            Yes, in a general sense. I did not look at every single page.
>
> Q      When did you review it?
>
> A      In sort of the day before the deposition.
>
> Q      So, you reviewed that document in preparation for your deposition; correct?
>
> A      I looked generally through it, but I did not spend significant amount of time on each page. It was more to make sure I was familiar with the format and generally what information was in there, and then I intended to make use of it during the deposition.

Tr. at 22:21 – 23:12.

In an attempt to resolve the situation, Plaintiffs' counsel indicated that not every category on the spreadsheet contained work-product information, and offered to redact it. Tr. at 13:19 -13:22.  Defendant's counsel refused the offer. Plaintiffs' counsel proceeded to describe which of the categories of information for each book **did not** contain work-product information and therefore could be discussed during the deposition.  These categories included whether PEN America was claiming associational or organizational standing, whether the book appeared

10

on the Book Looks website, and whether it was classified as removed or restricted. "[E]verything else is attorney/client work product." Tr. at 14:13 -14:19.

In addition, Plaintiffs' counsel noted that it was "overly burdensome to expect any representative, including a Corporate Representative to have, by memory, information, detailed information around 165 books" and asked Ms. Smith to provide the challenge forms for each of the books for the deponent's review. Ms. Smith refused, saying that she did not have time to do so (notwithstanding that defense counsel did provide the challenge forms during the corporate deposition of plaintiff Penguin Random House).  Tr. at 20:24 – 21:7. Nevertheless, Plaintiffs' counsel indicated that the deponent could testify as to all of the other topics in the Deposition Notice without relying on the Inadvertently Disclosed Document.  Tr. at 22:3 – 22:13.

Plaintiffs' counsel continued to object, and the deposition continued throughout the day without reference to the Inadvertently Disclosed Document. Defendant's counsel refused to return or certify the destruction of the document, and indicated that she was going to file a motion with the court. However, Plaintiffs' counsel acknowledged that the deposition would be kept open past the two days, if and when the court decided the motion.  Tr. at 22:13 – 22: 19.

In accordance with the Confidentiality Order, as soon as it was determined that the document provided to the School Board contained privileged attorney

11

work-product information, and *before* it was used or relied upon in the deposition, Plaintiffs' counsel provided notice that the document was privileged, should not have been disclosed, and sought its return. This was on the morning of the second day of the deposition, August 2, 2024, approximately 24 hours after the inadvertent disclosure. Pursuant to the Confidentiality Order, Defendant should have returned or certified the destruction of the information within five business days, by August 9.

On August 6, Plaintiffs' counsel sent a letter to Defendant's counsel formally requesting the return or certification of destruction of the Inadvertently Disclosed Information and any documents created or based upon it, pursuant to the Confidentiality Order. Oberlander Decl. Ex. 3. The letter noted, correctly, that "The Inadvertently Disclosed Information was not relied upon during the deposition in any way: it had been prepared with the intent of using it, but was not looked at or reviewed by the deponent prior to our sending it to you."[1] *Id.*

---

[1] The School Board argues (at Mot. ¶¶ 32-33) that the letter is incorrect in its statement that the deponent had not looked at or reviewed the Inadvertently Disclosed Document prior to Plaintiff sending it to the School Board counsel at the beginning of the deposition. However, the sentence as a whole is referring to the time "during the deposition." The deponent testified that she had reviewed the document "in a general sense" the day before the deposition, i.e. on July 31, but "I did not look at every single page." That deposition testimony was included as an exhibit to the Notice of Inadvertent Disclosure so there was no intention of misstating the facts.

## ARGUMENT

**I.    THE DOCUMENT AT ISSUE CONTAINS ATTORNEY WORK PRODUCT PRIVILEGED INFORMATION**

The Inadvertently Disclosed Document contains attorney work product, to wit, the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. The Inadvertently Disclosed Document was created by Diane Elizabeth Brinkley, a junior legal fellow for PEN America, to aid in the preparation for the deposition of PEN's corporate representative, as a means of consolidating the significant amount of information required to provide responsive testimony about the more than 160 books at issue in the litigation.  Ms. Brinkley, however, was not aware that the document she created would be subject to production, and thus did not think to omit her work product and legal opinions from the document.  Brinkley Decl. ¶ 12.

