**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| PEN AMERICAN CENTER, INC., et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>ESCAMBIA COUNTY SCHOOL BOARD,<br><br><br>        Defendant. | CASE NO.: 3:23-CV-10385-TKW-ZCB |

**DECLARATION OF SUMMER LOPEZ**

I, Summer Lopez, declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts in this declaration.

2.      I am Chief Program Officer, Free Expression, at PEN American Center, Inc. ("PEN America").

3.      PEN America is a nonprofit membership organization dedicated to ensuring that people everywhere have the freedom to create literature, to convey information and ideas, to express their views, and to access the views, ideas, and literatures of others. PEN America's membership is made up of more than 5000

novelists, journalists, nonfiction writers, editors, poets, essayists, playwrights, publishers, translators, agents, other writing professionals, and other supporters.

4.     One of PEN America's core functions is protecting the free expression rights of authors, including those of its author members.

5.     PEN America operates Free Expression Programs that serve to defend writers and journalists and protect free expression rights in the United States and around the world. Initiatives of these programs include advocacy campaigns against local book bans. Teams within the Free Expression Programs department include PEN America's Washington advocacy team, the PEN/Barbey Freedom to Write Center, all of the U.S. Free Expression Programs (including Campus Free Speech Programs), the Research team, and PEN America's Digital Safety and Free Expression team.  Overall, teams I supervise include upward of 30 full-time employees and a number of contractors.

6.     One of the teams in my bailiwick is the U.S. Free Expression team, overseen by Jonathan Friedman, the Sy Syms Managing Director, U.S. Free Expression Programs.  The Freedom to Read team, led by Kasey Meehan, is the team which is primarily involved in PEN America's work responding to book banning, including advocacy, information gathering, and publishing the semi-annual reports on book banning in the United States.

7.      As the Chief Program Officer, I am generally aware of the actions taken by the Escambia School Board to remove and restrict books from the school libraries.  However, I am not an expert on each of the books, and was not involved in the book-by-book review that was undertaken by PEN America's Freedom to Read team.

8.      I was designated as the corporate representative for PEN America for the Defendant's noticed 30(b)(6) deposition on August 1 and 2, 2024.

9.      The Deposition Notice contained 19 distinct topics upon which the corporate representative was expected to testify. In addition to topics concerning the factual bases for the Amended Complaint (Topic 1), the organizational and management structure of PEN America (Topic 3), PEN America's standing (Topic 4), and the 'significant financial resources and time' PEN America had to reallocate from other priorities (Topic 5),  the deposition notice contained 9 topics that sought specific information "[f]or each book" for which PEN claims to have standing – or approximately 164 books. Those topics included "the basis for the allegation that each book was removed and/or restricted based on viewpoint discrimination, including the viewpoint that was purportedly discriminated against" (Topic 10); "the basis for the allegation that each book was removed and/or restricted based on political or ideological disagreement with the ideas expressed in the book" (Topic 11); and "the bases for the allegation that "[n]one of

the books at issue" qualify as harmful material under section 847.012, Florida

Statutes" (Topic 12), among others.

10.    In preparation for the deposition, I spent numerous hours meeting

with my colleagues, in-house counsel, and outside counsel, along with reviewing

both internal and publicly available documents and information.

11.    Specifically, I reviewed the Amended Complaint, PEN America's

Interrogatory Responses, and some of the documents that PEN America had

produced in the case, among other documents.  I reviewed the challenge forms that

were filed by Vicki Baggett that were attached as exhibits to the Amended

Complaint, and I read through the District Review Committee reports that were

also attached as exhibits.  I also reviewed PEN America's publicly-released

"Banned in the USA: The Mounting Pressure to Censor", which summarized PEN

America's tracking of school book bans in the United States during the 2022-23

school year, ( https://pen.org/report/book-bans-pressure-to-censor/), and the

predecessor reports.

12.    I spent significant time working to quantify how much time and

money PEN America had spent – prior to this litigation – to research and analyze

the book challenges and the Escambia County School District's responses to those

challenges, including the policies and practices that resulted in decisions to

permanently remove 10 books and to restrict access to over 150 others.

13.    Notwithstanding that I am not an expert in each of the books at issue in this litigation, I am able to speak knowledgeably about PEN America's general efforts across the country, and specifically in Escambia County, to combat the removal and restriction of access to books based on political or ideological disagreement with the identity of authors or ideas included in the books. I was also prepared generally to review the challenge forms, and to speak broadly about the viewpoints PEN America asserts are subject to discrimination.

14.    I did not review in detail the document titled "Book pages for Summer deposition" ("Book Pages") that is the subject of this motion. I was aware that Diane Elizabeth Brinkley was preparing a document with summary book information for each of the over 160 books, but I did not review it in any detail.  I was aware that the Book Pages document was available for my use if necessary, but did not spend any significant time reviewing the document prior to or during the deposition.  As I testified, on July 31, 2024, the night before the deposition, I looked at the Book Pages document "generally," so that I was familiar with the structure and would be able to use it during the deposition if necessary. *See* Oberlander Decl. Ex. 2 at 22:21 – 23:12.

15.    I did not use it to refresh my memory about any specific books prior to my deposition.

16.     I also did not use, refer to, rely, or otherwise look at the document during my deposition and did not use it during my deposition to refresh my recollection about any of the books at issue in this case or that were the subject matter of questions during my deposition.

17.     Although I had done my own research on a number of the books at issue in the litigation, which included reviewing the challenge forms, the complaint, and publicly available information about the books, I did not have personal knowledge of the details of each of the over 160 books challenged in this case.  Instead, during the deposition, I intended to rely upon the challenge forms, the complaint, publicly-available information, documents produced by PEN America, and the Book Pages document to answer questions about any of the books defense counsel decided to question me about during my deposition.

18.     We did not discuss the individual books on the first day of the deposition, August 1, and so there was no opportunity to open the document and look at it, review it, or use it.  On the morning of the second day, when Defendant's counsel first tried to introduce the document as an exhibit, my counsel objected, and I did not review, use or look at the document at that point or at any point during the rest of the deposition.

19.    At no time did I rely or use the Book Pages document to refresh my recollection about any question asked during my deposition.

I certify under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge. Executed in New York County, New York, this 21st day of August 2024.

/s/
Summer Lopez