```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF FLORIDA
 2                       TALLAHASSEE DIVISION
                      Case No:  4:23-cv-414-AW-MAF
 3

 4       PETER PARNELL, et al.,

 5            Plaintiffs,                    Tallahassee, Florida
                                             September 4, 2024
 6          v.                               Pages 1-86
                                             11:01 a.m. - 12:41 p.m.
 7
         SCHOOL BOARD OF ESCAMBIA COUNTY,
 8       FLORIDA,

 9            Defendant.
         _____
10
                      TRANSCRIPT OF HEARING ON MOTIONS
11                 BEFORE THE HONORABLE ALLEN C. WINSOR
                      UNITED STATES DISTRICT JUDGE
12
         APPEARANCES:
13       For the Plaintiffs:      Selendy Gay, PLLC
                                   By:  Lauren Zimmerman, Esq.
14                                 By:  Bradley Posdal, Esq.
                                   1290 Avenue of the Americas
15                                 New York, New York 10104

16                                 Kenny Nachwalter, P.A.
                                   By:  Anna T. Neill, Esq.
17                                 Four Seasons Tower
                                   1441 Brickell Avenue
18                                 Suite 1100
                                   Miami, Florida 33131
19
         For the Defendant:       Rumberger, Kirk & Caldwell, P.A.
20                                 By:  Jeffrey J. Grosholz, Esq.
                                   By:  John D. Marsey, Esq.
21                                 101 North Monroe Street
                                   Suite 1050
22                                 Tallahassee, Florida 32301

23       Reported by:             Dawn M. Savino, RPR, CRR
                                   Official United States Court Reporter
24                                 111 North Adams Street
                                   Tallahassee, Florida 32301
25                                 (850) 521-3674
                                   Dawn_Savino@flnd.uscourts.gov
```

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**

| | | |
|---|---|---|
| 11:01 AM | 1 | (Court called to order) |
| 11:02 AM | 2 | THE COURT:  Good morning.  Have a seat everyone. |
| 11:02 AM | 3 | We're here in Parnell versus Escambia County School |
| 11:02 AM | 4 | Board, it's 4:23-CV-414. |
| 11:02 AM | 5 | We're here to talk principally about legislative |
| 11:02 AM | 6 | privilege, but I also want to address this motion for |
| 11:02 AM | 7 | clarification that may relate to some of this, and then I saw |
| 11:02 AM | 8 | yesterday there's a motion regarding the scheduling, and we'll |
| 11:02 AM | 9 | talk about that too. |
| 11:02 AM | 10 | But let's start with appearances for the plaintiffs' |
| 11:02 AM | 11 | side. |
| 11:02 AM | 12 | MS. ZIMMERMAN:  Good morning, Your Honor.  Lauren |
| 11:03 AM | 13 | Zimmerman, Selendy Gay, PLLC on behalf of the plaintiffs. |
| 11:03 AM | 14 | MS. NEILL:  Good morning, Your Honor.  Anna Neill from |
| 11:03 AM | 15 | Kenny Nachwalter on behalf of the plaintiffs. |
| 11:03 AM | 16 | MR. POSDAL:  Good morning, Your Honor.  Bradley Posdal |
| 11:03 AM | 17 | Selendy Gay PLLC, on behalf of the plaintiffs. |
| 11:03 AM | 18 | THE COURT:  All right. |
| 11:03 AM | 19 | And for the county or the school board? |
| 11:03 AM | 20 | MR. GROSHOLZ:  Good morning, Your Honor.  Jeffrey |
| 11:03 AM | 21 | Grosholz with Rumberger Kirk on behalf of the Escambia County |
| 11:03 AM | 22 | School Board. |
| 11:03 AM | 23 | MR. MARSEY:  David Marsey, Your Honor, also with |
| 11:03 AM | 24 | Rumberger Kirk for the Escambia County School Board. |
| 11:03 AM | 25 | THE COURT:  Okay.  Great. |

| | | |
|---|---|---|
| 11:03 AM | 1 | Well, before we get into talking about privilege, and I |
| 11:03 AM | 2 | guess the biggest issue related to that is whether there's -- |
| 11:03 AM | 3 | actions here were legislative, I do want to get an understanding |
| 11:03 AM | 4 | of where we are sort of overall in discovery.  And my |
| 11:03 AM | 5 | understanding from where we were before on the first go-around |
| 11:03 AM | 6 | with this protective order, and really going all the way back to |
| 11:03 AM | 7 | when there was a preliminary injunction motion on the table and |
| 11:03 AM | 8 | these issues first arose, was that really what the plaintiffs' |
| 11:04 AM | 9 | burden in this case is going to be is to show that the action |
| 11:04 AM | 10 | taken here was for a nefarious, unlawful purpose.  It seems like |
| 11:04 AM | 11 | there's really not a dispute about what happened in terms of |
| 11:04 AM | 12 | what the vote was, how this came to be procedurally, |
| 11:04 AM | 13 | practically.  And so as I was looking at the arguments about the |
| 11:04 AM | 14 | Apex Doctrine and the privilege before, that was what was going |
| 11:04 AM | 15 | on.  And I went back and read the papers from that earlier part |
| 11:04 AM | 16 | of the case, and Ms. Zimmerman your side was saying things like, |
| 11:04 AM | 17 | you know, this is what we need.  It wasn't exclusively that, but |
| 11:04 AM | 18 | I didn't ever see anything come out that was something that |
| 11:04 AM | 19 | would not be covered by the privilege, if the privilege applied, |
| 11:04 AM | 20 | things that would be about facts other than the motivations of |
| 11:04 AM | 21 | those board members.  And so I guess -- and this will help guide |
| 11:05 AM | 22 | what we do with the scheduling, with the other issues. |
| 11:05 AM | 23 | If there is a privilege that does apply here as to the |
| 11:05 AM | 24 | motivations, what's left in discovery that the plaintiffs need |
| 11:05 AM | 25 | and don't have, and what is, sort of, the nature of the dispute. |

11:05 AM  1          And that's, I guess, where we'll start.

11:05 AM  2          MS. ZIMMERMAN:  If I may, Your Honor.  Do you want me

11:05 AM  3    to come to the podium or speak from here?

11:05 AM  4          THE COURT:  You're fine there for now, but when we get

11:05 AM  5    into the big issue where it will be less swapping around, the

11:05 AM  6    podium would be better.  I can see you a little bit better.

11:05 AM  7          MS. ZIMMERMAN:  Sounds like a plan.

11:05 AM  8          Thank you, Your Honor, and thank you for your

11:05 AM  9    consideration of these issues and your time today.

11:05 AM  10         As you stated, if the privilege applies, it's certainly

11:05 AM  11   on the table today.  But as you ruled previously in *Florida V*

11:05 AM  12   *Byrd*, not all the information within the knowledge of an

11:05 AM  13   official is a privilege applicable to.  In fact, the legislative

11:05 AM  14   privilege is an extremely narrow doctrine, and so it would only

11:05 AM  15   apply specifically to questions that are squarely as to the

11:06 AM  16   motivations of the school board members with respect to the

11:06 AM  17   removal of "Tango."

11:06 AM  18         But as the defendants said repeatedly in their briefing

11:06 AM  19   here, the scope of our intended depositions is much broader than

11:06 AM  20   simply those very specific questions.  Of course we would like

11:06 AM  21   to ask them.  And so I can give you a non-exhaustive list of

11:06 AM  22   what we would look for outside of that.

11:06 AM  23         THE COURT:  That would be helpful, because the way you

11:06 AM  24   did -- again, going back, and I didn't perceive that there was

11:06 AM  25   really a whole lot of discovery that went beyond that that was

11:06 AM 1    at issue here.  I mean, you're right in that if the privilege

11:06 AM 2    applies, it only applies to certain things.  But it seemed like

11:06 AM 3    the way it was briefed before, and my understanding of what the

11:06 AM 4    case was about, that would be kind of everything or pretty close

11:06 AM 5    to everything.

11:06 AM 6         If I said the privilege does apply, they properly

11:06 AM 7    asserted it, there's not been a waiver, kind of walk me through

11:06 AM 8    what the deposition would be about.

11:06 AM 9         MS. ZIMMERMAN:  Sure.  Of course.  And to your point,

11:06 AM 10   Your Honor, I do want to point to *Zukerman V US Postal Service*,

11:07 AM 11   which we've cited repeatedly throughout our briefing in this

11:07 AM 12   case, which states that government officials are unlikely to

11:07 AM 13   admit outright that their actions violated the law, and thus

11:07 AM 14   plaintiff's case, in a case such as this one, is likely to rely

11:07 AM 15   on circumstantial evidence that supports there was such

11:07 AM 16   violation.  So a lot of our questions will go to building

11:07 AM 17   circumstantial evidence, even if not directly with respect to

11:07 AM 18   the motivation.

11:07 AM 19        THE COURT:  But you couldn't do that, right?  I mean,

11:07 AM 20   so if -- you mentioned the Florida case that I was involved in.

11:07 AM 21   There, like this, the whole case, what was the intent, right?

11:07 AM 22   And you couldn't ask a legislator what was your intent, why did

11:07 AM 23   you vote this way.  Circumstantial evidence, you're right, is

11:07 AM 24   certainly in play here.  But if you're asking questions about,

11:07 AM 25   you know, who you hang out with or what do you like to do on the

6

```
11:07 AM   1    weekends, things like that that you would say are -- maybe would
11:07 AM   2    be circumstantial evidence, it would still be subject to the
11:07 AM   3    privilege if the privilege applied if that's what you were
11:08 AM   4    getting at; isn't that right?  Isn't that what the law would be?
11:08 AM   5            MS. ZIMMERMAN:  I wouldn't necessarily agree that that
11:08 AM   6    applies to the privilege, Your Honor.  A local official, you
11:08 AM   7    know, engages in a lot of actions both official and unofficial.
11:08 AM   8    And those actions, and I'll give you a list of some of the
11:08 AM   9    conduct here, I do not believe is the privilege applicable.  The
11:08 AM  10    privilege is squarely about their motivation for the action they
11:08 AM  11    engaged in, if we're even talking about a legislative action
11:08 AM  12    which, as you know, we don't believe occurred here.  And so I do
11:08 AM  13    believe that we would be able to ask about some of the examples
11:08 AM  14    that you just mentioned.  But there's a plethora of other
11:08 AM  15    examples that we certainly would like to explore that don't go
11:08 AM  16    to the questions you're talking about.
11:08 AM  17            So, for example, there have been thousands upon
11:08 AM  18    thousands of documents produced in this case.  Certainly no
11:08 AM  19    privilege has been claimed over those.  So we certainly get the
11:08 AM  20    opportunity, and I would assert, Your Honor, the fact that no
11:08 AM  21    privilege was asserted since the documents are about the removal
11:08 AM  22    of "Tango", just shows that legislative privilege doesn't apply
11:08 AM  23    here.
11:09 AM  24            But certainly they produced a multitude of documents
11:09 AM  25    from all the board members from their personal devices and
```

11:09 AM 1    accounts and from their professional devices and accounts, and

11:09 AM 2    we certainly get to ask them questions about that.

11:09 AM 3         The board members also submitted declarations in this

11:09 AM 4    case.  They put forth affirmatively, unnecessarily, they weren't

11:09 AM 5    required to do so.

11:09 AM 6         THE COURT:  The entirety of that was just that they

11:09 AM 7    didn't talk outside the Sunshine, right?  Isn't that what

11:09 AM 8    they're talking about?

11:09 AM 9         MS. ZIMMERMAN:  Well again, purportedly it's about

11:09 AM 10   their deliberative process.  But, yes.  And certainly, I think

11:09 AM 11   you previously said, Judge, we're allowed to ask them about

11:09 AM 12   whether they engaged in conversations about the removal outside

11:09 AM 13   of the public hearing, and that certainly isn't privileged.  And

11:09 AM 14   that's a declaration that they, you know, affirmatively, and

11:09 AM 15   without any requirement, put into evidence here.

11:09 AM 16        THE COURT:  When did I say that?  It wasn't in the

11:09 AM 17   context of privilege, right?

11:09 AM 18        MS. ZIMMERMAN:  It was in the context of the Sunshine

11:09 AM 19   Law.

11:09 AM 20        THE COURT:  Right.  Yeah.  I mean, that was kind of a

11:09 AM 21   nonstarter.  Same with the relevance things.  I think the issue

11:09 AM 22   there was they were saying we know everything that was discussed

11:09 AM 23   was discussed on the video because that's what they said, and

11:10 AM 24   you could test that.  I mean, that was not a privilege ruling.

11:10 AM 25        MS. ZIMMERMAN:  That isn't privileged; right, Your

11:10 AM  1    Honor?

11:10 AM  2         THE COURT:  I'm sorry?

11:10 AM  3         MS. ZIMMERMAN:  And whether or not they had a

11:10 AM  4    conversation before they walked in the door with each other

11:10 AM  5    certainly isn't privileged.

11:10 AM  6         THE COURT:  I don't know why it wouldn't be privileged

11:10 AM  7    if there is a privilege.  We'll get to that in a minute about

11:10 AM  8    the legislative things, but my understanding of the legislative

11:10 AM  9    privilege that would go to anything that dealt with their

11:10 AM  10   legislative process, right?  I mean, isn't that what the cases

11:10 AM  11   say?

11:10 AM  12        MS. ZIMMERMAN:  I'm not sure that it's that broad, Your

11:10 AM  13   Honor.  But certainly we could have that discussion later today

11:10 AM  14   if you would like.

11:10 AM  15        THE COURT:  This is why, I guess, this came up.  I was

11:10 AM  16   under the impression that the privilege issue would resolve all

11:10 AM  17   the outstanding discovery issues.  And it sounds like from what

11:10 AM  18   you're saying, if I said today the legislative privilege does

11:10 AM  19   apply -- if I said it doesn't apply, then we know where we are.

11:10 AM  20   But if I say it does apply, then we're basically nowhere and

11:10 AM  21   we're going to have another tremendous round of briefing.  I

11:10 AM  22   mean, all the scope things that you're talking about have not

11:11 AM  23   been briefed or litigated at all, correct?

11:11 AM  24        MS. ZIMMERMAN:  So, two things.  I don't think we would

11:11 AM  25   be nowhere without progress.  If you did rule one way, it would

11:11 AM  1    certainly affect how we moved forward, including in terms of

11:11 AM  2    scope.

11:11 AM  3         It has been briefed.  If you look at defendant's

11:11 AM  4    briefing in their motion for protective order and renewed motion

11:11 AM  5    for protective order, they made a whole lot of arguments about

11:11 AM  6    the broad scope, as they characterized it, of our depositions,

11:11 AM  7    and repeatedly talked about how the scope was broad and broader

11:11 AM  8    than the motivation.  So I do think it's been before you.

11:11 AM  9    They've made no, you know, motion.

11:11 AM 10         THE COURT:  But you're saying it's not broader than

11:11 AM 11    motivation.  You're just saying you would ask things that go to

11:11 AM 12    motivation but aren't covered by the privilege.

11:11 AM 13         MS. ZIMMERMAN:  Well, yes and no.  In addition, Your

11:11 AM 14    Honor, as I said, they've produced thousands of documents and

11:11 AM 15    communications here.  Certainly those aren't privileged.  Their

11:11 AM 16    very act of producing them to us shows that they're not, and so

11:11 AM 17    we certainly get to ask them about the documents that they

11:11 AM 18    produced to us.

11:11 AM 19         THE COURT:  Is that a waiver argument or what is the

11:11 AM 20    argument there?  Because my understanding -- if you go back, we

11:11 AM 21    are starting to get into the privilege.

11:11 AM 22         MS. ZIMMERMAN:  We are, Your Honor.  And I have two

11:12 AM 23    answers to that that I'm happy to give you.

11:12 AM 24         THE COURT:  But if Legislator Smith in the Florida

11:12 AM 25    Legislature -- let's say this was -- a statute passed by the

11:12 AM 1     Florida Legislature was at issue here, and the privilege 100%

11:12 AM 2     applied, okay?

11:12 AM 3          MS. ZIMMERMAN:  Yes.

11:12 AM 4          THE COURT:  And in the course of discovery everyone

11:12 AM 5     asserts privilege, you can't depose the legislators, and then an

11:12 AM 6     e-mail comes out from Legislator Smith to a constituent.  You're

11:12 AM 7     saying you get to ask the legislator what he meant by that or

11:12 AM 8     what she was thinking when she sent the e-mail?

11:12 AM 9          MS. ZIMMERMAN:  Well, Your Honor, in a lot of the cases

11:12 AM 10    that are cited here today, when legislative privilege was

11:12 AM 11    asserted, it was asserted over documents, right?  And in every

11:12 AM 12    instance -- there are two cases which I can pull in just a

11:12 AM 13    moment which a privilege log was provided in which certain

11:12 AM 14    documents that they believed were not subject to the privilege

11:12 AM 15    were produced, but documents that they believed were subject to

11:12 AM 16    the privilege to their motivations were withheld and/or withheld

11:12 AM 17    -- and there are two different cases on this.

11:12 AM 18         So, what I would tell you, Judge -- I mean, privilege

11:12 AM 19    --

11:13 AM 20         THE COURT:  You're saying it's a waiver argument.  Is

11:13 AM 21    that what it is?

11:13 AM 22         MS. ZIMMERMAN:  Well, it's both.  I guess what I would

11:13 AM 23    say is this, Your Honor.  I don't believe --

11:13 AM 24         THE COURT:  Both waiver and what?  What was the other

11:13 AM 25    one?

11:13 AM  1          MS. ZIMMERMAN:  I'm getting there.  I don't believe

11:13 AM  2     legislative privilege applies, and I don't believe the board

11:13 AM  3     believes legislative privilege applies.  They didn't assert it

11:13 AM  4     as an immunity, as a defense at the beginning of this case, and

11:13 AM  5     the legislative privilege argument, they didn't assert it during

11:13 AM  6     discovery once, despite asserting attorney-client privilege as a

11:13 AM  7     basis for withholding documents, and attorney work product.

11:13 AM  8     They gave us 17 pages of objections to our requests for

11:13 AM  9     discovery.  They didn't once even mention legislative privilege.

11:13 AM 10     I do believe that their arguments are evolving as they lose

11:13 AM 11     certain arguments or as they realized maybe some of their

11:13 AM 12     arguments are incorrect.

