IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

PETER PARNELL, et al.,

     **Plaintiffs,**

v.                               **Case No. 4:23-cv-414-AW-MAF**

**SCHOOL BOARD OF LAKE COUNTY,
FLORIDA, et al.,**

     **Defendants.**

_____/

## ORDER GRANTING MOTION FOR PROTECTIVE ORDER AND ADDRESSING OTHER OPEN MATTERS

The Escambia County School Board moves again for an order precluding its members' depositions based on legislative privilege. ECF No. 164. Escambia earlier moved for the same relief, which I denied partly because Escambia had not shown the Board could invoke the privilege on its members' behalf, especially without any indication the members sought to invoke the privilege. ECF No. 163 at 3.

This time around, Escambia offers declarations from five Board members expressing their intent to invoke the privilege. In my view—and Plaintiffs offer no meaningful dispute on this point—this is sufficient to allow the Board to assert the privilege on its members' behalf. *See Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 2021 WL 5882653, at *1 (M.D. Tenn. Dec. 13, 2021) (allowing legislative body to assert privilege on behalf of members where body intended to submit affidavits attesting to members' intent to invoke the privilege); *Harris v. Ariz. Indep.*

*Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1068-69 (D. Ariz. 2014), *aff'd*, 578 U.S. 253 (2016) (requiring commissioners "inform the court through counsel whether they would exercise legislative privilege" before ruling on commission's motion for protective order based on legislative privilege). I can now turn to whether the privilege applies.

"Legislative privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" *In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015) (emphasis omitted) (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)). It "applies with full force against requests for information about the motives for legislative votes and legislative enactments," *In re Hubbard*, 803 F.3d at 1310, and the parties agree that Plaintiffs seek to question the Board members about their motives for voting to remove *Tango*, *see* ECF No. 164 at 9-10; ECF No. 168 at 29-33.

Several courts have found that local school board members can enjoy legislative privilege. *See, e.g.*, *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) (finding legislative privilege from compulsory testimony applies to state and local officials); *Doe*, 2021 WL 5882653, at *4 (finding legislative privilege precluded deposition of school board members); *Cunningham v. Chapel Hill*, 438 F. Supp. 2d 718, 720-23 (E.D. Tex. 2006) (same); *see also Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 218 (6th Cir. 2011) (finding county school board

members were entitled to legislative immunity). And Plaintiffs do not contend otherwise. Instead, Plaintiffs contend the Board's removal of *Tango* was not a legislative act, making the privilege inapplicable. ECF No. 168 at 9-23. And alternatively, they contend the Board members waived any privilege. *Id.* at 23-28. I disagree on both points.

## I.

The legislative privilege covers only legislative actions, and "[w]hether an act is legislative turns on the nature of the act." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). Legislative acts involve "policy-making rather than mere administrative application of existing policies." *Crymes v. DeKalb Cnty.*, 923 F.2d 1482, 1485 (11th Cir. 1991). They are more apt to be generally applied and prospective in nature. *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992); *see also Bogan*, 523 U.S. at 56; *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009).

The line dividing legislative and administrative decisions is not always clear. *See 75 Acres, LLC v. Miami-Dade Cnty., Fla.*, 338 F.3d 1288, 1296 (11th Cir. 2003). Courts have carved out certain categories that usually are legislative—like budgeting, *Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998), or eliminating personnel positions, *see Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir. 1987). Acts that fall into these categories are legislative because they are "policymaking and of general application." *Woods*, 132 F.3d at 1420. Courts have

also carved out certain categories that usually are not legislative—like individual personnel decisions, *see Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992), and specific zoning enforcement actions, *see Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392-93 (11th Cir. 1993). Unlike legislative, policymaking acts, these acts are "the application of a general policy to a specific party under specific facts." *Id.* "Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration." *Yeldell*, 956 F.2d at 1062-63 (quoting *Ryan v. Burlington Cnty., N.J.*, 889 F.2d 1286, 1291 (3d Cir. 1989)).

All of this is consistent with the general rule that legislative acts are forward-looking policy decisions. And in my view, that is what *Tango*'s removal was. The Board voted after hearing public input on a controversial issue about what types of books should be available to public school children. Its decision did not affect just these Plaintiffs (*Tango*'s authors and one student who sought the book). It made the book unavailable in all Escambia school libraries and thus to all Escambia students. And it made it unavailable forever—or at least until the Board decides to change its policy. The decision was thus unlike an individual personnel decision or some other administrative decision that affected only a few people. *Cf. Crymes*, 923 F.2d at 1485 ("[I]f the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature."). It was a quintessential policy decision

4

about how best to educate Escambia County children.[1] The decision was legislative, so the legislative privilege applies.

## II.

Even where the privilege applies, it can be subject to waiver. Plaintiffs contend the Board waived the privilege here. But Plaintiffs have not shown any waiver.

Plaintiffs first suggest that the Board's decision to assert it had a legitimate purpose in removing *Tango* waived the privilege. ECF No. 168 at 29. But the party here—the Board—is not able to waive its members' privilege. The privilege is personal to the individual legislator and "may be asserted or waived as [the bearer] so chooses." *Florida v. Byrd*, 674 F. Supp. 3d 1097, 1107 (N.D. Fla. 2023) (quoting *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 299 (D. Md. 1992) (alterations in *Byrd*)).

---

[1] Among other things, Escambia relies on the fact that *Tango* was removed by vote. The Eleventh Circuit has noted that "activities [such] as voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties." *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989). But the Eleventh Circuit has also unequivocally said that "[v]oting is not automatically a legislative act." *Woods*, 132 F.3d at 1420; *see also Crymes*, 923 F.2d at 1485 ("[A]lthough a local legislator may vote on an issue, that alone does not necessarily determine that he or she was acting in a legislative capacity." (quoting in parenthetical *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984))); *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) ("[W]e expressly rejected the argument that the act of voting, in itself, constitutes legislative action giving rise to immunity."). So voting is relevant but not dispositive.

