## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| PEN AMERICAN CENTER, INC., ET AL., <br><br> PLAINTIFFS, <br><br> VS. <br><br> ESCAMBIA COUNTY SCHOOL BOARD, <br><br> DEFENDANT. | CASE NO.: 3:23-CV-10385-TKW-ZCB |

## PLAINTIFFS' MOTION TO AMEND FIRST AMENDED COMPLAINT

## **TABLE OF CONTENTS**

**Page**

I.        PRELIMINARY STATEMENT.......................................................... 1

II.      FACTUAL BACKGROUND............................................................ 3

    A.    House Bill 1069                                         3

    B.    Defendant's Corporate Deposition Reveals Unconscionable Delay in Implementing the HB 1069 Review.        8

    C.    The Board Denied Plaintiffs Discovery Into Its Implementation of HB 1069.        10

III.     ARGUMENT.................................................................................11

    A.    Recently Discovered Facts Require Amendment to Add Plaintiffs' Delay Claim.        13

        1.    Good Cause Exists Under Rule 16 to Excuse the Timing of Plaintiffs' Motion.        13

        2.    Rule 15's Lenient Amendment Standard is Satisfied.     16

            *a.  Plaintiffs' Delay Claim is Not Subject to Dismissal.*    17

            *b.  Further Amending the Complaint Will Not Prejudice the Board.*  22

    B.    The Intervening *FDA* Decision and Judicial Economy Support Amendment Regarding Organizational Standing.      24

IV.     REQUEST FOR ORAL ARGUMENT........................................ 28

V.      CONCLUSION.............................................................................28

VI.    RULE 7.1(B) CERTIFICATION................................................. 28

VII.   RULE 7.1(F) CERTIFICATION..................................................28

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Matanuska-Susitna Borough School District*,
No. 3:23-cv-00265 (D. Alaska Aug. 6, 2024)                21, 22

*Al Otro Lado, Inc., et al. v. Mayorkas*,
23-CV-1367-AGS-BLM, S.D. Cal.                27

*Allstate Ins. Co. v. Regions Bank*,
No. 14-0067, 2014 U.S. Dist. LEXIS 115540 (S.D. Ala. Aug. 19,
2014)                13

*Burger King Corp. v. Weaver*,
169 F.3d 1310 (11th Cir. 1999)                17

*Christman v. Walsh*,
416 F. App'x 841 (11th Cir. 2011)                17

*Conrad v. Lopez De Lasalle*,
681 F. Supp. 3d 371 (D.N.J. 2023)                23

*Coton v. Televised Visual X-Ography, Inc.*,
No. 07-1332, 2008 U.S. Dist. LEXIS 127684 (M.D. Fla. Nov. 24,
2008)                25

*Crockett v. GEO Grp., Inc.*,
582 F. App'x 793 (11th Cir. 2014)                14

*In re Engle Cases*,
767 F.3d 1082 (11th Cir. 2014)                13

*Food & Drug Administration v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024)                24, 25, 26

*Freedman v. Maryland*,
380 U.S. 51 (1965)                17, 18

*FW/PBS, Inc. v. City of Dallas*,
493 U.S. 215 (1990)                17

*Galaxy Am., Inc. v. Ez Inflatables, Inc.*,
    No. 19-855, 2021 U.S. Dist. LEXIS 269215 (MD. Fla. Aug. 17,
    2021) .......................................................................................... 23

*Gordon v. IRS (In re Johnson)*,
    No. 16-51072, 2017 Bankr. LEXIS 2412 (N.D. Ga. Aug. 25, 2017)
    23

*Grouts & Mortars, Inc. v. 3M Co.*,
    575 F.3d 1235 (11th Cir. 2009) ................................................... 14

*Hand v. Scott*,
    285 F. Supp. 3d 1289 (N.D. Fla. 2018) ...................................... 18

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .................................................................... 25

*Jackson v. Anheuser-Busch Inbev SA/NV, LLC*,
    No. 20-23392, 2021 U.S. Dist. LEXIS 155556 (S.D. Fla. Aug. 18,
    2021) .......................................................................................... 13

*Lady J. Lingerie, Inc. v. City of Jacksonville*,
    176 F.3d 1358 (11th Cir. 1999) ................................................... 18

*Ledbetter v. S.T.A.R. Sec. Corp.*,
    No. 19-14018, 2020 U.S. Dist. LEXIS 259251 (S.D. Fla. June 10,
    2020) .......................................................................................... 23

*Redner v. Dean*,
    29 F.3d 1495 (11th Cir. 1994) ..................................................... 18

*Saufley Station Cooper, LLC v. Winn-Dixie Montgomery Leasing,
LLC*,
    No. 22-23271, 2023 U.S. Dist. LEXIS 235696 (N.D. Fla. June 5,
    2023) (Wetherell, J.) ............................................................ 12, 16

*Scott v. Paychex Ins. Agency, Inc.*,
    No. 22-62052, 2023 U.S. Dist. LEXIS 181105 (S.D. Fla. Mar. 31,
    2023) .......................................................................................... 17

*SE Prop. Holdings, LLC v. McElheney*,
    No. 12-164, 2021 U.S. Dist. LEXIS 260501 (N.D. Fla. Mar. 8,
    2021) .......................................................................................... 25

*Shipner v. Eastern Air Lines, Inc.*,
    868 F.2d 401 (11th Cir. 1989)          12

*Sosa v. Airprint Sys., Inc.*,
    133 F.3d 1417 (11th Cir. 1998)       11, 12

*Spearman v. Broker Solutions, Inc.*,
    No. 20-4981, 2022 U.S. Dist. LEXIS 98277 (N.D. Ga. Feb. 16,
    2022)       14

