## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| PEN AMERICAN CENTER, INC., ET AL., <br><br> PLAINTIFFS, <br><br> VS. <br><br> ESCAMBIA COUNTY SCHOOL BOARD, <br><br> DEFENDANT. | CASE NO.: 3:23-CV-10385-TKW-ZCB |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Pursuant to Federal Rules of Civil Procedure 37(a)(3), Plaintiffs hereby file their Motion to Compel Discovery (the "Motion"), and in support thereof, they state as follows:

For nearly a year, Plaintiffs have diligently sought discovery relevant to their claims and Defendant Escambia County School Board's (the "Board") defenses. But the Board has refused or failed to properly produce certain documents and information critical to those claims and defenses. As such, Plaintiffs now file this Motion requesting the Court to compel Defendant to: (1) provide the dates that the books at issue in this litigation have been restricted or unrestricted, as requested by Plaintiffs' Interrogatory No. 15; (2) supplement Defendant's discovery response to

1

Request for Production No. 52 on a monthly basis by producing any new versions of the District's Reconsiderations Spreadsheet created in the prior month; (3) perform a thorough search for, and produce, Board members' personal communications responsive to Plaintiffs' discovery requests; (4) remedy deficiencies in its production of communications regarding the Board's implementation of HB 1069; and (5) produce a privilege log compliant with Federal Rule of Civil Procedure 26.  Under the liberal standards of party discovery under the federal rules, Plaintiffs are entitled to prompt disclosure of such documents and information.

## I.    LEGAL STANDARD

Plaintiffs "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  This "discovery provision [is] to be applied as broadly and liberally as possible." *Hickman v. Taylor*, 329 U.S. 495, 506 (1947).  Indeed, courts "are bound to adhere to the liberal spirit of the Federal Rules." *Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007) (quotation omitted); *see also Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964) ("the deposition-discovery rules are to be accorded a broad and liberal treatment") (quotation omitted).

Accordingly, a civil litigant is entitled to any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Akridge v.*

*Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quotation omitted). Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The discovery process "depends on the parties participating in good faith." *Akridge*, 1 F.4th at 1276.   However, because "[m]utual knowledge of all the relevant facts . . . is essential to proper litigation . . . either party may compel the other to disgorge whatever facts he has in his possession." *Hickman*, 329 U.S. at 507.

## II.   ARGUMENT

Plaintiffs have been seeking much of the disputed discovery since the earliest stages of discovery in this case.   Plaintiffs served their first discovery requests over a year ago, on October 16, 2023, requesting, among other things, discovery relating to the implementation of HB 1069.   *See* Pls.' 1st Set Interrogatories No. 12, ECF 126, Exh. 1; Pls.' 1st Set RFP Nos. 10-14, ECF 126, Exh. 2.[1]   These discovery requests also sought all communications from Board members relating to the issues in this case, whether on the Board members' official

---

[1] Many of the documents cited in support of this motion were attached as exhibits to the Declaration of Shalini Goel Agarwal (ECF 126), which was filed in support of Plaintiffs' Motion to Amend First Amended Complaint and Plaintiffs' Motion for Dismissal by Sarah Brannen and David Levithan.  Rather than re-file those documents, Plaintiffs cite to them as exhibits to ECF 126.  Separately, Ms. Agarwal has filed an additional declaration in support of this motion, which is attached as Exhibit A hereto and is cited to below as "Agarwal Decl."

or personal devices and accounts.  *See id.* Nos. 1-24 (seeking communications relating to various issues in this case), ECF 126, Exh. 2.

The Court should compel Defendant to comply with its discovery obligations.  There is no excuse for Defendant's failure to comply with the discovery rules or the ESI Protocol agreed to by the parties and entered by the Court.  For ease of review, Plaintiffs have included facts relevant to each argument in the relevant section below.

