UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
et al.,

    Plaintiffs,

v.                                          Case No. 3:23cv10385-TKW-ZCB

ESCAMBIA COUNTY SCHOOL
BOARD,

    Defendant.
_____/

### AMENDED[*] ORDER ON MOTION TO AMEND AND RULE 72(A) OBJECTION

This case is before the Court based on Plaintiffs' motion for leave to file second amended complaint (Doc. 127) and Plaintiffs' Rule 72(a) objection (Doc. 143). The motion and objection were fully briefed, and the parties presented extensive oral argument on the issues framed by their filings at a hearing on November 15, 2024. The Court announced its rulings on the motion and objection at the conclusion of hearing. This Order memorializes those rulings.

#### Motion to Amend

Plaintiffs sought leave to file a second amended complaint to assert an "unconstitutional delay" claim based on Defendant's failure to timely resolve citizen

---

[*] Only to add a new footnote 1.

book challenges and the resulting indefinite removal of the challenged books from the school libraries. The amendment deadline in the scheduling order was January 26, 2024, and the motion to amend was not filed until October 4, so Plaintiffs must show "good cause" for the untimely motion under Fed. R. Civ. P. 16(b)(4) before the Court can consider whether to allow amendment under the standard in Fed. R. Civ. P. 15. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). To show good cause, Plaintiffs must show that they could not meet the amendment deadline in the scheduling order despite their diligence. *Id.* at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's note); *see also Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000) ("No diligence, no good cause, no leave to amend.").

Plaintiffs did not show good cause because the material facts underlying the proposed "unconstitutional delay" claim were known to Plaintiffs when they filed their amended complaint because at that point, some of the books had been removed or restricted pending review for nearly a year. *See Callwood v. Jones*, 727 F. App'x 552, 558 (11th Cir. 2018) ("Because [the plaintiff] had 'the information supporting the proposed amendment to the complaint ... before she filed suit,' she has not demonstrated good cause to modify the scheduling order deadline, and the district court did not abuse its discretion by denying her motion to amend." (quoting *Sosa*, 133 F.3d at 1419)). The fact that Plaintiffs learned more about the *reasons* for the

delay and the "HB 1069 review process" after the amendment deadline does not change the fact that they knew before the amendment deadline all they needed to know to assert a plausible claim for "unconstitutional delay." Moreover, even if additional information about the HB 1069 review process was necessary for Plaintiffs to seek leave to amend, they did not provide an adequate explanation for their undue (6 to 8 week) delay in seeking leave to amend after learning that information in the July 2024 declaration and August 2024 deposition of Defendant's Rule 30(b)(6) witness. *See In re Engle Cases*, 767 F.3d 1082, 1119 (11th Cir. 2014) (explaining that the court can deny leave to amend based on undue delay "when the moving party offers no adequate explanation for a lengthy delay"); *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) (affirming denial of leave to amend where the plaintiff did not explain why she waited so long to plead an additional claim, finding that "such unexplained tardiness constitutes undue delay").

Objection

Plaintiffs objected to the magistrate judge's order granting Defendant's motion for protective order based on the legislative privilege. Under Fed. R. Civ. P. 72(a), the Court has the authority to modify or set aside that order only if it "is clearly erroneous or is contrary to law."

"Clear error . . . is only found when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"

*Martello v. Prod. Quest Mfg., LLC*, 2014 WL 12625943, at *1 (M.D. Fla. May 30, 2014) (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005)). "A magistrate judge's order 'is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2022 WL 2436843, at *1 (N.D. Fla. Mar. 11, 2022) (quoting *Malibu Media, LLC v. Doe*, 923 F. Supp. 2d 1339, 1347 (M.D. Fla. 2013)).[1]

---

[1] The Court interprets the "contrary to law" standard in Rule 72(a) to authorize plenary review of legal conclusions in the magistrate judge's order. *See Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (explaining that "the phrase 'contrary to law' indicates plenary review as to matters of law"); *Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 809 (10th Cir. 2023) (same, quoting *Haines*); *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (same); *Moore v. Ford Motor Co.*, 755 F.3d 802, 806 (5th Cir. 2014) (same); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) ("When, as in this case, review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard. This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard."). This interpretation is consistent with the well-established principle that "if the [lower] court misapplies the law [the reviewing court] will review and correct the error without deference to that court's determination." *Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1505 (11th Cir. 1992); *see also United States v. Shamsid-Deen*, 61 F.4th 935, 944 (11th Cir. 2023) (explaining that de novo review is appropriate for rulings on issues of law, including those that apply law to fact, because the reviewing court "is in as good a position to decide them as a [lower] court is").

The Court recognizes that the Eleventh Circuit has held that Rule 72(a) does not *require* the district court to conduct a de novo review of a magistrate judge's order on a nondispositive matter, *see, e.g., Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir. 2019); *Rodriguez v. Powell*, 853 F. App'x 613, 618 (11th Cir. 2021); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981), but the Court does not read those cases to *prohibit* plenary review of the legal conclusions in the order. Indeed, in an unpublished opinion, the Eleventh Circuit appears to have equated the "contrary to law" standard to de novo review of the legal conclusions in the order. *See Illoominate Media, Inc. v. CAIR Fla., Inc.*, 2022 WL 4589357, at *2 (11th Cir. Sept. 30, 2022) ("A district judge reviewing a magistrate judge's nondispositive order 'must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.' Fed. R. Civ. P. 72(a). On appeal, we are bound by the same standard: <u>we review the district court's application of law de novo</u>, but its findings of fact for clear error.") (emphasis added).

