## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| PEN AMERICAN CENTER, INC., ET AL., <br><br>     PLAINTIFFS, <br><br> VS. <br><br> ESCAMBIA COUNTY SCHOOL BOARD, <br><br>     DEFENDANT. | CASE NO.: 3:23-CV-10385-TKW-ZCB |

## PLAINTIFFS' MOTION FOR SANCTIONS

Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs hereby file this Motion for Sanctions (the "Motion"), and in support thereof, state as follows:

## I.    INTRODUCTION

Defendant has persistently prevented Plaintiffs from obtaining discovery from the Escambia County School Board (the "School Board") members, who are undoubtedly the central decision-makers in this case—by failing to even verify what responsive communications exist from School Board members' personal accounts and devices for over a year-and-a-half, making incorrect representations about the existence of these communications, and failing to take any actions to preserve them. Defendant should not be permitted to get away with its improper conduct and

1

inappropriate efforts to prevent Plaintiffs from obtaining evidence central to their claims, to which Plaintiffs have a right under Rule 26(b).

Based on the nature of available information from Mr. Adams and the School Board's failure to preserve his electronic communications, Plaintiffs seek as a sanction for Defendant's misconduct an adverse inference that the information that was lost from Mr. Adams's cell phone was favorable to Plaintiffs and that Mr. Adams voted to remove or restrict the books at issue in this case for viewpoint discriminatory reasons. Further, sanctions should include, but not be limited to, requiring the School Board to conduct a forensic search of School Board members' personal devices within 15 days of any court order, and an order expressly allowing Plaintiffs to question the School Board members about their document preservation efforts (whether or not the court's determination that their votes to remove books were an administrative act and thus not protected by legislative privilege is upheld on appeal) and any deleted communications. Additionally, Plaintiffs seek attorneys' fees and costs for the filing of this motion.

## II.    <u>STATEMENT OF FACTS</u>

On May 17, 2023, Plaintiffs filed their Complaint. ECF 1. In the Complaint, Plaintiffs alerted Defendant, in multiple instances, to the importance of the School Board's communications:

- "[T]he School Board is ordering the removal *against* the recommendations of experts within the School District. This disregard for professional guidance underscores that the agendas underlying the removals are ideological and political, not pedagogical." ECF 1 ¶ 4.

- "Adams, the School Board Chair, was quoted admitting that he was largely deferring to Baggett, saying: 'I'm not gonna sit here and read 125 books. Fortunately, it don't take long, ***particularly with this English teacher because she's identified every page in there***. I don't have to read a smut book all the way from the very beginning to the very end.'" ECF 1 ¶ 83.

- "Thus far, there have been four waves of book removals by the School Board, resulting in the removal of 10 books. In each instance, the School Board voted for removal over the recommendations of the district review committee, which had deemed the book educationally suitable. To date, there has not been a *single* instance in which the School Board has rejected a Baggett challenge." ECF 1 ¶ 86.

- "On February 21, 2023, the School Board voted to remove three books from all School District libraries: *All Boys Aren't Blue* by Plaintiff Johnson, *And Tango Makes Three* by Peter Parnell and Justin Richardson, and *When Aidan Became a Brother* by Plaintiff Lukoff. Again, it did so despite the district review committee's conclusions that the books were appropriate for the

grades served by the libraries in question and its recommendation, in all three cases, that the books be retained." ECF 1 ¶ 88.

- "On March 20, 2023, the School Board voted to remove four additional books from some libraries: *New Kid* by Jerry Craft and *Drama* by Raina Telgemeier, which were removed from elementary school libraries; and *The Bluest Eye* by Toni Morrison and *The Nowhere Girls* by Amy Reed, which were removed from elementary and middle school libraries in the School District, and restricted to 11th and 12th graders within high school libraries. Once again, the School Board overrode the recommendations of the district review committee." ECF 1 ¶ 89.

- "On April 13, 2023, the School Board voted to remove *Push* by Sapphire and *Lucky* by Alice Sebold from all School District libraries, again overriding the recommendation of the district review committee that the titles be made available in high school libraries." ECF 1 ¶ 90.

- "At the School Board meeting at which *Tango* was addressed, School Board Members made clear that they, too, believed that the mere fact that the book depicts two male penguins jointly raising a chick warranted removing it from school libraries. One School Board member observed: "'The fascination is still on that it's two male penguins raising a chick. And, most people that came up and spoke were talking about that fascination, so I'll be voting to remove

4

the book from our libraries.'" Another School Board member stated that he would be fine with the book being available if *Tango* was "'edited or rewritten to make it less and less of a sexual or even a romantic thing and more of the compassion and nature that nature has.'" ECF 1 ¶ 97.

- "At the meeting, the School Board chair expressed the view that, while some parents may find the perspective *Aidan* offers valuable, 'it's just something that should not be in the school district. We should be concentrating on the education of these students, and if I can't fit those dots, I won't approve the book.'" ECF 1 ¶ 102.

