## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PEN AMERICAN CENTER, INC.,
SARAH BRANNEN, BENJAMIN
GLASS, on behalf of himself and his
minor child, GEORGE M.
JOHNSON, DAVID LEVITHAN,
KYLE LUKOFF, ANN
NOVAKOWSKI, on behalf of herself
and her minor child, PENGUIN
RANDOM HOUSE LLC, SEAN
PARKER, on behalf of himself and
his minor child, ASHLEY HOPE
PÉREZ, and CHRISTOPHER
SCOTT SATTERWHITE, on behalf
of himself and his minor child,

     Plaintiffs,

vs.

ESCAMBIA COUNTY SCHOOL
BOARD,

     Defendant.

_____ /

CASE NO.:  3:23-CV-10385-TKW-ZCB

## NON-PARTY CARISSA BERGOSH'S MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3), non-party Carissa Bergosh ("Ms. Bergosh"), by and through undersigned counsel, hereby files this Motion to Quash Subpoena and Motion for Protective Order, and in support states:

## I.    <u>BACKGROUND</u>

This case arises from the Escambia County School Board's ("Board") decisions to either remove or restrict access to certain books from the libraries in the Escambia County School District ("District"), and Plaintiffs' subsequent challenge to these actions. [D.E. 219]. Plaintiffs allege violations of their First Amendment rights based on purported viewpoint discrimination, violation of an alleged right to receive information in public schools, and their due process rights based on the Board's actions. *Id.* at ¶¶ 228–48.

As the Court is well aware, Plaintiffs have, in relation to their claims, sought to depose three of the Board's current members as well as two former members who were Board members during events relevant to this matter ("original Board members"). The original Board members opposed Plaintiffs' efforts, seeking a protective order and to quash the subpoenas served on them. The Court denied those motions, which are now the subject of an appeal. *See generally* [D.E. 226, 227].

The original Board members' current appeal is the second for this issue: the Board and the original Board members previously took an interlocutory appeal of this Court's earlier order denying their requests for a protective order, pursuant to 28 U.S.C. § 1291 and *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015). [D.E. 157]; *see also Pen Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, No. 24-13896 (11th Cir.).

After briefing, the Eleventh Circuit dismissed the appeal for lack of jurisdiction, finding neither the Board nor original Board members had standing. [D.E. 192].

After the Eleventh Circuit issued its decision, and during discussions with Plaintiffs' counsel pursuant to this Court's order on case management and how to proceed with the matter, [D.E. 193], the undersigned indicated their intent to file new motions for protective order and/or to quash—this time on behalf of the original Board members—and to reassert the legislative privilege. During this conferral, the undersigned inquired as to whether Plaintiffs' counsel sought to depose the two new Board members who had since been elected during the pendency of this litigation: Carissa Bergosh and Tom Harrell ("new Board members").[1] Plaintiffs' counsel indicated they did not seek to depose the new Board members, and memorialized their intent to only depose "the 5 Board members previously noticed," i.e., the original Board members, as well as the renewed depositions of the Board's Superintendent and Federal Rule of Civil Procedure 30(b)(6) witness, and the Rule 30(b)(6) witness of Plaintiff Pen American Center Inc. *See* July 28, 2025 Email from Ori Lev, **attached as Exhibit A**.

---

[1]     *See* Escambia County Public Schools, *District 4, Carissa Bergosh*, https://www.escambiaschools.org/district-leadership/school-board/district-4-carissa-bergosh (reflecting Ms. Bergosh's election to the Board in November 2024); Escambia County Public Schools, *District 5, Tom Harrell*, https://www.escambiaschools.org/district-leadership/school-board/district-5-tom-harrell (similarly reflecting Mr. Harrell's election to the Board in 2024).

Pursuant to the Court's order, [D.E. 193], the Parties filed separate proposed case management schedules. Plaintiffs' schedule confirmed what they had previously represented to the undersigned: that they sought leave to file a supplemental or amended complaint, but that "Plaintiffs do not intend to promulgate any additional discovery requests in connection with the supplemental complaint." [D.E. 197 at p. 4]. Rather—and in line with their previous correspondence—the only "outstanding depositions" Plaintiffs sought to complete were the Board's Superintendent, its Rule 30(b)(6) witness, "and taking the depositions of the Board members *that were the subject of the recently dismissed appeal*." *Id.* at p. 5 (emphasis added).