Not all information in the Inadvertently Disclosed Document is mental impressions, conclusions or opinions of counsel or their representative, but certain topics do reflect PEN America's in-house legal analysis.  The entries that do not contain attorney work product information include: "Removed or Restricted"; "PEN Standing"; and "Book Looks".[2]   The other categories all contain Ms.

---

[2] Plaintiffs' counsel offered to provide a redacted version of the Inadvertently Disclosed Document that contained the categories that did not include privileged work-product information, but Defendant's counsel rejected that offer. *Supra* at 11.

Brinkley's analysis and mental impressions, were prepared for the litigation, Brinkley Decl. ¶¶ 17-18, and thus are protected from discovery. *See, e.g.*, *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 1321522, at *6 (N.D. Fla. Mar. 20, 2020) (upholding finding of work product where document created because of litigation; "the key determinations in assessing the applicability of the work product privilege are when and why the document or thing was created."); *Doe v. Lynn Univ., Inc.*, 2017 WL 275448, at *9 (S.D. Fla. Jan. 19, 2017) (proposed deposition questions constitute opinion work product "providing important insight into an attorney's approach to the case" and should not have been ordered produced).

## A. The Parties' Agreed Confidentiality Order and the Federal Rules Require the Immediate Return of the Document

Both the Confidentiality Order and the Federal Rules of Civil Procedure require the School Board to return the Inadvertently Disclosed Document promptly. The School Board cannot retain the work product contained therein because as opinion work product it is absolutely shielded from disclosure, and to the extent it includes fact work product, the School Board has shown neither its substantial need for the information nor undue hardship in obtaining the information by other means.

By its plain terms, the Confidentiality Order stipulated by the parties requires the return or destruction of inadvertently disclosed information (and any

14

documents created based upon it) within five days of the notification of the disclosure.  *See* Confidentiality Order 15(b).  Further, Federal Rule of Civil Procedure 26(b)(3) precludes discovery of documents "prepared in anticipation of litigation" by another party or that other's party's representative unless the party seeking discovery can "show[] that [it] has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  The Rule continues: "If the court orders discovery of those materials, it *must* protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  *Id.* (emphasis added).

Opinion work product – "material that reflects an attorney's mental impressions, conclusions, opinions or legal theories" -- is subject to "a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'"  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). Fact work product may only be discoverable upon "a showing of a substantial need for the documents and the inability to obtain the requested documents by other means without undue hardship." *United States v. Mesadieu*, 166 F. Supp. 3d 1275, 1279 (M.D. Fla. 2015).

Defendant fails to meet either standard.

## B.    Defendant Has Not Shown Substantial Need or Undue Hardship

Defendant's only argument why it should allowed to disregard the

Confidentiality Order and retain the Inadvertently Disclosed Document is that the

attorney work product material in the document is "highly relevant to the issues of

PEN's standing and whether the books at issue contain sexual conduct, as defined

by Florida law." Mot. ¶ 37. But relevance is not the standard here; substantial need

and undue hardship are. *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467

(11th Cir. 1984). ("Rule 26(b)(3) governs the disclosure of work product and

places a twofold burden on the party seeking discovery.  The appellee must show

both substantial need and undue hardship.") Further, Defendant's counsel refused

Plaintiffs' counsel's offer to provide a redacted version of the Inadvertently

Disclosed Document that *included information pertinent to standing*, as those

categories in the document do *not* include attorney work product. That offer still

stands, and Defendant's arguments about standing thus are a red herring. [3]  *See*

Mot. ¶ 37.  As to the analysis contained in the category "Sexual Conduct under

---

[3] Moreover, PEN America testified as to the list of authors for whom it was
claiming associational standing; and is obligated to update or correct that
information if it discovers something that puts it in doubt. *Cf. Covey v. Colonial
Pipeline Co.*, 336 F.R.D. 514, 525 (N.D. Ala. 2020) (no substantial need or undue
hardship where party provided redacted transcript to "protect counsel's mental
impressions").