11:13 AM 13          So what I would say, my first argument is legislative

11:13 AM 14     privilege applies and the board know that.  Legislative

11:13 AM 15     privilege does not apply and the board knows that, and that's

11:13 AM 16     why they, you know, initially just produced thousands upon

11:13 AM 17     thousands of documents that relate to the removal and the

11:13 AM 18     motivations for removing "Tango."

11:13 AM 19          What I would say in the alternative, Judge, is if you

11:13 AM 20     think there might be a privilege here, or they're now arguing

11:14 AM 21     there is one, their action, their litigation conduct, as

11:14 AM 22     outlined in *Mi Familia* and *Singleton*, of producing thousands

11:14 AM 23     upon thousands of documents without once raising or asserting

11:14 AM 24     the privilege, is a waiver.

11:14 AM 25          THE COURT:  Okay.  But who produced them?  Well, I

11:14 AM 1    think -- it's their motion.  Normally I'd have them go first.  I

11:14 AM 2    was trying to get some clarification of what's at issue here.  I

11:14 AM 3    think I've gotten that clarification, and I think it's more than

11:14 AM 4    I thought was at issue, but we'll work through it.

11:14 AM 5         MS. ZIMMERMAN:  By the way, I haven't even gotten

11:14 AM 6    started on all the topics that we do want to talk about that I

11:14 AM 7    don't believe are privileged.

11:14 AM 8         THE COURT:  What would be some that do not go to

11:14 AM 9    motivation?  That are not even circumstantial about motivation?

11:14 AM 10        MS. ZIMMERMAN:  Well, Your Honor, we learned in a

11:14 AM 11   deposition last week that the board members have had extensive

11:14 AM 12   conversations with a district employee.  They've had extensive

11:14 AM 13   conversations with the person who challenged "Tango" here, and

11:14 AM 14   some of those conversations certainly bore on the book removal

11:14 AM 15   process.  We'd like to know if the board members read the book.

11:15 AM 16   We'd like to know about their discussions with other

11:15 AM 17   constituents.  All of these things are, by the way, also in

11:15 AM 18   documents.  So they have conceded that no privilege applies over

11:15 AM 19   these sort of topics.  We certainly can ask --

11:15 AM 20        THE COURT:  Well, what would be something that would

11:15 AM 21   not be relevant to their motivation but would be relevant to

11:15 AM 22   something else in this case?

11:15 AM 23        MS. ZIMMERMAN:  But Your Honor, if you're saying that

11:15 AM 24   anything that bears on this case in any way has to go to their

11:15 AM 25   motives and thus we have no basis in discovery, I don't even

11:15 AM  1   know why we would have engaged in document discovery, and why

11:15 AM  2   the legislative privilege is only being asserted over their

11:15 AM  3   depositions and not over all of the documents.  I mean, this

11:15 AM  4   case couldn't have even gone forward if the position is that

11:15 AM  5   plaintiffs have no ability to test the defendant's motivations,

11:15 AM  6   and certainly the motivations they have affirmatively and

11:15 AM  7   voluntarily put at issue, when they need not.

11:15 AM  8        THE COURT:  Well, I don't think anyone is saying you

11:15 AM  9   don't have the ability to prove.  I mean, *Arlington Heights*

11:15 AM 10   talks about there's circumstantial evidence, there's other

11:15 AM 11   things that you can do.  If you have some witness that bears on

11:16 AM 12   this that is not subject to the privilege, fine.

11:16 AM 13        I guess my question is what is it that you would ask

11:16 AM 14   the board members that would not be -- that you would be asking

11:16 AM 15   for some purpose other than to determine what their motives

11:16 AM 16   were?

11:16 AM 17        MS. ZIMMERMAN:  Well, if we're asking questions for a

11:16 AM 18   purpose other than that, we wouldn't be litigating this case.

11:16 AM 19   But there are questions that do not bear directly on motive but

11:16 AM 20   that, you know, we can use as circumstantial evidence to make

11:16 AM 21   our ultimate arguments.  And if the idea is that -- as you said,

11:16 AM 22   Your Honor, anything within the legislator's knowledge is not

11:16 AM 23   subject to the privilege.  It's only questions squarely about

11:16 AM 24   their motivations.

11:16 AM 25        If these members have made public comments about the

11:16 AM 1    LGBTQ community, if they made public comments about HB 1557, if

11:16 AM 2    they've made public comments about the book removal process

11:16 AM 3    generally, those are all things that do not bear directly on

11:16 AM 4    their motivations but that we have the ability to inquire into.

11:16 AM 5        THE COURT:  Okay.  But to use your first example, if

11:17 AM 6    you ask Board Member Number 1 have you ever made a public

11:17 AM 7    statement on the LGBTQ issues, you're saying that would not be

11:17 AM 8    privileged even if the privilege applies.  That's your position.

11:17 AM 9        MS. ZIMMERMAN:  His general comment, his or her general

11:17 AM 10   comments about the LGBTQ community certainly don't bear directly

11:17 AM 11   on motivations for "Tango."  I would imagine if he made those

11:17 AM 12   sort of comments, it wasn't in the context of "Tango"'s removal.

11:17 AM 13   I mean, we're getting very far afield of the actions here.

11:17 AM 14       THE COURT:  Let me follow up on this.  You're saying it

11:17 AM 15   wouldn't relate to their motivations?

11:17 AM 16       MS. ZIMMERMAN:  I'm saying the question in and of

11:17 AM 17   itself, "have you made comments about the LGBTQ community", does

11:17 AM 18   not bear directly on motivations.

11:17 AM 19       Now, I can use the evidence however I want, and if I

11:17 AM 20   want to use it as circumstantial evidence to build my case

11:17 AM 21   because government officials rarely admit when they've done

11:17 AM 22   things illegally, I can.

11:17 AM 23       THE COURT:  I got you.  But the point is you would be

11:17 AM 24   asking that question to get evidence on what their motivation

11:17 AM 25   was.

| | | |
|---|---|---|
| 11:17 AM | 1 | MS. ZIMMERMAN:  Perhaps.  I also don't know where these |
| 11:17 AM | 2 | depositions will lead.  But, I mean, again, Your Honor, as you |
| 11:18 AM | 3 | said, this is at the factual heart of our case.  I don't know |
| 11:18 AM | 4 | how this case could have ever proceeded if we didn't have the |
| 11:18 AM | 5 | right to test the factual heart of the case, which is the board |
| 11:18 AM | 6 | members' motivations here.  They didn't assert legislative |
| 11:18 AM | 7 | immunity at the outset which, under *Singleton,* is the only way |
| 11:18 AM | 8 | that you can read that conduct is an intentional waiver of the |
| 11:18 AM | 9 | immunity.  And then they've, you know, repeatedly intervened in |
| 11:18 AM | 10 | this case by providing factual allegations and factual support |
| 11:18 AM | 11 | for what they claim are their legitimate purposes.  So they have |
| 11:18 AM | 12 | put it at issue.  So the idea that they can, in essence, have |
| 11:18 AM | 13 | direct examinations -- |
| 11:18 AM | 14 | THE COURT:  We're talking about a bunch of different |
| 11:18 AM | 15 | things now.  We're talking about waiver.  I'm asking though just |
| 11:18 AM | 16 | as -- and maybe we're not communicating well, but my |
| 11:18 AM | 17 | understanding of the privilege is that if it did apply, it would |
| 11:18 AM | 18 | preclude you from asking questions, the purpose of which was to |
| 11:18 AM | 19 | get at the motivation. |
| 11:18 AM | 20 | MS. ZIMMERMAN:  I think that -- |
| 11:18 AM | 21 | THE COURT:  I think that's settled.  I think the |
| 11:18 AM | 22 | Eleventh Circuit is very clear on that.  I may be wrong about |
| 11:18 AM | 23 | that. |
| 11:18 AM | 24 | MS. ZIMMERMAN:  I would respectfully disagree with that |
| 11:18 AM | 25 | broad of an interpretation of the privilege, because it is so |

11:19 AM  1    narrow.  And the language that I read in the cases, respectfully

11:19 AM  2    Judge, is about questions squarely about motivation.

11:19 AM  3         THE COURT:  Okay.  So your view then in a case where

11:19 AM  4    it's the legislator, a state legislator, and there's a claim of

11:19 AM  5    discriminatory purpose, an equal protection claim, you could not

11:19 AM  6    -- and the privilege did apply, your position would be you could

11:19 AM  7    not depose the legislator and say what was your purpose in

11:19 AM  8    voting this way; but you could depose the legislator and say

11:19 AM  9    what clubs do you belong to, who are you friends with, things

11:19 AM 10    like that.

11:19 AM 11         MS. ZIMMERMAN:  Yes.

11:19 AM 12         THE COURT:  Okay.  I understand that position.  And, I

11:19 AM 13    guess, maybe if the privilege does apply we'll have to have sort

11:19 AM 14    of round two briefing in this, which is not a great thought.

11:19 AM 15         MS. ZIMMERMAN:  Nobody is interested in that, but of

11:19 AM 16    course we'll do whatever Your Honor likes.

11:19 AM 17         THE COURT:  I assume the other side will disagree with

11:19 AM 18    you on that, and that issue has not really been briefed.

11:19 AM 19         MS. ZIMMERMAN:  Well, actually it has been briefed.

11:19 AM 20    The defendants made a bunch of arguments about the scope of our

11:20 AM 21    depositions, but did not move in any way.  They could have.

11:20 AM 22    They had the opportunity, as we discussed in our opposition to

11:20 AM 23    the motion for clarification, to ask for specific relief, to ask

11:20 AM 24    for limited scope, limited depositions, et cetera.  They did not

11:20 AM 25    do so.

11:20 AM  1          THE COURT:  No, they've asked for protection.

11:20 AM  2          MS. ZIMMERMAN:  They've asked for a complete bar on the

11:20 AM  3    depositions, while also arguing that our scope is extremely

11:20 AM  4    broad and even outside of the motivations.  They attached our

11:20 AM  5    request for production.  They said that our questions could be

11:20 AM  6    even broader in scope than motivations, but they couldn't guess.

11:20 AM  7    And so all they asked Your Honor for was a complete bar.  It

11:20 AM  8    wasn't until the motion for clarification that they started to

11:20 AM  9    ask for new relief.

11:20 AM 10          THE COURT:  I understand that.  They had said that you

11:20 AM 11    were going to ask for things that were not privileged, and you

11:20 AM 12    agree with that, but where there's not an agreement is where the

11:20 AM 13    privilege would end if it does apply.  That's what I'm saying

11:20 AM 14    hasn't been briefed.

11:20 AM 15          MS. ZIMMERMAN:  I agree, Judge.

11:20 AM 16          I'm sorry to add just one other point.  To the extent

11:20 AM 17    that you are asking these questions with respect to the

11:21 AM 18    discovery order, I wanted to flag that there are other discovery

11:21 AM 19    issues at play that haven't been resolved that aren't just the

11:21 AM 20    depositions that the parties have been attempting to resolve for

11:21 AM 21    quite some time.  So just so you have an understanding that

11:21 AM 22    there are other matters on the docket.

11:21 AM 23          THE COURT:  That's one of the reasons I had this

11:21 AM 24    hearing.  I am aware, generally, that there's been a lot of

11:21 AM 25    disagreement about a lot of topics in this case, and we'll talk

11:21 AM  1    about the scheduling and what's left kind of at the end of this.

11:21 AM  2    I appreciate that, Ms. Zimmerman.

11:21 AM  3         And we'll now hear from whoever is going to speak for

11:21 AM  4    Escambia County on the issue of the privilege and on the issue

11:21 AM  5    of your motion, and then we'll go from there.

11:21 AM  6         MR. GROSHOLZ:  Your Honor, would you like me to

11:21 AM  7    approach?

11:21 AM  8         THE COURT:  Yeah, I think that would be good.

11:21 AM  9         Maybe you could start with just sort of a practical

11:21 AM 10    suggestion of how things ought to proceed if I determine that

11:21 AM 11    there is a privilege that applies here.  If I determine there's

11:22 AM 12    not, then that's easy, they just depose the board members and we

11:22 AM 13    go from there.  But if the privilege does apply, walk me through

11:22 AM 14    how you would see this working itself out.  You heard my

11:22 AM 15    discussion with Ms. Zimmerman about disagreements about the

11:22 AM 16    scope of what would count and what wouldn't count.  Help me

11:22 AM 17    understand that.

11:22 AM 18         MR. GROSHOLZ:  Sure.  Just as a practical matter, the

11:22 AM 19    light is not on on this.  Do I need to make sure the red light

11:22 AM 20    is on?

11:22 AM 21         THE COURT:  That one actually doesn't come on.

11:22 AM 22         MR. GROSHOLZ:  That one does not come on.

11:22 AM 23         THE COURT:  But all the -- at counsel's table.

11:22 AM 24         MR. GROSHOLZ:  Always keep the court reporter happy.

11:22 AM 25    That's Rule Number 1.

11:22 AM  1          Thank you, Your Honor.  May it please the Court.

11:22 AM  2          If the privilege were to apply, and I'm somewhat loathe

11:22 AM  3  to give advice to plaintiffs on how they may build their case,

11:22 AM  4  but obviously there's still discovery mechanisms on which the

11:22 AM  5  plaintiffs could still proceed.  One would be a Rule 30(b)(6)

11:22 AM  6  deposition which the board has offered to the plaintiffs, and

11:22 AM  7  the plaintiffs have yet to take the board up on.

11:22 AM  8          THE COURT:  I meant with respect to the deposition.  If

11:22 AM  9  the privilege applies, they can still depose witnesses about

11:23 AM  10  nonprivileged matters, right?

11:23 AM  11          MR. GROSHOLZ:  Absolutely, Your Honor.

11:23 AM  12          THE COURT:  Okay.  And that would include the board

11:23 AM  13  members, because your Apex Doctrine has not been excepted, so

11:23 AM  14  they could depose the board members and ask the questions that

11:23 AM  15  are not privileged.

11:23 AM  16          MR. GROSHOLZ:  Yes, Your Honor.  Pursuant to the

11:23 AM  17  Court's order that the Apex Doctrine would not apply, and then

11:23 AM  18  if the Court were to hold that the privilege does apply, the

11:23 AM  19  board member depositions, under that scenario, would be allowed

11:23 AM  20  to proceed.  But as the Court stated, it would be limited to

11:23 AM  21  materials outside the scope of the privilege.  And there, I

11:23 AM  22  think, we are getting into somewhat tricky territory because as

11:23 AM  23  the Eleventh Circuit stated in *In Re: Hubbard*, when it comes to

11:23 AM  24  legislative privilege, anything within the privilege is

11:23 AM  25  obviously off limits.  And then once you're looking outside the

11:23 AM  1    privilege, it's just simply not relevant at that point.  So at

11:23 AM  2    that point we would potentially be looking at a circumstance

11:23 AM  3    where these depositions may be unduly harassing or an undue

11:23 AM  4    burden, et cetera.

11:24 AM  5            And the, I think as Your Honor called it, the limit or

11:24 AM  6    the terminus of the privilege, based on the case law that we

11:24 AM  7    reviewed, and from even this Court in *United States V Florida*,

11:24 AM  8    it is not just the motivation, but also the reasons behind that

11:24 AM  9    vote.  So as Your Honor, I think, earlier held, or stated rather

11:24 AM  10   today, it is anything within that legislative process.  So

11:24 AM  11   obviously the scope there, and that -- jumping ahead, but that

11:24 AM  12   kind of leads into our motion for clarification in terms of

11:24 AM  13   what, if any, these depositions would be, what the permissible

11:24 AM  14   scope would be just both in terms of duration, but also the

11:24 AM  15   scope of the questioning.  And I think that's kind of where Your

11:24 AM  16   Honor is getting at.

11:24 AM  17           THE COURT:  Okay.  You can proceed however you would

11:24 AM  18   like, and I'll have some questions, but we'll talk now about

11:24 AM  19   generally the motion for protective order and the privilege

11:24 AM  20   issue.

11:24 AM  21           MR. GROSHOLZ:  Absolutely, Your Honor.  And I'll go

11:24 AM  22   straight to it.

11:25 AM  23           The act under scrutiny here, the vote to remove *And*

11:25 AM  24   *Tango Makes Three* from the school board's libraries is

11:25 AM  25   legislative in nature, and there are multiple reasons for this.

11:25 AM 1    And one thing that I think is important to get out up front, as

11:25 AM 2    the Court acknowledged in its order on the motion to dismiss,

11:25 AM 3    this is an unsettled area of law.  And so as both parties have

11:25 AM 4    essentially agreed, there's not a one-to-one case out there.

11:25 AM 5    But when you look at the parallels and analogs that the Eleventh

11:25 AM 6    Circuit has stated are legislative, we see that what the board

11:25 AM 7    did here falls within that legislative bucket versus

11:25 AM 8    administrative.

11:25 AM 9          So to start with the beginning, the board has a

11:25 AM 10   legislative duty, as handed down by the Florida legislature, to

11:25 AM 11   maintain and be responsible for all the materials in its

11:25 AM 12   libraries, and then also to provide a policy by which interested

11:25 AM 13   citizens can object to the content of these library books, and

11:25 AM 14   it must, and that's in the law, it must provide for a

11:25 AM 15   resolution.  So we have a mandatory duty, and that goes to the

11:26 AM 16   Hernandez case where the Fifth Circuit, now Eleventh Circuit,

11:26 AM 17   but old Fifth Circuit stated actions taken in furtherance of

11:26 AM 18   their duties tend to be legislative in nature.

11:26 AM 19         THE COURT:  But it would be pursuant to just their

11:26 AM 20   general duty to manage the school district anyway.  I mean, that

11:26 AM 21   doesn't seem to help you.  If anything, it seems to hurt you

11:26 AM 22   that there was this statutory obligation.

11:26 AM 23         MR. GROSHOLZ:  Well, and Your Honor, I think re-reading

11:26 AM 24   our motion, I think it could be articulated better, but it

11:26 AM 25   begins with this duty.  But the way it filters through in the

11:26 AM  1    conclusion is it's the board members themselves exercising their

11:26 AM  2    discretionary power as individual board members and how they're

11:26 AM  3    going to vote.

11:26 AM  4        THE COURT:  Right.  And so if the legislature had never

11:26 AM  5    said anything about school books, and just out of the blue one

11:26 AM  6    day this school board said we don't like this book, we are going

11:26 AM  7    to choose, as a policy matter, to remove it from all of our

11:26 AM  8    libraries, you would have the same privilege arguments that you

11:26 AM  9    do here now, right?