Plaintiffs next point to affidavits the Board members submitted earlier in this case. ECF No. 168 at 30 (citing ECF No. 111-1 – 111-5). They insist this must be subject to cross examination to avoid a sword-and-shield situation. ECF No. 168 at 25. But there is no sword. The affidavits are nullities at this point. They were submitted at the preliminary injunction stage, and Plaintiffs withdrew their preliminary injunction motion. ECF No. 118; *see* ECF No. 111 at 1. It is true, of course, that Escambia cannot offer the Board member's testimony and then hide behind the privilege on the same topics. And as explained at the hearing, Escambia should not expect to offer the members' testimony at trial or their affidavits at summary judgment. But the bottom line is that the affidavits do not open the door for Plaintiffs to depose the Board members.

Finally, Plaintiffs say Escambia's document production waives the members' privilege. This argument does not work for several reasons. For one, the Board—not the nonparty Board members—is responsible for the document production. *See* Fed. R. Civ. P. 34(d) ("A party may serve on any other *party* a request [for documents]."). And although Plaintiffs argue that the Board members assisted in production, that fact—even if true—does not constitute a privilege waiver. This is particularly true where, as here, the Board is the custodian of the requested documents and the Board members have state-law obligations to provide any public-record documents to the appropriate custodian. *See* Fla. Stat. §§ 119.01(1), 119.07(1)(a). At any rate,

Plaintiffs have cited no binding authority showing that a witness entitled to legislative privilege waives the privilege and subjects himself to a deposition when documents he created are gathered and produced in litigation. Indeed, another decision from this court already found that the privilege can apply to prevent depositions even when legislators have produced relevant documents. *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 453 (N.D. Fla. 2021) (granting motion to quash subpoenas based on legislative privilege where "[l]egislators agreed to produce the documents Plaintiffs sought but refused to sit for depositions"). Plaintiffs have not shown waiver.

### III.

Next, although the Board members enjoy the legislative privilege and have not waived that privilege, Plaintiffs argued at the hearing that they seek certain testimony not involving the privilege at all. They did not argue this in their briefing, which seemed to assume they sought only to discover the Board members' motivations in voting to remove *Tango*—matters squarely within the privilege. *See, e.g.*, ECF No. 168 at 6 (arguing that "the Board continues its attempt to shield from discovery evidence which is at the 'factual heart' of Plaintiffs' claims—the motivations of the five Board Members who unlawfully removed *And Tango Makes Three* from the District's public school library collection." (cleaned up)); ECF No. 160 at 8 (similar).

At the hearing, Plaintiffs argued they are entitled to depose the Board members to ask about any documents produced that touch on their intent. Not so. The questions would still be seeking to discover intent, which the privilege protects. After the hearing (and at the court's invitation), Plaintiffs filed a list of potential questions—questions they argue would not address privileged matters. ECF No. 184. These include, among other things, "Questions about each Board Member's role and conduct, if any, in selecting books and materials for the District's Libraries"; "Questions about when the Board Members first learned of the government speech doctrine"; and "Questions regarding each Board Member's process for collecting from their personal devices documents and communications relevant to this matter and responsive to Plaintiffs' requests for production." *Id.* But although none of these may directly answer the question of the Board members' intent, the purpose (albeit indirect) is still to discover that intent. Indeed, that is the central issue in this case. *Cf. In re Hubbard*, 803 F.3d at 1310 (11th Cir. 2015) ("The subpoenas' only purpose was to support the lawsuit's inquiry into the motivation behind [the challenged legislative action], an inquiry that strikes at the heart of the legislative privilege."); *see also Pernell v. Fla Bd. of Govs.*, 84 F.4th 1339, 1343 (11th Cir. 2023) ("[W]e consider the purpose of a subpoena, not what the subpoena seeks, to determine if the legislative privilege applies.").

Plaintiffs do propose some questions that are arguably independent from the members' motivations. *See, e.g.*, ECF No. 184 at 3 ("Questions about the history of the Libraries"); *id.* ("Questions about the types of books and materials in the Libraries"). But if they do not go to the motivations, they are not relevant at all. And as in *In re Hubbard*, "[t]he factual heart of [Plaintiffs'] claim and the scope of the legislative privilege [are] one and the same: the subjective motivations of those acting in a legislative capacity." 803 F.3d at 1311. Thus, "[a]ny material, documents, or information that did not go to legislative motive [is] irrelevant . . ., while any that did go to legislative motive was covered by the legislative privilege." *Id.*

Finally, even assuming there were some relevant and nonprivileged matters, I would, as a matter of discretion, direct that Plaintiffs seek it elsewhere before burdening elected public officials with depositions.

The motion for protective order (ECF No. 164) is GRANTED.

## IV.

There are a few additional open matters. The Florida Legislature moved (unopposed) for leave to file an amicus brief. As a discretionary matter and based on its timing and the fact that Plaintiffs sought a response that would only further delay resolution of this matter, I deny the Legislature's motion (ECF No. 185). I have not considered the Legislature's proposed brief. Plaintiffs' motion for leave to respond to that brief (ECF No. 187) is DENIED as moot.

9

The motion for clarification (ECF No. 165) is DENIED as explained at the hearing.

Plaintiffs' motion for extension (ECF No. 177) is GRANTED to this extent: the deadline to move to compel any discovery is extended to September 27, 2024, and deadline to complete fact discovery is extended to October 11, 2024. This is consistent with the dates to which the parties agreed if the protective order were granted. *See* ECF No. 177.

SO ORDERED on September 24, 2024.

s/ *Allen Winsor*
United States District Judge