*Sumter Elec. Mbrshp. Corp. v. Forestall Co.*,
    No. 1:19-88, 2020 U.S. Dist. LEXIS 260575 (M.D. Ga. Dec. 8,
    2020)      13, 14

*Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored
    People v. Lee*,
    105 F.4th 888 (6th Cir. 2024)       26

*United States SEC v. Big Apple Consulting United States, Inc.*,
    No. 09-1963, 2011 U.S. Dist. LEXIS 95390 (M.D. Fla. Aug. 25,
    2011)       25

*United States v. Frandsen*,
    212 F.3d 1231 (11th Cir. 2000)       18

*Vance v. Universal Amusement Co., Inc.*,
    445 U.S. 308 (1980)      18, 20

*Williams v. Blue Cross & Blue Shield of Fla., Inc.*,
    No. 09-225, 2010 U.S. Dist. LEXIS 97546 (N.D. Fla. Aug. 26,
    2010)       14

**Statutes**

FS 1006.28      3, 4

**Other Authorities**

Fed. R. Civ. P. 16(b)(4)      12, 13

Plaintiffs hereby file their Motion to Amend the Complaint (the "Motion"),[1] to which Defendant has not consented, and in support thereof state:

## I.     PRELIMINARY STATEMENT

Plaintiffs seek to file a Second Amended Complaint to challenge Defendant Escambia County School Board's (the "Board") indefinite delay in reviewing 119 challenged library books that have been restricted from student access for well over a year (and in some cases two years) (the "Restricted Books"). The Restricted Books were originally restricted for viewpoint-based reasons, as alleged in the Amended Complaint. After the passage of Florida's House Bill 1069 ("HB 1069"), the District's Coordinator of Media Services reviewed each challenged book to determine whether the book "may" contain depictions or descriptions of "sexual conduct" as defined by Florida law.[2] If she determined that was the case, the book remained restricted (or was newly restricted, in the case of challenged books that had not previously been restricted), with students unable to access the book even with parental permission.

Importantly, although HB 1069 took effect over a year ago, the Board still has not implemented a process to review these books to determine whether they do

---

[1] Plaintiffs' proposed Second Amended Complaint ("SAC") is attached hereto as **Exhibit A**. A redline document comparing the SAC to the currently operative Amended Complaint is attached hereto as **Exhibit B**.

[2] For brevity's sake, hereinafter this Motion uses the phrase "contains 'sexual conduct'" to mean "depicts or describes 'sexual conduct' as defined by Florida law."

in fact contain "sexual conduct" and, if they do, to determine whether they are nevertheless appropriate for certain grade levels or age groups as allowed by the statute.  Instead, all of these Restricted Books await a not-yet-implemented review process that still has no timeline for when it will begin and no deadline for when it will end.  Plaintiffs only learned about this interminable delay and lack of process during the recent 30(b)(6) deposition of the School Board, as the Board has previously refused to produce discovery regarding its implementation of HB 1069.  This new information provides good cause to further amend Plaintiffs' Amended Complaint to vindicate Plaintiffs' rights.  Students in Escambia County public schools have been unable to freely check out many of these Restricted Books for two years now, with no end in sight.  Thus, the Board's application of HB 1069 to the challenged books violates the constitutional right to both distribute and receive information due to its unreasonable and indefinite delay.

Separately, good cause exists to amend Plaintiff PEN American Center's ("PEN America") standing allegations, as discussed *infra*.[3]

---

[3] In addition to the above, Plaintiffs' proposed SAC: (1) updates Plaintiffs' allegations generally to comport with the facts learned thus far in discovery and as they have evolved since the filing of the Amended Complaint; (2) removes author plaintiffs whose books are no longer restricted; and (3) omits the equal protection claim previously dismissed by this Court.

## II.    FACTUAL BACKGROUND

Plaintiffs initially brought this lawsuit on May 17, 2023, *see generally*, Complaint, ECF 1, in response to the Board's actions to remove and restrict access to library books based on hostility to the ideas they express and/or their authors or themes.    Amended Complaint ("Am. Compl.") ¶¶ 3-7, ECF 27.    These books include many classics of American literature, which have been on school-library shelves for years, if not decades.    *Id.* ¶¶ 68, 82.    The Board's restrictions and removals have disproportionately targeted books by or about people of color and/or LGBTQ people.  *Id.* ¶¶ 161-69.

Plaintiffs initially sued to challenge the Board's removal of nine books from Escambia County Public School libraries and its restriction of over 100 other books pending resolution of the challenge.    *See id.* ¶ 88.    Under this Court's Scheduling Order, the deadline to amend Plaintiffs' complaint was January 26, 2024.    Final Scheduling Order, ECF 54; Order on the Board's Motion to Dismiss, ECF No. 65.

### A.    House Bill 1069

House Bill 1069 (2023) ("HB 1069"), as codified in Chapter 2023-105, Laws of Florida, amended section 1006.28 and became effective July 1, 2023.    The amended FS 1006.28 provides that any material available in a school or classroom library can be challenged on the ground, *inter alia*, that it is "pornographic" or prohibited under FS 847.012, or that it "[d]epicts or describes sexual conduct" as

defined by Florida law.  FS 1006.28(2)(a)2.b.  The statute further requires that any

book challenged on one of these bases must be removed from circulation within 5

days and remain so during the pendency of the challenge.  *Id.* at (2)(a)2.  The

amendments mandated by HB 1069 require that books ultimately found to contain

depictions or descriptions of "sexual conduct" as defined by Florida law shall be

made unavailable for any age group or grade level for which such use is

inappropriate or unsuitable.  *Id.*  The statute does not require the removal of such

books from all libraries or age levels; in fact, the statute allows the retention of

such materials for those age groups or grade levels for which they are deemed

appropriate and suitable.