### A.    Defendant Should Be Compelled to Provide the Dates the Books at Issue Were Restricted.

Plaintiffs are entitled to receive a complete response to their Interrogatory No. 15 seeking the dates the books at issue in this litigation were restricted or unrestricted by the District.  As the Federal Rules plainly state, Plaintiffs "may obtain discovery regarding any . . . matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added).  Plaintiffs' claims rest on the restriction and removal of books from Escambia County Public School libraries in response to challenges to those books.  Understanding when those books were restricted or unrestricted by the District is directly relevant to Plaintiffs' claim and to the extent of harm caused by Defendant's conduct (which itself is a factor in determining the appropriateness of an equitable remedy).

Plaintiffs' Interrogatory No. 15 seeks the date that each of the books at issue in this case was restricted or unrestricted.  Pls.' 2nd Set Interrogatories No. 15,

Agarwal Decl., Exh. 17.  Defendant provided a partial response to the Interrogatory with information regarding the current status of the books and information it had previously provided regarding the unrestriction of 20 books that had been improperly restricted due to Defendant's application of HB 1557 to school library materials.  Def.'s Resp. 2nd Set Interrogatories No. 15, Agarwal Decl., Exh. 18.  Defendant objected to providing the information requested on grounds of burden and relevance.  *Id.*

With respect to burden, Defendant asserted that the 30(b)(6) deposition of the School Board — at which the deponent accessed a version of the District's Reconsiderations Spreadsheet where deponent could see the spreadsheet's edit history and identify the dates that certain books were restricted or unrestricted — "demonstrated the tedious and cumbersome review that the Board's Coordinator of Media Services must undertake, culling through the metadata on the Reconsiderations Spreadsheet for each book to identify the historical changes to the status of the Relevant Books, some of which include multiple revisions in one day."  *Id.*  Contrary to Defendant's dramatic description of "culling through the metadata," the deponent in fact explained that she could ascertain the date of changes to a book's restricted status by simply "looking at the Reconsiderations Spreadsheet and clicking in the restricted access column and the edit history to see when it was changed."  30(b)(6) Depo Tr. at 330:24-331:3, ECF 126, Exh. 10.

In meet-and-confer correspondence, Plaintiffs explained that the allegedly burdensome process is in fact quite straightforward and the simple task should take no more than a few hours.  S. Agarwal Email, 10/21/24, Agarwal Decl., Exh. 8. Plaintiffs further explained that Defendant's "reference to multiple changes in one day is also inapposite, as those multiple changes as described at Ms. Vinson's deposition typically involved changes in nomenclature and not substantive changes in the restricted status of the book. *See, e.g.*, Vinson Depo. at 460:3-461:2." *Id.*  In fact, a time-stamped version of the 30(b)(6) deposition transcript shows that questions regarding when a single book was restricted or unrestricted typically took only a few seconds to answer.  *See, e.g.*, Agarwal Decl., Exh. 19, 30(b)(6) Depo Tr. (time-stamped) at 446:6 (at 2:40:08 of the deposition) to 446:11 (at 2:40:11 of the deposition) (*Finding Cinderella* restriction date took 3 seconds to identify); 447:8 (at 2:42:17 of the deposition) to 447:11 (at 2:42:34 of the deposition) (*Freedom Writers Diary* restriction date took 17 seconds to identify); 447:21 (at 2:42:57 of the deposition) to 447:24 (at 2:43:04 of the deposition) (*Concrete Rose* restriction date took 7 seconds to identify); 448:11 (at 2:43:40 of the deposition) to 448:12 (at 2:43:57 (*Out of Darkness* restriction date took 17 second to identify); *see also id.* at 449:20-452:9 (replete with additional examples). Indeed, even a colloquy that included questions about the meaning of various changes in nomenclature in the Spreadsheet and a discussion of skipping over such

changes that did not entail changes in the book's restricted status (which similarly would not be required to respond to the Interrogatory) lasted a total of 1 minute, 28 seconds. *Id.* at 459:21 (at 2:57:30 of the deposition) to 461:2 (at 2:58:58 of the deposition). Even assuming it would take a full minute to review and record the date that each book was restricted or unrestricted (which is unlikely, as most books have only one change in restricted status), it should take less than 3 hours to respond to Interrogatory 15 (1 min/book x 160 books at issue).[2]