4

Here, the magistrate judge's order accurately described the pertinent factual and procedural background and correctly recognized that the legislative privilege protects the individual school board members from inquiries into their motivations for "legislative acts," but not for "administrative acts." The issue framed by the objection is whether the magistrate judge misapplied the law in determining that the school board members' decisions to remove or restrict specific books were legislative acts.[2]

Resolution of this issue is governed by the following standards:

> [a] legislative act involves policy-making rather than mere administrative application of existing policies. … If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative. Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature.

---

It would be helpful to have more clear guidance from the Eleventh Circuit on the scope of review authorized under the "contrary to law" standard in Rule 72(a). This case might provide a good vehicle for the Eleventh Circuit to provide that guidance because if, as other district courts in this Circuit have held, "the 'contrary to law' standard [is] . . . more deferential than de novo review," *see, e.g., Malibu Media*, 923 F. Supp. 2d at 1347 n.9; *Rzepkoski v. Nova Southeastern Univ., Inc.*, 2024 WL 4003687, at *2 (S.D. Fla. Apr. 14, 2024); *Crews v. United States*, 2018 WL 2175880, at *7 n.7 (S.D. Ga. May 11, 2018), the Court would have ruled differently on Plaintiffs' objection because "the 'line dividing legislative and administrative decisions is not always clear,'" Doc. 138 at 4 (quoting *Parnell v. Sch. Bod. of Lake Cnty.*, No. 4:23-cv-414/AW/MAF, Doc. 191 at 3 (N.D. Fla. Sept. 24, 2024)), and the magistrate judge's conclusion that the board members' book removal decisions are subject to the legislative privilege is at least fairly debatable.

[2] Plaintiffs also argue that the magistrate judge clearly erred in finding that the privilege was not waived, but the Court need to reach that issue based on the disposition in this Order. That said, for sake of completeness, the Court finds no error (much less clear error) in the magistrate judge's determination that the privilege was not waived.

*Crymes v. DeKalb Cnty., Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (citations omitted); *see also Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992) (explaining that "a legislative act is characterized by having a policymaking function and general application").

Under those standards, even though the school board's decision to remove or restrict a book has some hallmarks of a legislative act (e.g., voting after debate at a public meeting), it is functionally an administrative act. The removal/restriction decision is based on specific facts (the content of the book), and it is more akin to a permitting or employment termination decision (which have been held to be administrative acts) than a rezoning or budgeting decision (which have been held to be legislative acts) because the removal/restriction decision involves the case-by-case *application* of the standards in state law and school board policy to a specific book, not the *formulation* of general standards that apply to all books.[3]

The fact that school board members must exercise discretion, engage in "line-drawing," and make "policy judgments" when deciding whether a particular book is educationally suitable, grade-level appropriate, etc., does not change the fact that they are applying policy, not formulating it, when doing so. Likewise, the fact that

---

[3] The Court recognizes that this conclusion is hard to square with *Ellis v. Coffee County Board of Registrars*, in which the Eleventh Circuit held that county commissioners were performing their legislative function when they determined the voting eligibility of specific electors, 981 F.2d 1185, 1190 (11th Cir. 1993), but *Ellis* is hard to square with earlier Eleventh Circuit precedent holding that local government decisions impacting specific individuals tend to be administrative in nature, not legislative.

6

a book removal/restriction decision may have district-wide impact does not change the fact-specific nature of the decision.

The Court did not overlook Judge Winsor's observation in the related *Parnell* case[4] (which was echoed by the magistrate judge in this case) that the decision to remove a particular book from school libraries "was a quintessential policy decision about how best to educate Escambia County children," but the same could be said about the decision to fire or retain a particular teacher—which is indisputably an administrative act. Moreover, just like there is a functional difference between the adoption of a zoning ordinance (legislative act) and the application of the ordinance to a specific permit application (administrative act), there is a functional difference between the school board's adoption of a policy detailing what content is generally prohibited in school library books and the board's determination that a specific book must be removed from school libraries because it contains such content.

\* \* \*

For the reasons stated above (and the additional reasons stated on the record at the hearing), it is **ORDERED** that:

1. Plaintiffs' motion for leave to file second amended complaint (Doc. 127) is **DENIED**.

2. Plaintiffs' objection (Doc. 143) is **SUSTAINED**, and:

---

[4] *Parnell v. Sch. Bd. of Lake Cnty.*, N.D. Fla. Case No. 4:23-cv-414.

      a.      The magistrate judge's order (Doc. 138) is **QUASHED** insofar as it concluded that the legislative privilege applies to the school board members' decisions to remove or restrict specific books from school libraries;

      b.      Defendant's renewed motion for protective order asserting legislative privilege (Doc. 107) is **DENIED**; and

      c.      Defendant's motion for restriction of board members' depositions (Doc. 108) is **REFERRED** to the magistrate judge for disposition.[5]

**DONE and ORDERED** this 20th day of November, 2024.

*/s/ T. Kent Wetherell, II*

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

---

[5] The magistrate judge denied this motion as moot based on his determination that the board members were not subject to deposition based on the legislative privilege, but that motion is no longer moot based on the Court's determination that the board members' book removal/restriction decisions are not subject to the legislative privilege. Thus, consistent with the Court's standard practice for discovery motions, the motion for restriction will be referred to the magistrate judge for disposition.