On July 24, 2023, Plaintiffs filed their Amended Complaint, which in part, removed Escambia County School District as a defendant. ECF 27. This left only the Escambia County School Board as a Defendant in this action, highlighting that the School Board members were the key decision-makers relevant to this action.

On August 23, 2023, Plaintiffs served their initial disclosures which listed Kevin Adams, Paul Fetsko, David Williams, Laura Dortch Edler, Patty Hightower, and Bill Slayton, each a current or former School Board member, as a person likely to have discoverable information that Plaintiffs may use to support their claims. Pls.' Initial Disclosures, Exh. 1.

On October 16, 2023, Plaintiffs served their First Set of Requests for Production of Documents to Defendant, including requests related to their personal

emails, text or voicemail messages, and social media accounts of the School Board members. Specifically, Requests 1–3 and 17 sought "All Documents and/or Communications to, from, or copying any member of the School Board," concerning Book Challenges, Book Restrictions, Book Removals, and Reading Materials, including specifically communications from, to and/or concerning Vicki Baggett. ECF 126-1, Exh. 2 (pages 20–36 of pdf). A number of other Requests also expressly called for communications "to, from, or copying any member of the School Board," *id.*, Request Nos. 16, 18, 19, and yet others sought communications generally regarding a range of topics on which it could be expected that the School Board members would communicate, *id.* Request Nos. 4–15. On or about December 23, 2023, Defendant responded to Plaintiffs' requests, initially refusing to search for responsive documents.

In Defendant's December 12, 2023, responses to Plaintiffs' Requests for Production, it objected to the breadth of the requests for communications but said it was "agreeable to meet and confer with Plaintiffs' counsel regarding appropriate custodians and search terms for email searches." ECF 126-1, Exh. 4, at 15 (page 70 of pdf). On January 29, 2024, Plaintiffs sent a deficiency letter noting the absence of emails from individual School Board members and cited *Bear v. Escambia Cnty. Bd. of Cnty. Comm'rs*, 2021 U.S. Dist. LEXIS 254448, at *12 (N.D. Fla. Oct. 8, 2021) for the proposition that a court may compel production of social media posts and

Facebook messages if "created, received, or retained by [the elected official] in the scope of his duties as a commissioner, relates to a County matter or to Underhill's official duties, and was intended to convey information or knowledge." ECF 126-1, Exh. 14, at 5 (page 5 of pdf).

In the course of meet and confer discussions on February 7 and 8, 2024, Plaintiffs sent Defendant a list of proposed custodians, including School Board members (in addition to the Superintendent and the Media Services Coordinator) whose communications should be searched. Agarwal Decl. ¶ 2, Exh. 2. On February 13, 2024, Defendant agreed to Plaintiffs' list of proposed custodians, which included the Board Members. Defendant agreed to begin producing emails by April 10, 2024. ECF 141-1 ¶ 6 (page 3 of pdf).

On May 10, 2024, the parties met and conferred again, and Plaintiffs noted that Defendant had not produced text messages from School Board members, even though Plaintiffs had learned that School Board members do use text messages to communicate with community members about issues that come before the School Board. ECF 141-1, ¶ 2. Defendant responded that School Board members do not use personal devices for School Board communications and that it had already produced all responsive communications from School Board members. *Id.*

Following the meet and confer, Plaintiffs reiterated that

Plaintiffs are seeking texts, emails to and from the school board members' non-work email addresses or phones, and social media

> messages to the extent that they related to the issues in this case. This would include communications to constituents, the media, other school board members, school board staff, and third parties relating to book removals and restrictions generally or with respect to the particular books at issue.

L. Oberlander email to N. Smith, May 10, 2024, ECF 126-1, Exh. 11 (black text, page 922 of pdf).

Plaintiffs also summarized the meet and confer by noting that defense counsel had represented that "as far as you know, the school board members use only their county email address for school board business, and that you generally do not ask school board members to search personal phones or emails." *Id.* Plaintiffs expressly asked defense counsel to "confirm with them [i.e., the School Board members] that that is the case." *Id.*

Defense counsel responded that she "previously asked Board Members . . . to provide any communications regarding book challenges, removals and restrictions, including if a personal device or Board-issued cell phone was used. Despite that [the School Board members] are doing another sweep." N. Smith email to L. Oberlander, May 20, 2024, ECF 126-1, Exh. 11 (red text, page 922 of pdf). Defendant also stated that "[n]one of the Board Members (except for Mr. Adams) . . . are issued phones by the District." *Id.*

Plaintiffs replied with the request that defense counsel "confirm with the School Board Members, . . . that they never used their personal accounts to

communicate about *any* of the topics set forth in the RFPs seeking communications and either confirm to us that is in fact the case or produce responsive communications." O. Lev email to N. Smith, May 23, 2024, ECF 126-1, Exh. 11 (green text, page 923 of pdf). Defense counsel replied that Defendant would produce communications "even if any member of the school Board, . . . used a personal device/account." N. Smith email to O. Lev, May 25, 2024, ECF 126-1, Exh. 11 (blue text, page 923 of pdf).