At the following case management conference with the Court to discuss the Parties' proposed schedules, Plaintiffs reiterated that by amending or supplementing their claims, "[w]e don't believe it expands the scope of discovery." [D.E. 207 at 7:22–7:23]. The undersigned pointed out the fact that, "with the passage of time, we don't even have the same decision-makers. There have been two board members that have retired. Two new ones that were elected. So we have a new board." *Id.* at 9:16–9:19. But while Plaintiffs' counsel identified the new Board members as custodians from whom they sought ESI in relation to discovery, *id.* at 39:09–39:10, at no point did they amend their previous representation that they were only seeking depositions of the original Board members or notify the Court that they would be seeking to

depose the new Board members in addition to the original ones. *See generally id.* Given this, the Court's supplemental scheduling order unsurprisingly does not reference any depositions of the new Board members. [D.E. 200].

The original Board members then proceeded to file motions for protective order and to quash. [D.E. 210, 212–15]. Plaintiffs responded in opposition, [D.E. 225], and on September 8, 2025, the Court denied the motions on the merits for the same reasons as before, *see* [D.E. 155], while nonetheless finding them procedurally proper and timely. *See* [D.E. 226].

Then, on September 19, 2025, after the Court denied the original Board members' motions—and despite their numerous representations to the undersigned and the Court to the contrary—Plaintiffs served a notice of taking deposition of Ms. Bergosh, **attached as Exhibit B**. After further correspondence between counsel in which the undersigned insisted Plaintiffs also serve subpoenas on the new Board members, Plaintiffs served subpoenas on them on September 30, 2025, **attached as Exhibit C**. Plaintiffs' counsel acknowledged that the dates in the notices of taking depositions and subpoenas were placeholders, anticipating the instant Motion as well as one that is being contemporaneously filed by Mr. Harrell.

It is the undersigned's understanding that, in seeking to depose Ms. Bergosh, Plaintiffs do not intend to alter or expand the scope of discovery per the Court's supplemental scheduling order, or otherwise alter the briefing deadlines contained

therein. *See* [D.E. 200]. Thus, similar to the original Board members, Ms. Bergosh now seeks a protective order from this Court, as well as an order quashing Plaintiffs' subpoena. Ms. Bergosh asks the Court find she is protected by the legislative privilege and preclude her compelled testimony in this case. Should the Court deny Ms. Bergosh's Motion, she would ask the Court stay her deposition so that she may take an appeal of the Court's ruling, similar to the original Board members.

## II.    MEMORANDUM OF LAW

### A. Legal standard.

Federal Rule of Civil Procedure Rule 26(c)(1) allows "any person" from whom discovery is sought to move for a protective order, which may be granted for good cause. *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020). "Rule 26(c) gives the district court discretionary power to fashion a protective order." *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). Under the "good cause" standard, the Court must balance the competing interests of the parties and has broad discretion in determining whether a protective order is warranted. *Odom*, 337 F.R.D. at 362. Rule 26 protects those from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Good cause exists to prevent Plaintiffs from taking the deposition of Ms. Bergosh pursuant to the legislative privilege.

Rule 45(d)(3), in turn, states that "[o]n timely motion," the Court "must quash or modify a subpoena that" "requires disclosure of privilege or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also In re Hubbard*, 803 F.3d at 1307. The Eleventh Circuit allows non-parties such as Ms. Bergosh to file motions to quash based on the assertion of a governmental privilege. *See In re Hubbard*, 803 F.3d at 1307–08.

Plaintiffs' notice of taking deposition lists October 10, 2025, as the date Ms. Bergosh's deposition shall commence, which Plaintiffs acknowledge was a placeholder. *See* Ex. B. Same for the subpoena. *See* Ex. C. Ms. Bergosh's Motion is therefore timely under Rules 26 and 45. *See CCB LLC v. Banktrust*, No. 3:10cv228/LAC/EMT, 2010 WL 4038740, at *1 (N.D. Fla. Oct. 14, 2010); *Kanter v. Cont't Airlines, Inc.*, 2010 WL 11601555, at *2 (S.D. Fla. Apr. 16, 2010); *Morock v. Chautauqua Airlines, Inc.*, No. 8:07-cv-210-T-17-MAP, 2007 WL 4322764, at *1 (M.D. Fla. Dec. 11, 2007).