847.001(19),” that is PEN America's legal team's opinion work product. Oberlander Decl. ¶ 9.

That counsel for the School Board had the document for 24 hours, and may have prepared some notes or questions based upon it, *see* Mot. ¶ 18, does not demonstrate substantial need or undue hardship. Indeed, the protections afforded by the Confidentiality Order do not run from the time of production, but from the time of discovery and notification. Confidentiality Order ¶ 15. Thus, the Confidentiality Order presumes that there will be an interval between the inadvertent disclosure and its discovery. Here, the interval was only a day, while the deposition was on-going, and without an opportunity for Plaintiffs' counsel to review the document. Further, the Confidentiality Order recognizes some documents or other information may be prepared by the receiving party on the basis of Inadvertently Disclosed Information, and likewise requires their destruction upon notice. *Id.* ¶ 15(b). Defendant stipulated to this provision, and must abide by it. Moreover, Plaintiffs' counsel agreed to leave PEN's deposition open, pending this Court's decision on the Motion, so returning the Inadvertently Disclosed Document imposes no hardship upon the School Board even if it originally prepared its second day of deposition questioning in reliance upon the document. *See, e.g.*, *Castle*, 744 F.2d at 1464 (no showing of undue hardship where privileged information might be obtained elsewhere); *McMahon v. E. S.S.*

*Lines, Inc.*, 129 F.R.D. 197, 199-200 (S.D.Fla. 1989) (plaintiff's conclusory

allegations do not show substantial need and failure to argue "undue hardship"

"fatal to its position" that privileged material should be produced); *Mesadieu*, 166

F. Supp. 3d at 1279 (opinion work product "absolutely immune" from discovery;

"no undue hardship" for other work product where information can be obtained in

other ways).

## II.    THE SCHOOL BOARD IS NOT ENTITLED TO PLAINTIFF'S WORK PRODUCT UNDER FEDERAL RULE OF EVIDENCE 612

Defendant primarily argues it is entitled to the Inadvertently Produced

Document pursuant to Federal Rule of Evidence 612. *See* Mot. at 12-13. But

Defendant fails to show, as it must under the Rule, that the document was used to

refresh the witness' recollection, that the witness relied upon the document during

testimony, or that the interests of justice favor the document's production.

The Rule has two subparts: subpart (1) applies when the document is used to

refresh a witness's recollection *while* testifying; and subpart (2) applies when a

document was used to refresh a witness's recollection *prior to* that witness's

testimony. Fed. R. Evid. 612(a). It is undisputed Ms. Lopez only reviewed the

Inadvertently Disclosed Document "in a general sense" *prior to* testifying.

Therefore, subpart (2) applies and production of Plaintiff's work product is

appropriate only if: (1) Ms. Lopez used the document to refresh her recollection;

(2) the document was actually used for the purpose of testifying in the deposition;

and (3) production is necessary in the interest of justice. *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 2006 WL 786425, at *4 (M.D. Fla. Mar. 27, 2006). The School Board has not satisfied any of these criteria.

### A.   The Document Was Not Used to Refresh Ms. Lopez's Recollection

As discussed above, the corporate deponent was not intimately aware of the details of many of the specific books at issue in this litigation.  Lopez Decl. ¶ 13. Indeed, it would be nearly impossible for any one person to possess and retain such knowledge.  In preparing for her deposition, Ms. Lopez reviewed the Amended Complaint, the Interrogatory Responses, many of the challenge forms, the District Review Committee reports for the Removed books, and certain other publicly filed and produced documents in this case.  *Id.* ¶ 11.  She also spent significant time working to quantify how much time and money PEN America had spent – prior to this litigation – to research and analyze the book challenges and the School District's responses to those challenges, including the policies and practices that resulted in decisions to remove permanently 10 books and to restrict access to over a hundred others. *Id.* ¶ 12. She also was prepared generally to review the challenge forms, and to speak broadly about the viewpoints PEN America asserts are subject to discrimination.  *Id.* ¶ 13. In short, Ms. Lopez did not focus her preparation on the details of many of the removed or restricted books because memorizing such voluminous detail would be near impossible, especially as she also diligently