11:26 AM  10        MR. GROSHOLZ:  Yes, Your Honor, with the exception that

11:27 AM  11    the factor regarding actions taken in furtherance of a duty --

11:27 AM  12    and there we would have to be looking at school board policy,

11:27 AM  13    not necessarily looking all the way back to the law.  But you

11:27 AM  14    are correct, Your Honor, the board does have a policy, as

11:27 AM  15    required by law, that requires the board to act when such

11:27 AM  16    objections come in.

11:27 AM  17        THE COURT:  Give me a moment here to get my monitor

11:27 AM  18    activated.  I bumped it in a way that -- okay.  Okay.  Thank

11:27 AM  19    you.

11:27 AM  20        MR. GROSHOLZ:  So as I said, it kind of begins with

11:27 AM  21    this legislative duty, and that is filtered through the board's

11:27 AM  22    policy.  But from there, once it gets to the board, there we see

11:27 AM  23    the board members exercising their discretion, and discretionary

11:27 AM  24    authority specifically to exercise the priorities for the board.

11:27 AM  25    And that's what we see in the *Bryant* case where the Eleventh

11:27 AM  1    Circuit stated that discretionary decisions that demonstrate

11:27 AM  2    kind of what direction the legislative body wants to project or

11:27 AM  3    go in, that bears a substantial nexus to the legislative

11:28 AM  4    process, and that's we see here.

11:28 AM  5            Moreover, the vote was taken in response to public

11:28 AM  6    opinion.  There was a public hearing on this matter, and the

11:28 AM  7    board undertook all this public opinion.  There was deliberation

11:28 AM  8    and debate by the board members, and it culminated in a vote.

11:28 AM  9    And in the *DeSisto* case, that's when the Eleventh Circuit said

11:28 AM  10   public hearings, debate, voting, that all looks legislative in

11:28 AM  11   nature, as was the *Espanola* and the *Healy* matter which said

11:28 AM  12   voting, while not dispositive and not solely making something

11:28 AM  13   legislative, it is still a factor and an important one.

11:28 AM  14           And here it was, as I said, a duty filtered through the

11:28 AM  15   discretionary authority.  It was prospective in nature.  As the

11:28 AM  16   board chair stated at the public meeting, decisions on these

11:28 AM  17   types of materials, this library book, stand for five years.  So

11:28 AM  18   we're looking at a prospective act that is also legislative, and

11:28 AM  19   that is also in the *Bryant* case.

11:28 AM  20           THE COURT:  They can revisit that though, right?  I

11:28 AM  21   mean, they say it's five years but, I mean, they could tomorrow

11:28 AM  22   vote to put it back.

11:28 AM  23           MR. GROSHOLZ:  The board theoretically could, Your

11:29 AM  24   Honor.  Obviously it would be under a different mechanism than a

11:29 AM  25   citizen-initiated complaint.  But the board theoretically could.

11:29 AM 1          THE COURT:  A bunch of people could run on that issue

11:29 AM 2     and say we think this book should be back, vote for me, and then

11:29 AM 3     they get in there and they vote and the book's back, right?

11:29 AM 4          MR. GROSHOLZ:  Absolutely.

11:29 AM 5          In then terms of the general application, the decision

11:29 AM 6     was not we are going to remove "Tango" from School X or School

11:29 AM 7     Y, or even a handful of schools; the decision was broadly

11:29 AM 8     applied across the entirety of the district.  And that you see

11:29 AM 9     in the *Woods V Gamel* case where there the Eleventh Circuit said

11:29 AM 10    this decision has broad general application across the

11:29 AM 11    legislative body making it legislative in nature.

11:29 AM 12         And again, while there's no one-to-one or on-all-fours

11:29 AM 13    case, I think looking at the instances where legislative actions

11:29 AM 14    were found, we can see why this is a good analog to that.

11:29 AM 15         So personnel decisions, terminating, firing, things

11:29 AM 16    like that, those tend not to be legislative.  And in Florida

11:30 AM 17    there's a good example for that in school boards.  The

11:30 AM 18    superintendent recommends appointments to the school board, and

11:30 AM 19    by Florida law the school board can only reject that for good

11:30 AM 20    cause.  So it's a very mechanical application of the policy in

11:30 AM 21    that instance.

11:30 AM 22         However, abolishing a position and removing it entirely

11:30 AM 23    saying we only need 10 teachers at the school rather than 11,

11:30 AM 24    that is a legislative act because there the board is

11:30 AM 25    demonstrating, again, its priorities and expressing its

11:30 AM  1    priorities in that manner.

11:30 AM  2         So here, the board is not mechanically applying its

11:30 AM  3    policy.  In fact, the board overruled its district review

11:30 AM  4    committee.  So this is not merely a decision coming up from

11:30 AM  5    staff where the district review committee said keep "Tango" in

11:30 AM  6    the libraries and the board rubber stamping it, like it

11:30 AM  7    generally must in other examples, like the personnel decision.

11:30 AM  8         THE COURT:  Yeah, it seems like, I mean, the law we're

11:30 AM  9    dealing with says personnel decisions don't count, zoning

11:31 AM  10   enforcement actions don't count.  There's really the two

11:31 AM  11   categories that the courts have carved out here.  I think you

11:31 AM  12   could make an argument that a personnel decision is prospective

11:31 AM  13   and policy-based.  Certainly if you're, you know, hiring a

11:31 AM  14   police chief or something like that, that may be different than

11:31 AM  15   a low-level employee.  But I guess this really comes down to

11:31 AM  16   which category this fits into more.  Is it more like a personnel

11:31 AM  17   or a zoning enforcement decision, or is it more like a broader

11:31 AM  18   policy matter.

11:31 AM  19        MR. GROSHOLZ:  And another -- forgive me, Your Honor.

11:31 AM  20        THE COURT:  That's fine.

11:31 AM  21        MR. GROSHOLZ:  Another example is budget-making.

11:31 AM  22   Budget-making is considered legislative. And again, I think

11:31 AM  23   that's a good parallel for what the board did here.

11:31 AM  24        THE COURT:  Right.  I was talking about the ones that

11:31 AM  25   are considered not.  Those are really the only two categories

11:31 AM  1      they've carved out, right?

11:31 AM  2           MR. GROSHOLZ:  Yes, Your Honor.  To my knowledge,

11:31 AM  3      zoning enforcement and personnel have been considered more on

11:31 AM  4      the, what is termed, administrative rather than legislative.

11:31 AM  5      But, yes.

11:31 AM  6           THE COURT:  So you say this is not ministerial.  They

11:31 AM  7      make a point that you said it was at a different stage of the

11:31 AM  8      litigation, but your litigation position for this issue would be

11:31 AM  9      that the decision was not ministerial?

11:32 AM 10           MR. GROSHOLZ:  Yes, Your Honor.  And to go to the

11:32 AM 11      ministerial argument, that was made in the context of the

11:32 AM 12      board's Apex Doctrine argument.  It was nothing to do with our

11:32 AM 13      legislative privilege, and that was within a larger motion for

11:32 AM 14      protective order where we were similarly asserting legislative

11:32 AM 15      privilege because of this very act right here.  So this is not

11:32 AM 16      ministerial.  As I said, the board members have the discretion

11:32 AM 17      to vote how they want, and that expression of their

11:32 AM 18      discretionary authority, we believe, makes it legislative in

11:32 AM 19      nature.

11:32 AM 20           And to tie it back to budget making, right?  Budget,

11:32 AM 21      budgeting is a state-imposed duty on school boards.  However,

11:32 AM 22      the school boards have discretion within that of how much cash

11:32 AM 23      to set aside for reserves, how much to set aside for various

11:32 AM 24      capital outlay projects, things like that.

11:32 AM 25           So again, we see, starting with the duty, and that goes

11:32 AM 1   back to *Hernandez*, but expressing it through -- the end result

11:32 AM 2   is an expression of the district's discretionary authority, and

11:32 AM 3   that ties it back to the *Bryant* case.

11:32 AM 4           THE COURT:  Okay.  Do you want to talk about your

11:33 AM 5   waiver arguments?  It would be helpful for me to know a couple

11:33 AM 6   things.  One, the individual board members have submitted

11:33 AM 7   affidavits on a different stage and on a different issue, but

11:33 AM 8   you're not planning to have them testify at trial after trying

11:33 AM 9   to keep the other side from deposing them, correct?

11:33 AM 10          MR. GROSHOLZ:  Not if we can help it, Your Honor, no.

11:33 AM 11  We have resisted the board members testifying.  As Your Honor

11:33 AM 12  knows, we have resisted the board members testifying at every

11:33 AM 13  stage of this.

11:33 AM 14          THE COURT:  Okay.  But you have not disclosed them as

11:33 AM 15  witnesses you intend to rely on, and you don't intend to call

11:33 AM 16  them to say that everything they said was in Sunshine or any

11:33 AM 17  other purpose.

11:33 AM 18          MR. GROSHOLZ:  No, Your Honor.  We do not intend to

11:33 AM 19  call the board members as witnesses.  And if I may briefly --

11:33 AM 20          THE COURT:  You recognize that would be a problem,

11:33 AM 21  right?

11:33 AM 22          MR. GROSHOLZ:  Absolutely, Your Honor, yes.  We are not

11:33 AM 23  attempting to -- I guess sword and shield is something of an

11:33 AM 24  analogy there.  But, yes.  No, Your Honor.  We are not

11:33 AM 25  attempting to shield them in this respect, and then at the 11th

11:34 AM  1    hour say actually we're calling them as witnesses.

11:34 AM  2         THE COURT:  Okay.  And then they've said that the

11:34 AM  3    document production waives it.  Who produced these documents and

11:34 AM  4    tell me your view on -- as a factual matter, who produced them.

11:34 AM  5    It does seem, as a general legal matter, that the board couldn't

11:34 AM  6    waive the privilege that an individual legislator, or here board

11:34 AM  7    member, would be able to assert.  The Florida Legislature

11:34 AM  8    couldn't say we did this following action for a legitimate

11:34 AM  9    purpose and then waive everyone's privilege by saying that.  But

11:34 AM  10   here they make that argument, but then they separately make an

11:34 AM  11   argument that individual documents here were produced and things

11:34 AM  12   like that.  Why don't you talk about that.

11:34 AM  13        MR. GROSHOLZ:  Yes, Your Honor.  And the board would

11:34 AM  14   agree that the board, the entity, cannot waive the privilege on

11:34 AM  15   behalf of the individual board members, right?  And I think Your

11:34 AM  16   Honor, in its previous order, noted the privilege is personal to

11:35 AM  17   the legislature, or the legislators.  Sorry.  And so here, the

11:35 AM  18   board members are not parties to the suit, they have not sought

11:35 AM  19   to intervene, they have not personally participated in

11:35 AM  20   discovery, there have been no subpoenas duces tecum, no notices

11:35 AM  21   of production from nonparty, any discovery directed directly at

11:35 AM  22   them.  So I think that distinguishes the *Singleton* and the *Mi*

11:35 AM  23   *Familia* cases that the plaintiffs rely on.

11:35 AM  24        And then in terms of the document production itself,

11:35 AM  25   looking at that -- first off, the evidence, as plaintiffs

11:35 AM 1    admitted today, the board has produced thousands of documents in

11:35 AM 2    this case, and thousands is -- it's probably more like tens of

11:35 AM 3    thousands.  But thousands of documents.  The evidence that

11:35 AM 4    plaintiffs point to --

11:35 AM 5         THE COURT:  Is this going to be a document-intensive

11:35 AM 6    case if we go to trial?  Just curious.

11:35 AM 7         MR. GROSHOLZ:  I can't speak for the plaintiffs, Your

11:35 AM 8    Honor.  I know on our side the board would likely be primarily

11:35 AM 9    relying on the board policy, the public record, which would be

11:36 AM 10   the public hearing, and the transcript from that.  Presumably if

11:36 AM 11   plaintiffs did take a 30(b)(6) deposition, the board may be

11:36 AM 12   relying on that.

11:36 AM 13        But in terms of our document production, Your Honor, I

11:36 AM 14   don't necessarily want to box myself in, but I don't know that

11:36 AM 15   it would be heavily document-intensive from our side.  Obviously

11:36 AM 16   that may change as we get further into the litigation.

11:36 AM 17        THE COURT:  Got it.

11:36 AM 18        MR. GROSHOLZ:  Looking at this document, first off,

11:36 AM 19   this is a single document out of the thousands that have been

11:36 AM 20   produced, and it is by one board member.  So it doesn't even

11:36 AM 21   speak to a potential waiver by the other four board members.

11:36 AM 22        THE COURT:  You're talking now about the e-mail that

11:36 AM 23   was attached to the response?

11:36 AM 24        MR. GROSHOLZ:  Yes, Your Honor.  I believe that's what

11:36 AM 25   Your Honor was --

11:36 AM  1          THE COURT:  No, they're saying there's been document

11:36 AM  2     production about company -- or county e-mails, personal e-mails,

11:36 AM  3     things like that that have been produced.

11:36 AM  4          MR. GROSHOLZ:  Yes, Your Honor.  We have produced those

11:36 AM  5     e-mails, and the reason we produced those is because the school

11:36 AM  6     board is, by law, the custodian of all public records by the

11:37 AM  7     Escambia School Board and the Escambia County School District.

11:37 AM  8     That includes those e-mails.

11:37 AM  9          THE COURT:  Okay.  These were all 119 documents?

11:37 AM 10          MR. GROSHOLZ:  Yes, Your Honor.  All of these were

11:37 AM 11     documents that the board is, by law, required to obtain;

11:37 AM 12     required to -- if subject to a proper records request, would be

11:37 AM 13     required to produce.  And in this case, because they were

11:37 AM 14     subject to a discovery request, we produced them.  Had they been

11:37 AM 15     subject to legislative privilege; for example, if they had

11:37 AM 16     revealed the actual motivations behind the votes, then the board

11:37 AM 17     would have, or the board members in that case, would have raised

11:37 AM 18     such a claim of privilege on behalf of themselves.

11:37 AM 19          But again, the board members have not intervened, this

11:37 AM 20     discovery was not served on them, it was served on the board, it

11:37 AM 21     was answered by the board.  So to the extent that plaintiffs

11:37 AM 22     argue that the board can waive it on behalf of the board

11:37 AM 23     members, I think Your Honor said that that just legally doesn't

11:37 AM 24     necessarily mesh.

11:37 AM 25          And I can speak about the specific e-mail attached to

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**

11:37 AM  1    plaintiffs' response if Your Honor would like as well.

11:37 AM  2              THE COURT:  I don't need anything about that.

11:37 AM  3              MR. GROSHOLZ:  Okay.

11:37 AM  4              THE COURT:  Okay.  All right.

11:37 AM  5              Anything else?  And I'll give you a chance for

11:37 AM  6    rebuttal.

11:38 AM  7              MR. GROSHOLZ:  No, Your Honor.  I can talk all day

11:38 AM  8    about why it's legislative, but I think I got my point across.

11:38 AM  9              THE COURT:  Yeah, it's an interesting issue, but I

11:38 AM 10    think I understand the argument on the legislative versus

11:38 AM 11    non-legislative.  So we'll hear from the other side and then

11:38 AM 12    come back to you.

11:38 AM 13              MR. GROSHOLZ:  Thank you, Your Honor.

11:38 AM 14              MS. ZIMMERMAN:  I will warn you I have a lot of things,

11:38 AM 15    so I might have to go back and forth.  This is a little bit

11:38 AM 16    smaller than I had anticipated.

11:38 AM 17              THE COURT:  That's fine.  Let me ask you one question

11:38 AM 18    before you start.  On the procedural issue, you've raised that

11:38 AM 19    they can't assert it on the board members' behalf.  I had the

11:38 AM 20    earlier order where I said it wasn't clear if the members even

11:38 AM 21    wanted this asserted on their behalf.  I think everyone agrees

11:38 AM 22    if a board member wanted to testify, he or she could.  But now

11:38 AM 23    we are here in sort of round two and you've said they can't

11:38 AM 24    assert it on their behalf, and I'm not sure I understand that

11:39 AM 25    argument.

32

11:39 AM   1              MS. ZIMMERMAN:  I'm happy to clarify.

11:39 AM   2              THE COURT:  Okay.  But let me ask this:  As a practical

11:39 AM   3       matter, if I agreed with you on that issue, then you would

11:39 AM   4       subpoena these witnesses and then would probably get the same

11:39 AM   5       motion and be back?  Or is it your view that you wouldn't have

11:39 AM   6       to subpoena them because they're under the defendant's control?

11:39 AM   7              MS. ZIMMERMAN:  That's correct, I don't think a

11:39 AM   8       subpoena would be necessary.

11:39 AM   9              But to clarify our argument, we did not say that the

11:39 AM   10      privilege -- had the affidavits been sufficient, had they had

11:39 AM   11      met the *In Re: Hubbard* standard, and I can talk about why they

11:39 AM   12      don't, then the privilege could have been invoked.  Our position

11:39 AM   13      is that the affidavits are woefully insufficient to meet the

11:39 AM   14      standard.

11:39 AM   15             THE COURT:  Okay.  But you would acknowledge then that

11:39 AM   16      as a general matter, a board or a legislature can assert it on

11:39 AM   17      behalf of the members if it's clear that the members wish it to

11:39 AM   18      be asserted.  You agree with that?

11:39 AM   19             MS. ZIMMERMAN:  Yes.  If after personal consideration

11:39 AM   20      and understanding, if those individual legislators want to

11:39 AM   21      invoke the privilege, certainly defense counsel, which

11:39 AM   22      represents the individual board members, could then, based on

11:39 AM   23      that, assert the privilege on their behalf as their counsel.

11:40 AM   24             THE COURT:  Okay.

11:40 AM   25             MS. ZIMMERMAN:  And they've been acting as their

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**

11:40 AM 1    counsel throughout this litigation, and I'll talk about that in

11:40 AM 2    a moment.

11:40 AM 3         THE COURT:  Okay.  Well, if they're acting on their

11:40 AM 4    behalf as counsel, then you wouldn't even need an affidavit,

11:40 AM 5    right?  I mean, if someone came in and said I'm Legislator X's

11:40 AM 6    counsel and Legislator X is here to assert the privilege, we

11:40 AM 7    wouldn't need an affidavit to show that the lawyer's authorized

11:40 AM 8    to do what he's doing, just like we don't need an affidavit from

11:40 AM 9    your client, right?

11:40 AM 10         MS. ZIMMERMAN:  What I would say, Your Honor, is that

11:40 AM 11    there have been a lot of inconsistent actions and arguments made

11:40 AM 12    here, and so the conduct that we're now seeing does seem to

11:40 AM 13    indicate -- and even the affidavits themselves say that the

11:40 AM 14    board is relying on counsel for the defendants.