In response to the passage of HB 1069, the Board amended the section of its

Policy Manual governing the handling of library book challenges, ostensibly to

comply with HB 1069.[4]  However, the revised Policy Manual contains no time

limit by which book challenges need to be resolved.  In fact, the School District

and the School Board have not resolved a single book challenge since April

2023—well over a year ago—when they disbanded the District Materials Review

Committees.

---

[4] The revised policy manual, like HB 1069 itself, went into effect on July 1, 2023, shortly before Plaintiffs filed the Amended Complaint.  For this reason, Plaintiffs expressly noted that the Amended Complaint only challenged "actions undertaken by the School Board prior to implementation of the new rules/procedures" but that Plaintiffs "reserve[d] the right to further amend their complaint in response to new developments."  Am. Compl., ¶ 69 n.4.  That is precisely what the SAC represents.

The Board also chose to interpret HB 1069 in an unnecessarily burdensome way, requiring a pre-emptive review of *every single book in every Escambia County Public School library* to determine if the book contains depictions or descriptions of "sexual conduct" as defined by Florida law.  *See* ECF 105-1 Declaration of Bradley Vinson ("Vinson Decl.") ¶ 27; Deposition Transcript of Bradley Vinson as Board Representative ("Vinson Depo.") at 99:7-100:12 (Declaration of Shalini Agarwal ("Agarwal Decl."), Exh. 10).  First, all books were effectively removed from circulation.  If the initial 1069 review determined that a book "may" contain depictions or descriptions of sexual conduct, the book continued to be withheld from circulation.  Vinson Depo. at 37:20-38:3, 95:6-10.  Given the ambiguity in the statutory definition of "sexual conduct," and the School District's changing understanding of the term's meaning, this meant that many books that might not ultimately meet the statutory standard were withheld from circulation.  Vinson Depo. at 110:12-17, 143:13-144:3.

Following the district-wide review of books during the summer of 2023, the District's Coordinator of Media Services began meeting with high school librarians to review books that had not been returned to circulation.  Vinson Decl. ¶ 28. Those meetings determined whether a book contained depictions or descriptions of "sexual conduct" as defined by Florida law and, if so, whether the book was age-group or grade-level appropriate for high school (and in some cases, middle

school) libraries.  Those books determined not to contain "sexual conduct," or determined to nevertheless be age-group or grade-level appropriate for middle or high school, were returned to circulation in middle or high school libraries.  Vinson Depo. at 82:15-83:6, 126:19-127:16, 141:2-7, 146:18-147:5.  In some instances, where the librarian group could not reach a decision, the result of these meetings was to hold books over for further review.  Vinson Depo. at 82:12-83:10.  No timeline has been established for that further review.  Vinson Depo. at 84:9-90:9.  In the spring of 2024, a similar review began with middle school librarians to review those middle school books that were not initially cleared for return to the shelves (also with no timeline for completion).  Vinson Depo. at 573:21-574:20.  And a similar process is planned for an unspecified time in the future to review elementary school books that were not initially cleared for return to the shelves.  Vinson Depo. at 576:4-10.

As of July 31, 2024, there were over 1,000 unique titles removed from student access that are still awaiting further review to determine whether they contain depictions or descriptions of "sexual conduct" as defined by Florida law, and, if so, whether they are appropriate for any public school libraries.  Vinson Decl. ¶ 31.  In addition, an unspecified number of books at a number of middle and high schools have not yet been subject to even the initial 1069 review process and are not available for circulation.  Vinson Depo. at 567:3-568:18, 571:18-572:8.

Those books that have been subject to challenge, however, have been subject to an even more restrictive process. Rather than having the same group of librarians make a determination as to whether the challenged books contain depictions or descriptions of sexual conduct and, if so, what age group or grade level they are appropriate for, the challenged books were reviewed separately by the Coordinator of Media Services and her teacher assistant. If they determined that a challenged book "may" contain depictions or descriptions of sexual conduct, they did not consider whether the book is appropriate for any age group or grade level. Instead, the book was restricted in all Escambia County Public School libraries. Vinson Depo. at 576:15-577:15.

As of August 12, 2024, 119 books that had been challenged prior to July 1, 2023 remained restricted pending resolution of the challenge on the grounds that the book "may" contain "sexual conduct." *See* SAC at Exh. 29. None of these books are available to students—not even if they have parental permission. Vinson Depo. at 113:9-13. These are the "Restricted Books" that will remain at issue in this lawsuit, should the Court grant the instant Motion. They represent a subset of

the books at issue in the case to date.[5]  Virtually all of these books were first restricted at or near the time they were initially challenged.

The next step for these Restricted Books, as well as the other challenged books subject to restriction, is either peremptory removal by the Superintendent in consultation with the Coordinator of Media Services or the formation of a District Materials Review Committee to consider the challenge to the book.  Vinson Depo. at 466:12-467:15.  The peremptory removal policy is set forth in the revised version of the Policy Manual, but the Board has yet to adopt a process by which to implement it.  Moreover, the peremptory removal process only permits books to be *removed* from the library; it does not permit them to be returned to circulation. Vinson Depo. at 346:4-349:3.  Those books not removed through the peremptory removal process are slated for consideration by a District Materials Review Committee at some unspecified time in the future.