During the parties' final meet and confer discussion on October 28, 2024, Defendant suggested that Plaintiffs could ascertain the dates that each book was restricted or unrestricted by reviewing the 184 different versions of the Reconsiderations Spreadsheet that Defendant has produced. Agarwal Decl. ¶ 20. Based on Plaintiffs' experience with trying to ascertain the restriction history of books in this case, Plaintiffs estimate that attempting to do so using the 184 versions of the Spreadsheet would take over 250 hours. Heywood Decl., ¶ 8. This is because the process would require, for each of the 160 books at issue, a review of each of the 184 versions of the Spreadsheet to determine whether the restricted status of the book changed. *See id.* ¶¶ 3-8 (describing process and noting from

---

[2] During the parties' meet and confer on October 28, 2024, Defendant estimated it would take 10 minutes per title to respond to the Interrogatory. Defendant offered no basis for this estimate, which is wildly inconsistent with what the deposition transcript shows. *See also* Declaration of Ellinor Heywood, attached as Exh. B, ¶ 9.

experience that it took 30 minutes per title to review just 54 versions of the spreadsheet).  By contrast, all that is required for Defendant to provide the same information is to click in a single cell of the Spreadsheet for each book and review the edit history for that cell.  30(b)(6) Depo Tr. at 330:24-331:3, ECF 126, Exh. 10. It is obviously substantially easier for Defendant to provide the requested information, and the production of the Spreadsheets to Plaintiffs in no way obviates the need for this information.

Defendant has also argued that the information is not relevant to Plaintiffs' claims, as those claims turn solely on the current restricted status of the books at issue and not the history of when the book was restricted.  This is a rather bold claim in a case that is all about the alleged unconstitutional restriction of books. Among other reasons, the information sought is relevant to Plaintiffs' claims because it may shed light on the reasons that the books were restricted or unrestricted, *see, e.g.*, 30(b)(6) Depo. Tr. at 429:7-430:9, ECF 126, Exh. 10 ("I would look at the date" to determine reason for book restriction), and it is directly relevant to the First Amendment harm suffered by the Plaintiffs.  While "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), the length of time that Defendant has been violating Plaintiffs' First Amendment rights is

relevant to the harm suffered and the nature and scope of appropriate injunctive relief.

As a result, Defendant should be compelled to respond to Interrogatory 15 by producing the dates the books at issue in this litigation were restricted or unrestricted by the District.

### B. Defendant Should Be Compelled to Supplement Discovery By Producing Future Versions of the Reconsiderations Spreadsheet.

During the parties' meet and confer on October 28, 2024, Defendants were unwilling to commit to providing updated versions of the Reconsiderations Spreadsheet going forward, arguing they do not have a duty to continue to update Plaintiffs as to revisions to the Reconsiderations Spreadsheet, a document they acknowledge is responsive to Plaintiffs' Request for Production No. 52. Plaintiffs suggested that Defendant either (i) notify Plaintiffs whenever the Spreadsheet was updated so that Plaintiffs could download a copy of the Spreadsheet or (ii) provide updated versions of the Spreadsheet on a monthly basis. Defense counsel stated she needed to check with her client but has not responded to Plaintiffs as of the filing of this Motion. Agarwal Decl. ¶ 20.

Defendant has a continuing obligation to supplement its discovery responses through the time of trial. *Bahr v. NCL (Bahamas) Ltd.*, 2022 WL 293255, at *3 (S.D. Fla. Feb. 1, 2022) (collecting cases). Defendant has conceded that the Reconsiderations Spreadsheet and its various iterations are relevant by producing

184 prior versions of the Spreadsheet. Accordingly, Defendant should be compelled to provide Plaintiffs, on a monthly basis, with all unique versions of the Reconsiderations Spreadsheet created in the prior month through the time of trial.

**C. Defendant's Production Is Deficient, and It Should Be Compelled to Produce, in Full, School Board Members' Responsive Communications.**

The Court should compel Defendant to produce all School Board members' communications from their personal devices and accounts that are responsive to Plaintiffs' discovery requests, and in a form compliant with the ESI protocol.