Based on this email exchange, Plaintiffs reasonably expected that Defendant would search both county-issued email accounts and phones as well as personal email accounts and phones for communications responsive to their Requests. Defendant's search, however, was simply conducted by School Board members themselves, with no lawyer supervision or provided search terms. *See* ECF 126-1, Exh. 11 (red text, page 922 of pdf).

However, as of August 12, 2024, over two months later, Defendant had produced only one text message thread from a School Board member.[1] *See* N. Smith email to L. Oberlander, Aug. 12, 2024, ECF 126-1, Exh. 12 (pages 928–29 of pdf). As Plaintiffs soon learned, this was not the full extent of responsive personal communications by School Board members.

---

[1] Defendant had produced one other text message thread regarding book challenges in school libraries, but it was not from a Board Member—it was between Superintendent Keith Leonard and Media Services Coordinator Bradley Vinson.

On August 13, 2024, former School Superintendent Dr. Tim Smith produced, in response to a subpoena from Plaintiffs, text messages with School Board Chair Kevin Adams (including an August 30, 2022 text from Adams praising the book challenge process in another Florida school district where challenged books are restricted throughout the district pending review, and an October 11, 2022 text from Adams seeking "quick action" to resolve a challenge to the Bible as a "[f]rivolous challenge[]" that the Superintendent should deny), and with School Board member Hightower (an October 13, 2022 text from Hightower advising the Superintendent to defend the Media Services Coordinator if attendees of the School Board meeting were to speak harshly about her). *See* T. Smith 000006-000010, ECF 126-1, Exh. 13 (pages 937–41 of pdf). These text messages have never been produced by Defendant, before or since the Smith production.

On August 29, 2024, Plaintiffs sent Defendant a deficiency letter identifying that they had "reason to believe that Defendant has not produced all the responsive communications from the individual board members' personal email accounts, cellphones, and social media accounts," and citing to the text messages (dated August 30, 2022 and October 11, 2022) produced by Dr. Smith between himself and Board Chair Kevin Adams. ECF 126-1, Exh. 15, at 2 (page 953 of pdf).

After a series of deficiency communications and meetings about these communications, *see* ECF 126-1, Exh. 15 at 2-3 (pages 953–54 of pdf); ECF 126-1,

¶¶ 21–24, Exs. 18, 19 (pages 978, 981), Defendant agreed to conduct a second search for School Board members' personal communications using agreed search terms. ECF 141-1, ¶¶ 6-7. On October 3, 2024, the parties agreed on parameters for a search of School Board member communications. ECF 141-1 ¶ 8. This second search was to be conducted with each School Board member along with defense counsel or a paralegal. ECF 141-1, Exh. 1 (page 10 of pdf). No forensic search of any School Board member's device has been performed.

On October 16, 2024, Defendant produced documents after this second search—a total of 127 documents, each showing a screenshot of messages, ECF 141-1 ¶ 6, despite the School Board's protestations that its members do not use their personal devices to conduct School Board business. Plaintiffs noted a number of deficiencies with this production, but among the most troubling issues, Defendant produced only two text messages for School Board Chair Kevin Adams and failed to produce the plainly responsive text message threads with Mr. Adams and Ms. Hightower previously produced by former Superintendent Smith. ECF 141-1, Exh. 9, at 3 (page 55 of pdf).

On October 22, 2024, Plaintiffs outlined deficiencies related to the production of School Board member communications from personal accounts and devices. Defendant provided no response to these deficiencies until Defendant was finally available to meet and confer on October 28, 2024. ECF 141-1 ¶ 20. It was only

during this conference, when Plaintiffs expressly asked why Defendant had not produced text messages from Mr. Adams, that Defendant shared for the first time—despite the months-long discussion regarding School Board member personal device communications, and after Defendant first claimed there were no such relevant communications—that Mr. Adams had allegedly dropped his phone in the ocean, Defendant could not access the text messages that were on that phone, and that Defendant was trying to locate the device. *Id.* Further, when asked, Defendant could not confirm whether or when a litigation hold had been issued to Mr. Adams. *Id.* ¶ 23.