**B. This Court should find the legislative privilege protects Ms. Bergosh.**[2]

   *i.  Ms. Bergosh is covered by the legislative privilege.*

---

[2] Ms. Bergosh adopts and restates herein the Board's arguments from its renewed motion for protective order concerning legislative privilege. *See generally* [D.E. 107]. To the extent it is relevant and helpful to the Court's review, Ms. Bergosh also incorporates herein the arguments from the hearing before the magistrate judge, [D.E. 133], and this Court, [D.E. 156], the briefing filed before the Eleventh Circuit, *see Pen Am. Ctr., Inc.*, No. 24-13896, Doc. 23 at pp. 37–54 (Feb. 6, 2025); *id.* Doc. 39 at pp. 22–27 (Apr. 18, 2025), as well as the motions filed by the original Board members. [D.E. 210, 212–15].

The concept of legislative privilege against testifying is well-established in federal courts. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977). As the Supreme Court has recognized, "judicial inquiries" into the motivations underlying legislative decisions "represent a substantial intrusion into the workings of other branches of government." *Id.* at 268 n.18. This privilege has been described as protecting officials from having "to testify in [a] civil case about the reasons for their votes." *Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012).

In recognizing such a privilege for state legislators in *Florida*, this Court denied a motion to compel legislators and their staff to appear for depositions. *See id.* ("The privilege is broad enough to cover all the topics that the intervenors propose to ask [the legislators] and to cover their personal notes of the deliberative process."); *see also Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1343–44 (11th Cir. 2023) (noting legislative privilege extends to discovery requests, including requests for factual information). Nothing here compels a different result.

As this Court has explained, "legislative immunity and privilege are parallel concepts, and the privilege exists to safeguard the immunity." *Florida v. Byrd*, 674 F. Supp. 3d 1097, 1103 n.2 (N.D. Fla. 2023) (citation modified); *In re Hubbard*, 803 F.3d at 1310 (noting the "importan[ce]" of the legislative privilege). And it does not matter to the existence of the legislative privilege that Ms. Bergosh is not a party to

suit, as the privilege applies even if she has not personally been sued. *In re Hubbard*, 803 F.3d at 1308 (citation omitted).

Given the parallel nature of these concepts, it only follows that just as legislative immunity attaches to local officials, *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), so too does legislative privilege. *See Byrd*, 647 F. Supp. 3d at 1103 n.2. Further, there is no reason to consider Ms. Bergosh—a duly elected constitutional officer, representing a local geographic area within the District—as falling outside the universe of local officials protected by the legislative privilege; she should therefore be protected from compelled depositions in this matter. *See, e.g.*, *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, Nos. 3:20-cv-01023, 3:21-cv-00038, 3:21-cv-00122, 2021 WL 5882653, at *4 (M.D. Tenn. Dec. 13, 2021) ("[T]he Court finds that the legislative privilege precludes the noticed depositions of the school board members . . . ."); *Cunningham v. Chapel Hill ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006) (protecting school board member from being deposed as to legislative act, finding "that the rationales for applying the testimonial privilege to federal, state, and regional legislators apply with equal force to local legislators," and such officials "are protected by the testimonial privilege from having to testify about actions taken in the sphere of legitimate legislative activity").

Any question as to whether the privilege can extend to Ms. Bergosh is dispelled given she is a duly elected official, who acted in legislative capacities in

service of her duties to the District. *Cf. Spallone v. United States*, 493 U.S. 265, 279 (1990) (noting legislative privilege is "derive[d]" "from the will of the people" (quoting *Coffin v. Coffin*, 4 Mass. 1, 27 (1808))). The Court should therefore find it is undisputed that Ms. Bergosh falls within the umbrella of officials afforded protection by legislative privilege.

  *ii.*  *The act of voting to remove or restrict books is legislative in nature.*

  "The legislative privilege protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *In re Hubbard*, 803 F.3d at 1310 (citation modified). Here, the Court should find that "the factual heart" of Plaintiffs' claims "and the scope of the legislative privilege [a]re one and the same." *Id.* at 1311.[3] That is, "[a]ny material, documents, or information [including testimony] that d[o] not go to legislative motive [are] irrelevant," and "any that d[o] go to legislative motive [are] covered by the legislative privilege." *Id. In re Hubbard*, which concerned a First Amendment retaliation claim, found as much and the Court should find likewise here given this is also a First Amendment matter. *Id.* at 1311–12.