prepared for the many other topics on which Defendants planned to inquire. Moreover, Ms. Lopez testified under oath that her pre-deposition "review" of the Inadvertently Disclosed Document was limited to familiarizing herself with its format so she could potentially use it during testimony.  Tr. at 22:21 – 23:12.

Defendant points to no evidence that Ms. Lopez reviewed in detail the document's contents, because there is none. It was never used to refresh her recollection – at any point prior to or during the deposition – and Defendant cannot argue or point to any evidence otherwise. Lopez Decl. ¶ 17. *Cf. Medtronic*, 2006 WL 786425, at *6.  It is troubling that Defendant nevertheless refuses to return or dispose of the Inadvertently Disclosed Document.

### B.    The Document Was Not Used in the Deposition at All

The School Board asserts repeatedly that the document was created for the purpose of Ms. Lopez relying upon it during her deposition, and that she intended to do so.  Plaintiffs do not disagree with this characterization. But Ms. Lopez's *intention* is irrelevant under the plain language of FRE 612.  Rather, the School Board must show Ms. Lopez *actually relied* on the document in providing her testimony.  This it cannot do, because it is undisputed Ms. Lopez did not look at the document during her deposition.  Even if she had, that still would not be enough to warrant production.  Courts have held that simply looking at a document is not sufficient to trigger Rule 612. *See Medtronic*, 2006 WL 786425, at *6; *Suss*

*v. MSX Int'l Engineering Services, Inc.*, 212 F.R.D. 159, 165 (S.D.N.Y.2002) ("'[r]elied upon' means more than simply reviewing"). Rather, the School Board must show that Ms. Lopez actually relied upon the document. *Medtronic*, 2006 WL 786425, at *6; *see also Suss*, 212 F.R.D. at 165 ("Unless there is some demonstrated impact on the witnesses (sic) testimony, the witness cannot be deemed to have relied on the document."); *Timm v. Mead Corp.*, 1992 WL 32280, at *6 (N.D. Ill. Feb. 7, 1992) (No waiver under Rule 612 where witness "glanced" at the document as "it is not possible to conclude that the deponent reviewed and relied upon the documents in giving his testimony, nor is it possible to conclude that the documents had any impact on his testimony.").

The School Board cannot meet its burden, as Ms. Lopez did not rely upon or even refer to the document during her deposition.

### C.    The Interests of Justice Favor the Return of the Document

Even if the School Board were able to satisfy the first two criteria – which it cannot – the Court must then consider the interests of justice and undertake a balancing between the work product doctrine and the need for disclosure. "[T]he interests of justice' language in Rule 612(2) is synonymous with the work product protection that privileged documents are only discoverable when a party shows substantial need and that the equivalent of the materials cannot be obtained without undue hardship." *Medtronic*, 2006 WL 786425, at *5.    Additionally, "[t]he

Advisory Committee Notes to Rule 612 recognize the potential conflict between the need for disclosure and assertions of privilege, stating that 'nothing in the Rule [should] be considered as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory.'" *In re Managed Care Litig.*, 415 F. Supp. 2d 1378, 1380 (S.D. Fla. 2006); *Suss*, 212 F.R.D. at 162-63 (same); *see also Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 408 (D. Kan. 1998) (Plaintiff did not waive her privilege by reviewing a privileged document during a break in her deposition; she reviewed it "before testifying," and disclosure was not required by the "interests of justice"). The cases Defendant cites are therefore inapposite, as they all involve documents that were actually *reviewed* and *used* by the witnesses to prepare for the deposition, and not, as here, merely created with the intention of being used, and skimmed to make sure the deponent was "familiar with the format."[4]