11:40 AM 15         You know, to your point earlier, defense counsel has

11:40 AM 16    collected and searched e-mails in the board members' personal

11:40 AM 17    devices, their cellphones, things like that.  That is not

11:40 AM 18    documents that are subject to FOIA or required under the board,

11:40 AM 19    as a body, to maintain those documents.  But as defense counsel,

11:40 AM 20    they have been searching --

11:40 AM 21         THE COURT:  Why is it not?  Why would it not be 119

11:41 AM 22    just because it's on someone's phone?

11:41 AM 23         MS. ZIMMERMAN:  They're searching personal

11:41 AM 24    communications and personal text messages.

11:41 AM 25         THE COURT:  As a matter of Florida law, personal text

11:41 AM  1    messages are, every day in Florida, public records under Florida

11:41 AM  2    law.  And people get in a lot of trouble for asserting what

11:41 AM  3    you're saying which is that hey, this is my personal device and

11:41 AM  4    my personal text messages.  If two legislators are texting,

11:41 AM  5    those are public documents.

11:41 AM  6          MS. ZIMMERMAN:  Yeah, but they've collected documents

11:41 AM  7    that are not just between legislators that are on personal

11:41 AM  8    devices.  And we believe there are more out there.  But I

11:41 AM  9    understand what you're saying, but certainly they've engaged --

11:41 AM 10    the board --

11:41 AM 11          THE COURT:  What documents have they produced that

11:41 AM 12    would not be subject to Florida's open records laws?

11:41 AM 13          MS. ZIMMERMAN:  Well, Your Honor, we're still in

11:41 AM 14    dispute about what should be collected from the personal devices

11:41 AM 15    because the collection hasn't been sufficient, and we've

11:41 AM 16    received evidence from other third parties that they received

11:41 AM 17    text messages from the board members but they weren't produced

11:41 AM 18    to us by the board members.  So that's one of the issues that's

11:41 AM 19    still on the table.  So I couldn't give you the answer because I

11:41 AM 20    haven't seen everything yet.

11:41 AM 21          THE COURT:  So to your knowledge, there's not been a

11:42 AM 22    single document produced that would not be subject to Florida

11:42 AM 23    publics record law?

11:42 AM 24          MS. ZIMMERMAN:  There have only been two produced from

11:42 AM 25    the board members from their personal devices thus far, I

11:42 AM 1    believe, but we have evidence that there are more.  So I just

11:42 AM 2    can't say at this juncture.  No, I cannot say right now.  But I

11:42 AM 3    tend to believe there are more out there.  And in my experience,

11:42 AM 4    personal counsel would be the one collecting from, you know,

11:42 AM 5    personal devices, not counsel for the board.

11:42 AM 6         THE COURT:  Okay.  But it is different when you're

11:42 AM 7    representing an agency in Florida that's subject to these --  I

11:42 AM 8    mean, Florida's public record laws are unlike most any other

11:42 AM 9    state's.

11:42 AM 10        MS. ZIMMERMAN:  Sure, Your Honor.  But if the documents

11:42 AM 11   are subject to public record, then they're certainly not covered

11:42 AM 12   by the privilege.  If they were subject to -- if I could have

11:42 AM 13   gotten this in FOIA, then they're certainly not subject to

11:42 AM 14   legislative privilege.  So that still goes to what I'm saying.

11:42 AM 15        THE COURT:  Correct.  Right.  But that works against

11:42 AM 16   you because you're saying they have waived the privilege by

11:42 AM 17   producing these documents which, if that's true and if they are

11:42 AM 18   all public record documents, which you've not been able to say

11:43 AM 19   is not the case, then your position would be that Florida's

11:43 AM 20   public record law always waives the privilege for everyone.

11:43 AM 21        MS. ZIMMERMAN:  I understand why you understood me that

11:43 AM 22   way, and I'm sorry for being unclear.

11:43 AM 23        When they went through these documents, if they

11:43 AM 24   believed that it was attorney-client privileged, protected by

11:43 AM 25   the legislative privilege, they could have put it on a log and

11:43 AM  1    withheld it on that basis.

11:43 AM  2              THE COURT:  But you're correct that it wouldn't be

11:43 AM  3    subject to legislative privilege if it's public records law.

11:43 AM  4              MS. ZIMMERMAN:  If it is.  Again, I don't know what's

11:43 AM  5    in there, and to the two cases I mentioned earlier, Your Honor,

11:43 AM  6    *NY Union* and *Puente*, which are both in the briefing, those are

11:43 AM  7    instances where the individual legislators looked at their

11:43 AM  8    individual documents, and they put documents on a log or

11:43 AM  9    withheld documents based on their belief that the privilege

11:43 AM  10   applied, and then the other documents they didn't believe the

11:43 AM  11   privilege applied to they produced.  That's not what happened

11:43 AM  12   here.  We specifically requested documents.

11:43 AM  13             THE COURT:  But maybe their position is the legislative

11:43 AM  14   privilege does not protect the production of any documents.

11:43 AM  15             MS. ZIMMERMAN:  Well, the argument that opposing

11:44 AM  16   counsel just made is that anything subject to the deliberative

11:44 AM  17   process, their alleged deliberative process, anything within the

11:44 AM  18   sphere of legislating, and their argument today is anything

11:44 AM  19   regarding the removal of "Tango", that decision was within the

11:44 AM  20   sphere of legislating, right, is covered by the privilege.  And

11:44 AM  21   yet we've received tons and tons of documents about their

11:44 AM  22   purported deliberative process which was their consideration of

11:44 AM  23   the removal of "Tango", including the document we attached.  So

11:44 AM  24   I actually think they just conceded their waiver.

11:44 AM  25             THE COURT:  But how could they assert the privilege if,

11:44 AM  1    as a matter of state law, the documents, as opposed to

11:44 AM  2    conversations, are public record?

11:44 AM  3            MS. ZIMMERMAN:  My understanding is if there is a

11:44 AM  4    document that a legislator -- well, I think --

11:44 AM  5            THE COURT:  I can tell you this:  If a board member

11:44 AM  6    texts another board member about official business, that would

11:44 AM  7    be subject to 119 in Florida and they could not assert a

11:44 AM  8    privilege, and they would sometimes be criminally prosecuted for

11:44 AM  9    keeping that out of the public record by saying that's a

11:44 AM  10   personal text message.

11:44 AM  11           MS. ZIMMERMAN:  I agree with you.  However, if the

11:44 AM  12   board member texted their lawyer, that certainly would not be a

11:45 AM  13   public record or it might be a public record, but it would be

11:45 AM  14   protected by the privilege and it would go on a log.

11:45 AM  15           THE COURT:  It would be protected by the

11:45 AM  16   attorney-client privilege.

11:45 AM  17           MS. ZIMMERMAN:  Exactly.  That's what I'm saying.  The

11:45 AM  18   public records, as you said, rule does not trump privilege.

11:45 AM  19           THE COURT:  It does not trump attorney-client

11:45 AM  20   privilege.

11:45 AM  21           MS. ZIMMERMAN:  Or legislative privilege.

11:45 AM  22           THE COURT:  I'm not sure I agree with that.  Do you

11:45 AM  23   have any authority on that?

11:45 AM  24           MS. ZIMMERMAN:  Not off the top of my head.  I'm sure I

11:45 AM  25   could look into it.

11:45 AM 1          THE COURT:  You might be right.

11:45 AM 2          MS. ZIMMERMAN:  But I do think there's cases where

11:45 AM 3     attorneys who've worked on behalf of the legislator asserted

11:45 AM 4     privilege and the privilege was maintained.  The idea that

11:45 AM 5     legislators, when they're speaking to their lawyers -- in fact

11:45 AM 6     --

11:45 AM 7          THE COURT:  I'll tell you this:  The Florida law on

11:45 AM 8     that is yes, it is, when an official and his lawyer would be

11:45 AM 9     subject to attorney-client privilege, but different than the

11:45 AM 10    traditional one that you would have with your clients.

11:45 AM 11         MS. ZIMMERMAN:  Then what document would legislative

11:45 AM 12    privilege ever apply to if we're saying that every communication

11:45 AM 13    that a board member engages in with respect to the deliberative

11:45 AM 14    process isn't subject to the privilege.  I don't think those two

11:46 AM 15    can work hand-in-hand, Your Honor.

11:46 AM 16         THE COURT:  Well, I think that's what I was getting at

11:46 AM 17    at the outset of this is that if everything they produced is

11:46 AM 18    public record and not subject to the privilege, then that would

11:46 AM 19    mean that your waiver argument meant that --

11:46 AM 20         MS. ZIMMERMAN:  Oh, then I misunderstood you.  Of the

11:46 AM 21    thousands upon thousand of documents, many are not necessarily

11:46 AM 22    public record.  They certainly don't have a Sunshine Law stamp

11:46 AM 23    at the bottom.  There's all sorts of communications that we've

11:46 AM 24    been given that are not necessarily subject to public record,

11:46 AM 25    though I couldn't identify them for you right now.

11:46 AM  1            THE COURT:  Okay.  Well, Mr. Grosholz, are you

11:46 AM  2    asserting a legislative privilege over any document in this

11:46 AM  3    case?

11:46 AM  4            MR. GROSHOLZ:  Not at this time, Your Honor.

11:46 AM  5            THE COURT:  Okay.  What we were talking about a minute

11:46 AM  6    ago, what is the state of the law in terms of whether text

11:46 AM  7    messages between legislators could ever be subject to

11:46 AM  8    legislative privilege.  Do you know the answer to that?

11:46 AM  9            MR. GROSHOLZ:  I think, as Your Honor correctly

11:46 AM 10    recognized, at least in Florida, I can't necessary speak to

11:47 AM 11    other states, but at least in Florida no, they would not be.

11:47 AM 12    They would be subject to any sort of proper Chapter 119 request.

11:47 AM 13    This is not a circumstance where we, the board, are attempting

11:47 AM 14    to assert the legislative privilege over any document

11:47 AM 15    production.

11:47 AM 16            MS. ZIMMERMAN:  Your Honor, can I ask a more pointed

11:47 AM 17    question?  If two board members texted each other about their

11:47 AM 18    motivation for removing "Tango", are they saying that that

11:47 AM 19    wouldn't be subject to the legislative privilege?

11:47 AM 20            THE COURT:  I didn't hear him to say that.

11:47 AM 21            MS. ZIMMERMAN:  That wasn't the question asked.  It was

11:47 AM 22    any text message.  So of course not any text message.  But

11:47 AM 23    they're saying anything about their deliberative process,

11:47 AM 24    anything about their motivations for removing "Tango" is

11:47 AM 25    protected by privilege.

11:47 AM 1          THE COURT:  As to the depositions, which is all that is

11:47 AM 2     at issue here.  Nobody has sought a protective order as to any

11:47 AM 3     document.  We're just talking about the depos, right?

11:47 AM 4          MS. ZIMMERMAN:  My argument is that their failure to do

11:47 AM 5     so under *Singleton*, under *Mi Familia*, their litigation conduct,

11:47 AM 6     in addition to other points, is a waiver.

11:47 AM 7          THE COURT:  I understand that argument.  And here's

11:48 AM 8     what I'm trying to make sure I understand properly.

11:48 AM 9          MS. ZIMMERMAN:  Yes.

11:48 AM 10         THE COURT:  If it is true that any document in Florida,

11:48 AM 11    it is a public record, cannot be withheld based on legislative

11:48 AM 12    privilege.  Assume that's the case, okay?

11:48 AM 13         MS. ZIMMERMAN:  So you're saying even if the document

11:48 AM 14    is about their motivations for removing "Tango" or about their

11:48 AM 15    deliberative process, it wouldn't be subject to the privilege.

11:48 AM 16         THE COURT:  That's what I believe is the law.  But I

11:48 AM 17    could be wrong about that.  If a legislator texts another

11:48 AM 18    legislator "I'm going to vote for house bill such-and-such for

11:48 AM 19    these five reasons", I think that's a public record.  I could be

11:48 AM 20    wrong.

11:48 AM 21         If that is, then they would not withhold it based on a

11:48 AM 22    privilege, right?  And if they didn't withhold it on the basis

11:48 AM 23    of the privilege because there was none, or because the law

11:48 AM 24    prohibited it, and then you were correct that by producing that

11:48 AM 25    document that they were obligated to produce constituted a

11:49 AM  1    waiver of the testimonial privilege, then that would have pretty
11:49 AM  2    broad consequences, right?  In any case where a legislator had a
11:49 AM  3    constituent communication about hey, I think this bill is going
11:49 AM  4    to be -- this tax bill is going to be a great policy for
11:49 AM  5    Florida, I'm happy to support it for these reasons, that then
11:49 AM  6    you could depose that person, right?  Wouldn't that be your
11:49 AM  7    ultimate --
11:49 AM  8            MS. ZIMMERMAN:  So I think your example is,
11:49 AM  9    respectfully Judge, in complete tension with the privilege.  If
11:49 AM  10   we're saying -- if either the deliberative process and their
11:49 AM  11   motivations are privileged or they're not.  And we're saying
11:49 AM  12   that documents -- and by the way, opposing counsel literally
11:49 AM  13   just conceded this.  He said if Your Honor found that Exhibit B
11:49 AM  14   to our motion revealed the motivation of the board members, it
11:49 AM  15   would be a waiver.  They're arguing that that's not what the
11:49 AM  16   document says, but he literally, in argument, conceded that if
11:49 AM  17   you found that Exhibit B was about the motivations for the board
11:49 AM  18   members' removal of "Tango", it would constitute a waiver.
11:49 AM  19           THE COURT:  He said that just now you're saying?
11:49 AM  20           MS. ZIMMERMAN:  Yes.  On argument.  I wrote it down to
11:50 AM  21   make sure I brought it back to up to you, Your Honor.  And
11:50 AM  22   that's why he wanted to address Exhibit B, which by the way
11:50 AM  23   they've never addressed in briefing, despite having multiple
11:50 AM  24   attempts to do so.  Today is the first time they've tried to
11:50 AM  25   present a counter, but their counter is it doesn't reveal their

11:50 AM  1    motivation which, of course, we disagree with.

11:50 AM  2            I think if we're saying a legislator can e-mail, text,

11:50 AM  3    write down his motivations, and that that's not -- and that has

11:50 AM  4    to be produced simply because it's in writing, and it's not

11:50 AM  5    protected by the privilege, I don't see how the privilege

11:50 AM  6    exists.

11:50 AM  7            And again, in *La Puente* -- I don't know why I have a

11:50 AM  8    mental block with these cases, *La Union* and *Puente* which I'm

11:50 AM  9    happy to give you the cites for, that wasn't the case.

11:50 AM  10           THE COURT:  That was the Fifth Circuit case, right?

11:50 AM  11           MS. ZIMMERMAN:  I can tell you where each of them are

11:50 AM  12   from.

11:50 AM  13           THE COURT:  The recent one?

11:50 AM  14           MS. ZIMMERMAN:  Apologies, Your Honor.

11:50 AM  15           THE COURT:  That's okay.  I've got your documents.

11:50 AM  16           MS. ZIMMERMAN:  I can give that to you in a minute.  As

11:50 AM  17   I said, I have a lot of documents.

11:50 AM  18           But that's an instance where a legislator specifically

11:50 AM  19   looked at the different documents at issue and asserted

11:50 AM  20   privilege over some and put them on a privilege log, or just

11:50 AM  21   simply withheld others.

11:50 AM  22           So I think the idea that, you know, if we ask them

11:51 AM  23   orally it's privileged, but if they write it down in paper it's

11:51 AM  24   not, I don't see how the privilege could exist in that world.

11:51 AM  25   Because then we're getting at their -- then their motivations

11:51 AM 1    and deliberative process are subject to public knowledge and to

11:51 AM 2    litigation.

11:51 AM 3        THE COURT:  Okay.  I mean, I think part of the answer

11:51 AM 4    there might be that that's just the way it is, but part of it

11:51 AM 5    also would be if you look at Hubbard and some of these other

11:51 AM 6    cases and they talk about the purpose of the privilege, it's not

11:51 AM 7    just to protect the thoughts but to protect the process and the

11:51 AM 8    person's efforts and things like that.

11:51 AM 9        MS. ZIMMERMAN:  I completely agree with you, Your

11:51 AM 10   Honor, which is why I think all of those documents would be

11:51 AM 11   protected.  Anything about the deliberative process.

11:51 AM 12       THE COURT:  They're talking about the burden on the

11:51 AM 13   deponent too, and the deponent wouldn't have the burden if his

11:51 AM 14   or her body is a record keeper of his or her records and

11:51 AM 15   produces them.

11:51 AM 16       MS. ZIMMERMAN:  But I think that -- I mean, there's a

11:51 AM 17   burden of collecting and producing documents.  And again, we

11:51 AM 18   have cases where -- and it's not even just those two cases.  I

11:51 AM 19   do have an Eleventh Circuit case in which documents were

11:52 AM 20   withheld based on the privilege.  I mean, collecting and

11:52 AM 21   producing documents is also a burden, right?  We are protecting

11:52 AM 22   the deliberative and legislative process, and certainly

11:52 AM 23   documents have to do with the legislative privilege.  You know,

11:52 AM 24   in *Pernell* they were seeking documents as well, and that's in

11:52 AM 25   the Eleventh Circuit, and they withheld documents based on the

11:52 AM  1    privilege.  So I think *Pernell* might answer the question you're

11:52 AM  2    asking about public record.

11:52 AM  3            THE COURT:  No, no.  My questions about public record

11:52 AM  4    are unique to Florida law, and Florida has a very unorthodox

11:52 AM  5    public records regime that presumably was not at issue in

11:52 AM  6    *Pernell*.  Although *Pernell* was a Florida case, wasn't it?

11:52 AM  7            MS. ZIMMERMAN:  Yes.

11:52 AM  8            THE COURT:  Yes.

11:52 AM  9            MS. ZIMMERMAN:  And I would also just point to *Benezek*

11:52 AM  10   which is in the briefing, which are also documents withheld on

11:52 AM  11   the basis of legislative privilege.  So legislative privilege,

11:52 AM  12   in almost all of these cases, talks about both documents and

11:52 AM  13   depositions.  We're talking about discovery.

11:52 AM  14           THE COURT:  Okay.  All right.  I think I've got that.

11:53 AM  15   I think I understand what you're saying there.