**B.    Defendant's Corporate Deposition Reveals Unconscionable Delay in Implementing the HB 1069 Review.**

On August 22-23, 2024, Plaintiffs' counsel deposed Defendant's corporate representative, Bradley Vinson.  Ms. Vinson is the Coordinator of Media Services

---

[5] The 1069 review process also resulted in the un-restriction of a number of books that had been previously restricted for viewpoint-based reasons but which contain no sexual conduct.  Although those books were identified as not containing sexual conduct as early as September 2023, they were not un-restricted until April 2024. Vinson Depo. at 352:12-354:10, 614:14-615:7.  These books, however, are still subject to review in light of the challenge.

for Escambia County Public Schools, a role she has held since July 1, 2023. Vinson Decl. ¶ 3. In that deposition, Plaintiffs learned, for the very first time, that the Board has neither a timeline nor a concrete plan for resolving the status of challenged books restricted for further review for potentially containing "sexual conduct"—including the 119 Restricted Books.

Although the Policy Manual was revised in June 2023, Vinson revealed the School Board still has not adopted any procedure to implement the peremptory review process that the revised Policy Manual provides for, although there are "ideas of a plan"; Vinson and the Superintendent have "discussed the possibility" of these decisions being a recommendation to be presented to the School Board for approval. *See* Vinson Depo. 346:25-348:16. Vinson testified that there is currently no timeline for reaching a decision with respect to how the peremptory review process will work. *Id.* at 350:24-351:12 ("Q. You don't have a target date by which you want to have this up and running? A. Sometime this school year possibly, but I could not speak more specifically than that."). Vinson also testified that no District Material Review Committees have been formed since March 2023, there is no timeline for the formation of new District Materials Review Committees, and there is no deadline for the District Materials Review Committees to start or complete their review of the Restricted Books or any of the other books currently out of circulation. *Id.* 227:6-18; 351:13-21.

In short, although virtually all of these books have been restricted for well over a year—and in some cases for over two years——Vinson revealed there is no timeline for completion of the review of the Restricted Books. *See id.* 635:2-11 ("Q. ... You testified a few times today … about whether the district had timelines for completing either the 1069 reviews or resolving book challenges. … And, generally, you said there was not a timeline or deadline. … A. Yes."). One reason there is no timeline or deadline is the lack of additional resources allocated by the Board for such an enormous project; instead, Vinson and other school district employees have had review-related work dumped onto their already full plates. *See id.* 635:2-636:15.

## C.   The Board Denied Plaintiffs Discovery Into Its Implementation of HB 1069.

Until this week, the Board resisted Plaintiffs' attempts over the past year to secure discovery concerning the Board's implementation of HB 1069. *See, e.g.*, Pls.' First RFPs, Nos. 10-14 (seeking, *inter alia*, documents concerning HB 1069) (Agarwal Decl., Exh. 2); Def.'s Supp. Response to Pls.' First RFPs, Nos. 10 ("HB 1069 has no applicability to this matter"), 11-14 (refusing to perform independent searches for documents relating to HB 1069) (Agarwal Decl., Exh. 5); Pls.' First Interrogatories, No. 12 (requesting a description of "all steps the School Board has thus far taken to implement HB 1069") (Agarwal Decl., Exh. 1); Def.'s Response to First Interrogatories, No. 12 ("changes made … do not relate to the issues

10

relevant to this lawsuit and are beyond the scope of the Amended Complaint")
(Agarwal Decl., Exh. 3); Pls.' Second RFPs, Nos. 41-44 (seeking, *inter alia*,
documents concerning HB 1069) (Agarwal Decl., Exh. 6); Def.'s Response to Pls.'
Second RFPs, Nos. 41-44 ("HB 1069 has no applicability to this matter") (Agarwal
Decl., Exh. 7).  That stonewalling impacted Plaintiffs' ability to learn the key facts
underlying this Motion.  Plaintiffs were plainly entitled to such discovery to test
the Board's defense that HB 1069 mooted Plaintiffs' claims as to the Restricted
Books, *see* Defendant's Opposition to Motion for Preliminary Injunction ("P.I.
Opp.") at 22-24, ECF 105—with or without the new claim Plaintiffs seek to add
via the instant Motion.  The Board has effectively admitted as much by:
(1) permitting Bradley Vinson to testify extensively on its behalf about HB 1069's
implementation; (2) on September 6, 2024, serving upon each of Plaintiffs PEN
America and PRH a total of 330 requests for admissions related to HB 1069, *see*
Agarwal Decl., Exhs. 8 & 9; and (3) on October 1, 2024, finally agreeing to search
for HB 1069-related documents within those communications Defendant has
already collected.  *See id.*, ¶ 22.  With this new discovery forthcoming, Plaintiffs
anticipate no additional discovery will be needed to investigate Plaintiffs' delay
claim.  Defendant disagrees, suggesting, paradoxically, both that Plaintiffs'
proposed delay claim is not a new, separate cause of action, and that it needs

further discovery. *See* October 3, 2024 Email from N. Smith to S. Agarwal (Agarwal Decl., Exh. 20).

## III.  ARGUMENT

"[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998).  In turn, Rule 16 provides that a scheduling order deadline "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Modification is appropriate where a deadline cannot "be met despite the diligence of the party seeking the extension."  *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee note).  Once a party has met the good cause standard of Rule 16(b), the Court will assess whether the requirements of Rule 15(a)(2) are met.  *Id.* at 1419.

Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave [to amend the pleadings] when justice so requires."  "Under this standard, the district court is effectively required to grant leave to amend unless there is a substantial reason not to—such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Saufley Station Cooper, LLC v. Winn-Dixie*

12

*Montgomery Leasing, LLC*, No. 22-23271, 2023 U.S. Dist. LEXIS 235696, *2-3 (N.D. Fla. June 5, 2023) (Wetherell, J.) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989) ("Th[e] policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.").