Plaintiffs served discovery requests for Board members' communications relating to issues in this case, including in their personal emails, text or voicemail messages, and social media accounts. The Board initially refused to search for responsive documents because, allegedly, Board members do not use their personal devices or accounts for school board business. When Defemdamt did finally agree to a search, *see* May 10, 2024 e-mail from N. Smith to O. Lev (responses in blue text), ECF 126, Exh. 11, the Board produced a total of *two* text message threads, one between Superintendent Keith Leonard and Media Services Coordinator Bradley Vinson regarding book challenges in school libraries and an unrelated text from School Board Member Patty Hightower. *See* August 12, 2024 e-mail from N. Smith to L. Oberlander, ECF 126, Exh. 12.

However, Plaintiffs soon learned that this was not the full extent of relevant and responsive personal communications by Board members.  On August 13, 2024, former School Superintendent Dr. Tim Smith produced text messages with School Board Chair Kevin Adams (including an August 30, 2022 text from Adams praising the book challenge process in another Florida school district where challenged books are restricted throughout the district pending review, and an October 11, 2022 text from Adams seeking "quick action" to resolve a challenge to the Bible as a "[f]rivolous challenge[]" that the Superintendent should deny), and with Board member Hightower (an October 13, 2022 text from Hightower advising the Superintendent to defend the Media Services Coordinator if attendees of the School Board meeting were to speak harshly about her).  *See* T. Smith 000006-000010, ECF 126, Exh. 13.  These text messages had not been produced by Defendant.

After a series of deficiency communications and meetings about these communications, *see* ECF 126, Exh. 11 & Exh. 15, p. 2-3, Defendant agreed to (i) conduct a second search for Board members' personal communications using agreed search terms and, (ii) for any responsive message, produce sufficient messages in the text chain to constitute a fair presentation of the discussion and for the reader to understand the context in which the message arose.  Agarwal Decl. ¶¶ 6-7.

On October 16, 2024, Defendant produced documents after this second search – a total of 127 documents each showing a screenshot of messages, *id.* ¶ 6, despite the Board's protestations that its members do not use their personal devices to conduct School Board business. Plaintiffs noted a number of deficiencies with this production, including that certain messages did not include date or time stamps or clearly identify the parties involved, per the ESI protocol in this case. L. Oberlander Ltr., 10/22/24, Agarwal Decl., Exh. 9, p. 3. *See also* ECF 80 (ESI Protocol) at 4-5, ¶ II.1 & App. B. Beyond that, many of the messages were incomplete and missing the context the parties had agreed would be provided. Agarwal Decl., Exh. 9, p. 3. Among the most troubling issues, Defendant produced only two text messages for Board Chair Kevin Adams, but failed to produce the plainly responsive text message threads with Mr. Adams and Ms. Hightower previously produced by former Superintendent Smith. *Id.* Defendant also failed to explain, until expressly asked during a meet and confer on the day this motion was due, that Mr. Adams does not have access to his text message history because his phone allegedly had water damage and Defendant is now trying to locate it. Agarwal Decl. ¶ 20. The last of these issues raises the prospect of possible spoliation.

Plaintiffs outlined the deficiencies related to the production of Board Member communications from personal accounts and devices in a letter to

Defendant on October 22, 2024.  Agarwal Decl., Exh. 9.  Defendant provided no response to this aspect of the letter until Defendant was finally available to meet and confer on October 28, 2024.  Agarwal Decl. ¶ 20.  It was only during this conference that Defendant shared for the first time—despite the months-long discussion regarding Board member personal device communications, and after Defendant first claimed there were no such relevant communications—that Mr. Adams had dropped his phone in water and Defendant cannot access the text messages that were on that phone.  *Id.*  Further, when asked, Defendant could not confirm whether or when a litigation hold had been issued to Mr. Adams.  *Id.* ¶ 23.

The Court should compel Defendant to produce all Board members' communications from their personal devices that are responsive to Plaintiffs' discovery requests, and in a form compliant with the ESI protocol and the parties' agreement, to include the identity of the individuals communicating in each text chain, the date and time of the chain, and sufficient context for the responsive messages in the chain.