On October 28, 2024, Plaintiffs filed a Motion to Compel Discovery related, in part, to the issues with Defendant's production of School Board member communications. ECF 141, at 10–17. Following Plaintiffs' filing of their Motion to Compel, the parties met and conferred about the disputed discovery. As part of those discussions, on November 5, 2024, Defendant responded to Plaintiffs' request for more details regarding Mr. Adams's phone damage and whether his communications were recoverable. Defendant stated that on December 9, 2023, Mr. Adams dropped his phone in the ocean while on a boat, and that "the data was not able to be transferred from the phone because of the damage caused by the saltwater." N. Smith email to C. Warren, Nov. 6, 2024, Exh. 3. Plaintiffs asked Defendant to confirm if

and when a litigation hold was put in place, to which Defendant responded "[a] litigation hold was not sent to Mr. Adams." *Id.*

On November 7, 2024, Defendant filed its Response to Plaintiffs' Motion to Compel Discovery, ECF 148, arguing that there is no reason to suggest Mr. Adams spoliated text messages. As part of that Response, Mr. Adams provided a Declaration stating that he attempted to recover the phone but he is "not very good with these kind of technology issues" and noting that "sometime in the Spring of this year," counsel asked him to search his phone for text messages related to this lawsuit. ECF 148-1, ¶¶ 7–8. Mr. Adams did not mention whether counsel had contacted him about preserving these messages at any earlier date.  On November 18, 2024, the Court entered an Order on Plaintiffs' Motion to Compel, granting their request for the School Board to produce sufficient messages in the text chain, but denying the Plaintiffs' motion in all other respects. ECF 154.

At no point has counsel clarified which of Mr. Adams's phones were searched—his county-issued phone or his personal phone. Plaintiffs likewise do not know if the phone that fell in the ocean was Mr. Adams's personal or county-issued phone.

### III.   <u>ARGUMENT</u>

"Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim.

Sanctions for spoliation serve three distinct remedial purposes: punishment, accuracy, and compensation." *United States ex rel. Koch v. Koch Ind., Inc*., 197 F.R.D. 488, 490 (N.D. Okla. 1999). Rule 37(e) provides two avenues for imposing sanctions on parties who fail to take reasonable steps to preserve electronically stored information ("ESI"). Fed. R. Civ. P. 37(e). To warrant sanctions, the court must determine the ESI (1) should have been preserved, (2) is now lost, and (3) "cannot be restored or replaced through additional discovery." *Id.* Additionally, the loss must have been caused by the party's "fail[ure] to take reasonable steps to preserve it." *Id.*

The type of sanctions available depends upon the spoliating party's intent. If the loss of information prejudiced an innocent party, but there is no bad faith or intent to deprive the party of the information, the court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). However, the court may award harsher sanctions, including an adverse inference, if it finds "that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). If the spoliating party acted with such intent, the injured party need not prove it was prejudiced to warrant 37(e)(2) sanctions, including an adverse inference. *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023).

Adverse inferences range in severity. *In re Skanska USA Civ. Se., Inc.*, 340 F.R.D. 180, 191 (N.D. Fla. 2021); *In re Boston Boat III, LLC*, 310 F.R.D. 510, 514–15 (S.D. Fla. 2015). A mandatory adverse inference requires the jury to accept certain facts as admitted and true. *In re Skanska*, 340 F.R.D. at 191. A second type creates a mandatory, but rebuttable, presumption. *Id.* And the final, least harsh, type of adverse inference is permissive—it allows the jury to presume the evidence is relevant and favorable to the innocent party while considering rebuttal evidence. *Id.*

Plaintiffs should be granted a mandatory adverse inference under Rule 37(e)(2) because (1) Defendant's counsel failed to put a litigation hold in place or take any reasonable steps to preserve ESI; (2) School Board Chair Adams failed to preserve ESI on his cell phone; and (3) the evidence shows that Defendant failed to preserve the evidence with the intent to deprive Plaintiffs of such personal communications.

Alternatively, if this court finds Defendant's actions were merely negligent, Defendant should be sanctioned under Rule 37(e)(1) because the loss of School Board Chair Adams's personal communications prejudiced Plaintiffs.

## A. Defendant failed to take any steps to preserve ESI, resulting in loss of the evidence.

Defendant and Defendant's counsel failed to take any steps to preserve relevant ESI. For the seven months following service of the Complaint, the School Board took no steps to preserve the cell phone data and allowed Mr. Adams to "just

assume[]" everything on his phone was backed up to the cloud. ECF 148-1 ¶ 7. Further, Defendant's counsel did not implement a litigation hold. Counsel's failure to take any steps to preserve ESI, let alone reasonable ones, caused text messages to be lost from Mr. Adams's personal device when he allegedly dropped it in the ocean seven months after Plaintiffs' Complaint was filed. This spoliation occurred more than two months after Plaintiffs' served their first discovery requests, ECF 126-1, Exh. 2 (page 20–36 of pdf), and nearly two years after Defendant's earliest communications claimed as protected by the work product privilege. *See* Defendant's Privilege Log, ECF 141-1, Exh. 7 (pages 37–49 of pdf) (identifying communications dating as far back as Feb. 1, 2022 as protected by work product privilege). This is unreasonable.