  And as the Eleventh Circuit recently clarified in *Pernell*:

> The Supreme Court has *never* expanded the *Gillock* exception beyond criminal cases. For purposes of the legislative privilege, there is a fundamental difference between civil actions by private plaintiffs and

---

[3] The Court has already implicitly recognized as much, given its acknowledgment that the Board members' individual motives are relevant. [D.E. 98 at p. 4].

criminal prosecutions by the federal government. Although the legislative privilege does not presumptively apply in the latter kind of case, the presumption otherwise holds firm. *And it is insurmountable in private civil actions under section 1983.*

84 F.4th at 1344 (cleaned up) (emphases added). Like *In re Hubbard*, "[t]his is not a federal criminal investigation or prosecution." 803 F.3d at 1312. This is a civil matter under 42 U.S.C. § 1983, and thus "the presumption [of applying the privilege] holds firm." *Pernell*, 84 F.4th at 1344; *see also League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 456 (N.D. Fla. 2021) ("[M]erely asserting a constitutional claim is not enough to overcome the privilege.").

Given the Eleventh Circuit's description of the privilege as "unqualified" in civil matters, *Pernell*, 84 F.4th at 1341, it indisputably applies here. Plaintiffs have made clear they intend to depose Ms. Bergosh as to, inter alia, her "subjective states-of-mind," *Byrd*, 374 F. Supp. 3d at 1104, and the circumstances and motivations surrounding her decision to vote in favor, *vel non*, of removing or restricting certain books. *See, e.g.*, [D.E. 219 at ¶ 5 (alleging the Board is ordering books to be removed from libraries based on ideological reasons and engaging in viewpoint discrimination); D.E. 40 at 5–9 (Plaintiffs' Response in Opposition to the Board's Motion to Dismiss, recounting allegations of purported viewpoint discrimination with respect to Board's actions towards removed and restricted books); D.E. 95 at 15–16 (Plaintiffs' response in opposition to the Board's initial motion for protective

order, arguing the motivations of individual Board members are relevant and discoverable)].

These "topics strike at the heart of legislative privilege." *See Byrd*, 674 F. Supp. 3d at 1104. "The testimony Plaintiffs seek all relates to . . . thought processes, and decision making processes in voting [whether or not to remove or restrict access to the books at issue]." *Id.* (citation omitted). "The privilege thus 'applies with full force'" to Plaintiffs' sought testimony. *Id.* (quoting *In re Hubbard*, 803 F.3d at 1310).

Despite the unqualified and unequivocal manner in which the legislative privilege applies to Ms. Bergosh in this matter, Plaintiffs have argued the acts in question—voting to remove or restrict the books at issue—were not legislative in nature. *See* [D.E. 95 at pp. 8–13; 113 at pp. 4–12]. Not so. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. For example, certain personnel decisions are not considered legislative. *Forrester v. White*, 484 U.S. 219, 229–30 (1988). On the other hand, employment decisions "accomplished through traditional legislative functions such as policymaking and budgetary restructuring" are considered legislative. *Bryant v. Jones*, 575 F.3d 1281, 1306 (11th Cir. 2009) (quoting *Acevedo-Garcia v. Vera-Monroig*, 204 F.3d 1, 8 (1st Cir. 2000)). An analysis of the Board members' actions reveals their legislative nature.

Under Florida law, the Board "has the specific duty and responsibility [to be] responsible for the content of any materials made available in a school library." § 1006.28(2)(a)1., Fla. Stat. (cleaned up). The Board was thus required to "adopt a policy regarding an objection by a parent or a resident of the county to the use of a specific material, which clearly describes a process to handle all objections and provides for resolution." *Id.* § 1006.28(2)(a)2.[4] Pursuant to that duty, the Board was therefore required to offer a "resolution" when the books at issue were challenged. *Id.* Tellingly, however, the votes of each Board member, including Ms. Bergosh, were an act of individual discretionary policymaking because they implicated the priorities of the Board. *Bogan*, 523 U.S. at 55.

Within this statutory mandate, this cannot be considered an administrative act: the Board "in the furtherance of [its] dut[y]," *Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. May 1981),[5] pursuant to an established process, followed

---

[4] Section 1006.28(2)(a)2.b. specifically references "material[s] . . . made available in a school library." The statute further requires any material which a school board finds "contains prohibited content under [section 1006.28(2)(a)2.b.] shall [be] discontinue[d] [from] use . . . [either entirely if discontinued under sub-sub-paragraph b.(I) or] for any grade level or age group for which such use is inappropriate or unsuitable [if discontinued pursuant to sub-sub-paragraphs b.(II)–(IV)]." *Id.* To 'discontinue' therefore means the book can no longer be offered or provided, that is, it must be removed, and its access cut off. *See, e.g.*, *Discontinue*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/discontinue ("to stop doing *or providing something*" (emphasis added)); *Discontinue*, Britannica Dictionary, https://www.britannica.com/dictionary/discontinue ("to stop making or offering").