---

[4] *See, e.g*, Mot. at 13 – 19 (citing *United States v. 22.80 Acres of Land*, 107 F.R.D. 20, 26 (N. D. Cal. 1985) (deponent "testified that he reviewed the appraisal reports . . . immediately before his deposition, and that those documents refreshed his recollection"); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1017 (1st Cir. 1988) (production of list of intended deposition exhibits five days before depositions in "mammoth" litigation "not remotely analogous to the situation where a party seeks an attorney's personal notes and memoranda which contain his confidential assessments of the testimony of prospective witnesses"); *Melaih v. MSC Cruises*, 2021 WL 6757166, at *1 (S.D. Fla. May 19, 2021) (incident report "read" to deponent; and ordering production with redactions to protect attorney work-product); *Seven Seas Cruises S. DE R.L. v. V Ships Leisure SAM*, 2010 WL 5139073, at *1 (S.D. Fla. Dec. 2, 2010) (deponent had to produce documents actually relied upon, or actually used to refresh recollection); *Audiotext Comm'ns*

In this case, where there is a legitimate claim of work-product privilege, and no prejudice or hardship to the School Board, *see supra* at 15-18, the interests of justice compel the denial of Defendant's Motion. Other courts dealing with similar issues have found no waiver of privilege. Indeed, in a case Defendant cites on this issue, *see* Mot. at 12, the Middle District of Florida – on remarkably similar facts – found the document at issue should *not* be disclosed. In *Medtronic*, 2006 WL 786425, Defendant sought to compel production of a document the corporate representative testified he had reviewed in preparation for the deposition. Plaintiff

---

*Network, Inc. v. US Telecom, Inc.*, 164 F.R.D. 250, 253, 254 (D. Kan. 1996) (deponent testified that, after reviewing certain documents, he was "astonished" by things he had failed to recall during previous testimony and where review of notebook impacted testimony); *Thomas v. Euro RSCG Life*, 264 F.R.D. 120, 122 (S.D.N.Y. 2010) (deponent had reviewed notes of previous conversations in aid of "recounting of conversations" and court found notes likely impacted testimony); *Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 202 (M.D. Fla. 1990) (deponent repeatedly reviewed the files during his deposition); *Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.*, 81 F.R.D. 8, 9 (N.D. Ill. 1978) (deponent used documents to refresh recollection); *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 242-43 (D. Md. 2010) (documents necessarily informed testimony); *Heron Interact, Inc. v. Guidelines, Inc.*, 244 F.R.D. 75, 77 (D. Mass. 2007) (deponent acknowledged reviewing documents in preparation for his deposition and relying upon documents during deposition); *In re Seroquel Prods. Liab. Litig.*, 2008 WL 215707, at *5 (M.D. Fla. Jan. 24, 2008) (ordering identification of documents selected by attorney for review by deponent, which were reviewed and relied upon by deponent prior to deposition); *In re Comair Air Disaster Litig.*, 100 F.R.D. 350, 354 (E.D. Ky. 1983) (internal accident report reviewed shortly before testimony when still "fresh in [deponent's] mind" and where court "also gives great weight to the fact that no attorneys were involved in preparation of the report").

objected to production on the basis that the document was work product, and the court found no waiver under FRE 612. As it was undisputed that the witness had – like in the instant case – only reviewed the document prior to testifying, the Court noted that "if *Rule [6]12* applies, section (2) affords the Court discretion in determining whether the interests of justice require disclosure. *Fed. R. Evid. 612(2)*". *Id.* at *4.