11:53 AM  16           On the legislative versus non-legislative, I'd

11:53 AM  17   identified sort of the carve-outs that are set aside, the two

11:53 AM  18   and --

11:53 AM  19           MS. ZIMMERMAN:  Yes.  I completely agree with those

11:53 AM  20   carve-outs.

11:53 AM  21           THE COURT:  This doesn't really fit into those, right?

11:53 AM  22           MS. ZIMMERMAN:  Look, is there an all-fours case about

11:53 AM  23   book removals?  No.  I would assert there isn't, because the

11:53 AM  24   assertion of legislative privilege here is grossly

11:53 AM  25   inappropriate.  I mean, we're seeing book removals all over the

11:53 AM  1    country.  We've seen book removals in the past.  I don't know of

11:53 AM  2    any case in which any government official has  asserted that

11:53 AM  3    their decisions over books in a library pursuant to a policy is

11:53 AM  4    legislative privilege, subject of the privilege.

11:53 AM  5            THE COURT:  But there's none the other way either,

11:53 AM  6    right?

11:53 AM  7            MS. ZIMMERMAN:  Right.  Yes.  But I would assert that's

11:53 AM  8    because no one would have thought to assert this privilege in

11:53 AM  9    this instance because the conduct is so clearly administrative.

11:53 AM  10           I actually do think, Your Honor, while not obviously

11:53 AM  11   perfect because they are different subject matters, it is akin

11:54 AM  12   to the termination of an employee.  In fact, the way that

11:54 AM  13   opposing counsel described what happened here is exactly what

11:54 AM  14   happened when the board terminated Superintendent Leonard,

11:54 AM  15   right?  There was a public meeting, it was subject to debate and

11:54 AM  16   it was subject to public comment.  Certainly they're not going

11:54 AM  17   to argue, nor could they, that their decision to terminate

11:54 AM  18   Mr. Leonard, who was the superintendent of the school,

11:54 AM  19   constituted an administrative process.

11:54 AM  20           But I do really think this is a termination.  In fact,

11:54 AM  21   I think *Oakes*, which is an Eleventh Circuit case, it's actually

11:54 AM  22   the only Eleventh Circuit case that any party knows of that

11:54 AM  23   addresses school board privilege is actually on all fours.  In

11:54 AM  24   that case, the school board made a specific decision --

11:54 AM  25           THE COURT:  You said Eleventh Circuit case.  You mean a

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**

11:54 AM  1    district court case in the Eleventh Circuit?

11:54 AM  2         MS. ZIMMERMAN:  I'm sorry.  Yes, Your Honor.  In that

11:54 AM  3    decision in *Oakes*, the school board made a specific decision

11:54 AM  4    about a contract with a particular contractor.  That contractor,

11:54 AM  5    Oakes Farms, provided all the produce --

11:54 AM  6         THE COURT:  Right.  I mean, I got *Oakes*, and that's a

11:54 AM  7    personnel case.

11:54 AM  8         MS. ZIMMERMAN:  But my argument, Judge, and if I can

11:54 AM  9    explain it, is I actually do think this is akin to the

11:55 AM 10    termination of employment.  It's a specific decision.  They

11:55 AM 11    terminated a single title, a single book, right?  And the

11:55 AM 12    arguments that have been made here, again, are akin to Mr. Smith

11:55 AM 13    as well.  That was a very specific act.  It only affected that

11:55 AM 14    single -- you know, it affected Tim Smith.

11:55 AM 15         In the case of *Oakes Farms* it addressed -- the decision

11:55 AM 16    was only with respect to the contract and that consumer, or

11:55 AM 17    rather that producer, but it affected all the schools.  Once

11:55 AM 18    that contract was terminated, you know, it affected every

11:55 AM 19    school.  So the schools couldn't get produce from there, the

11:55 AM 20    students couldn't get produce from there, et cetera.  The same

11:55 AM 21    thing with Tim Smith.

11:55 AM 22         THE COURT:  That's why I think that the law is a little

11:55 AM 23    unclear because you could make those arguments both ways as to

11:55 AM 24    any issue.  I mean, you could say if you close one school it

11:55 AM 25    only affects that one school, but obviously it affects everyone

11:55 AM 1    who goes there; if you fire one teacher, that affects everybody

11:55 AM 2    who had that teacher, but then the cases suggest it kind of goes

11:55 AM 3    to that one person. So as I think through this, I think that in

11:55 AM 4    some ways it makes it a little bit harder. Do you see what I'm

11:55 AM 5    saying?

11:56 AM 6         MS. ZIMMERMAN: I do, but I've thought through this a

11:56 AM 7    lot, and I've had a million debates about this because I really

11:56 AM 8    am steeped in this issue. And those cases do talk about how --

11:56 AM 9    you know, if you look at *Yeldell*, which is in the circuit,

11:56 AM 10   Judge. *Yeldell* was an employment decision that affected

11:56 AM 11   multiple employees. It was actually two decisions. It was one

11:56 AM 12   about a body and it was one about an individual state official.

11:56 AM 13   And the determination there that was made was that the decisions

11:56 AM 14   that the state official made that affected multiple people in

11:56 AM 15   their employment were administrative. And because the court

11:56 AM 16   said just because a few individuals or a group of individuals

11:56 AM 17   are affected, that doesn't make it not administrative.

11:56 AM 18        THE COURT: But it's still within the employment

11:56 AM 19   context. What if they renamed a school? If they said we're

11:56 AM 20   going to name this the -- we're going to rename an elementary

11:56 AM 21   school. That would be legislative, wouldn't it?

11:56 AM 22        MS. ZIMMERMAN: No, I guess it would depend, Your

11:56 AM 23   Honor. I would need more facts, right? Because I would need to

11:56 AM 24   know if it was in response to a particular occurrence, and I

11:56 AM 25   would need to know if it was based on specific facts, what was

11:57 AM  1    motivating that decision.  So I think just giving me that is

11:57 AM  2    insufficient.

11:57 AM  3         THE COURT:  I think president so and so was a great

11:57 AM  4    president, and I think we should rename this elementary school

11:57 AM  5    after that president.  And someone else says no, I think that's

11:57 AM  6    a bad idea, he was not a good president, and then they vote, and

11:57 AM  7    the public weighs in and then they vote.  And then -- you know,

11:57 AM  8    just like we do in Congress with post offices, right?  I mean,

11:57 AM  9    somebody introduces a bill, people debate if they want to, and

11:57 AM 10    it happens.

11:57 AM 11         MS. ZIMMERMAN:  Under the case law, I don't think that

11:57 AM 12    would be a legislative decision.  It doesn't have a

11:57 AM 13    broad-ranging effect.  I think it is more akin to the

11:57 AM 14    administrative law cases because it sounds like a response to a

11:57 AM 15    very particular occurrence, and it is based on very specific

11:57 AM 16    facts.  Just because a legislator makes a decision doesn't mean

11:57 AM 17    it's legislative.

11:57 AM 18         THE COURT:  That's 100% true.  But I guess what I'm

11:57 AM 19    saying is you don't have an example of where there was a vote --

11:57 AM 20    public input and a vote, and it was held to be not legislative

11:57 AM 21    privilege and it did not involve zoning enforcement or

11:57 AM 22    personnel, right?

11:57 AM 23         MS. ZIMMERMAN:  I mean, the cases we have obviously are

11:58 AM 24    generally in those.  Although another one was budgetary.

11:58 AM 25    There's a lot of cases on budget decisions.

11:58 AM  1          THE COURT:  But those are legislative.

11:58 AM  2          MS. ZIMMERMAN:  Yes.  Yes.  I thought you were saying

11:58 AM  3     zoning or another issue, which are both legislative.

11:58 AM  4          THE COURT:  You both have cited a ton of cases.

11:58 AM  5          MS. ZIMMERMAN:  Don't I know it.

11:58 AM  6          THE COURT:  Right.  And I've looked at a ton of cases.

11:58 AM  7     And in every instance -- and you're right, voting is indicative

11:58 AM  8     of the privilege applying, but it's not dispositive.

11:58 AM  9          MS. ZIMMERMAN:  The Eleventh Circuit has made that very

11:58 AM 10     clear.

11:58 AM 11          THE COURT:  Right.  But in every case where a

11:58 AM 12     legislative body has voted on something that's been the subject

11:58 AM 13     of public debate and the answer was it is not legislative, in

11:58 AM 14     every instance it was either a personnel issue or zoning

11:58 AM 15     enforcement, correct?

11:58 AM 16          MS. ZIMMERMAN:  It's hard for me to say for sure, but

11:58 AM 17     that is generally where the cases are.  I mean, we've seen cases

11:58 AM 18     where they didn't vote on a police officer -- they voted on

11:58 AM 19     whether a police officer should be in, things like that.  I

11:58 AM 20     guess you could put that into the employment bucket.  But again,

11:59 AM 21     I would also say, Your Honor, the fact that that's the only

11:59 AM 22     cases we're seeing again highlights the fact that the

11:59 AM 23     application here to the decision about a book in a library in a

11:59 AM 24     response to a very particular occurrence, a book challenge,

11:59 AM 25     shows that the privilege shouldn't apply.  This is what we're

11:59 AM   1    talking about.  Zoning, zoning ordinances, legislation,

11:59 AM   2    budgetary decisions.  We're not talking about a one-off decision

11:59 AM   3    pursuant to a law, which I will talk about, you know.  Opposing

11:59 AM   4    counsel spent a lot of time about how this was a decision that

11:59 AM   5    they had to make pursuant to law.  The case law actually says

11:59 AM   6    when you're making a decision that's mandatory pursuant to law,

11:59 AM   7    that makes it administrative in fact.  And so they're focused

11:59 AM   8    there.

11:59 AM   9            THE COURT:  No, I think -- and you heard me say this to

11:59 AM  10    your colleague here, I think that works against them if

11:59 AM  11    anything.  But if we didn't have this law, if we didn't have

11:59 AM  12    this background, if we didn't have this sort of new collection

11:59 AM  13    of school library cases; if just out of the blue the Escambia

11:59 AM  14    County, five years ago, would have said we don't like this book,

11:59 AM  15    let's debate whether we take it out of the libraries, and they

12:00 PM  16    voted to take it out of the libraries, your arguments would be

12:00 PM  17    the same as they are today if you were arguing against the

12:00 PM  18    privilege, correct?

12:00 PM  19            MS. ZIMMERMAN:  Yeah.  Maybe they would be less strong

12:00 PM  20    without this great body of law.  But I do think the body of law

12:00 PM  21    really favors the fact that this is administrative, Judge.

12:00 PM  22    Every sort of hallmark of this action -- if you actually look at

12:00 PM  23    the action and not all the noise, all of the time spent that

12:00 PM  24    opposing counsel has spent on the nature of the elected

12:00 PM  25    officials here, but actually on the nature of the act.

12:00 PM   1          THE COURT:  But that's not an issue, right?  In other

12:00 PM   2    words, you're not saying that they can't get the legislative

12:00 PM   3    privilege because they're only a school board or something like

12:00 PM   4    that.  That's not what you're arguing.

12:00 PM   5          MS. ZIMMERMAN:  No.  But if you look at their briefing,

12:00 PM   6    the majority of ink spilled is on the different characteristics

12:00 PM   7    on the board members as elected officials, and that fails.

12:00 PM   8          THE COURT:  You're 100% right.  There's a lot that has

12:00 PM   9    been briefed that does not help at all.  But my question to you

12:00 PM  10    is you're not asserting that well, they're not the Florida

12:00 PM  11    Legislature, they're only a school board and that's why they

12:00 PM  12    don't get privilege.  You're acknowledging that the privilege

12:00 PM  13    could apply there if this were a legislative decision and if

12:01 PM  14    there weren't a waiver or whatever, correct?

12:01 PM  15          MS. ZIMMERMAN:  Of course.  In *Bryant* it was given to

12:01 PM  16    an executive assistant.  Because the test is the nature of the

12:01 PM  17    act.  And again, the nature of the act here, to me based on the

12:01 PM  18    case law, is clearly administrative in nature.

12:01 PM  19          THE COURT:  Okay.  What if the Florida Legislature had

12:01 PM  20    said we're not going to allow any of our public schools to have

12:01 PM  21    this book, and they passed a law through traditional law-making,

12:01 PM  22    debated, the governor signed it.  Would that be legislative?

12:01 PM  23          MS. ZIMMERMAN:  No.  Just because something goes

12:01 PM  24    through traditional, what we're calling legislative process,

12:01 PM  25    again doesn't make it a legislative act.  Now, if the Florida

12:01 PM  1    school board said we will not allow books in the library about

12:01 PM  2    penguins, that is forward-looking, broad policy that affects all

12:01 PM  3    books about penguins.  Now that would be legislative.  Or if

12:01 PM  4    they said -- if the Florida Legislature, or even the board, said

12:01 PM  5    we're going to pass a policy or resolution that says no books

12:01 PM  6    are allowed in public school libraries which deal with adoption,

12:01 PM  7    that would be legislative.  That is broad, it's not specific,

12:01 PM  8    it's forward-looking, that is traditionally legislative.  But

12:02 PM  9    that's not what we have here.

12:02 PM  10          THE COURT:  Well, it is forward-looking and it is -- I

12:02 PM  11   mean, it was a policy decision, right?

12:02 PM  12          MS. ZIMMERMAN:  Well, first off I don't believe that

12:02 PM  13   it's forward-looking.  I think it's a decision made at one point

12:02 PM  14   in time to remove a single book title from the library.

12:02 PM  15          THE COURT:  But the consequence of that is that nobody

12:02 PM  16   in the school district can check this book out of a public

12:02 PM  17   library.

12:02 PM  18          MS. ZIMMERMAN:  But as you said, Your Honor, the

12:02 PM  19   consequence of firing an employee means that they can't work

12:02 PM  20   with anyone around them.  In *Oakes*, the consequence was that no

12:02 PM  21   one in the school district could get the produce.  When the

12:02 PM  22   board terminated Tim Smith, that affected every single school.

12:02 PM  23   That affected every single employee in the school.  So I don't

12:02 PM  24   think that analysis is correct.

12:02 PM  25          If the analysis is any decision that has effects is

12:02 PM 1    legislative, there would be no decision that would be

12:02 PM 2    administrative.

12:02 PM 3         And no, I don't think the removal of a single book is a

12:02 PM 4    policy.  In fact, we've asked multiple times in briefing but

12:02 PM 5    defendant, to this day, has not identified a policy or a rule or

12:02 PM 6    even a resolution that was passed when they removed the book.

12:03 PM 7    Simply there was a motion to include the book, two members voted

12:03 PM 8    yes, three members voted no.  No policy, no law, no resolution.

12:03 PM 9         THE COURT:  I meant like public policy.  I wasn't

12:03 PM 10   saying like --

12:03 PM 11        MS. ZIMMERMAN:  Sorry.  I don't think it's public

12:03 PM 12   policy either though, Your Honor, respectfully.  They removed

12:03 PM 13   one book based on an individual book challenge appeal.

12:03 PM 14        THE COURT:  Okay.  On the waiver issue, is there

12:03 PM 15   anything that you've not covered that you want to cover?  I

12:03 PM 16   think I understand the argument a little bit better now.  But

12:03 PM 17   you're not suggesting that the board could waive it on behalf of

12:03 PM 18   the members, correct?

12:03 PM 19        MS. ZIMMERMAN:  Yes, because the board has been acting

12:03 PM 20   -- I mean, the board is asserting the privilege today on behalf

12:03 PM 21   of the members.  So if they can assert the privilege and invoke

12:03 PM 22   the privilege on their behalf, I don't understand how they can't

12:03 PM 23   waive it on their behalf.

12:03 PM 24        THE COURT:  But you said before that they can as a

12:03 PM 25   general matter.  I thought you acknowledged that --

| | | |
|---|---|---|
| 12:03 PM | 1 | MS. ZIMMERMAN:  Right, which would also include giving |
| 12:03 PM | 2 | us a privilege log and saying hey, we've collected all of these |
| 12:03 PM | 3 | documents, right?  So they didn't do that. |
| 12:03 PM | 4 | THE COURT:  By your logic then, the Florida Legislature |
| 12:03 PM | 5 | could waive the privilege on behalf of all of its members. |
| 12:04 PM | 6 | MS. ZIMMERMAN:  If the Florida Legislature provided a |
| 12:04 PM | 7 | bunch of Mr. Rubio's communications about his motivations behind |
| 12:04 PM | 8 | a law, yes I believe -- and if they were representing Mr. Rubio, |
| 12:04 PM | 9 | if the same counsel was representing both, which is what's |
| 12:04 PM | 10 | happening here, then yes. |
| 12:04 PM | 11 | THE COURT:  Okay.  All right. |
| 12:04 PM | 12 | MS. ZIMMERMAN:  I do have a couple other points though |
| 12:04 PM | 13 | on waiver that I would like to address if Your Honor would allow |
| 12:04 PM | 14 | me to? |
| 12:04 PM | 15 | THE COURT:  Sure. |
| 12:04 PM | 16 | MS. ZIMMERMAN:  I want to make clear that the previous |
| 12:04 PM | 17 | concession which, by the way, to quote -- well, I don't want to |
| 12:04 PM | 18 | quote off the top of my head.  I can find the exact quote.  But |
| 12:04 PM | 19 | the briefing in which the board specifically characterized its |
| 12:04 PM | 20 | conduct in addressing book challenges and book removals as |
| 12:04 PM | 21 | ministerial was not at a different stage of litigation.  It was |
| 12:04 PM | 22 | also in a protective order, as they said, that made the same |
| 12:04 PM | 23 | argument regarding legislative privilege.  It's the exact same |
| 12:04 PM | 24 | stage.  It was when we were seeking the testimony of the board |
| 12:04 PM | 25 | members.  So in the same breath they argued, and in the same |

12:04 PM  1    motion, right?  They argued that the actions were ministerial,

12:05 PM  2    that's how they chose to characterize their own conduct.  And I

12:05 PM  3    want to make clear, Judge, that's at ECF Number 111 at pages

12:05 PM  4    four to five.

12:05 PM  5          THE COURT:  Right.  I've got that.  I saw your argument

12:05 PM  6    on that.

12:05 PM  7          MS. ZIMMERMAN:  Okay.  So that's not a different stage.

12:05 PM  8    It's the exact same issue before the Court.  And they made that

12:05 PM  9    argument there.  They cannot retreat from their own voluntary

12:05 PM  10   decision to characterize their conduct as ministerial.  They

12:05 PM  11   thought it would help them in that instance because they were

12:05 PM  12   trying to say look, the board members were just doing this

12:05 PM  13   one-off little thing, they didn't know anything about it, they

12:05 PM  14   have no personal knowledge, but that's the representation they

12:05 PM  15   made.  They chose affirmatively to characterize the conduct as

12:05 PM  16   ministerial and that cannot be walked back.