The movant bears the burden of establishing entitlement to amend. *See In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014) ("The party seeking leave to amend under Rule 15 bears the burden of establishing his entitlement to it."); *Jackson v. Anheuser-Busch Inbev SA/NV, LLC*, No. 20-23392, 2021 U.S. Dist. LEXIS 155556, at *57 (S.D. Fla. Aug. 18, 2021) ("The burden of establishing good cause [and] diligence rests squarely on the party seeking relief from the scheduling order.") (quotations omitted).

### A.    Recently Discovered Facts Require Amendment to Add Plaintiffs' Delay Claim.

#### 1.    Good Cause Exists Under Rule 16 to Excuse the Timing of Plaintiffs' Motion.

Until Bradley Vinson's deposition in late August, Plaintiffs did not know—indeed, could not have known—the Board had utterly failed to even begin the process of resolving the status of the Restricted Books in connection with its

implementation of HB 1069. Although the court-ordered deadline to amend has expired, "[i]t cannot reasonably be disputed that newly discovered evidence can supply the necessary good cause under Rule 16(b)(4) to enlarge an expired deadline for amending pleadings." *Allstate Ins. Co. v. Regions Bank*, No. 14-0067, 2014 U.S. Dist. LEXIS 115540, at *10 (S.D. Ala. Aug. 19, 2014); *see also Sumter Elec. Mbrshp. Corp. v. Forestall Co.*, No. 1:19-88, 2020 U.S. Dist. LEXIS 260575, at *3-4 (M.D. Ga. Dec. 8, 2020) ("Good cause [under Rule 16] may be found where the proposed amendment is based on newly discovered evidence." (citing *Sosa*, 133 F.3d at 1419)). Indeed, deposition testimony, such as Vinson's, frequently supplies the new facts justifying amendment. *See, e.g.*, *Spearman v. Broker Solutions, Inc.*, No. 20-4981, 2022 U.S. Dist. LEXIS 98277, at *5 (N.D. Ga. Feb. 16, 2022) ("new information gleaned from the deposition testimony of various employees is a sufficient basis for showing good cause").

Good cause on this basis, however, does not exist where plaintiffs "fail[] to seek the information needed to determine whether an amendment is in order." *Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 n.3 (11th Cir. 2009). In line with this, the Eleventh Circuit has held "where new facts provide the basis for the out-of-time amendment, the party should offer an explanation for why those facts previously were undiscoverable." *Crockett v. GEO Grp., Inc.*, 582 F. App'x 793, 796 (11th Cir. 2014) (quotations omitted). This inquiry centers on whether

14

"the moving party … failed to seek the needed information before the deadline" for amendment. *Williams v. Blue Cross & Blue Shield of Fla., Inc.*, No. 09-225, 2010 U.S. Dist. LEXIS 97546, at *5 (N.D. Fla. Aug. 26, 2010).

Here, the deadline to amend was January 26, 2024, two weeks after the Court's ruling denying (in part) Defendant's motion to dismiss. Plaintiffs, however, served their first discovery requests seeking information regarding Defendant's implementation of HB 1069 long before then—in October 2023—shortly after a stay of discovery was lifted on September 25, 2023. Agarwal Decl., ¶¶ 1-2; *see also* ECF 41. Defendant had responded to these requests on December 12, 2023, refusing to produce discovery relating to HB 1069 until the parties met and conferred. During the meet and confer in early February 2024 (after the parties had an initial discussion on January 25 where they talked about the impact on discovery of the Court's denial of Defendant's motion to dismiss), and in subsequent supplemental responses to Plaintiffs' discovery requests in March 2024, Defendant objected to producing anything relating to HB 1069 other than documents referencing the books at issue, which meant that Defendant's policies and procedures and how it was implementing HB 1069 were off-limits. *See*, *e.g.*, Agarwal Decl., ¶ 6; Def's Supp. Resp. 1st RFPs No. 10 ("HB 1069 has no applicability to this matter and any discovery related to it is not proportional to the needs of the case."). Plaintiffs continued to seek this

15

information through a Rule 30(b)(6) deposition of the Board, when Defendant finally admitted its lack of effort or timetable to actually review books it had restricted pursuant to HB 1069. *See, e.g.,* Vinson Depo. at 635:2-11. Plaintiffs filed this motion a few weeks later.

Thus, Plaintiffs sought discovery concerning the Board's implementation of HB 1069 months before the deadline to amend, but the Board refused to supply documents and information responsive to Plaintiffs' requests. At the time, Plaintiffs' requests related to Defendant's defense; thus, Defendant's stonewalling merely indicated Defendant did not intend to support its defense with adequate evidence, making a motion to compel discovery—at that time—apparently unnecessary. However, had the Board fully responded to Plaintiffs' requests, rather than persistently limiting their responses to the Restricted Books themselves, Plaintiffs would have known much sooner that they have a valid claim for the Board's unconstitutional delay under HB 1069. But once Plaintiffs learned of the Board's dilatory approach to the Restricted Books under HB 1069 at Vinson's deposition on August 22-23, 2024, their counsel began work on the proposed Second Amended Complaint on the next business day. Agarwal Decl., ¶ 13.

Thus, good cause exists to extend the deadline for this Motion.

<u>2.    Rule 15's Lenient Amendment Standard is Satisfied</u>.