"A party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery."  *Waddell v. HW3 Inv. Group, LLC*, No. 5:21-CV-55-AW/MJF, 2021 U.S. Dist. LEXIS 263152, at *5 (N.D. Fla. Dec. 23, 2021) (quotation omitted).  Moreover, the Rules require "that a reasonable and complete search is conducted and that all responsive material is either produced or

withheld under a proper objection." *Id*. (quotation omitted) (granting motion to compel where defendants did not diligently search all of their records for discoverable emails and text messages). As the court explained in *Waddell*, "[i]f parties justifiably could evade their discovery obligations simply by not thinking about locations of possibly discoverable materials, the discovery process quickly would become a farce." *Id*. At the very least, defendants must "explain what steps—if any—were taken to ensure that they had searched all available sources for the discovery." *Id*.

It is evident that Defendant failed to adequately search the Board members' personal devices for communications responsive to Plaintiffs' discovery requests. "The Federal Rules require parties—guided by their counsel—to act diligently and thoughtfully" in responding to document discovery. *Id*. Defendant has not done so.

Plaintiffs are aware Defendant's production is deficient, in part, because Dr. Tim Smith, a non-party (whose discovery obligation under Federal Rule 45 is less stringent than Defendant's), provided communications with Board Chair Adams, [T. SMITH 000007 – 000010], ECF 126, Ex. 13, and with Board member Hightower [T. SMITH 000006], *id*., that did not appear in the Board's production of Board member communications. In fact, the Board has produced only two text messages from Mr. Adams, which they confirmed, only today, is because Mr.

Adams' phone became water-logged and inaccessible. Defendant must produce these messages, or explain in detail why they are unavailable, what steps Defendant has taken to try and retrieve the messages, and why they were not preserved in compliance with Rule 37(e).[3]

Beyond this, there are a number of general deficiencies in the Board members' communications that Defendant has produced to date. First, a number of Facebook messages, Android text messages and iMessages do not have date or time stamps, and do not clearly identify the parties involved in the messages (i.e., many are only identified by initials). Per the ESI Protocol, metadata reflecting the date, time, author, sender, and recipient(s) should be provided for native files and images. ECF 80, p. 7. It is not difficult to identify the date and time of a text chain on a phone or computer. And the Board members presumably know the identity of the parties with whom they are communicating. There is no reason for this information to not be provided.

---

[3] Plaintiffs preemptively rebut any argument by Defendant that it was not required to preserve the text messages in anticipation of litigation. Defendant includes emails from as early as October 11, 2022 in its privilege log and asserts they are protected by the work product privilege. If Defendant was creating work product related to this litigation in 2022, it should have been on notice of anticipated litigation and preserved electronically stored information in compliance with Rule 37(e). *See* F.R.C.P. 37, notes of advisory committee on 1970 amendments ("Rule 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery").

Second, the messages Defendant produced are incomplete. For example, Mr. Adams produced a Facebook group message where Mr. Adams is the "Admin" with four additional participants. Agarwal Decl., Exh. 3. Putting aside that it is impossible to tell who is sending the messages or when they were sent, the images do include two linked documents and one message that references one of the linked documents. However, it is unknown why the linked documents are sent to this group, whether anyone else responded, or what prompted these messages. As a second example, one communication from Board member Hightower appears to be an iMessage search for the word "books" producing individual messages with that word rather than text chains. Agarwal Decl., Exh. 4. Defendant should be compelled to produce the text message chain for each of the "books" messages resulting from the search.

After meeting and conferring, Defendant expressly agreed to "produce sufficient messages in the text chain preceding and following the responsive message to (a) constitute a fair presentation of the discussion in which the communication arose and (b) allow the reader to understand the context in which the message arose." S. Agarwal Email, 10/2/24, Agarwal Decl., Exh. 1 (proposing search parameters including context requirement); N. Smith Email, 10/3/24, Agarwal Decl., Exh. 2 (confirming S. Agarwal's proposal following meet and confer). The production fails to meet this standard, and the context around the

messages must be produced so that Plaintiffs can understand their meaning. Indeed, the agreed-upon scope regarding the context surrounding the text messages was a compromise by Plaintiffs; absent that agreement, Defendant would be required to produce the entire text chain between the parties. In an effort to lessen the burden on Defendant, Plaintiffs agreed to the above-quoted language, only to have Defendant completely disregard it. Defendant should be compelled to produce sufficient context surrounding each responsive message as agreed to by the parties.