First, as for Defendant's failure, a defendant may not "shield itself from discovery obligations by keeping its employees ignorant." *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1279 (M.D. Fla. 2009) (citation omitted) (granting adverse inference jury instruction where defendant failed to implement litigation hold or do anything to ensure employees complied with legal obligations to preserve evidence). Nor may a defendant shield itself from discovery obligations by claiming no responsive communications exist before it bothers to check. *See Skanska*, 75 F.4th at 1313 (upholding trial court finding of bad faith based on defendant's discovery behavior, including misrepresenting to the court that no documents were destroyed

before even bothering to check whether cell phone data was available). Defendant failed to alert the School Board members of their duty to preserve evidence and Mr. Adams failed to confirm his data was preserved and instead simply assumed it was.

The Eleventh Circuit has recognized that a party's sophistication with regard to litigation should be considered when evaluating the reasonableness of the steps it took to preserve evidence. *Id.* at 1313–14 (quoting 2015 Committee Notes on Rule 37(e)). It does not take much sophistication to know that a party to a lawsuit has an obligation to preserve evidence that is relevant to the case. As a public school board responsible for creating policies to implement state laws, the Board is certainly a sophisticated entity with knowledge of the legal process. Moreover, as elected officials, the School Board understands that its communications are matters of public record and therefore it was under an obligation to preserve those records. At bare minimum, upon receipt of the Complaint, the School Board was on notice to preserve its communications, including backing up School Board members' phones.

It is no excuse that Mr. Adams is "not very good with these kind of technology issues," ECF 148-1 ¶ 7, nor is it any excuse that Defendant has consistently maintained that School Board members did not conduct School Board business on their personal devices. ECF 148 at 3. This is especially true where, as Plaintiffs can now demonstrate, the evidence shows that School Board members do indeed conduct School Board business on their personal devices. *See* ADAMS 001–068, Exh. 4.

As soon as a case is filed or litigation can be reasonably anticipated, *Gaff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009), the first and most basic step a party must take is to back up cell phone data to the device's cloud network. *See Freeman v. Giuliani*, 691 F. Supp. 3d 32, 55 (D.D.C. 2023) (collecting cases) ("With respect to preserving ESI on phones or other electronic devices, courts have normally held that litigants must prevent destruction of ESI on such devices by backing up the data to that device's cloud network."). Defendant not only failed to meet, but ignored, its obligation to preserve its ESI. Further, if Mr. Adams' messages were not preserved or uploaded to the cloud beforehand, there is no reason to believe the other School Board members' messages were either.  In light of the School Board's obfuscation on whether the School Board members used their personal devices, the nonexistent litigation hold, and agreement to even to a cursory search only in the last few days before the end of discovery, the Court can presume the School Board members did not identify all relevant communications.

Second, as for Defendant's counsel, they argue that a litigation hold was unnecessary because, as elected constitutional officers, the School Board members understood that their records, including those created and maintained on personal devices or accounts, are matters of public record and therefore they were under an obligation to preserve those records. *See* N. Smith Email to C. Warren, Nov. 6, 2024, Exh. 3. This is a misunderstanding of the law. Simply because a party is subject to

an existing retention obligation does not mean that a litigation hold is not required. *See, e.g.*, *Jonathan R. v. Justice*, No. 3:19-cv-00710, 2024 U.S. Dist. LEXIS 56489, at *8–9 (S.D.W. Va. Mar. 28, 2024) (quoting from litigation hold issued by West Virginia Department of Health and Human Services that states "[t]his litigation hold SUPERSEDES any and all other formal or informal record retention policies, destruction policies, and business practices"); *United States ex rel. Baker v. Cmty. Health Sys.*, No. 05-279, 2012 U.S. Dist. LEXIS 144892, at *5 (D.N.M. Oct. 3, 2012) (affirming magistrate judge's ruling that "the Government was culpable for its failure to issue a timely and an adequate litigation hold, and recommended sanctions").

Defendant's counsel's failure to issue a litigation hold and Defendant's failure to preserve relevant ESI through backing up Mr. Adams's phone resulted in the loss of relevant, and likely, valuable evidence. As a result, the first requirement under Rule 37(e)—"electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it"—is satisfied.[2]

---

[2] The School Board members' failure to take any steps to preserve this information, or to provide it to the School Board as the public record custodian, demonstrates that this alleged preservation obligation was inadequate. Moreover, even where a litigation hold has been issued, mere issuance of the hold is insufficient; parties are required to take affirmative steps to preserve evidence. *Skanska*, 75 F.4th at 1312 ("But even with an active litigation hold—and then active litigation—Skanska did not back up its employees' cell phones.").

**B. The lost evidence cannot be replaced through further discovery.**

Defendant's failure to implement a litigation hold or take any steps to preserve Mr. Adams's phone data caused the loss of ESI that cannot be replaced or restored. *Living Color Enters. v. New Era Aquaculture Ltd*., No. 14-cv-62216, 2016 U.S. Dist. LEXIS 39113, at *15 (S.D. Fla. Mar. 22, 2016) ("[T]he missing text messages between Defendant and certain individuals cannot be restored or replaced through additional discovery.").