[5] Decisions of the Court of Appeals for the Fifth Circuit decided prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)

the law of the State of Florida, and provided the statutorily required resolutions. *See Schlegel v. Koteski*, 307 F. App'x 657, 660 (3d Cir. 2009). These votes to remove or restrict certain books were prospective in that they were forward-looking because they resulted in removal/restriction of the books in question for the indefinite future, and therefore "had a substantial nexus to the legislative process." *Bryant*, 575 F.3d at 1306. And they had general application because the Board's decisions applied to the entirety of the District, all students and schools alike. *See Crymes v. DeKalb Cnty.*, 923 F.2d 1482, 1485 (11th Cir. 1991).

Just as the decision to remove a road from a list of truck routes was "probably legislative in nature," *id.*, or how eliminating a public employment position "may have prospective implications that reach well beyond the particular occupant of the office," *Bogan*, 523 U.S. at 56, so too is the decision to vote to remove or restrict a book legislative in that it has prospective implications that reach the entirety of the District's libraries. That is, the vote "embod[ied] a policy decision with prospective implication." *Bryant*, 575 F.3d at 1306; *see also Smith*, 641 F.3d at 217 (finding school board engaged in legislative activity when it made decision to eliminate alternative school as a result of weighing budgetary priorities).

While the Eleventh Circuit has stated the act of voting alone is not dispositive as to whether an act is legislative, voting can nonetheless constitute legislative decisionmaking. *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir.

1982) (citing *Hernandez*, 643 F.2d at 1188). That a vote only concerns a single individual or object does not change this if it nonetheless has broad application. *See Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1409 (11th Cir. 1989) (affirming district court's grant of legislative immunity to individual defendants who denied plaintiff's application to rezone its property given such actions are legislative in nature); *Smith v. Lomax*, 45 F.3d 402, 406 n.10 (11th Cir. 1995); *cf. Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) ("Legislative acts are those which involve policy-making decision of a general scope or, to put it another way, legislation involves line-drawing." (quoting *Ryan v. Burlington Cnty.*, 889 F.2d 1286, 1290–91 (3d Cir. 1989))).

Just as a county's imposition of a building moratorium on property pursuant to an existing county code provision was deemed legislative in nature, *75 Acres, LLC v. Miami-Dade Cnty.*, 338 F.3d 1288, 1296 (11th Cir. 2003), so too is the decision to remove or restrict a book pursuant to the Board's policy. *See also Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1190 (11th Cir. 1993) (finding county commissioners "clearly were performing their legislative function" when they investigated the voting eligibility of individuals and ultimately participated in the removal of their names from voting lists); *Brown v. Crawford Cnty.*, 960 F.2d 1002, 1011 (11th Cir. 1992).

Plaintiffs may argue none of these cases specifically address school book removals. *See* [D.E. 95 at 11–12 & n.3]. But as this Court has recognized, "[t]he applicable standard for evaluating alleged First Amendment violations in the school library context is not entirely clear." [D.E. 65 at 7]. It logically follows an unsettled area of law would have a dearth of caselaw concerning Ms. Bergosh's argument as to legislative privilege. And indeed, another judge in this judicial district has found the very acts under scrutiny are legislative in nature. *See* [D.E. 125].

This Court should find likewise. This is because "voting, debate and reacting to public opinion are manifestly in furtherance of legislative duties," all actions Ms. Bergosh and her fellow Board members engaged in here. *DeSisto Coll., Inc. v. Line*, 888 F.2d 755, 765 (11th Cir. 1989). "[T]he Eleventh Circuit has concluded that 'the vote of a city councilman constitutes an exercise of legislative decision-making,' which entitles such city council member to absolute immunity since voting is a legislative function." *Hudgins v. City of Ashburn*, 890 F.2d 396, 406 n.20 (11th Cir. 1989)[6] (quoting *Espanola*, 690 F.2d at 829); *accord Healy v. Town of Pembroke Park*, 831 F.2d 989, 993 (11th Cir. 1987). A vote by a school board member as to whether to remove or restrict a book yields the same conclusion: it is "conduct in the furtherance of their duties," *Hernandez*, 643 F.2d at 1193, and therefore it serves as

---

[6] While the defendants in *Hudgins* asserted qualified immunity, the Eleventh Circuit noted they "should have asserted the defense of absolute or legislative immunity." 890 F.2d at 406 n.20.

a legislative function. *Hudgins*, 890 F.2d at 406 n.20; *see also Yeldell*, 956 F.2d at 1062 ("Acts such as voting . . . are generally deemed legislative and, therefore, protected by the doctrine of legislative immunity." (collecting cases)).