Applying Rule 612(2)'s three-part test, the Court first looked to whether the witness had refreshed his recollection with the document. The witness testified he had not. *Id.* at *6. But even if he *had*, the Court found that the defendant still did not meet its burden of showing the deponent *used* the document in his deposition. *Id.* at **6-7. This was the case even though the deponent testified that he had relied "somewhat" on the document in preparing his testimony, because the party failed to demonstrate actual influence upon the testimony. *Id.* Finally, the court found the interests of justice did not require production of the document because "Defendant never attempt[ed] to demonstrate its 'substantial need' for obtaining this document or its 'undue hardship' in obtaining equivalent information." *Id.* at *7.[5]

---

[5] *See also Castle*, 744 F.2d at 1467 (no substantial need nor undue hardship where party did not show that "it could not obtain that information by deposing the same witnesses"); *Walker v. GEICO Indem. Co.*, 2016 WL 11578803, at *11 (M.D. Fla. July 11, 2016) (failure to establish substantial need for work product material, where party has not shown "it cannot discover from [opposing party]" the

So too in the instant case. Ms. Lopez did not refresh her memory with the document; she did not even review it on the day of the deposition. Moreover, she did not use, rely upon, or refer to the document during her deposition. Nor has Defendant put forth any satisfactory statement of its "substantial need" for obtaining this document or its "undue hardship" in obtaining equivalent information that would justify the extreme remedy of disclosing attorney work-product information and analysis.

### D. Plaintiffs Did Not Waive the Privilege

The School Board further argues that Plaintiff PEN America has waived any privilege because "Plaintiffs voluntarily disclosed the Disputed Document to the Board, thereby waiving any alleged privilege concerning the Document." Mot. at 11. By Defendant's illogic, *every* inadvertent (yet voluntary) disclosure of privileged information would result in waiver. The law and the Confidentiality Order provide otherwise.

---

information sought.); *McMahon*, 129 F.R.D. at 199-200 (No substantial need or undue hardship where plaintiff failed to show how compelled answers would be "dispositive" or even "helpful to their position in any way" and where plaintiffs "have not even attempted to argue that similar information could not be obtained elsewhere, or that to do so would constitute an undue hardship"); *Covey*, 336 F.R.D. at 525 (no substantial need nor undue hardship where redacted transcript produced).

Pursuant to Federal Rule of Evidence 502(d) and (e), the parties can agree and a court can order that inadvertent disclosure does not constitute a waiver of any privilege – both of which occurred in this case's Confidentiality Order. *See* Confidentiality Order ¶ 15 (outlining clawback procedure, and providing an inadvertent disclosure "shall not constitute or be deemed a waiver . . . of any claim of attorney-client privilege, work product protection, or any other privilege."); *see also, e.g.*, *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 638 (W.D.N.Y. 1993) ("although the Protective Order does not, by its terms, apply to the documents, paragraph 17 of the order strongly negates the inference that Plaintiff intended to waive the privilege. The court, therefore, concludes that the circumstances of the instant disclosure demonstrate it was inadvertent"). This should be the end of the discussion.

Recognizing this conundrum, Defendant argues "there is nothing in [the Confidentiality Order] indicating that it supplants Rule 502(b)'s waiver standard, and thus that is the standard through which Plaintiffs' counsel's actions should be viewed." Mot. at 20 n.4. But there would be no reason to include a clawback provision in a protective order if it merely echoed the requirements of the preexisting rule. *See Muy v. Int'l Bus. Machines Corp.*, 2020 WL 13470562, at *4 (N.D. Fla. Nov. 13, 2020) (protective order containing a clawback provision could supplant Rule 502(b)'s waiver standard). Even if Federal Rule of Evidence 502(b)

applied here, however, it would not support waiver in this instance.  Rule 502(b) provides that inadvertent disclosure does not operate as a waiver if:  "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[6]  The Rule's test is a flexible one, "a set of non-determinative guidelines that vary from case to case."  *See* Advisory Comm. Note, 23A Fed. Prac. & Proc. Evid. EVID R 502 (1st ed.).  "Most courts find a waiver only if the disclosing party acted carelessly in disclosing the communication or information and failed to request its return in a timely manner." *Id. see also Walker*, 2016 WL 11578803, at *7 ("Some judges in the Eleventh Circuit have adopted the simpler analysis and focused on the intent of the producing party. This approach is consistent with well-established law that waiver is an intentional relinquishment of a known right." (citations omitted)).