12:05 PM  17          I also want to point out, Judge, that there are other

12:05 PM  18   statements that they made throughout this litigation that is

12:05 PM  19   also a waiver, which is their repeated assertions in response to

12:05 PM  20   our requests for production which is at pages -- which we attach

12:05 PM  21   as an exhibit to our opposition, ECF Number 168-1, where they

12:05 PM  22   repeatedly said on six different occasions that this case

12:05 PM  23   concerns only one book.  That's what they stated.  That's how

12:06 PM  24   they characterize what this case is about.

12:06 PM  25          THE COURT:  Everyone agrees with that, right?

12:06 PM 1          MS. ZIMMERMAN:  Well, no I don't think so, because

12:06 PM 2     they're claiming now this case concerns the creation of

12:06 PM 3     legislation.

12:06 PM 4          THE COURT:  But you can have legislation about one

12:06 PM 5     book. I mean, that's the whole issue.  I guess it's sort of

12:06 PM 6     circular.

12:06 PM 7          MS. ZIMMERMAN:  I don't agree with that.  As we just

12:06 PM 8     said, I think you could have a policy about books generally that

12:06 PM 9     affected all authors or all books or all themes, but that's not

12:06 PM 10    what we have here.  We have one decision about one book.  And

12:06 PM 11    again, when defense counsel didn't want to produce documents

12:06 PM 12    when it favored them, they argued that this case is only about

12:06 PM 13    one book.  They didn't argue that this was about a policy that

12:06 PM 14    was prospective about legislation, and they used that to their

12:06 PM 15    advantage to refuse to produce documents in discovery.  Now that

12:06 PM 16    that advantage is gone and they want to support their

12:06 PM 17    legislative privilege argument, they do change course here, Your

12:06 PM 18    Honor, and I do think that's inappropriate gamesmanship.

12:06 PM 19          Your Honor, just to your point that you asked about

12:07 PM 20    whether the board would be able to call -- intends to call the

12:07 PM 21    board members as witnesses, I'm glad they're saying they're not

12:07 PM 22    going to.  But I would move, Your Honor, that if that's the

12:07 PM 23    case, then the multitude of statements in their answer, which

12:07 PM 24    relies on the board members' representation about their

12:07 PM 25    motivation and their purpose here should be stricken.

12:07 PM  1          Same goes for the arguments they made in their motion

12:07 PM  2     to dismiss briefing.  That was all reliant on factual assertions

12:07 PM  3     made by the board members. and if the board members aren't going

12:07 PM  4     to testify --

12:07 PM  5          THE COURT:  Well, that would be their legal position.

12:07 PM  6          MS. ZIMMERMAN:  It's not their legal --

12:07 PM  7          THE COURT:  Just a minute.  Just a minute.  And if you

12:07 PM  8     could just slow your speech a little bit for our court reporter.

12:07 PM  9          MS. ZIMMERMAN:  I'm so sorry.  I do have a tendency to

12:07 PM 10     talk too quickly.

12:07 PM 11          THE COURT:  That's fine.  We just have someone here

12:07 PM 12     who's got to type it all up.

12:07 PM 13          MS. ZIMMERMAN:  I know.  My apologies.

12:07 PM 14          THE COURT:  I guess I don't understand what good

12:07 PM 15     striking would do.  If this goes to trial, they're obviously not

12:07 PM 16     going to be putting in affidavits from people they say shouldn't

12:07 PM 17     be allowed to testify, and they're not going to say for

12:07 PM 18     evidence, Judge, look at our answer that we filed or our motion

12:08 PM 19     to dismiss.

12:08 PM 20          MS. ZIMMERMAN:  But they shouldn't be able to say

12:08 PM 21     affirmatively that the board members acted with a legitimate

12:08 PM 22     pedagogical purpose, which they allege in their answer, nor can

12:08 PM 23     they say they acted in good faith.  That's counselor

12:08 PM 24     representation.  You need factual support for that, and the only

12:08 PM 25     way to get factual support for those assertions is from the

12:08 PM  1    board members, which kind of dovetails with another point.

12:08 PM  2         THE COURT:  But it's your burden.  They don't have any

12:08 PM  3    burden in this case.  It's your burden, right?

12:08 PM  4         MS. ZIMMERMAN:  Certainly our burden, but what I'm

12:08 PM  5    saying is those are factual assertions based on evidence that

12:08 PM  6    they got only from the board members.  They're, in essence,

12:08 PM  7    speaking for the board members.

12:08 PM  8         THE COURT:  That's not evidence.  I mean, lawyer

12:08 PM  9    arguments are not evidence.  I mean, that would be like in a

12:08 PM  10   criminal case the lawyer is not allowed to tell the jury that my

12:08 PM  11   client wasn't even there, or my client didn't do this.

12:08 PM  12        MS. ZIMMERMAN:  Well, of course they would have to have

12:08 PM  13   evidence supporting it.  But my point, Your Honor, would be

12:08 PM  14   they'd have to rely on what is in the public record and the

12:08 PM  15   public record doesn't show this.  There's no legitimate

12:08 PM  16   pedagogical purpose or even reference -- or good faith.

12:08 PM  17        THE COURT:  They wouldn't have to rely on anything.

12:08 PM  18   They would just say you haven't proven your case.

12:08 PM  19        MS. ZIMMERMAN:  That they can say.  I agree with you.

12:09 PM  20   But they can't affirmatively make factual assertions as they've

12:09 PM  21   done in their answer.

12:09 PM  22        THE COURT:  Look, if you want to strike something from

12:09 PM  23   the answer, you'll have to file a motion.  I don't think that's

12:09 PM  24   --

12:09 PM  25        MS. ZIMMERMAN:  I think the point is I do think there

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**

12:09 PM  1    is really an unjust scenario being created here, Your Honor,

12:09 PM  2    where the board is, in essence, asking the Court to create a

12:09 PM  3    scenario as we head into summary judgment and as we head into

12:09 PM  4    trial, that the board members, which make up the board, can

12:09 PM  5    constantly put forth affirmative facts in support of --

12:09 PM  6           THE COURT:  No, the board members are not going to put

12:09 PM  7    forth anything if they're taking the position that they can't be

12:09 PM  8    deposed because everything they would say is subject to

12:09 PM  9    privilege.  You're not going to have to worry about that.  There

12:09 PM  10   is not going to be an instance where at summary judgment they

12:09 PM  11   say hey, here's 10 declarations from our board members and we'd

12:09 PM  12   like to rely on those, and they're saying their motivation was

12:09 PM  13   X, and we're not going to let the plaintiffs depose on that.

12:09 PM  14   That's not going to happen.

12:09 PM  15          MS. ZIMMERMAN:  I guess what I'm saying, Your Honor, is

12:09 PM  16   they're going to make legal arguments they already have based on

12:09 PM  17   those assertions, and again it's a sword-sheild --

12:09 PM  18          THE COURT:  I don't decide summary judgment before

12:09 PM  19   trials based on legal arguments, but based on evidence.

12:10 PM  20          MS. ZIMMERMAN:  If it's legal argument, I agree with

12:10 PM  21   you.  I don't think it's taken on the form of legal argument.  I

12:10 PM  22   think it's been affirmative factual assertions, and *Singleton*

12:10 PM  23   and *Mi Familia* say that by doing so, they waived the privilege

12:10 PM  24   here and put their motivations at issue when they didn't need

12:10 PM  25   to.  They could have simply just asserted government privilege

12:10 PM   1    -- excuse me, the government speech doctrine or they could have

12:10 PM   2    just denied our allegations.  But they went one step further and

12:10 PM   3    made affirmative factual allegations which come only from the

12:10 PM   4    board members.

12:10 PM   5            THE COURT:  All right.  I think I've got that.

12:10 PM   6            Let me ask, I guess this issue about whether they said

12:10 PM   7    anything outside the Sunshine is still at issue, right?

12:10 PM   8            MS. ZIMMERMAN:  It's not the subject of our briefing,

12:10 PM   9    Judge.

12:10 PM  10            THE COURT:  No, I know that.  I'm saying an issue in

12:11 PM  11    the case.

12:11 PM  12            MS. ZIMMERMAN:  Yes.

12:11 PM  13            THE COURT:  Okay.  So I assume if there's a trial,

12:11 PM  14    people will be presenting the video of the meeting and arguing

12:11 PM  15    what the Court should make of that.

12:11 PM  16            MS. ZIMMERMAN:  Well, if there were discussions outside

12:11 PM  17    of the Sunshine, they wouldn't be captured in the video.

12:11 PM  18            THE COURT:  I realize that.

12:11 PM  19            MS. ZIMMERMAN:  Sorry.

12:11 PM  20            THE COURT:  That's okay.

12:11 PM  21            MS. ZIMMERMAN:  So, yes.

12:11 PM  22            THE COURT:  But I guess you would say -- I'm just

12:11 PM  23    trying to figure out, I'm trying to think through what we talked

12:11 PM  24    about earlier about what if there is a privilege would be beyond

12:11 PM  25    it.  If I said there was a privilege and if I said you can't ask

12:11 PM 1    them what they like to do on the weekends, even if it's not

12:11 PM 2    directly relevant here but you're trying to probe what their

12:11 PM 3    motivation might have been, you would say you still want a

12:11 PM 4    deposition as to whether they had discussions outside the

12:11 PM 5    Sunshine.

12:11 PM 6            MS. ZIMMERMAN:  We know that they did.  I mean, we took

12:11 PM 7    a deposition last week of the person who challenged the book

12:11 PM 8    here, and the board members have had extensive conversations

12:11 PM 9    with that person.  We also know from document discovery that

12:12 PM 10   they had conversations with the superintendent.  So we know

12:12 PM 11   there were conversations outside the sunshine.

12:12 PM 12           THE COURT:  Got it.  Okay.  I think I understand the

12:12 PM 13   argument.  Anything else?

12:12 PM 14           MS. ZIMMERMAN:  No, Your Honor.  Thank you.

12:12 PM 15           THE COURT:  Thank you very much.

12:12 PM 16           Any brief rebuttal?  And then we'll talk about a couple

12:12 PM 17   other topics.

12:12 PM 18           MR. GROSHOLZ:  Yes, Your Honor.

12:12 PM 19           As to the last point opposing counsel just made, there

12:12 PM 20   have been no discussions between the board members that have

12:12 PM 21   fallen outside the Sunshine.  Obviously the board is free to

12:12 PM 22   discuss with constituents outside the Sunshine, but nothing that

12:12 PM 23   would violate Chapter 119.  So I just want to make that clear.

12:12 PM 24           THE COURT:  Sure.  And you said somewhere in the

12:12 PM 25   briefing, and maybe it was the citation to this new Fifth

12:12 PM  1    Circuit case, that they could assert the privilege based on what

12:12 PM  2    other people said.  That's not a clear question.  I thought you

12:12 PM  3    were taking the position that you could assert the privilege

12:13 PM  4    when some third-party is testifying about what the legislator

12:13 PM  5    said or did.

12:13 PM  6         MR. GROSHOLZ:  Not necessarily, Your Honor.  I think we

12:13 PM  7    would have to know -- I think we were using that as an -- and I

12:13 PM  8    can now see as an imperfect parallel, but I --

12:13 PM  9         THE COURT:  Okay.  Let me interrupt you there.  I just

12:13 PM  10    want to make sure you're not saying that if this witness they

12:13 PM  11    deposed said I met with each of the board members individually

12:13 PM  12    and here's what they told me, that that would be subject to

12:13 PM  13    privilege.  If this is just some citizen or something as opposed

12:13 PM  14    to a staff member or somebody working directly for the

12:13 PM  15    legislator.  It seemed like you were asking a lot of that Fifth

12:13 PM  16    Circuit case, if that's the position --

12:13 PM  17         MR. GROSHOLZ:  And I apologize if that's how it came

12:13 PM  18    across.

12:13 PM  19         THE COURT:  Maybe I misunderstood.

12:13 PM  20         MR. GROSHOLZ:  Well, I'm sure it was my poor drafting,

12:13 PM  21    Your Honor.  But no, at this juncture, no.  That is not

12:13 PM  22    something we are asserting, and there's no witnesses that are

12:13 PM  23    lined up for deposition that we would be asserting that on

12:13 PM  24    behalf of.  The only witness currently --

12:13 PM  25         THE COURT:  So if you're right about the privilege,

| | | |
|---|---|---|
| 12:14 PM | 1 | they still get to call people to say well, here's what this |
| 12:14 PM | 2 | person told me, here's what this legislator told me when I made |
| 12:14 PM | 3 | a citizen inquiry. |
| 12:14 PM | 4 | MR. GROSHOLZ:  Yes, Your Honor.  So for example, former |
| 12:14 PM | 5 | Superintendent Tim Smith is being deposed next week, and we have |
| 12:14 PM | 6 | not -- you know, after Your Honor denied the initial motion for |
| 12:14 PM | 7 | protective order, we have not re-raised the legislative |
| 12:14 PM | 8 | privilege on his behalf, for example. |
| 12:14 PM | 9 | THE COURT:  And he's not asserting it I think somebody |
| 12:14 PM | 10 | said in the footnote. |
| 12:14 PM | 11 | MR. GROSHOLZ:  Excuse me, Your Honor? |
| 12:14 PM | 12 | THE COURT:  He is not asserting it. |
| 12:14 PM | 13 | MR. GROSHOLZ:  No, not to my knowledge.  Mr. Smith is |
| 12:14 PM | 14 | now represented by outside counsel. |
| 12:14 PM | 15 | THE COURT:  Got it.  Okay. |
| 12:14 PM | 16 | MR. GROSHOLZ:  As for the -- I believe opposing counsel |
| 12:14 PM | 17 | -- and if this is what I stated it's not what I meant, but |
| 12:14 PM | 18 | opposing counsel stated that I said something to the effect of |
| 12:14 PM | 19 | if this e-mail revealed the board members' intent, it would |
| 12:14 PM | 20 | constitute a waiver.  I don't believe that's what I said and |
| 12:14 PM | 21 | it's certainly not what I intended to say. |
| 12:14 PM | 22 | I think the argument I was trying to make is if you |
| 12:14 PM | 23 | look at that e-mail, it does not reveal the intent of the board |
| 12:14 PM | 24 | member.  I don't think it waives it regardless.  But I think |
| 12:15 PM | 25 | because opposing counsel is advancing the argument that by |

12:15 PM  1    producing this document it reveals Mr. Adams' intent and

12:15 PM  2    therefore we have waived the privilege; A, we don't think it

12:15 PM  3    waives a privilege regardless; and B, I think looking at the

12:15 PM  4    content of the e-mail itself, I still don't think it shows

12:15 PM  5    Mr. Adams' intent or subjective motivations.

12:15 PM  6         THE COURT:  It says *I agree with you and I'm going to*

12:15 PM  7    *vote accordingly*, right?

12:15 PM  8         MR. GROSHOLZ:  Yes, Your Honor.  But again, if you

12:15 PM  9    actually look at the e-mail that the constituent sent, it is in

12:15 PM 10    regards to all three books that were under review at the board

12:15 PM 11    meeting that night.  There was no specific singling out of

12:15 PM 12    "Tango", it was for *All Boys Aren't Blue*, *When Aidan Became A*

12:15 PM 13    *Brother* and *And Tango Makes Three*.

12:15 PM 14         THE COURT:  Right.  Right.  But the constituent saying

12:15 PM 15    I don't think kids should have LGBTQ books around or something

12:15 PM 16    to that effect, and he said *I agree with you*.  I mean, you're

12:15 PM 17    not saying that's subject to privilege or would be necessarily

12:15 PM 18    inadmissible at trial, correct?

12:15 PM 19         MR. GROSHOLZ:  Yes, Your Honor.

12:15 PM 20         THE COURT:  Okay.  All right.

12:15 PM 21         MR. GROSHOLZ:  And Your Honor, to a point opposing

12:16 PM 22    counsel made about individual or single objects or single items

12:16 PM 23    not being legislative in nature, I think looking at the *Espanola*

12:16 PM 24    case was a good example because there it was a single hotel that

12:16 PM 25    the city council had essentially singled out for disparagement

12:16 PM 1    in their comments based on purported crime rise by Cuban

12:16 PM 2    refugees.  And that was a single instance.

12:16 PM 3            And we also looked at the *Crymes* case where the removal

12:16 PM 4    of a single truck route, the Eleventh Circuit suggested that if

12:16 PM 5    that's what the plaintiffs were suing over, the removal of that

12:16 PM 6    single truck route would have been legislative in nature.  But

12:16 PM 7    it was because --

12:16 PM 8            THE COURT:  I think it said probably.

12:16 PM 9            MR. GROSHOLZ:  Yeah, I think probably was -- yes.

12:16 PM 10            THE COURT:  All right.  Yeah.  I get it.  This doesn't

12:16 PM 11    fit in with any of the categories perfectly.

12:16 PM 12            MR. GROSHOLZ:  Yes, Your Honor.  But I think ultimately

12:16 PM 13    the point the Court made, and that we agree with, is that the

12:16 PM 14    only two categories that, to our knowledge, the Eleventh Circuit

12:16 PM 15    has carved out from as not legislative are personnel and zoning

12:17 PM 16    enforcement.  And I think based on our earlier, you know,

12:17 PM 17    conversation, the acts of the board here fall far more cleanly

12:17 PM 18    into the actions of budget-making and other legislative actions

12:17 PM 19    based on the public opinion, comments, deliberation, debate and

12:17 PM 20    a vote.

12:17 PM 21            Thank you, Your Honor.  Does the Court have any more

12:17 PM 22    questions?

12:17 PM 23            THE COURT:  I don't have any more questions on that

12:17 PM 24    issue.  I think I understand the argument.  I'm going to try to

12:17 PM 25    get an order out relatively quickly because I do want this case

12:17 PM  1    to keep moving.

12:17 PM  2         I want to turn now to the extension motion and find out

12:17 PM  3    what's left to do if there is -- if the privilege does exist and

12:17 PM  4    the actions here were legislative, what's left to do.

12:17 PM  5         MR. GROSHOLZ:  Yes, Your Honor.  Is that for opposing

12:17 PM  6    counsel or --

12:17 PM  7         THE COURT:  You can start because you're already there.