16

Having cleared the hurdle of Rule 16, Plaintiffs' amendment easily clears the lesser hurdle of Rule 15(a)(2). As already established above, Plaintiffs have not unduly delayed in bringing this Motion. Further, Plaintiffs' proposed amendment here is unrelated to the changes set forth in the Amended Complaint (as it relates to facts discovered or occurring subsequent to that amendment), and does not seek to revive Plaintiffs' dismissed equal protection claim, which has been dropped from the proposed SAC. Thus, there can be no argument the proposed SAC represents a "repeated failure to cure deficiencies by amendments previously allowed[.]" *Saufley Station Cooper, LLC*, 2023 U.S. Dist. LEXIS 235696, *2. And, as discussed below, Plaintiffs' proposed amendment is not futile, and the SAC will not prejudice the Board.

### a.    *Plaintiffs' Delay Claim is Not Subject to Dismissal.*

"[D]enial of leave to amend is justified by futility when the 'complaint as amended is still subject to dismissal.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985)). "The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *Scott v. Paychex Ins. Agency, Inc.*, No. 22-62052, 2023 U.S. Dist. LEXIS 181105, at *4 (S.D. Fla. Mar. 31, 2023); *see also Christman v. Walsh*, 416 F. App'x

17

841, 844 (11th Cir. 2011) (similar). Plaintiffs' proposed amendment is not futile because the SAC states a claim for relief under the First Amendment for the Board's indeterminate delay in resolving the status of Restricted Books under HB 1069.

The Supreme Court has repeatedly held that speech restrictions that do not contain reasonable time limits for determining whether the speech at issue is proscribable are unconstitutional because they enable constitutionally permissible speech to be suppressed. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227 (1990) ("A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech."); *Freedman v. Maryland*, 380 U.S. 51, 58-59 (1965) (restrictions on speech must be determined within "specified brief period"); *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 315-17 (1980) (statute authorizing "prior restraints of indefinite duration" of content "not . . . finally adjudicated to be obscene" is unconstitutional).

The Eleventh Circuit has likewise struck down as violative of First Amendment rights licensing or permitting schemes that lack constraints or meaningful time limitations. *See United States v. Frandsen*, 212 F.3d 1231, 1240 (11th Cir. 2000) (holding that a regulation to issue permits "without unreasonable delay" violates the First Amendment "because it fails adequately to confine the time within which the decision maker must act"); *Lady J. Lingerie, Inc. v. City of*

*Jacksonville*, 176 F.3d 1358, 1363 (11th Cir. 1999) (invaliding an ordinance that conferred zoning board "discretion to delay a decision indefinitely or to covertly deny applications for content-sensitive reasons"); *Redner v. Dean*, 29 F.3d 1495, 1500–01 (11th Cir. 1994) (finding a 45-day time period for official to grant or deny a license illusory because the ordinance's language created "risk that expressive activity will be suppressed for indefinite time periods"). *See also Hand v. Scott*, 285 F. Supp. 3d 1289, 1304-05 n.16 (N.D. Fla. 2018) (listing Eleventh Circuit precedents regarding First Amendment challenges to indefinite delays in decision-making).

Applying this reasoning, the proposed new claim in the SAC states a claim for relief under the First Amendment. Implicit in the Court's ruling on the motion to dismiss is the recognition that both speakers (here, the author Plaintiffs, PRH and PEN America) and listeners (here, the parent and student Plaintiffs) have First Amendment rights in this case. Indeed, the Court found that all the parties sufficiently pleaded standing and refused to dismiss Counts I and II of the Amended Complaint. With respect to the author Plaintiffs, PRH and PEN America in its associational capacity, the Court held that "restricted access to the specific books they wrote or published deprives them of the target audience for their books and a previously available forum for the speech embodied in those books." ECF 65 at 4. With respect to the parent and student plaintiffs, the Court recognized their

First Amendment right to receive information when it recognized standing based on the students' inability to check specific books out of the library "because of Defendant's removal/restriction decisions." *Id.* at 3-4.

This Court has also already held that "[t]he applicable legal standard for evaluating alleged First Amendment violations in the school library context is not entirely clear, but the common theme in all of the potentially relevant standards (e.g., *Pico* plurality, *Hazelwood*, nonpublic forum) is that school officials cannot remove books solely because they disagree with the views expressed in the books but that they can make content-based removal decisions based on legitimate pedagogical concerns including things like pornographic or sexual content, vulgar or offensive language, gross factual inaccuracies, and educational unsuitability for certain grade levels." ECF 65 at 7 (footnote omitted).

Here, while the Board may claim that restricting books based on their containing depictions or descriptions of sexual conduct is a legitimate pedagogical concern, that is not what has happened. Instead, the Board has cast an overly broad net and indefinitely restricted any challenged book that "may" (but may not) contain "sexual conduct," without making any determination that the book in fact does contain such content and without regard to the appropriateness of the book as a whole for any grade level or age group—even though HB 1069 expressly allows that analysis. Even if it were constitutionally permissible to restrict books with

descriptions or depictions of sexual content based on an assessment of the book's appropriateness for certain grade levels or age groups, the Board has not done so. Instead, it has swept more broadly and indefinitely restricted even protected speech.

The First Amendment harms here are manifest. *Vance v. Universal Amusement Company, Inc.* is particularly instructive. There, the Supreme Court held that a statute authorizing an injunction against the exhibition of films "that depict particular acts enumerated in the state's obscenity statute" but that have not actually been found obscene, and which contained no time constraints or other "special safeguards," violated the First Amendment. 445 U.S. at 314-17. So too here. The indefinite restriction of books that "may" contain depictions or descriptions of "particular acts enumerated in the state's" statute (i.e., those that may contain depictions or descriptions of "sexual conduct" as defined by Florida law) but that have not been determined to be age-group or grade-level inappropriate similarly violates the First Amendment.