Third, certain messages are cut off on the image produced, preventing Plaintiffs from reading the entire message, and other messages did not load and instead state "Couldn't load message", or only include a single message in a chain. In each of these instances, Defendant should be compelled to produce the complete message. Plaintiffs identified the messages with these deficiencies in their October 22 letter to Defendant. Agarwal Decl., Exh. 9 (attached as Exhibit C to deficiency letter).

These deficiencies highlight that Defendant has not acted diligently and thoughtfully in identifying and producing all responsive personal communications. Defendant should be compelled to produce all responsive messages from Board members' personal devices and accounts with sufficient context as agreed to by the parties and with all messages legible and complete.

**D.      Defendant Should Be Compelled to Remedy Deficiencies in Its Production of Communications Regarding HB 1069.**

For many months, the Board objected to discovery requests relating to HB 1069, making clear that it viewed implementation of HB 1069 in the School District as off-limits, unless the document specifically concerned one of the books at issue in this case. *See*, *e.g.*, Def.'s Supp. Resp. 1st RFP Nos. 10-14 ("HB 1069 has no applicability to this matter and any discovery related to it is not proportional to the needs of the case."), ECF 126, Exh. 5. Plaintiffs contended that discovery related to HB 1069 is, at a minimum, undeniably relevant to Defendant's key defenses, *see*, *e.g.*, Def.'s Mot. to Dismiss at 9-13, ECF No. 28 (arguing that HB 1069 moots Plaintiffs' viewpoint discrimination claims), as well as Plaintiffs' proposed new claim that the Board's lengthy and indeterminate delay in resolving Restricted Books' status under HB 1069 violates Plaintiffs' First Amendment rights to disseminate and receive information.

Defendant only agreed earlier this month, as a compromise, to conduct independent searches for HB 1069-related documents among the emails it had already collected. ECF 126, ¶ 22; Agarwal Decl. ¶ 6. However, in the resulting documents Defendants produced on October 16, 2024, Plaintiffs identified at least 12 documents linked or referred to in emails that are clearly responsive to the discovery requests (with titles like "Media Specialists: HB 1069 Resources," "HB 1069 July Training 2023," and "HB 1069 Review Process One-Pager") but that

Defendant has not produced. *See* Agarwal Decl., Exh. 9, p. 4. *See also* ECF 80 (ESI Protocol) at 9, ¶ II.14 ("Email attachments: If any member of a document family is deemed responsive, all members of the family are deemed responsive to that request.").

At a meet and confer on October 28, 2024, Defendant confirmed it would notify Plaintiffs that day whether it would produce these attachments but confirmed only that it would produce any documents that were HB 1069 training materials at some unspecified time. Agarwal Decl. ¶ 20; N. Smith Email, 10/28/24, Exh. 13. Plaintiffs noted that the identified documents needed to be produced even if they were not training materials, as their titles indicated they were responsive to Plaintiffs' discovery requests. Agarwal Decl., Exh. 14. Defendant did not respond to this communication.

Despite months of discussion regarding the production of communications related to HB 1069, Defendant's long-awaited production is incomplete and fails to provide all family documents to the documents produced. The parties agreed, pursuant to the ESI Protocol, that "[i]f any member of a document family is deemed responsive, all members of the family are deemed responsive to that request." ECF 80, p. 9. Defendant should be compelled to produce these attachments.

**E.    Defendant Should Be Compelled to Produce a Privilege Log Compliant with Rule 26.**

The entries on Defendant's privilege log do not articulate the reason for the asserted privilege; appear to improperly assert both work product and attorney-client privilege for all documents on the log, even where the minimal information available suggests that one or both of those privileges does not apply; and fail to contain a file name for the withheld attachments to emails.  Defendant should be compelled to produce a compliant privilege log.