The essence of Plaintiff's First Amendment claims are that the School Board restricted or removed books based on viewpoint discrimination. ECF 27. As evidenced by the few text messages with Mr. Adams that Defendant has produced, as well as his social media messages, those communications provide important circumstantial evidence of the discriminatory motives of the School Board members voting to remove or restrict books. *See* ADAMS 001–068, Exh. 4. Defendant's counsel commented at a November 13, 2024 meet and confer that the destroyed messages were, they assumed, of the same nature of the messages they had already produced, making the destroyed messages cumulative. Agarwal Decl. ¶ 3. This does not change Defendant's obligation or the facts surrounding spoliation. Moreover, the fact that some of these text messages have been produced by third parties does not change the conclusion that an unknown number of other messages were lost. *Skanska*, 75 F.4th at 1313 ("While some of the lost text messages were discoverable

through other Skanska employees' text messages, others were not."). Nor is Plaintiffs' ability to depose the School Board members an adequate substitute for the text messages themselves. "[I]t should go without saying that deposing workers well after an event is not a perfect substitute for reviewing their contemporaneous text messages." *Id*.[3]

Because the lost ESI from Mr. Adams's cell phone cannot be restored or replaced, and the text messages were lost as a result of Defendant's failure to take reasonable steps to preserve the ESI, the first two requirements of Rule 37(e) have been satisfied.

### C. Defendant's failures warrant an inference of bad faith.

Bad faith should be inferred from Defendant's complete failure to do the bare minimum of issuing a litigation hold on clearly relevant communications and the failure to ensure School Board members' phones were backed up to the cloud network or otherwise preserved. This inference is further supported by defense counsel's insistence that School Board members did not use their personal devices for School Board communications, despite the fact that such communications have been found. Defendant's actions are even more egregious because Defendant and

---

[3] Defendant stated it intends to appeal the Court's order allowing the depositions to proceed. If that order is reversed, Plaintiffs will not even have that opportunity to develop evidence of discriminatory motive, rendering the messages even more important.

defense counsel made this assertion before checking the School Board members' phones. *Skanska*, 75 F.4th at 1313 (finding egregious Skanska's representation that relevant documents had not been destroyed "before Skanska had even bothered to check"). In a sudden switch, Defendant now admits that School Board members can be contacted on their personal devices by any member of the public due to their status as public officials. ECF 148, at 10. Plaintiffs also discovered that during School Board meetings, School Board members invited members of the public to contact them, and, at least Mr. Adams, shared his phone number and email on social media so that members of the public could contact him about School Board matters. Adams's Facebook Post, Exh. 5.

This deceptive behavior goes beyond negligence—Defendant intended to deprive Plaintiffs of School Board members' communications on their personal devices. *Id.* at 1312 ("[I]ntent to deprive" is the equivalent to a finding of bad faith, which generally means destruction of evidence for the "purpose of hiding adverse evidence." (emphasis omitted)). As is the case here, a court may infer bad faith where there is no logical explanation for the failure to make any effort to preserve the data and the spoliating party engages in egregious discovery behavior like making representations about the evidence's existence without checking whether such representation is true. *Id.* at 1313–14.

In *Skanska*, the Eleventh Circuit upheld a district court's finding of bad faith where the spoliating party "took no action" to back up employees' cell phones or to educate employees about the litigation hold. *Id.* at 1313. Even without direct evidence of bad faith, the party's "utter failure to implement even the most basic data-protection safeguards [was] egregious—so egregious that an inference of bad faith [was] easy to make." *Id.*

Here, that inference is equally easy to make because, first, Defendant's counsel failed to even issue a litigation hold or instruct School Board members to back up their cell phone data—an even greater failure than that of the spoliating party in *Skanska*. Second, Defendant's counsel falsely claimed there were no responsive text messages on School Board members' personal devices until more than sixteen months into this litigation when a third party witness disclosed text messages contradicting the School Board's claim.

With regard to the litigation hold, Plaintiffs filed their Complaint on May 17, 2023. According to defense counsel, they did not issue a litigation hold to School Board members at that time. *See* N. Smith email to C. Warren, Nov. 6, 202024, Exh. 3. Nearly five months later, on October 16, 2023, Plaintiffs requested *all* documents and communications, including text messages, to or from School Board members concerning book challenges, book restrictions, and book removals. ECF 126-1, Exh. 2 (pages 20–36 of pdf), Requests 1–3, 17–19. Defense counsel still did not issue a

litigation hold or instruct Board members to back up the data on their personal cell phones. *See* N. Smith email to C. Warren, Nov. 6, 202024, Exh. 3. Despite "understand[ing] that records created in connection with the transaction of [his] official School Board member duties are public records, even if maintained on an individual School Board member's personal device or account," ECF 148-1 ¶ 12, neither Mr. Adams nor defense counsel took any steps to back up his text messages to the cloud in the five months since this litigation began. Instead, Mr. Adams "just assumed" it would be backed up. *Id.* at ¶ 7.