That Plaintiffs may argue Ms. Bergosh's votes were motivated by an improper purpose does not change this analysis, as "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951); *see also Pernell*, 84 F.4th at 1345. "A court proceeding that probes legislators' subjective intent in the legislative process is a deterrent to the uninhibited discharge of their legislative duty," and courts "cannot create an exception whenever a constitutional claim directly implicates the government's intent" because "that exception would render the privilege of little value." *Pernell*, 84 F.4th at 1345 (cleaned up); *see also Tenney*, 341 U.S. at 377.

Thus, it cannot be disputed that the Board's actions in deciding to remove or restrict certain books were legislative in nature. They involved votes by the Board members taken after hearing public opinion on the books at issue and subsequent debate and deliberation by the Board, as required by law. *DeSisto Coll., Inc.*, 888 F.2d at 765; *accord Woods v. Gamel*, 132 F. 3d 1417, 1420 (11th Cir. 1998) (finding county commissioners' deliberations and vote on budget, as required under state law, was legislative in nature). In deciding to remove or restrict these books, the Board members were exercising their authority under Florida law, and "[i]n casting their

votes," the Board members were performing their duties "under state law and exercising a quintessentially legislative function," *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 1342 (M.D. Ala. 2001), and expressing their priorities for the legislative body, creating the requisite nexus to the legislative process. *Bryant*, 575 F.3d at 1306.

Requiring Ms. Bergosh to testify as to her motives and underlying thoughts concerning her votes to remove or restrict the books at issue would thus eviscerate the privilege's purpose, which is to protect the "legislative process itself." *In re Hubbard*, 803 F.3d at 1307–08. Moreover, it would cut against the privilege's "additional purpose of shielding officials from the costs and distraction of discovery," designed to "enabl[e] them to focus on their duties." *Byrd*, 674 F. Supp. 3d at 1103.

Ms. Bergosh thus respectfully submits this Court should follow the "long-recognized legislative privilege" which counsels that "courts ought not compel unwilling [officials] to testify about the reasons for specific . . . votes," *Florida*, 886 F. Supp. 2d at 1303, find she is entitled to legislative privilege, and shield her from involuntary examinations in this matter.

**WHEREFORE**, Non-Party Carissa Bergosh, respectfully requests that this Court enter an order under Federal Rule of Civil Procedure 26(c) and/or 45(d)(3)

preventing Plaintiffs from taking her deposition, and to award any such other relief as this Court deems appropriate.

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this Motion complies with the word count limitation set forth in Local Rule 7.1(F) because this Motion contains 3,974 words, excluding the parts exempted by said Local Rule.

## CERTIFICATE OF COMPLIANCE WITH
## LOCAL RULE 7.1(B) AND RULE 26(c)

The undersigned certify that they have met and conferred with Plaintiffs by email on September 19, 22, 25, 26, and 30, 2025, and October 2, 2025, as well as via telephonic and video conference on September 29, 2025. Plaintiffs oppose this Motion.

Respectfully submitted,

/s Nicole Sieb Smith
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Non-Party Carissa Bergosh

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Kristy L. Parker at kristy.parker@protectdemocracy.org;  Shalini  Goel  Agarwal  at shalini.agarwal@protectdemocracy.org;  Kirsten  Elizabeth  Fehlan  at fehlank@ballardspahr.com;  Lynn  Beth  Oberlander  at oberlanderl@ballardspahr.com; Paul Joseph Safier at safierp@ballardspahr.com; Ori  Lev  at  ori.lev@protectdemocracy.org;  Goldie  Fields  at fieldsg@ballardspahr.com;  Facundo  Bouzat  at  bouzatf@ballardspahr.com; Matthew  Kussmaul  at  kussmaulm@ballardspahr.com;  Amy  Bowles  at amy.bowles@protectdemocracy.com;  and  Taylor  Washburn  at washburnt@ballardspahr.com (Counsel for Plaintiffs).

/s Nicole Sieb Smith

J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
NICOLE SIEB SMITH
Florida Bar No.:  0017056
E-mail:  nsmith@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
and

SAMANTHA DUKE
Florida Bar No. 0091403
Email:  sduke@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 S. Orange Ave., Suite 300
Orlando, Florida 32801
Tel:  407.872.7300
Fax: 407.841.2133

Attorneys for Carissa Bergosh