The first element, whether or not the disclosure is inadvertent, "essentially ask[s] whether the party intended a privileged or work-product protected

---

[6] Federal Rule of Civil Procedure 26(b)(5)(B) provides that the party holding the privilege "may notify any party that received the information of the claim and the basis for it." It then provides that, after notification, the receiving party "must promptly return, sequester, or destroy the specified information" pending a determination of the claim.  There is no dispute that Plaintiffs followed the processes called for in the rule by promptly notifying the School Board.

27

document to be produced or whether the production was a mistake." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 2015 WL 1565310, at *8 (S.D. Fla. Apr. 8, 2015) (quoting *Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1037-38 (N.D. Ill. 2009)).  Here, the evidence is clear that the disclosure was a mistake.  Ms. Brinkley prepared the Inadvertently Disclosed Document without understanding her work product, mental impressions, and legal analysis and opinions should not appear in a document to be used by a deponent, and Plaintiffs' counsel had insufficient time between its creation and the deposition to review the document fully to understand that it contained attorney work product. *See also Walker*, 2016 WL 11578803, at *7  (Inadvertent disclosure where legal assistant "made a mistake" by "failing to follow" standard operating procedure "because she felt pressured to produce [the documents] due to the delay in production").

The second factor asks whether the holder of the privilege took reasonable steps to prevent disclosure of a privileged document, and courts looks to several factors including the methodology of precautions used for privileged documents, the scope of discovery, and number of documents to be reviewed, and (critically here) any time constraints. *See Thermoset Corp*, 2015 WL 1565310, at *8.  Given the sheer number and breadth of the topics and the number of books for which Defendant School Board intended to ask questions, the scope of discovery was

28

significant. Further, the document was created to facilitate responses to inquiries for over 160 separate books, and was only completed after 10 p.m. the night before the deposition, imposing a significant time constraint upon its review by counsel.

The third factor, whether the disclosing party acted promptly in rectifying the error, is also met. Plaintiffs' counsel notified Defendant immediately upon realizing the document contained work product information, while the deposition was still ongoing, and a mere day after the inadvertent disclosure. *See Thermoset Corp.*, 2015 WL 1565310, at *9 ("[T]he relevant time . . . is how long it took the producing party to act after it learned that the privileged or protected document had been produced." (quoting *Coburn*, 640 F. Supp. 2d at 1041) (notification on the same day as discovery timely notwithstanding several months after the documents had been produced)); *see also Diamond Car Care, LLC v. Scottsdale Ins. Co.*, 2017 WL 1293249, at *6 (S.D. Fla. Jan. 10, 2017) (no waiver under FRE 502 where Defendant objected "[a]s soon as Defendant realized that Plaintiff began to use the privileged documents at a deposition" and promptly sent an email requesting the return or destruction of the privileged documents); *Starway v. Indep. Sch. Dist. No. 625*, 187 F.R.D. 595, 598 (D. Minn. 1999) (measures to correct error prompt when party "asserted the privilege immediately upon notice of the error and the initial demand for return of the documents was made at that time" during a deposition).