12:17 PM  8    But are there any depositions that the county needs or is trying

12:17 PM  9    to take, or any outstanding discovery from the county?

12:17 PM  10        MR. GROSHOLZ:  Not necessarily at this time.  We've

12:18 PM  11   already deposed the minor plaintiff and we've already deposed

12:18 PM  12   Mr. Parnell and Mr. Richardson, so at this time we do not have

12:18 PM  13   any outstanding notices of taking deposition.

12:18 PM  14        I don't believe that we, at this time, obviously

12:18 PM  15   subject to developments, but at this time there's no outstanding

12:18 PM  16   or -- not outstanding I should say, forthcoming discovery

12:18 PM  17   requests that I anticipate us making on plaintiffs.

12:18 PM  18        THE COURT:  And you don't have any issues with what

12:18 PM  19   they have produced in terms of completeness or anything.  Ms.

12:18 PM  20   Zimmerman was saying there were some issues, but those are all

12:18 PM  21   going the other direction it sounds like.

12:18 PM  22        MR. GROSHOLZ:  Yes, Your Honor.  The plaintiffs have

12:18 PM  23   some issues with our document production, but I think it's

12:18 PM  24   important to note that there are no outstanding motions to

12:18 PM  25   compel, and that's not the subject of our hearing.

12:18 PM   1          THE COURT:  Right, right, right.  Okay.  So from your

12:18 PM   2     perspective, if there is no privilege, you'll deal with the

12:18 PM   3     depositions of the board members.  If there is a privilege, you

12:19 PM   4     will either deal with those and figure out whatever

12:19 PM   5     nonprivileged things they want, or not deal with them and then

12:19 PM   6     be ready to go to trial, or are you going to file a summary

12:19 PM   7     judgment motion?  Is that the plan?

12:19 PM   8          MR. GROSHOLZ:  I would have to consult obviously, but

12:19 PM   9     it is, I would say, more than likely that we intend to file

12:19 PM  10     motions for summary judgment.  Yes, Your Honor.

12:19 PM  11          THE COURT:  Got it.  Okay.  All right.  Thank you.

12:19 PM  12          MR. GROSHOLZ:  Thank you.

12:19 PM  13          THE COURT:  Ms. Zimmerman, what is left to do from the

12:19 PM  14     plaintiffs' perspective, then we'll talk about the schedule a

12:19 PM  15     little bit.  And I realize that this issue has been lingering

12:19 PM  16     out there.  And I'm glad we had the hearing.  I understand a lot

12:19 PM  17     of this a little bit better than I did going into it.  When I

12:19 PM  18     ordered you all to file a prompt response, my goal at that time

12:19 PM  19     was to have an order more quickly; and my thought was what you

12:19 PM  20     would file would be basically a repeat, so I wasn't trying to

12:19 PM  21     put a bunch of time pressure on you-all, but was trying to keep

12:20 PM  22     the case moving.  And then I got into it and determined that the

12:20 PM  23     hearing would be useful, and here we are.

12:20 PM  24          MS. ZIMMERMAN:  If I may, though, if I can very

12:20 PM  25     briefly, and I promise it's brief, respond to a couple of things

12:20 PM  1    that were said on reply.

12:20 PM  2        With respect to the exhibit, it's not only that the

12:20 PM  3    board member said *I agree with you*, he also said *and I will vote*

12:20 PM  4    *accordingly.*  So I just want that on the record.

12:20 PM  5        *Espanola* does not stand for the proposition that was

12:20 PM  6    just stated.  In fact, *Espanola* sent the case back down.  There

12:20 PM  7    was no determination about whether the action was legislative or

12:20 PM  8    administrative in nature.  So opposing counsel's argument that

12:20 PM  9    *Espanola* stands for the premise that a decision about a specific

12:20 PM  10   individual or item is legislative is wrong, because they

12:20 PM  11   actually sent it back for more information.  So that's not the

12:20 PM  12   holding there.

12:20 PM  13       THE COURT:  Remind me briefly which case that one was.

12:20 PM  14       MS. ZIMMERMAN:  *Espanola.*

12:20 PM  15       THE COURT:  But what were the basic facts and what

12:20 PM  16   court was that.  I'm trying to remember.

12:20 PM  17       MS. ZIMMERMAN:  So what was happening there, in my

12:20 PM  18   hometown of Miami, was that there were a lot of Cuban refugees

12:20 PM  19   that were staying in hotels down there, and so the local

12:21 PM  20   officials there created, in essence, a task force to go in and,

12:21 PM  21   you know, issue all sorts of code violations and other tickets

12:21 PM  22   to the hotels there.  The hotels sued saying that that was done

12:21 PM  23   based on a discriminatory purpose, that the legislators were

12:21 PM  24   responding to locals' displeasure with the existence of refugees

12:21 PM  25   in the city.  *Espanola Way* made no decision about whether the

12:21 PM  1    act was administrative or legislative, so that characterization

12:21 PM  2    is completely incorrect.

12:21 PM  3            THE COURT:  Got it.

12:21 PM  4            MS. ZIMMERMAN:  And *Crymes*, the result in *Crymes*,

12:21 PM  5    *Crymes* is also a non-administrative -- is an administrative act.

12:21 PM  6            And, you know, if you do go back to the record, Your

12:21 PM  7    Honor, I'm just going to point out that the characterizations

12:21 PM  8    made about *DeSisto*, *Healy*, *Espanola* which we just discussed, and

12:21 PM  9    *Woods* are also incorrect.  And I'm happy to go through them with

12:21 PM 10    you, but I'm sure you don't want me to.

12:21 PM 11            THE COURT:  No, I've got the cases.

12:21 PM 12            MS. ZIMMERMAN:  Okay.  But I do think the

12:21 PM 13    characterizations made are inaccurate, and I do believe we went

12:21 PM 14    through that in our briefing.  So I did want to clarify that.

12:22 PM 15            So now that I've done that, and thank you for the

12:22 PM 16    opportunity to do it, there are several outstanding document

12:22 PM 17    production issues.

12:22 PM 18            THE COURT:  Are they related to this issue, or are they

12:22 PM 19    separate?  Because in your extension motion you note basically

12:22 PM 20    we have this issue that we've been talking about, and then you

12:22 PM 21    want to an extension on everything.  And it seemed to me that

12:22 PM 22    the extension would be appropriate for depos of the board

12:22 PM 23    members, for example, if they go forward, but maybe not

12:22 PM 24    everything.  And I do anticipate, just given the history here,

12:22 PM 25    that whatever the deadline is for motions to compel, I'm going

12:22 PM  1   to get a bunch of them and it will be --

12:22 PM  2        MS. ZIMMERMAN:  I don't know about that.  I do actually

12:22 PM  3   think that we -- other than this issue which has been tirelessly

12:22 PM  4   briefed, I don't think we put too many conflicts before Your

12:22 PM  5   Honor at all, and I think we've generally resolved our disputes.

12:22 PM  6   And to that point though, Your Honor, just to clarify on that

12:22 PM  7   order, the order takes two tacks.  The parties already agreed

12:22 PM  8   given the order  --

12:22 PM  9        THE COURT:  The order -- I'm sorry.  The what?

12:22 PM 10        MS. ZIMMERMAN:  I'm sorry.  Our request for the

12:23 PM 11   adjustment.  So the parties did agree if Your Honor grants the

12:23 PM 12   protective order motion, there's only a very slight extension of

12:23 PM 13   the deadlines, and there are a multitude -- even Superintendent

12:23 PM 14   Leonard, who you ruled we could depose, they have not made

12:23 PM 15   available to us.  We are going to depose another superintendent,

12:23 PM 16   we just were able to depose another district employee and we

12:23 PM 17   likely have at least two more depositions coming up.

12:23 PM 18        THE COURT:  What other two?  So you have Superintendent

12:23 PM 19   Leonard, maybe the board members,

12:23 PM 20        MS. ZIMMERMAN:  Former Superintendent Smith, Michelle

12:23 PM 21   White that we haven't yet noticed but we're about to.  And there

12:23 PM 22   might be a couple of --

12:23 PM 23        THE COURT:  Who is she?

12:23 PM 24        MS. ZIMMERMAN:  Michelle White?  She's a former media

12:23 PM 25   specialist who quit over the book removal process here, not

| | | |
|---|---|---|
| 12:23 PM | 1 | dissimilar to why Mr. Smith was fired.  So there are a lot of |
| 12:23 PM | 2 | depositions going on and, as -- you know, I think A, the |
| 12:23 PM | 3 | briefing certainly slowed things down.  But we've also -- you |
| 12:23 PM | 4 | know, we've just received, I think, our last document production |
| 12:23 PM | 5 | maybe two weeks ago.  And so certainly the document production |
| 12:23 PM | 6 | has been slower than we'd like, and there's a couple -- there's |
| 12:24 PM | 7 | several outstanding metadata and other production and collection |
| 12:24 PM | 8 | issues that we raised as early as the end of July but have not |
| 12:24 PM | 9 | been able to get a response on or even a meet and confer on.  So |
| 12:24 PM | 10 | there are still outstanding discovery issues.  We're moving as |
| 12:24 PM | 11 | quickly as we can, but those are still outstanding.  I will make |
| 12:24 PM | 12 | clear that we've made all of our witnesses available.  As they |
| 12:24 PM | 13 | said, every single witness of ours that they want to depose, |
| 12:24 PM | 14 | including our child, our student plaintiff, has been deposed. |
| 12:24 PM | 15 | So we're the only ones who haven't been able to get as far. |
| 12:24 PM | 16 | THE COURT:  Okay.  Why haven't you had a meet and |
| 12:24 PM | 17 | confer on something that was produced in July? |
| 12:24 PM | 18 | MS. ZIMMERMAN:  I would leave that to opposing counsel. |
| 12:24 PM | 19 | We even asked if we could meet and confer today after the |
| 12:24 PM | 20 | hearing, and that request was denied. |
| 12:24 PM | 21 | THE COURT:  Okay.  So you have issues with the July |
| 12:24 PM | 22 | production and you want -- |
| 12:24 PM | 23 | MS. ZIMMERMAN:  We raised an issue on July 30th |
| 12:24 PM | 24 | regarding a multitude of productions, including of the document |
| 12:24 PM | 25 | that we attached as Exhibit B.  We have not got an answer or |

| | | |
|---|---|---|
| 12:24 PM | 1 | reached resolution regarding that.  We have been asking for a |
| 12:25 PM | 2 | meet and confer for quite some time on that.  There are also two |
| 12:25 PM | 3 | other production issues that have been raised as early as August |
| 12:25 PM | 4 | 9th. |
| 12:25 PM | 5 | THE COURT:  Okay.  That's why I asked the question, |
| 12:25 PM | 6 | because it seemed like why are we extending everything if the |
| 12:25 PM | 7 | only real issue is this production.  So that's something you can |
| 12:25 PM | 8 | bring, you know, to a head. |
| 12:25 PM | 9 | MS. ZIMMERMAN:  Well, we need a meet and confer to make |
| 12:25 PM | 10 | sure that we come to an impasse, which we haven't been able to |
| 12:25 PM | 11 | do.  But we aren't extending everything, Your Honor.  Just two |
| 12:25 PM | 12 | weeks for the motion to compel deadline, and two weeks for |
| 12:25 PM | 13 | discovery.  And everyone agreed just given where things were. |
| 12:25 PM | 14 | But the other extensions to everything would only |
| 12:25 PM | 15 | apply, Your Honor, if you granted -- if you denied the motion |
| 12:25 PM | 16 | for protective order, and that's because we would have, you |
| 12:25 PM | 17 | know, six depositions to do of the board members, and we don't |
| 12:25 PM | 18 | know what documents we would need coming out of that. |
| 12:25 PM | 19 | And again, while we sought to set, you know, potential |
| 12:25 PM | 20 | dates just in case you ruled one way or the other, we haven't |
| 12:25 PM | 21 | been able to get agreement  about even kind of penciling in |
| 12:25 PM | 22 | dates for deposition.  But as you probably saw in our motion, we |
| 12:25 PM | 23 | asked that if you do deny the order, or at least let us move |
| 12:26 PM | 24 | forward on nonprivileged subjects, that defendant make the board |
| 12:26 PM | 25 | members available so we could move as expeditiously as possible. |

12:26 PM  1          THE COURT:  Okay.  Let me ask one other question.  This
12:26 PM  2   is for the plaintiff.  If I did determine that there was a
12:26 PM  3   legislative privilege, that the matter here was legislative in
12:26 PM  4   nature, and that -- going back to our earlier discussion, that
12:26 PM  5   you couldn't ask -- because of the privilege you could not ask
12:26 PM  6   anything that is designed to elicit information about their
12:26 PM  7   motivation, which I know is contrary to your position but I've
12:26 PM  8   got *In Re: Hubbard* up here, and I think you're wrong about that.
12:26 PM  9   I was asking you if there was anything that you would ask that
12:26 PM  10  would be for purposes other than to discover or to try to prove
12:26 PM  11  what the motivation was, and I think you didn't have anything
12:26 PM  12  real concrete.  I'll give you an opportunity to supplement that
12:27 PM  13  with some, you know, specific questions you would ask as
12:27 PM  14  exemplars on that topic, but I would ask you not to include
12:27 PM  15  things that you were trying to get indirect evidence of their
12:27 PM  16  motivation.  I understand your argument on that, and I'll look
12:27 PM  17  at it, but I don't think you can do what you're saying if there
12:27 PM  18  is a privilege, and that is to say I'm not going to ask you what
12:27 PM  19  you think, but I'm going to ask you a bunch of questions about
12:27 PM  20  life experiences that I will then use to help try and figure out
12:27 PM  21  what you think.
12:27 PM  22          Do you understand what I'm saying?
12:27 PM  23          MS. ZIMMERMAN:  I understand what you're saying.  My
12:27 PM  24  position remains the same.
12:27 PM  25          THE COURT:  Okay.  I got that.  But I'm just saying you

12:27 PM 1    wouldn't need to file those types of questions because I

12:27 PM 2    understand what those would be.  But if there are questions that

12:27 PM 3    you would say I am asking the following questions for -- and my

12:27 PM 4    purpose in asking them is to discover something unrelated to

12:27 PM 5    their motivation, what those would be.  And if the answer is

12:27 PM 6    there is not anything, which is what I thought was the case

12:27 PM 7    coming in here, then that's the answer.  But if there's -- in

12:28 PM 8    other words, I'm trying to find out if I say there's a privilege

12:28 PM 9    and you say well, I still want to depose the board members, what

12:28 PM 10    that deposition looks like.

12:28 PM 11         MS. ZIMMERMAN:  I mean, Your Honor, I mean, I can't

12:28 PM 12    give you everything off the top of my head.  I haven't written

12:28 PM 13    the deposition outline.

12:28 PM 14         THE COURT:  That's what I'm saying.  I would give you

12:28 PM 15    an opportunity to submit that, like a notice of filing, and I

12:28 PM 16    was going to see if you were interested in taking advantage of

12:28 PM 17    that opportunity.

12:28 PM 18         MS. ZIMMERMAN:  Yes, Your Honor.  And I guess I'm a

12:28 PM 19    little bit confused.  The production of all those documents to

12:28 PM 20    us, you're saying we can't question the board members on

12:28 PM 21    documents they produced to us?

12:28 PM 22         THE COURT:  I'm not saying anything right now.

12:28 PM 23         MS. ZIMMERMAN:  Okay.  To me, that's also in a

12:28 PM 24    completely different category of anything we're talking about.

12:28 PM 25    I mean, they've handed us all this documentary evidence, and the

```
12:28 PM   1    idea that we can take it but we can't ask the drafters of it
12:28 PM   2    questions, I think, is a third category I guess I would say.
12:28 PM   3              THE COURT:  Okay.  I would not include that either.
12:28 PM   4    Because I think -- and I hesitate to say this, but if you -- I
12:28 PM   5    hesitate to ask for more briefing, but it does seem like, I
12:29 PM   6    guess, if your argument is if a legislator had a document that
12:29 PM   7    was produced that said here's the reason I voted this way --
12:29 PM   8              MS. ZIMMERMAN:  Hmm-hmm.
12:29 PM   9              THE COURT:  -- you say well, we ought to be able to ask
12:29 PM  10    him or her about that, correct?
12:29 PM  11              MS. ZIMMERMAN:  Well, this is what I would say to that.
12:29 PM  12    If that was inadvertently produced, they certainly clawed back.
12:29 PM  13              THE COURT:  Got it.  But you're saying you would be
12:29 PM  14    able to ask them about that.
12:29 PM  15              MS. ZIMMERMAN:  Absolutely.
12:29 PM  16              THE COURT:  And that's based on a waiver argument or
12:29 PM  17    based on something else.
12:29 PM  18              MS. ZIMMERMAN:  I think it's not only waiver, but it's
12:29 PM  19    sword and shield.  It's just, respectfully, Litigation 101.  In
12:29 PM  20    essence, by giving us all those documents, what the board
12:29 PM  21    members are saying is we can give direct testimony, but you
12:29 PM  22    can't question us.  So we'll give you these documents, a lot of
12:29 PM  23    them are helpful to us, so we're going to use them at trial and
12:29 PM  24    we're going to put them up, but you can't ask about that.
12:29 PM  25              THE COURT:  I'm not sure they are going to use them if
```

| | | |
|---|---|---|
| 12:29 PM | 1 | they're hearsay, right?  I mean, I would think if they put them |
| 12:29 PM | 2 | on, you would say it's hearsay, I would think, if it were |
| 12:29 PM | 3 | helpful to them.  But maybe not. |
| 12:29 PM | 4 | MS. ZIMMERMAN:  I haven't thought through -- certainly |
| 12:29 PM | 5 | if they wanted to affirmatively use it, perhaps.  But I do think |
| 12:30 PM | 6 | it's -- I think the principles are the same, Judge.  Again, I do |
| 12:30 PM | 7 | think we're setting up a scenario where the defendant, the |
| 12:30 PM | 8 | board, which is made up of the board members, is getting to |
| 12:30 PM | 9 | create a case in chief through evidence and factual evidence, |
| 12:30 PM | 10 | testimonial evidence, discovery -- excuse me, paper evidence and |
| 12:30 PM | 11 | they're getting to use that to their advantage, perhaps at |
| 12:30 PM | 12 | summary judgment, perhaps at trial, and certainly in their |
| 12:30 PM | 13 | answer and in their motion to dismiss briefing.  And then, you |
| 12:30 PM | 14 | know, intermittently when we want to then test those things that |
| 12:30 PM | 15 | they put forward and give us in discovery saying oh, no, no, but |
| 12:30 PM | 16 | you can't test it, you can't ask us questions about that. |
| 12:30 PM | 17 | THE COURT:  I got it.  That argument would be to |
| 12:30 PM | 18 | legislative privilege everywhere.  That would apply the same if |
| 12:30 PM | 19 | this were a United States Senator or something and they had an |
| 12:30 PM | 20 | e-mail, you'd say you get to ask that senator about that e-mail. |
| 12:30 PM | 21 | MS. ZIMMERMAN:  But we've seen in the other cases that |
| 12:30 PM | 22 | legislators don't produce documents that are privileged.  They |
| 12:30 PM | 23 | withhold them and put them on a privilege log, as I said, in |
| 12:30 PM | 24 | other cases.  We haven't seen this in other cases because when |
| 12:31 PM | 25 | documents reflect the motivations or the deliberative process, |

12:31 PM  1    the legislative process, they're not produced, they're put on a

12:31 PM  2    log, and that didn't happen here.