Facing similarly time-unlimited book restrictions, the court in *Adams v. Matanuska-Susitna Borough School District*, No. 3:23-cv-00265 (D. Alaska Aug. 6, 2024), granted a preliminary injunction requiring the defendant to promptly review books it had restricted from public school libraries. *See* Adams Order at 21-24, ECF 35 (attached as **Exhibit C**). There, the defendant school district had

removed 56 books challenged for various reasons, including that some had LGBTQ themes, and others due to alleged sexually explicit content. *Id.* at 2-3. The school board removed the books until it could constitute a review committee to evaluate the books. *Id.* at 3. Fourteen months later, the committee still had not completed its review, having voted to remove some books, retain others but let the school district determine for which grades, and remand additional books for the district to decide on obscenity status. *Id.* at 6-7. Notably, there were some books the committee had not reviewed at all; nor was it clear that any of the retained books had been reshelved. On those facts, and in reliance upon *Pico*, the court granted the preliminary injunction because the review process "raises the specter of official suppression of ideas." *Id.* at 19 (quoting *Griswold v. Driscoll*, 616 F.3d 53, 57 (1st Cir. 2010)). The court ordered the Board to resolve the status of the books in a little over a week, before the school year was set to start. *Id.* at 21-22. *See also* ECF 65 at 8 n.12 (noting that "if the review process has not been completed in a reasonable period of time and the book has effectively been placed in an indefinite 'restriction purgatory' (as the amended complaint alleges), it would seem that the restriction could be considered a *de facto* removal and it would be ripe for the Court to determine whether that action violates the First Amendment or is justified by actual <u>evidence</u> of a legitimate pedagogical reason under §1006.28(2)(a)2.b").

Similarly, Plaintiffs intend to file a preliminary injunction seeking expedited review of the Restricted Books should the Court grant this Motion. However, *Adams* is also instructive at this stage because it demonstrates that a school district's delay in resolving book challenges is a cognizable First Amendment violation. Because the proposed SAC properly alleges such a violation, the amendment is not futile.

> b.    *Further Amending the Complaint Will Not Prejudice the Board.*

The parties are swiftly approaching the end of fact discovery on October 31, 2024 and all discovery on November 26, 2024. However, the Board will not be prejudiced by further amending the complaint to add Plaintiffs' proposed delay claim, for two simple reasons: the claim requires no discovery above and beyond that which Plaintiffs have already requested, and which Defendant has finally agreed to produce, regarding the Board's implementation of HB 1069; and, as a result, Plaintiffs do not anticipate the SAC would require extending any Court-ordered deadlines.

Notwithstanding that Defendant has not yet produced all HB 1069 discovery to which it has agreed, courts routinely find amended pleadings do not prejudice a defendant where, as here, they "require no further discovery" because "they rest on the same set of facts" already at issue, even if those facts "establish different elements" of a claim. *Ledbetter v. S.T.A.R. Sec. Corp.*, No. 19-14018, 2020 U.S.

23

Dist. LEXIS 259251, at *6-7 (S.D. Fla. June 10, 2020) (granting motion to amend pleadings); *see also Galaxy Am., Inc. v. Ez Inflatables, Inc.*, No. 19-855, 2021 U.S. Dist. LEXIS 269215, at *19-20 (MD. Fla. Aug. 17, 2021) ("Plaintiff's proposed new claims are closely related to the current claims …. As a result, the parties' current discovery already relates to Plaintiff's new claims minimizing the potential prejudice to Defendants"); *Gordon v. IRS (In re Johnson)*, No. 16-51072, 2017 Bankr. LEXIS 2412, at *7 (N.D. Ga. Aug. 25, 2017) ("if the movant's new cause of action arises from essentially the same facts [already] asserted … , it is less indicative of unfair prejudice to the opposing party because the opposing party was already aware of those facts and could prepare to prosecute on them."). This is because such a "proposed amendment will not significantly expand the scope of … litigation[.]" *Conrad v. Lopez De Lasalle*, 681 F. Supp. 3d 371, 384 (D.N.J. 2023).

Here, Plaintiffs do not anticipate the proposed SAC expanding the scope of discovery *at all*. Thus, the current scope of discovery encompasses everything Plaintiffs require to prosecute their delay claim, the Board will not be prejudiced, and this Motion should be granted.

**B.    The Intervening *FDA* Decision and Judicial Economy Support Amendment Regarding Organizational Standing.**

As the Court is aware, the Board has twice challenged Plaintiff PEN America's organizational standing in this case: once unsuccessfully when it moved to dismiss the Amended Complaint, *see* ECF 28 at 15-17; and once in opposition to

Plaintiffs' withdrawn motion for preliminary injunction, *see* P.I. Opp. at 5-8.  In the latter, the Board relied upon the U.S. Supreme Court's decision *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*FDA*"), decided on June 13, 2024, to argue PEN America's diversion of resources alone is insufficient to allege or prove PEN America's standing.  *See id.* at 6-8.  If the Court grants this Motion as to the constitutional delay claim, Plaintiffs anticipate the Board will move to dismiss PEN America's claims as an organizational plaintiff on the same grounds: that PEN's alleged diversion of resources as set forth in the Amended Complaint no longer satisfies organizational standing as a result of *FDA*.  *Id.* at 5-8.  Plaintiffs disagree that *FDA* constitutes such a sea change.  However, Plaintiffs filed the Amended Complaint before *FDA* was decided, and therefore did not seek to allege facts consistent with the Board's interpretation of *FDA*.  If the Board's anticipated motion to dismiss were to be granted, Plaintiffs would seek to further amend the complaint to allege additional facts going to PEN America's standing.

Thus, in the interest of judicial economy and to avoid unnecessarily duplicative motion practice later, Plaintiffs move to amend PEN America's standing allegations now, as set forth in the SAC.

To the extent *FDA* does represent an intervening change in law, which Plaintiffs do not concede, Plaintiffs should be permitted to amend their standing

allegations for that reason as well. "[A] change in the law—if occurring after the deadline to amend contained in the Scheduling Order[,] constitutes good cause to justify an extension of that deadline." *SE Prop. Holdings, LLC v. McElheney*, No. 12-164, 2021 U.S. Dist. LEXIS 260501, at *9 (N.D. Fla. Mar. 8, 2021) (quoting *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)); *see also, e.g.*, *United States SEC v. Big Apple Consulting United States, Inc.*, No. 09-1963, 2011 U.S. Dist. LEXIS 95390, at *3 (M.D. Fla. Aug. 25, 2011) (intervening change in law provided good cause to amend); *Coton v. Televised Visual X-Ography, Inc.*, No. 07-1332, 2008 U.S. Dist. LEXIS 127684, at *2 (M.D. Fla. Nov. 24, 2008) (same).

To assert organizational standing, a plaintiff must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982). In *FDA*, however, the Supreme Court purported to clarify its prior holding in *Havens* concerning the "diversion of resources" theory of organizational standing. The Court held the plaintiff associations had not demonstrated standing because, as pure advocacy organizations, they could not "spend [their] way into standing simply by expending money to gather information and advocate against the defendant's action[,]" thereby "manufactur[ing their] own standing[.]" *FDA*, 602 U.S. at 394. Instead, an organizational plaintiff must demonstrate a defendant's actions affected or

interfered with, or perceptibly impaired, its "core business activities" unrelated to advocacy against the challenged action.  *Id.* at 395.

*FDA* is not a model of clarity in articulating a standard for organizational standing.  However, in the short time since *FDA* was decided, courts have not jettisoned any diversion of resources as a basis for organizational standing.  *See, e.g.*, *Tennessee Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, 105 F.4th 888, 905 (6th Cir. 2024) (recognizing *FDA* "creates uncertainty over when a plaintiff's own choice to spend money can give it standing to challenge a government action that allegedly caused the expenditure").  Instead, courts have focused on an organization's need to demonstrate injury other than through its advocacy against defendant's conduct.  As one court recently observed:

> In [*FDA*], the Supreme Court rejected associational standing for plaintiff medical associations who wished "to make a drug less available *for others*," although they admittedly did "not prescribe or use" that drug themselves.  602 U.S. at 374.  According to the Court, a pure "issue-advocacy organization" cannot "spend its way" to an injury in fact ….  *Id.* at 394-95.  By contrast, an advocacy organization that also provided *services* could have standing if the disputed policy "directly affected and interfered with"—or "perceptibly impaired" its ability to offer—those services.  *Id.*

*Al Otro Lado, Inc., et al. v. Mayorkas*, 23-CV-1367-AGS-BLM, S.D. Cal., ECF 90 (Order Granting in Part Defendant's Motion to Dismiss), attached as **Exhibit D**, at 6 (emphasis in original).

Here, the proposed SAC clearly articulates Plaintiff PEN America's "core business activities" as including "protecting writers in the United States and around the world from discrimination and censorship, championing the written word, and defending freedom of expression[;]" for example, "programming on campus free speech," "trainings on digital [harassment] safety for authors, and protecting writers and artists facing political persecution abroad." SAC ¶ 166. Further, PEN America's core business activities have suffered as a result of Defendant's actions: "[t]he time and effort PEN America has had to spend on addressing efforts to remove and restrict books in Escambia County and elsewhere has required PEN to focus its work disproportionately on the freedom to read in [grades] K-12 and has detracted from [its] other core business activities." *Id.* Thus, the SAC alleges a direct injury in fact that satisfies *FDA*'s arguable gloss on organizational standing.

## IV.    REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request oral argument on their Motion. Plaintiffs believe the amount of time necessary for argument is 30 minutes for each side.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that their Motion to Amend the Amended Complaint be granted, and the proposed Second Amended Complaint become the operative complaint in this action.

## VI.    RULE 7.1(B) CERTIFICATION

Plaintiffs hereby certify that their counsel attempted in good faith to resolve the issues underlying this Motion with counsel for Defendant before filing this Motion.   The undersigned met with Defendant's counsel (Nicole Smith and Samantha Duke) by teleconference on October 1, 2024, and subsequently by email on October 2, 3 and 4, 2024.

## VII.   RULE 7.1(F) CERTIFICATION

Plaintiffs hereby certify that this Motion contains 7,436 words, excluding those portions that do not count toward the word limit.

Respectfully submitted,

Dated: October 4, 2024

*/s/Shalini Goel Agarwal*
Shalini Goel Agarwal (FBN 90843)
Ori Lev*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Telephone: 202.579.4582
Facsimile: 929.777.8428

Lynn B. Oberlander*
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942

Mike Kilgarriff**
**BALLARD SPAHR LLP**

29

1225 17th Street, Suite 2300
Denver, CO 80202
Telephone: 303.292.2400
Facsimile: 303.296.3956

Matthew G. Kussmaul**
Facundo Bouzat*
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8500
Facsimile: 215.864.8999

Kirsten Fehlan*
**BALLARD SPAHR LLP**
999 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone:678.420.3000
Facsimile: 678.420.9401

Goldie Fields*
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
Telephone: 424.204.4338
Facsimile: 424.204.4350

*Pro hac vice*
**Pro hac vice* forthcoming

*Attorneys for Plaintiffs*