Two weeks before the close of fact discovery, Plaintiffs emailed Defendant to confirm whether it was withholding any documents pursuant to assertions of privilege, and, if so, to produce a privilege log.  Agarwal Decl., Exh. 5.   On October 21, 2024, Defendant produced a privilege log that included 190 entries, every single one of which was marked with the privilege type "Attorney Client/Work Product."  Agarwal Decl., Exh. 7.  Plaintiffs responded the next day with a letter detailing some of the deficiencies in the privilege log.  Agarwal Decl. Exh. 9.  These deficiencies include that none of the entries describe the nature of the documents or identify the basis for the assertion of privilege; and every single entry appears to improperly assert both attorney-client and work product privilege. *Id.*  Further, each of the log entries are dated before the initial complaint in this case was filed on May 17, 2023, and there is no explanation of why or how the documents were prepared in anticipation of litigation.  *Id.*  In addition, Defendant

included no file names for any of the 88 withheld attachments to emails. *Id.* Defendant has done nothing to address these deficiencies.

The parties met and conferred on October 28, 2024, and Defendant stated it would revise its privilege log. However, given that Defendant agreed to this on the last day Plaintiffs could submit this Motion, and Plaintiffs have not received an updated log and are unable to assess the applicability of privilege based on the current inadequate privilege log, Plaintiffs move to compel production of a proper privilege log. In addition, Plaintiffs reserve their rights to move to compel the production of any of the documents on the privilege log where the assertion of privilege is not sufficiently supported.[4]

For a communication with an attorney to be privileged, it must be shown that "the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance." *U.S. v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991) (cleaned up). Specifically, Defendant must show, among other things, "the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or

---

[4] To the extent necessary to preserve their rights, Plaintiffs ask that this motion be deemed a motion to compel production of all documents on the privilege log as, to date, privilege has not been properly invoked with respect to any such document. In light of Defendant's commitment to provide a revised log, Plaintiffs will review that log and make further filings with the court in the event that the log is insufficient or if they seek compelled production of any documents on that log.

(ii) legal services or (iii) assistance in some legal proceeding." *In re Grand Jury Proceedings 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990) (internal quotations omitted).

Despite its value in encouraging clients to confide in their counsel, "as an obstacle to the investigation of the truth, the privilege is not without exceptions." *Cox v. Adminstr. U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994). For example, attorney-client "privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981); *Hickman v. Taylor*, 329 U.S. 495, 513 (1947) ("Denial of production of this nature does not mean that any material, non-privileged facts can be hidden").

Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires that Defendant "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Defendant has failed to provide any description of the communications and documents not produced, aside from the subject line of any email communication. This is clearly insufficient to meet its obligation under the Rules.

In addition, there are a number of specific deficiencies throughout the privilege log. *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins.*

*Co.*, 2023 U.S. Dist. LEXIS 62078, at *7 (M.D. Fla. March 8, 2023) (granting plaintiff's Motion to Compel Better Privilege Log due to defendant's "obligation to produce a privilege log that permits other parties, and the court, to assess the applicability of the privilege") (citation omitted).

First, all of the privilege log entries are dated before the Complaint was filed on May 17, 2023. "Attorney work product protection extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." *Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334-35 (11th Cir. 2018). However, it "does not protect documents prepared in the ordinary course of business of a party." *Cinclips, LLC v. Z Keepers, LLC*, 2017 U.S. Dist. LEXIS 40251, at *5 (M.D. Fla. March 21, 2017). Without no explanation, Plaintiffs are left to guess why the emails dated as early as October 11, 2022 would be in anticipation of litigation. *Smith v. USAA Cas. Ins. Co.*, 658 F. Supp. 3d 1054, 1061 (N.D. Fla. 2023) (compelling Defendant to produce documents created prior to filing of complaint because Defendant failed to meet its burden of showing documents prior to this date were created in anticipation of litigation, where Defendant had filed only a barebones privilege log but no sworn testimony that the documents were prepared in anticipation of litigation). Without a description for each entry in the privilege log, there is no

way to verify that the documents were not prepared in the ordinary course of business.

Second, there are a number of entries where no lawyer is included on the email, yet Defendant claims attorney-client and work product privilege. For example, the Defendant lists an email from Kevin Adams to "votekevinadams@gmail.com" with no other parties included on the email. Without a description, it is impossible to confirm whether such email or document is privileged.

Third, Defendant has provided no information about the attachments to emails. It is clear that Defendant has not assessed privilege for the attachments on a case-by-case basis, aside from one document and its attachment, ECSD000010 and ECSD000013, where Defendant produced a redacted version. The inconsistency and lack of clarity in Defendant's privilege log renders it insufficient to enable Plaintiffs to meaningfully assess whether the invocations of privilege are warranted.

Finally, the ESI protocol requires the parties to provide the "most inclusive email thread" which is one that "contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread." ECF 80, p. 9. Where Defendant listed a document on the privilege log, it included the most inclusive thread, but claims the entire thread is privileged. In some instances, however,

versions of the thread (i.e., prior or lesser-included emails in the same email thread) have already been produced.  Therefore, the entire thread cannot be privileged.[5]  Defendant should be compelled to produce redacted versions of any email threads where only part of the communication is privileged, rather than withholding the entire document.

Defendant's privilege log is wholly deficient, inconsistent, and uninformative. Defendant should be compelled to provide a privilege log compliant with Rule 26.

### III.  CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion, and order as follows: (1) compel Defendant to respond to Interrogatory No. 15; (2) compel Defendant to produce, on a monthly basis until trial, all versions of the Reconsiderations Spreadsheet created in the prior month, (3) compel Defendant to perform a thorough search for, and produce, Board members' personal communications responsive to Plaintiffs' discovery requests with sufficient

---

[5] For example, Defendants produced six documents that are part of an email thread with the subject line "Help with content material", beginning on May 20, 2022. [E-ECSD_0062202, E-ECSD_0062226, E-ECSD_0062270, E-ECSD_0062631, E-ECSD_0062729, E-ECSD_0067207]. Defendant's privilege log includes an entry for an email sent from Kevin Adams to Ellen Odom with the subject line "Fwd: Help with content material" dated May 20, 2022. Because this email indicates it was forwarded, likely from the thread that has already been produced, Defendant must produce the document with redactions (if it in fact contains privileged information).

metadata and context as described above, and explain its efforts to locate the text messages of Kevin Adam; (4) compel Defendant to remedy deficiencies in its production of communications regarding HB 1069; and (5) compel Defendant to produce a privilege log compliant with Rule 26.

## IV.    RULE 7.1(B) CERTIFICATION

Plaintiffs hereby certify that their counsel attempted in good faith to resolve the issues underlying this Motion with counsel for Defendant before filing this Motion.   The undersigned met with Defendant's counsel Nicole Smith and Samantha Duke by teleconference repeatedly, including on October 1, 8, and 28, 2024, and via emails on October 1, 2, 3, 4, 17, 19, 21, 22, 24, 25, and 28, 2024. *See* Agarwal Decl. ¶¶ 2-8, 11-23.  While the parties were able to narrow their areas of disagreement, they were ultimately unsuccessful in reaching agreement as to all of the deficiencies at issue.

## V.    RULE 7.1(F) CERTIFICATION

Plaintiffs hereby certify that this Motion contains 6,008 words, excluding those portions that do not count toward the word limit.

Respectfully submitted,

Dated: October 28, 2024            */s/ Shalini Goel Agarwal*
Shalini Goel Agarwal (FBN 90843)
Ori Lev*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave. NW, Suite 163

Washington, DC 20006
Telephone: 202.579.4582
Facsimile: 929.777.8428

Lynn B. Oberlander*
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY  10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942

Mike Kilgarriff*
Catherine J. Warren*
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202
Telephone: 303.292.2400
Facsimile: 303.296.3956

Matthew G. Kussmaul**
Facundo Bouzat*
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Telephone: 215.864.8500
Facsimile: 215.864.8999

Kirsten Fehlan*
**BALLARD SPAHR LLP**
999 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone:678.420.3000
Facsimile: 678.420.9401

Goldie Fields*

**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
Telephone: 424.204.4338
Facsimile: 424.204.4350

*Admitted pro hac vice*

**Pro hac vice motion forthcoming*

*Attorneys for Plaintiffs*