Nearly two months later and seven months into this litigation, Mr. Adams allegedly dropped his phone in the ocean. *Id.* at ¶ 4. The unpreserved communications were lost. *Id.* at ¶ 5.

Like in *Skanska*, Defendant's counsel's failure to even issue a litigation hold, let alone take affirmative action to back up the School Board members' phones, constitutes an "utter failure to implement even the most basic data-protection safeguards" and is "so egregious that an inference of bad faith is easy to make." 75 F.4th at 1313. Indeed, this case is more egregious than *Skanska*. In *Skanska*, the defendant did put a litigation hold in place but failed to educate its custodians about it. *Id.* Here, no litigation hold was put in place at all. In *Skanska*, the defendant made no effort to preserve cell phones, which were later destroyed. *Id.* The same conduct (or lack of conduct) occurred here.

It is especially easy to infer bad faith given Defendant's misrepresentations that School Board members do not use their personal devices for School Board business. *Skanska* explained that when defendants engage in egregious discovery behavior, including making inaccurate representations to the court before it bothers to check if the information is true, an inference of bad faith is appropriate. *Id.* Here, Defendant repeatedly refused to search for or produce communications on School Board Members' devices until May 24, 2024. *See* N. Smith email to O. Lev, May 24, 2024, ECF 126-1, Exh. 11 (blue text, page 923 of pdf). Plaintiffs only learned text messages existed when they deposed former School Superintendent Dr. Tim Smith, who produced text messages with Mr. Adams discussing a challenge to the Bible. *See* T. Smith 000006–000010, ECF 126-1, Exh. 13 (page 937–41 of pdf). In October 2024, Defendant finally produced 127 screenshots of text messages and social media communications between School Board members or with members of the public from School Board members' personal devices. ECF 141-1 ¶ 6. But this production, of course, does not include the missing data from Mr. Adams's old phone. This flip flopping of positions and Defendant's clear and continuous misrepresentations about School Board members' use of personal devices can only be interpreted as a bad faith effort to hide adverse evidence from Plaintiffs. Because Defendant acted in bad faith, Plaintiffs are entitled to an adverse inference instruction under Rule 37(e)(2).

**D. Defendant's conduct has caused prejudice to Plaintiffs, warranting sanctions under Rule 37(e)(1)**

If the Court does not find that an inference of bad faith is warranted here, Defendant should still be sanctioned under Rule 37(e)(1) because the loss of communications from Mr. Adams' cell phone prejudiced Plaintiffs. Rule 37(e)(1) allows the court to impose sanctions "no greater than necessary to cure the prejudice" caused by the loss of information resulting from a party's failure to take reasonable steps to preserve ESI.

Rule 37(e)(1) does not specify which party has the burden of proving or disproving prejudice or how to best assess prejudice in each case; rather, it leaves that discretion with the judge. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "[I]n spoliation cases, the prejudiced party should not be held to too strict a standard of proof regarding the probable contents of the destroyed evidence 'because doing so allows the spoliators to profit from the destruction of evidence.'" *Nationwide Life Ins. Co. v. Betzer*, No. 5:18-cv-39-Oc-30, 2019 U.S. Dist. LEXIS 194165, at *28 (M.D. Fla. Oct. 28, 2019) (quoting *Se. Mech. Servs. v. Brody*, 657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009)). Florida district courts generally find a party has been prejudiced "where documents that are relevant to a claim are unavailable and the moving party has come forward with a plausible, good faith suggestion as to what the evidence might have been." *Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237-Orl-78, 2021 U.S. Dist. LEXIS 37008, at *15 (M.D. Fla.

26

Feb. 10, 2021) (finding prejudice where forensic search showed missing text messages were from other defendants, so missing messages "would likely contain relevant information which would support Plaintiffs' claims"); *see also Betzer*, 2019 U.S. Dist. LEXIS 194165, at *31, 33 (finding prejudice and bad faith where forensic expert opined that 25% of potentially relevant information was lost from [one computer belonging to a defendant] and 97% . . . was lost from" another); *Doe v. Willis*, No. 8:21-cv-1576-VMC, 2023 U.S. Dist. LEXIS 64370, at *39–40 (Apr. 12, 2023) (finding defendant was prejudiced by plaintiff's loss of cell phone, where defendant argued missing text messages could contradict plaintiff's testimony). This approach recognizes that "[t]ypically, only the spoliator knows how much prejudice has been caused by the destruction." *Betzer*, 2019 U.S. Dist. LEXIS 194165, at *31.

Plaintiffs were prejudiced by the loss of an unknown number of text messages on Mr. Adams's cell phone and the School Board's conduct of misrepresenting School Board members' use of their personal devices. Plaintiffs' claims include that the School Board removed or restricted books based on disagreement with the books' messages. ECF 27. The School Board's motivations for the removals and restrictions are thus essential to Plaintiffs' claims.

It is clear School Board members used their personal devices to communicate with Vicki Baggett, with each other, and with other community members about the books' content and challenges. For instance, Mr. Adams used his personal device to

confer with Ms. Baggett about upcoming meeting agendas and pulled the summer reading list from the consent agenda when Ms. Baggett claimed some books on it were not appropriate. ADAMS 044-045, Exh. 4. After a twenty-minute phone call, Ms. Baggett messaged that the problem with the books was not that they contained graphic sex but that they contained "lesbian, gay and nonbinary relationships." *Id.* Mr. Adams replied that he would still pull the item from the consent agenda to be discussed, to which Ms. Baggett replied, "The cisgender and nonbinary crap is alarming, but it is typical," to which Mr. Adams responded with a thumbs up. *Id.*

Mr. Adams further used his personal device to ensure Ms. Baggett and her "Book Disciples" group would attend certain meetings. *See* ADAMS 049, Exh. 4. Clearly, though he denied it for seven months, Mr. Adams used his personal devices to send and receive text messages relating to the book challenges, restrictions, and removals. Only once he was caught in his lie, did he "discover" that some of those messages had been lost. Given Defendants' prior statements, it seems likely the missing text messages would show more communications with Ms. Baggett and others regarding the book challenges.

Plaintiffs cannot know how many relevant text messages were lost. But given his use of his personal device to collaborate with Ms. Baggett about book challenges, restrictions, and removals, and his regular sharing of Facebook videos and articles

by message, the lost text messages very likely would have contained similar, if not more compelling, evidence of Mr. Adams's viewpoint discrimination.

Any one of the lost messages could have been the smoking gun that showed Mr. Adams voted to remove these books because he disagreed with their message, and not for constitutional reasons. *See Willis*, 2023 U.S. Dist. LEXIS 64370, at *38–40 (finding prejudice where plaintiff asserted a "single [lost] text message alone could have been 'smoking gun' evidence" reflecting on plaintiff's credibility, which was essential to her sexual battery claim). Plaintiffs have presented a "plausible, good faith suggestion as to what the evidence might have been," *Classic Soft Trim*, 2021 U.S. Dist. LEXIS 37008, at *15, and have established prejudice.

Additionally, Plaintiffs have suffered prejudice in their discovery strategy from the School Board's consistent misrepresentations of how School Board members use their personal devices. Based on defense counsel's representations, Plaintiffs were unable to comprehensively prepare to depose certain witnesses. For instance, Plaintiffs' primary third-party witness Victoria Baggett claimed she only texted Mr. Adams once or twice. Baggett Dep. Tr. 79:2–80:20, Exh. 6. We know now that is not true because after seven months and a motion to compel discovery, Defendant finally turned over close to twenty screenshots of messages between Mr. Adams and Ms. Baggett. *See, e.g.*, ADAMS 024-027, ADAMS 032-34, ADAMS 041-53, ADAMS 066, Exh. 4. Because the School Board misrepresented the

existence and delayed the production of these text messages, Plaintiffs were unable to depose Ms. Baggett with a full understanding of the facts.

As a result, Defendant at minimum prejudiced Plaintiffs by its failure to preserve ESI and Defendant should be sanctioned for such conduct.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff hereby requests the following relief:

    i.    An adverse inference that the spoliated text messages on Mr. Adams' phone were favorable to Plaintiffs and that Mr. Adams voted to remove or restrict the books at issue in this case for viewpoint discriminatory reasons;

    ii.    Require the School Board to conduct a forensic search of Board members' personal devices within 15 days;

    iii.    Allow Plaintiffs to depose the Board members about their document preservation efforts (whether or not the court's determination that their votes to remove books was an administrative act is upheld on appeal) and any deleted communications; and

    iv.    Attorneys' fees and costs for the filing of this motion.

Respectfully submitted,


Dated: November 26, 2024                    */s/ Lynn B. Oberlander*

Lynn B. Oberlander*
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942

Mike Kilgarriff*
Catherine J. Warren*
**BALLARD SPAHR LLP**
1225 17th Street, Suite 2300
Denver, CO 80202
Telephone: 303.292.2400
Facsimile: 303.296.3956

Matthew G. Kussmaul*
Facundo Bouzat*
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8500
Facsimile: 215.864.8999

Kirsten Fehlan*
**BALLARD SPAHR LLP**
999 Peachtree Street, Suite 1600
Atlanta, GA 30309
Telephone:678.420.3000
Facsimile: 678.420.9401

Goldie Fields*

**BALLARD SPAHR LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA 90067
Telephone: 424.204.4338
Facsimile: 424.204.4350

Shalini Goel Agarwal (FBN 90843)
Ori Lev*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave. NW, Suite 163
Washington, DC 20006
Telephone: 202.579.4582
Facsimile: 929.777.8428

*Admitted pro hac vice*

*Attorneys for Plaintiffs*