*Scanlon v. Bricklayers & Allied Craftworkers, Loc. No. 3*, 242 F.R.D. 238 (W.D.N.Y. 2007) is instructive.  In *Scanlon*, following a request by plaintiff's counsel to see the documents that the deponent had brought to the deposition, defendant's counsel allowed plaintiff's counsel to sit next to the defendant "to facilitate the review" and disclosed certain documents including a timeline.  After a few questions, defense counsel realized that the material might have been prepared under the direction of counsel and asserted privilege.  *Id.* at 243.  The Court rejected opposing counsel's argument that the sharing of the timeline during the deposition constituted a waiver, weighing factors substantially the same as those relevant here: "As the disclosure was an isolated occurrence, apparently motivated by a desire to cooperatively facilitate Plaintiff's conduct of the deposition, finding a waiver under these circumstances does not advance the interests of justice."  *Id.* at 247-48; *see also Hydraflow*, 145 F.R.D. at 638 (no waiver of privilege where privileged documents for use in deposition of Plaintiff's counsel were inadvertently provided to Defendant;  "oversight by Plaintiff's counsel does not warrant imputing to Plaintiff an intention to waive its privilege in those documents"); *Starway*, 187 F.R.D. at 598 ("The interests of justice does not

weigh in plaintiff's favor where the outcome of the dispute is to deny him something to which he was never entitled.").[7]

So too, here, the disclosure of the document was inadvertent. Plaintiffs' counsel believed that the document merely collected publicly available information and PEN America's non-privileged analyses of the Removed and Restricted Books. The document was created to enable the corporate deponent to speak to the more than 160 distinct books that are at issue in the case, and in an attempt to responsibly respond to the numerous topics in Defendant's deposition notice. The only reason that the document was provided to Defendant's counsel at the start of the deposition was an effort to facilitate the deposition and to co-operate with opposing counsel. The moment Plaintiffs' counsel realized the document contained attorney work-product information, within 24 hours of the production and while the deposition was still ongoing, counsel notified Defendant School

---

[7] Nor are the primary cases Defendant cites with respect to its voluntary waiver argument, Mot. at 19-23, remotely on point. In *Chick-Fil-A v. Exxon-Mobil*, the court found that Exxon's disclosure of its attorney work product was intentional – not inadvertent – as the attorney who disclosed it was aware that the witness "had used the document to refresh her recollection when preparing for her deposition. 2009 WL 3763032, at *2 (S.D. Fla. Nov. 10, 2009). Similarly, in *Chiquita Brands International*, the court found that "Chiquita made a voluntary production of the documents to the DOJ in the course of its prior plea negotiations with that agency, resulting in an effective waiver of any applicable privileges." Because the party produced documents as part of a plea, the court never reached the issue of whether two particular documents could be clawed back under a claim of inadvertent release. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 270 F. Supp. 3d 1332, 1335 (S.D. Fla. 2017).

Board and asked for the document's return, in compliance with Federal Rule of Civil Procedure 26(b)(5)(B).  Ms. Lopez did not use the document in any manner in the deposition.  Further, Defendant is not prejudiced in any way because the deposition remains open, and Defendant has shown neither undue hardship nor substantial need for the document. Accordingly, finding a waiver of the privilege here would not advance the interests of justice.

## CONCLUSION

Because Defendant cannot satisfy any of the criteria necessary to obviate the clear language of the Confidentiality Order and the Federal Rules, Plaintiffs respectfully request that the Court deny Defendant's Motion to Retain and Use Inadvertently Disclosed Information, and order the return of  the document and the certification of the destruction of any documents created in reliance on the Inadvertently Disclosed Information as provided for in the Confidentiality Order.

## <u>RULE 7.1(F) CERTIFICATION</u>

Plaintiffs hereby certify that this opposition contains 7,858 words.

Dated: August 21, 2024            Respectfully submitted,

*/s/ Lynn Oberlander*
Lynn B. Oberlander (*pro hac vice*)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942

Facundo Bouzat*
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8500
Facsimile: 215.864.8999

Kirsten Fehlan (*pro hac vice*)
**BALLARD SPAHR LLP**
999 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone:678.420.3000
Facsimile: 678.420.9401

Goldie Fields (*pro hac vice*)
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
Telephone: 424.204.4338
Facsimile: 424.204.4350

Shalini Goel Agarwal (FBN 90843)
Ori Lev (*pro hac vice*)
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Telephone: 202.579.4582
Facsimile: 929.777.8428

* *Pro hac vice* forthcoming

*Attorneys for Plaintiffs*