12:31 PM  3         THE COURT:  Okay.  And you're saying that the

12:31 PM  4    legislators here, I keep calling them legislators, but the board

12:31 PM  5    members produced these documents and not the board itself.

12:31 PM  6         MS. ZIMMERMAN:  Certainly, yes, Your Honor.  And

12:31 PM  7    counsel has been representing both.  So I don't know which hat

12:31 PM  8    they have at any one given time.

12:31 PM  9         THE COURT:  That could be important, couldn't it?

12:31 PM 10         MS. ZIMMERMAN:  I'm sorry?

12:31 PM 11         THE COURT:  Which hat they're in, they're wearing at

12:31 PM 12    any one time could be important, couldn't it?

12:31 PM 13         MS. ZIMMERMAN:  Yes, but I don't think they can choose

12:31 PM 14    which hat depending on what pleases them in the moment, which is

12:31 PM 15    what I believe they've been doing in the arguments with regard

12:31 PM 16    to Apex and legislative doctrine.  I mean, they have been acting

12:31 PM 17    as counsel for the board members in a multitude of areas, and

12:31 PM 18    the board members have intervened here through their actions in

12:31 PM 19    a multitude of occasions.

12:31 PM 20         THE COURT:  But the board members don't have any

12:31 PM 21    obligation to respond to document requests.  Your whole thing is

12:31 PM 22    based on the document production, right?

12:31 PM 23         MS. ZIMMERMAN:  No.  I've given at least four different

12:31 PM 24    instances in which I believe the board members have waived the

12:31 PM 25    privilege, and it's not just the documents.

| 12:32 PM | 1 | THE COURT:  Right.  But with respect to the documents, |
|----------|---|------|
| 12:32 PM | 2 | you've directed a request for production to the board.  The |
| 12:32 PM | 3 | defendant.  You can't direct them to the legislators. |
| 12:32 PM | 4 | MS. ZIMMERMAN:  I mean, the board members are within -- |
| 12:32 PM | 5 | as I said, the board members are their witnesses within their |
| 12:32 PM | 6 | control.  They work for the district, and counsel has been |
| 12:32 PM | 7 | representing them throughout this litigation.  So I think we're |
| 12:32 PM | 8 | talking about some legal fallacies here. |
| 12:32 PM | 9 | I mean, they're here today invoking on behalf of them. |
| 12:32 PM | 10 | They raised the attorney-client privilege.  They raised attorney |
| 12:32 PM | 11 | work product.  So was that from the board or was that from the |
| 12:32 PM | 12 | board members.  And again, and I can find the case cite for you, |
| 12:32 PM | 13 | but the board is made up of the board members, and the board |
| 12:32 PM | 14 | members' action constitute board action.  So we're kind of |
| 12:32 PM | 15 | playing a legal fallacy game here. |
| 12:32 PM | 16 | THE COURT:  Okay. |
| 12:32 PM | 17 | MR. GROSHOLZ:  Your Honor, may I briefly be heard? |
| 12:32 PM | 18 | THE COURT:  Sure. |
| 12:32 PM | 19 | MR. GROSHOLZ:  Under Florida law, the board members are |
| 12:32 PM | 20 | not the board.  The board members are separate.  We represent |
| 12:32 PM | 21 | the legal entity that is the Escambia County School Board.  We |
| 12:32 PM | 22 | have only asserted arguments on behalf of the individual board |
| 12:33 PM | 23 | members in this behalf.  So this idea that we are responding in |
| 12:33 PM | 24 | production on behalf of the individual board members is |
| 12:33 PM | 25 | incorrect.  By law, the school board, the legal entity, is the |

12:33 PM  1    custodian of all public records.  The discovery was directed --

12:33 PM  2          THE COURT:  Including those on people's personal

12:33 PM  3    devices, correct?

12:33 PM  4          MR. GROSHOLZ:  Yes, Your Honor.  And there have been no

12:33 PM  5    subpoenas directed at the board members.  There's been no

12:33 PM  6    discovery directed at the board members.  It's directed at the

12:33 PM  7    board.  So just for record completeness purposes.

12:33 PM  8          MS. ZIMMERMAN:  To your point, if they would like us to

12:33 PM  9    subpoena the board members directly, if they're saying that's

12:33 PM 10    what changes the analysis here, we're happy to do it.  And I

12:33 PM 11    would cite *Rolle versus Worth County School District* for the

12:33 PM 12    proposition that I was making.  It's an Eleventh Circuit case

12:33 PM 13    that talks about how the board members' actions make up the

12:33 PM 14    board's decision, and legally how you have to look at the

12:33 PM 15    individual motivations of each board member to determine --

12:33 PM 16          THE COURT:  There is no dispute about that on the

12:33 PM 17    merits.

12:33 PM 18          MS. ZIMMERMAN:  But that was the point I was making.

12:33 PM 19          THE COURT:  Which is why I rejected their relevance

12:33 PM 20    argument months ago.

12:33 PM 21          MS. ZIMMERMAN:  And I want to make clear that when

12:34 PM 22    these document productions were made to us regarding documents

12:34 PM 23    on personal and other devices, the custodian listed was the

12:34 PM 24    individual board members, not the board.  For example, Mr. Adams

12:34 PM 25    was listed as a custodian when they produced personal documents

12:34 PM  1    from his devices.  They didn't list the board as the custodian.

12:34 PM  2           THE COURT:  Well, he's talking about the 119 custodian.

12:34 PM  3    That's a separate area.

12:34 PM  4           MS. ZIMMERMAN:  He was talking about production that

12:34 PM  5    all the documents belong to the board, et cetera.

12:34 PM  6           THE COURT:  No.  But everyone knows when you produce

12:34 PM  7    documents in a routine civil case with a bunch of e-mail things,

12:34 PM  8    you're going to list the custodian, that's whose e-mail box it

12:34 PM  9    was.  That does not mean that person is custodian for purposes

12:34 PM  10   of 119 in Florida.  Those are just different inquiries.

12:34 PM  11          MS. ZIMMERMAN:  I don't understand how we can square

12:34 PM  12   the fact that they're sitting here today invoking the privilege

12:34 PM  13   on their behalf for that evidence about -- alleged evidence

12:34 PM  14   about their deliberative process and their legislative process

12:34 PM  15   here, but didn't do it before when they were collecting all

12:34 PM  16   these documents and reading documents about their legislative

12:34 PM  17   process and their decisions here, and reading our requests for

12:34 PM  18   documents that were specific about the board members' decisions,

12:34 PM  19   and didn't raise an objection saying look, that's legislative

12:35 PM  20   privilege.  If they're doing it here now, they could have done

12:35 PM  21   it then.

12:35 PM  22          THE COURT:  Just a minute.  Just a minute.  We got to

12:35 PM  23   do one at a time here.

12:35 PM  24          Does anyone want to do a short six-page brief in the

12:35 PM  25   next seven days on whether -- the intersection of legislative

12:35 PM  1     privilege and 119 in Florida?

12:35 PM  2          MS. ZIMMERMAN:  We'll happily do it, Your Honor.

12:35 PM  3          THE COURT:  Do you want to do it as well?

12:35 PM  4          MR. GROSHOLZ:  In response to --

12:35 PM  5          THE COURT:  No, it will be simultaneous.  I just want

12:35 PM  6     to make sure I understand what the law is on that because it

12:35 PM  7     goes to their waiver thing, I think.  And maybe it doesn't.

12:35 PM  8          MS. ZIMMERMAN:  I do want to make the point, Judge, as

12:35 PM  9     you stated at the outset of this argument, the board can invoke

12:35 PM 10     the legislative privilege on behalf of its individual board

12:35 PM 11     members.  So I don't see why they couldn't have invoked the

12:35 PM 12     privilege on behalf of their individual board members when they

12:35 PM 13     were producing the documents in discovery.

12:35 PM 14          THE COURT:  Well, they couldn't if 119 made them all

12:35 PM 15     public records.  And that's what I'm going to have the briefing

12:35 PM 16     on.

12:35 PM 17          MS. ZIMMERMAN:  I understand.

12:35 PM 18          THE COURT:  Okay.  So six pages limit, due seven days

12:35 PM 19     from today.  It's optional, but it might be helpful.

12:35 PM 20          MR. GROSHOLZ:  And Your Honor, again, for the record,

12:36 PM 21     we represent the board.  We do not represent the individual

12:36 PM 22     board members in their individual capacity.  We have never

12:36 PM 23     represented that.  The board members in their individual

12:36 PM 24     capacities are not parties to this suit, they have not

12:36 PM 25     individually sought to intervene in this suit.

12:36 PM  1                THE COURT:  I got it.

12:36 PM  2                MR. GROSHOLZ:  Thank you.

12:36 PM  3                MS. ZIMMERMAN:  I would say the affidavits state

12:36 PM  4     otherwise.

12:36 PM  5                THE COURT:  What affidavits?

12:36 PM  6                MS. ZIMMERMAN:  The affidavits submitted by the board

12:36 PM  7     members.  There's no statement there that they consulted with

12:36 PM  8     individual counsel about the privilege.  Instead, it actually

12:36 PM  9     says that the board seeks to invoke it on their behalf and at

12:36 PM 10     their request.

12:36 PM 11                THE COURT:  Which you say the board can do.

12:36 PM 12                MS. ZIMMERMAN:  Right.  Again, they're making an

12:36 PM 13     argument they don't in any way represent the board.  I actually

12:36 PM 14     think this shows the invocation is improper.  Were the board

12:36 PM 15     members individually advised by counsel about their privilege,

12:36 PM 16     about the questions at issue here, and did they make an

12:36 PM 17     individual determination about whether the privilege applied.

12:36 PM 18     Or did counsel for the board simply tell them to invoke the

12:36 PM 19     privilege.

12:36 PM 20                THE COURT:  Okay.  You said earlier that as a general

12:36 PM 21     proposition an entity, and I think there's case law that says

12:37 PM 22     this, can invoke the privilege that would be invokable by the

12:37 PM 23     members if there is evidence that they wanted to do that, right?

12:37 PM 24     And that was what was missing when I denied the motion the first

12:37 PM 25     time.

| | | |
|---|---|---|
| 12:37 PM | 1 | MS. ZIMMERMAN: Right. |
| 12:37 PM | 2 | THE COURT: Because for all I knew at that time you had |
| 12:37 PM | 3 | two members who voted on your side of things. And for all I |
| 12:37 PM | 4 | knew, those two members were happy to testify and help you in |
| 12:37 PM | 5 | this litigation. That happens sometimes, right? And so that's |
| 12:37 PM | 6 | why I denied the motion. |
| 12:37 PM | 7 | And now they've said well no, here is -- all five of |
| 12:37 PM | 8 | them want to assert it and we know from the Eleventh Circuit |
| 12:37 PM | 9 | that it's personal. All five of them are on record saying they |
| 12:37 PM | 10 | want to assert it. |
| 12:37 PM | 11 | MS. ZIMMERMAN: I think we're making different points |
| 12:37 PM | 12 | here. While the board, as an entity, can assert the privilege |
| 12:37 PM | 13 | on behalf of the board members, we're talking about whether |
| 12:37 PM | 14 | counsel for the board is representing and acting as counsel for |
| 12:37 PM | 15 | the individual board members, which I believe that they are. |
| 12:37 PM | 16 | THE COURT: But you don't have any -- there's no case |
| 12:37 PM | 17 | support for that, right? |
| 12:37 PM | 18 | MS. ZIMMERMAN: Off the top of my head here today, no. |
| 12:37 PM | 19 | But what I'm saying is -- |
| 12:37 PM | 20 | THE COURT: If there is, you can put it in the six-page |
| 12:37 PM | 21 | -- |
| 12:37 PM | 22 | MS. ZIMMERMAN: Sure. But what I'm saying is the |
| 12:38 PM | 23 | actions here evince the fact that they are representing the |
| 12:38 PM | 24 | individual board members individually. And again, they are |
| 12:38 PM | 25 | invoking the privilege on behalf of the individual board |

| | | |
|---|---|---|
| 12:38 PM | 1 | members.  They certainly could have done that in document |
| 12:38 PM | 2 | requests, but I understand the nexus you're looking for. |
| 12:38 PM | 3 | THE COURT:  Got it.  Okay. |
| 12:38 PM | 4 | Well, this has been helpful, I think, and I will -- |
| 12:38 PM | 5 | like I said, I'll wait at least seven days to get this |
| 12:38 PM | 6 | supplemental briefing if someone wants to file it, and then I'll |
| 12:38 PM | 7 | get an order out, and then I'll address the scheduling at the |
| 12:38 PM | 8 | same time.  I don't think there's anything else we need to talk |
| 12:38 PM | 9 | about on the clarification because I think that what we have |
| 12:38 PM | 10 | addressed here would end up either resolving that or setting up |
| 12:38 PM | 11 | a process to resolve it.  Mr. Grosholz, do you disagree? |
| 12:38 PM | 12 | MR. GROSHOLZ:  No, Your Honor.  I think we were -- in |
| 12:38 PM | 13 | our motion for clarification mostly, and we may have |
| 12:38 PM | 14 | misinterpreted the Court's order, and for that, if it's true, we |
| 12:38 PM | 15 | apologize.  So I think we have clarified those issues here |
| 12:39 PM | 16 | today.  I don't know that we necessarily need any additional |
| 12:39 PM | 17 | argument on that, other than were the Court to deny the motion, |
| 12:39 PM | 18 | and in that case we think reasonable limitations would be |
| 12:39 PM | 19 | appropriate.  But we do not need to necessarily get into that |
| 12:39 PM | 20 | today. |
| 12:39 PM | 21 | THE COURT:  Okay.  What's the status of the -- you |
| 12:39 PM | 22 | mentioned Mr. Smith, former Superintendent Smith is going to be |
| 12:39 PM | 23 | deposed? |
| 12:39 PM | 24 | MR. GROSHOLZ:  I believe next week, Your Honor. |
| 12:39 PM | 25 | THE COURT:  What about the other superintendent. |

12:39 PM  1           MR. GROSHOLZ:  Plaintiffs have not served any, as far

12:39 PM  2     as I'm aware, notice of taking deposition.

12:39 PM  3           MS. ZIMMERMAN:  That's inaccurate.  We have been trying

12:39 PM  4     to get him deposed for quite some time, but they took the --

12:39 PM  5           THE COURT:  Okay.  Got it.  But you're not resisting

12:39 PM  6     the deposition?  That was sort of brought up in the motion for

12:39 PM  7     clarification.

12:39 PM  8           MR. GROSHOLZ:  So for Mr. Leonard, it was the question

12:39 PM  9     of the board believes that the topics that plaintiffs have

12:39 PM 10     communicated to depose Mr. Leonard on would be more appropriate

12:39 PM 11     for a 30(b)(6) witness given the fact that Mr. Leonard was not

12:40 PM 12     the superintendent at the time the vote took place.  The fact

12:40 PM 13     that he's not a voting member of the board, as laid out in our

12:40 PM 14     briefing.

12:40 PM 15           THE COURT:  But they say they're going to ask him about

12:40 PM 16     what he heard and things like that.  And that would be fine,

12:40 PM 17     right?  I mean, if he heard somebody say something that's

12:40 PM 18     relevant?

12:40 PM 19           MR. GROSHOLZ:  Yes, Your Honor.

12:40 PM 20           THE COURT:  Okay.  There's really no reason that

12:40 PM 21     shouldn't just go ahead and go forward.

12:40 PM 22           MR. GROSHOLZ:  And based on the hearing today, I think

12:40 PM 23     we can go ahead and get that scheduled.

12:40 PM 24           THE COURT:  Why don't you all, when you walk out of

12:40 PM 25     here today, talk about that.  I was going to address this a

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**

12:40 PM  1      minute ago, and I don't need to hear the whole sequence, but if

12:40 PM  2      they're trying to meet and confer about some July production,

12:40 PM  3      schedule a call and get it done and bring that issue to a head

12:40 PM  4      if it needs to be brought to a head.  And then that's how all

12:40 PM  5      these things ought to work.  I'm not saying you didn't and, you

12:40 PM  6      know, we don't need to get into all that, but that's how we'll

12:40 PM  7      do that.

12:40 PM  8              All right.  Anything else from the plaintiff today?

12:40 PM  9      Plaintiffs plural?

12:40 PM  10             MS. ZIMMERMAN:  We could talk about this all day, but I

12:40 PM  11     will finally rest.  Thank you so much, Judge.

12:40 PM  12             THE COURT:  Okay.  Thank you.

12:40 PM  13             Anything from Escambia?

12:41 PM  14             MR. GROSHOLZ:  No, Your Honor.  Thank you.

12:41 PM  15             THE COURT:  All right.  Well, thank you all.  We'll be

12:41 PM  16     in recess.

12:41 PM  17             COURT SECURITY OFFICER:  All rise.  This Honorable

12:41 PM  18     Court's adjourned.

12:41 PM  19             (PROCEEDINGS CONCLUDED)

12:41 PM  20                     C E R T I F I C A T E
                         I certify that the foregoing is a correct transcript
12:41 PM  21     from the record of the proceedings in the above-entitled matter.
                 Any redaction of personal data identifiers pursuant to the
12:41 PM  22     Judicial Conference Policy on Privacy is noted within the
                 transcript.
12:41 PM  23     9-6-2024                    /s/ Dawn M. Savino, R.P.R., C.R.R.
                 Date                        DAWN M. SAVINO, R.P.R., C.R.R.
12:41 PM  24

          25

**PROCEEDINGS RECORDED BY STENOGRAPHIC REPORTER**
**TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION**